BOIES, SCHILLER & FLEXNER LLP
  Stuart Singer (*pro hac vice* pending)
  David Nelson (*pro hac vice* pending)
401 East Las Olas Blvd, Suite 1200
Fort Lauderdale, FL 33301
Tel: 954-356-0011
Fax: 954-356-0022
Email:  ssinger@bsfllp.com; dnelson@bsfllp.com

FOOTE, MEYERS, MIELKE FLOWERS LLC
  Robert M. Foote (*pro hac vice* pending)
  Kathleen Chavez (*pro hac vice* pending)
  Matthew Herman (*pro hac vice* pending)
30 North LaSalle Street, Suite 2340
Chicago, IL 60602
Tel: 630-232-6333
Fax: 630-845-8982
Email:  rmf@foote-meyers.com; kchavez@foote-meyers.com; mherman@foote-meyers.com

LEE, TRAN & LIANG APLC
  James M. Lee (CA Bar No. 192301)
  Enoch H. Liang (CA Bar No. 212324)
601 South Figueroa Street, Suite 4025
Los Angeles, CA 90017
Tel: 213-612-3737
Fax: 213-612-3773
Email:  jml@ltlcounsel.com; ehl@ltlcounsel.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACADEMY OF MOTION PICTURE ARTS AND SCIENCES, a California nonprofit corporation, <br><br> Plaintiff, <br><br> v. <br><br> GODADDY.COM, INC., a Delaware corporation; THE GODADDY GROUP INC.; a Delaware Corporation; DOMAINS BY PROXY, INC., a Delaware Corporation; GREENDOMAINMARKET.COM, an unknown entity; BDS, an unknown entity; and XPDREAMTEAM LLC, a California limited liability corporation, <br><br> Defendants. | Case No.: CV10 3738 DSF (AGRx) <br><br> **COMPLAINT** |

-1-

Plaintiff, Academy of Motion Picture Arts and Sciences ("the Academy" or "Plaintiff"), a California nonprofit corporation brings this Complaint against Defendants The GoDaddy Group, Inc., GoDaddy.com, Inc., and their wholly owned subsidiary Domains by Proxy, Inc. (hereinafter collectively "Defendant GoDaddy" and/or "GoDaddy"), Greendomainmarket.com, BDS, and XPDreamTeam LLC (hereinafter collectively referred to as the "Registrant Defendants"), and in so doing allege, upon information and belief, except as to allegations specifically pertaining to themselves, which are based on personal knowledge, as follows against Defendants:

## **SUMMARY OF CLAIMS**

1.      This action is brought by Plaintiff seeking redress for Defendant GoDaddy's violations of the following federal law and California statutory and common laws: (a) Anticybersquatting Consumer Protection Act ("ACPA" ) *15 U.S.C.A. § 1125(d)*; (b) California Business Professions Code Sections 17200; (c) conversion; (d) unjust enrichment; and (e) civil conspiracy. Said violations arise from Defendants' actions to generate revenue from the unauthorized taking, use, and monetization of Plaintiff's distinctive, famous and valuable marks. Plaintiff seeks redress for damages caused to it as a direct and proximate result of Defendants' unauthorized monetization, registration, trafficking in, licensing and/or other such use of domain names belonging to and/or that are confusingly similar to Plaintiff's valuable, protected, distinctive and famous marks.

2.      Defendant GoDaddy and the Registrant Defendants have deliberately taken, infringed, diluted and/or otherwise used, without authorization,  the Academy's rights in the OSCAR®, OSCARS® and OSCAR NIGHT®, ACADEMY AWARD®, ACADEMY AWARDS® marks (the "Academy's Distinctive & Valuable Marks").  They have done so through the license, use,

-2-

1   trafficking in, conversion, and monetization of Internet domain names that are

2   identical to and/or confusingly similar to the Academy's Distinctive & Valuable

3   Marks.

4          3.    Defendants achieve monetary gain by using Plaintiff's Distinctive &

5   Valuable Marks to knowingly divert internet traffic away from Plaintiff's

6   legitimate websites, to infringing parked domains ("Deceptive Domains"). The

7   infringing domains are "parked pages" that have no legitimate business purpose,

8   display no substantive content,  and are used exclusively for the display of revenue

9   generating advertisements. Defendants derive revenue each time an internet user is

10  directed to an infringing parked domain and an advertisement is "clicked."

11  GoDaddy and/or the Registrant Defendants have been deriving revenue from

12  hundreds of such infringing parked domains which demonstrates their bad faith

13  intent to profit from advertising on domain names that are identical to, or

14  confusingly similar to, The Academy's Distinctive & Valuable Marks.

15

16

17                    **SUBJECT MATTER JURISDICTION AND VENUE**

18         4.    This is an action for cybersquatting under 15 U.S.C. § 1125(d) and for

19  violations of California statutory and common law. This Court has subject matter

20  jurisdiction over this claim pursuant to 28 U.S.C. § 1331. This Court has

21  supplemental jurisdiction pursuant to 28 U.S.C.§ 1367.

22         5.    Venue is proper in this Judicial District pursuant to 28 U.S.C. §

23  1391(b) as a substantial part of the events or omissions giving rise to the claim and

24  the actual harm to Plaintiff occurred in this District by reason of the Defendants'

25  conduct as alleged below. No other forum would be more convenient for the

26  parties and witnesses to litigate this action. California law applies to all state law

27  claims or controversies arising between the parties.

28

COMPLAINT

# PARTIES

## A.   PLAINTIFF: THE ACADEMY

6.   The Academy is a nonprofit corporation organized and existing under the laws of the State of California, with its principal place of business in Los Angeles County.

7.   The Academy was founded in 1927 by a group of 36 film industry leaders, who numbered among them Cecil B. Deville, Mary Pickford, Jack Warner and Douglas Fairbanks, for the purpose of advancing the motion picture arts and sciences by promoting cultural, educational and technological achievements. As an incentive for members of the industry to strive toward this goal and as a means of recognizing persons who make outstanding contributions in their respective creative fields, the Academy presents annual "Awards of Merit," known to the public as "Oscars." The Academy's Awards of Merit are alternatively referred to in the singular as "Academy Award" or "Oscar." The Oscars are presented during a nationally and internationally televised "Academy Awards" program.

8.   The Academy owns the ACADEMY AWARD® and ACADEMY AWARDS® marks, which it has registered with the United States Patent and Trademark Office ("USPTO") pursuant to Certificate of Registration No. 2,245,965 for its ACADEMY AWARD mark and Certificate of Registration Nos. 1,103,859, 1,880,473 and 1,956,313 for its ACADEMY AWARDS mark. These marks are valid, subsisting, and incontestable, and, as the owner of these registered marks, the Academy has the rights to their exclusive use.  True and correct copies of the USPTO records reflecting these registrations are attached as Exhibits 1 through 4, inclusive, and incorporated by reference herein as though fully set forth at length.

-4-

9.      The Academy owns the OSCAR®, OSCARS® and OSCAR NIGHT® marks, which it has registered with the United States Patent and Trademark Office pursuant to Certificates of Registration Nos. 1,096,990, 1,118,751, 1,996,585 and 2,021,582, for its OSCAR mark, Certificate of Registration No. 1,528,890 for its OSCARS mark, and Certificate of Registration No. 2,029,445 for its OSCAR NIGHT mark.  These marks are valid, subsisting, and incontestable, and, as the owner of these registered marks, the Academy has the rights to their exclusive use. True and correct copies of the USPTO records reflecting these registrations are attached as Exhibits 5 through 10, inclusive, and incorporated by reference herein as though fully set forth at length.

10.      With respect to Registration Nos. 1,103,859 and 1,880,473 for the ACADEMY AWARDS® mark, Registration No. 1,096,990 for the OSCAR® mark, and Registration No. 1,528,890 for the OSCARS® mark, the Academy has complied with the requirements set forth in Sections 8 and 15 of the Trademark Act of 1946.  The Academy's exclusive right to use those marks and its registrations thereof have become incontestable within the meaning of 15 U.S.C. § 1065 and said certificates of registration constitute conclusive evidence of, *inter alia,* the Academy's ownership of, and exclusive right to use, those marks.

11.      The Academy is a venerable and important organization within the motion picture industry, responsible for encouraging the industry's cultural, educational and technological advances.  The Academy's esteem is based on its reputation for conferring its Academy Award of Merit on only those individuals who have shown outstanding achievement in their creative fields.  Said award would not be a credible, highly prized award if the public and trade believed that the Academy sold or bestowed the award to persons other than its Academy Award of Merit winners.  Indeed, the Academy does not license the Academy's Distinctive and Valuable Marks except to promote the Academy Awards Show or

1     in connection with films that have been honored by the Academy. Specifically, the

2     Academy does not otherwise allow the Academy's Distinctive and Valuable Marks

3     to be used to advertise or promote any other product or service.

4          12.    As a result of the Academy's long leadership of the film industry,

5     extensive advertising, and media attention, the Academy's ACADEMY

6     AWARD®, ACADEMY AWARDS®, OSCAR®, OSCARS®, and OSCAR

7     NIGHT® marks have achieved widespread and favorable public acceptance and

8     recognition, and have become assets of substantial value throughout this district,

9     the United States, and the world.

10         13.    The Academy's marks are recognized nationally and internationally as

11     signifying the Academy's annual awards program. The marks ACADEMY

12     AWARD®, ACADEMY AWARDS®, OSCAR®, OSCARS®, and OSCAR

13     NIGHT® have achieved a strong secondary meaning. The public universally

14     associates Academy Award, Academy Awards, Oscars and Oscar Night with the

15     ©Oscar® presentation by the Academy. The public also universally associates

16     Academy Award, Oscar, and Oscars with the ©Oscar® statuette presented to the

17     winners of the Academy's annual Awards of Merit. ACADEMY AWARD®,

18     ACADEMY AWARDS®, OSCAR®, OSCARS®, and OSCAR NIGHT® are

19     unquestionably linked in the public mind with the Academy and its Award of

20     Merit. Indeed, the Ninth Circuit has stated that "[t]he [OSCAR] mark should be

21     given the strongest possible protection against infringement." *Academy of Motion*

22     *Picture Arts and Sciences v. Creative House Promotions*, 944 F.2d 1446, 1455 (9th

23     Cir. 1991).

24

### B.    <u>DEFENDANTS</u>

25

26         14.    Defendant The GoDaddy Group Inc. is an Arizona corporation with

27     its principal place of business located at 14455 N. Hayden Rd., Suite 219

28

1  Scottsdale, AZ 85260. Its self-described "flagship company" is Defendant

2  GoDaddy.com, Inc., which purports to be the world's leading ICANN-accredited

3  domain name registrar for .COM, .NET, .ORG, .INFO, .BIZ and .US domain

4  extensions. It claims to have over forty (40) million domain names under its

5  management, and boasts that "(a)s an ICANN-accredited domain registrar,

6  GoDaddy has more names under management than any other registrar and has an

7  array of internet based services."

8       15.    Upon information and belief, Defendant Domains by Proxy, Inc. is a

9  wholly owned subsidiary of GoDaddy.com, Inc., and is located at 14455 N.

10  Hayden Road, Suite 219, Scottsdale, AZ 85260.  Domains by Proxy acts as the

11  actual domain name registrant for its customers, permitting its customers to

12  conceal their identities and other contact information.  While allegedly conceived

13  to deal with loss of privacy, the anonymity offered by Domains by Proxy has

14  facilitated the unauthorized license, use, trafficking in, conversion, and

15  monetization of Internet domain name(s) that are identical to and/or confusingly

16  similar to the Academy's Distinctive & Valuable Marks.  Upon information and

17  belief, many of Domains by Proxy's customers reside in California.

18       16.    Unless specifically named, Defendants The GoDaddy Group, Inc.,

19  GoDaddy.com, Inc., and its  wholly owned subsidiary Domains by Proxy, Inc. are

20  referred to collectively as "Defendant GoDaddy" and/or "GoDaddy".

21       17.    GoDaddy offers its services in interstate commerce, including but not

22  limited to registration, certification, hosting, parking, redirecting, transfers, and

23  monetization through its "parking" program that monetizes participating domains.

24  In addition to Domains by Proxy, GoDaddy has a number of subsidiary companies,

25  including: Wild West Domains, Inc., Starfield Technologies, and Blue Razor

26  Domains.

27

28

COMPLAINT

18.　This Court has personal jurisdiction over Defendants The GoDaddy Group Inc., GoDaddy.com Inc., and Domains by Proxy, Inc. because they conduct substantial business within this district, have engaged in acts or omissions within this district causing injury, have engaged in acts outside this district causing injury within this district, and have engaged in conduct related to the unlawful activities at issue in this action causing injury and harm in this district, and/or has otherwise made or established contacts with this district sufficient to permit the exercise of personal jurisdiction.

19.　Defendant Greendomainmarket.com is a resident of California and/or conducts business in California at 144 S. Saltair Ave. #302, Los Angeles, California 90025. Greendomainmarket.com is the registrant of myoscarspeech.com and registered the domain with Defendant GoDaddy. The domain is parked in GoDaddy's Cash Parking Program. As such, it is a commercial advertising site with sponsored links geared to appeal to persons interested in the Academy Awards and/or persons or movies relating to the Academy Awards. Greendomainmarket.com owns approximately 130 domains.

20.　Defendant BDS is a business entity of unknown form, and either is a resident of California and/or conducts business in California at 1158 26th Street #107, Santa Monica, California 90403. BDS is the registrant of oscarseaton.com and registered the domain with Defendant GoDaddy. This domain is parked in GoDaddy's Cash Parking Program. As such, it is a commercial advertising site with sponsored links geared to appeal to persons interested in the Academy Awards and/or persons or movies relating to the Academy Awards. BDS owns approximately 1500 domains.

21.　Defendant XPDreamTeam LLC ("XP") is a resident of California and/or conducts business in California at 7150 Calabria Ct., Unit D, San Diego, California 92122. XP is a registrant of webacademyawards.com and registered the

1   domain with Defendant GoDaddy. His domain is parked in Defendant GoDaddy's
2   Cash Parking Program. As such, webacademyawards.com is a commercial
3   advertising site with sponsored links geared to appeal to persons interested in the
4   Academy Awards and/or persons or movies relating to the Academy Awards.  XP
5   owns approximately 27 other domains.

6        22.    Defendant GoDaddy and each of the Registrant Defendants
7   intentionally used domains that it knew or should have known infringed The
8   Academy's Distinctive & Valuable Marks.

9        23.    Defendant GoDaddy and each of the Registrant Defendants registered
10   domains, monetized domains, intentionally displayed advertisements on parked
11   domains, and otherwise utilized the Academy's Distinctive & Valuable Marks
12   without Plaintiff's consent or authorization.

13        24.    Defendant GoDaddy and each of the Registrant Defendants profited
14   from their unlawful and unauthorized conduct alleged herein.

15
16
17
                    **GODADDY'S BUSINESS**

18
19        25.    GoDaddy advertises and procures customers by offering "free
20   parking" of a registrant's domain name.  Domains by Proxy also advertises and
21   procures customers by offering to keep registrants' identities confidential.
22        26.    Under GoDaddy's "Parked Page Service", GoDaddy will park the
23   registrant's page and place advertisements on the web page while GoDaddy is
24   granted the right to collect and retain all revenue obtained from the advertising.
25        27.    Conservatively, GoDaddy has more than 500,000 customers in the
26   State of California and earns revenue in excess of $35 million per year from those
27   customers.
28        28.    At least 50 domains at issue in this litigation were registered by

California residents, and are parked in the Free Parked Page service.

29.     Defendant GoDaddy has conspired with numerous California residents, including but not limited to the Registrant Defendants, through GoDaddy's Cash Parking Program, to monetize parked domain names that are confusingly similar to distinctive, famous and valuable marks.

30.     GoDaddy has submitted a United States Patent Application for "Systems and Methods for Filtering Online Advertising Trademarks".  A true and correct copy of this patent application is attached as Exhibit 11.  The patent application recognizes there is a need for systems and methods to filter online advertisements containing third-party trademarks because an unscrupulous domain name registrant may attempt to financially gain by signing up for domain parking advertising using a trademarked domain name while legitimate trademark owners may not want their trademarks used in such a way that allows others to profit from their trademarks.  *Id.*, at [0007] and [0033].  The patent application reflects GoDaddy's recognition of the need—and ability-- to protect against the illegitimate activity that it promotes and profits from and that is the subject of this action.

31.     GoDaddy knew it was harming trademark holders, such as the Academy, by monetizing domains utilizing their marks. In fact, GoDaddy provided an example in the Patent Application that is virtually identical to the activities the Academy complains of in this case and details precisely why an advertisement should not be generated on such Deceptive Domains:

> [0033] In such situations, an unscrupulous domain name registrant may attempt to financially gain from using the trademarked domain name. For example, he may sign up for one of the domain parking advertising methods discussed above. If the trademark owner is one of the advertisers partaking in the advertising program (many

COMPLAINT

may products and services providers"), the trademark owner's advertisements and links may appear when an Internet user accesses the domain name registrant's parked webpage. Using the hypothetical example in the previous paragraph, if an Internet user accesses a parked webpage resolving from a domain name that includes a trademark (but is not owned or controlled by the trademark owner--such as www.mygodaddy.com), the trademark owner and legitimate business entity's (GODADDY.COM) advertisements and links may appear. Legitimate trademark owners may not want their trademarks, advertisements, links, and websites used in such a manner because it allows others to profit from their trademarks. Such practices also may add credence or an air of legitimacy to any products or services offered on the domain name registrant's webpage.

[0034] For these reasons, systems and methods for filtering online advertisements containing third-party trademarks are needed. *See* Exhibit 11.

Despite the foregoing, GoDaddy is committing the unscrupulous behavior described above to profit from The Academy's Distinctive & Valuable Marks.

32.     Pursuant to the Domain Name Registration Agreement between GoDaddy and its customers, GoDaddy is the authorized licensee of the registrant for the purpose of placing advertisements for commercial gain on the registrant's webpage.  Paragraph 8 of GoDaddy's previous Domain Name Registration Agreement provided (emphasis added):

**8.     Parked Page Service**

The Parked Page Service, includes, but is not limited to, the parking of pages on Go Daddy nameservers, and Starter/For Sale web pages (all parked pages, collectively, the "Parked Page"). For every domain name registered, Go Daddy will provide the Parked Page

service free to its customers. Go Daddy will provide You with these services as long as You abide by the terms and conditions set forth herein and in each of Go Daddy's policies and procedures found here.

If You are using Go Daddy's Parked Page services, You agree that Go Daddy may point the domain name or DNS to one of Go Daddy's or Go Daddy's affiliates web pages, and that they may place advertising on Your web page and Go Daddy specifically reserves this right. Go Daddy also reserves the right to collect and retain all revenue obtained from such advertising. You may terminate Your use of the Parked Page service at any time through Your online account manager.

If You are using Go Daddy's Parked Page service, You are responsible for ensuring that any content placed on Your Parked Page by You or anyone on Your behalf conforms to all local, state, federal, and international laws. Further, You are responsible for ensuring the legal copyright to any images, text, or other web site elements not provided by Go Daddy. In order to use Go Daddy's Parked Page service, You must have a domain name registered with Go Daddy. Go Daddy is not responsible for making back-up copies of Your web site; this is solely Your responsibility. You agree that Go Daddy may place advertising on Your Parked Page and Go Daddy specifically reserves this right. Go Daddy also reserves the right to collect and retain all revenue obtained from such advertising.

33.     On information and belief, in or about April 24, 2009, GoDaddy revised its Parked Page Service Agreement to make it less obvious that GoDaddy keeps all of the revenue from domain names that are parked at GoDaddy.  A true and correct copy of GoDaddy's current Parked Page Service Agreement is attached hereto as Exhibit 12.  Paragraph 2 also provides (emphasis added):

## 2. DESCRIPTION OF SERVICE

Go Daddy currently provides One Page Web Sites and Domains for Sale to its customers, as well as monetizing other Parked Pages. Go Daddy will provide You with these services as long as You abide by the terms and conditions set forth herein and in each of Go Daddy's policies and procedures found <u>here</u>.

<u>If You are using any of Go Daddy's Parked Pages services, You agree that Go Daddy may point the domain name or DNS to one of Go Daddy's or Go Daddy's affiliates web pages, and that they may place advertising on Your web page and Go Daddy specifically reserves this right.</u>

If You are using Go Daddy's One Page Web Site, You are responsible for ensuring Your web site conforms to all local, state, federal, and international laws. Further, You are responsible for ensuring the legal copyright to any images, text, or other web site elements not provided by Go Daddy. In order to use Go Daddy's One Page Web Site, You must have a domain name registered with Go Daddy. Go Daddy is not responsible for making back-up copies of Your web site; this is solely Your responsibility.

If Your One Page Web Site includes GIF images and You are not using Go Daddy's WebSite Complete software, You must ensure that Your GIF images are licensed with Unisys or were created with Unisys Authorized Software.

34.     GoDaddy, as the authorized licensee of the registrants, has licensed, monetized, used and/or trafficked in at least the following domain names in its Parked Page Service, with bad faith intent to profit from the Distinctive & Valuable Marks of the Academy:

| | |
|---|---|
| 2011OSCARS.COM | OSCARLIST.COM |
| ACADEMYAWARDSPREVIEW.COM | OSCARLOCATIONS.COM |
| ACADEMYAWARDZ.COM | OSCARMOVIEMAKER.COM |

-13-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| BETACADEMYAWARDS.COM | OSCARRUN.COM |
| BOOTLEGOSCARS.COM | OSCARSARCHIVES.COM |
| BOOTLEGOSCARS.NET | OSCARSBALL.COM |
| COSCARAUDIOSALES.COM | OSCARSBLOG.COM |
| DOGACADEMYAWARD.COM | OSCARSFANTASY.COM |
| E-OSCAR.COM | OSCARSGOODIEBAGS.COM |
| E-OSCARHOME.COM | OSCARSGOODIES.COM |
| E-OSCARONLINE.NET | OSCARSHOMEMOVIES.COM |
| FUTUREOSCARWINNER.NET | OSCARSHOTELS.COM |
| GUIDE2OSCARSEVENTS.COM | OSCARSHOTELS.NET |
| GUIDETOOSCARSEVENTS.COM | OSCARSINAMINUTE.COM |
| HOLLYWOODOSCAR.COM | OSCARSLIVEBLOGGING.COM |
| HOMEMOVIEOSCARS.COM | OSCARSLLC.COM |
| HOMEOSCARS.COM | OSCARSNUB.COM |
| IMAGEOSCAR.NET | OSCARSONLINE.NET |
| IMAGEOSCARS.COM | OSCARSOPENHOUSE.COM |
| INTERNETOSCAR.COM | OSCARSOTO.COM |
| INTERNET-OSCAR.COM | OSCARSPICTURES.COM |
| IXOSCAR.COM | OSCARSTWEET.COM |
| JAYLENOSCARS.COM | OSCARSUNPLUGGED.COM |
| JAYLENOSCARS.NET | OSCARTEL.COM |
| LEEZAGIBBONSOSCARNIGHT2009.COM | OSCARTHEATERS.COM |
| LEEZAGIBBONSOSCARNIGHT2011.COM | OSCARTRAILER.COM |
| LEEZAGIBBONSOSCARPARTY.COM | OSCARTRAVELWEB.COM |

-14-

| | |
|---|---|
| LISTOSCAR.EC | OSCARTFEETS.COM |
| LOCATIONSOSCAR.COM | OSCARTWIST.COM |
| MYOSCARCOLLECTION.COM | OSCARWEAR.NET |
| MYOSCARCOLLECTION.NET | OSCARWINNERS.NET |
| MYOSCARCOLLECTIONNOW.COM | OSCARWINNERSCOMMUNITY.COM |
| MYOSCARCOLLECTIONONLINE.COM | OSCARWINNINGFILMS.COM |
| OASINOSCAR.COM | OSCARWORTHYMANSION.COM |
| OFFICEOSCARS.COM | ROUNDINGWITHOSCAR.COM |
| OFFICIALE-OSCAR.COM | ROUNDING-WITH-OSCAR.COM |
| OFFICIALE-OSCARONLINE.COM | SAYSOSCAR.COM |
| OSCAR2.COM | TEXTILEOSCARS.COM |
| OSCARANDEMMY.COM | TEXTILEOSCARS.NET |
| OSCARATTHEMOVIES.COM | THEFANTASYOSCARS.COM |
| OSCARAWARDBOOKS.COM | THEIMAGEOSCAR.COM |
| OSCARBET.COM | THEIMAGEOSCARS.COM |
| OSCARBETANCUR.COM | THELIQUIDOSCARS.COM |
| OSCARBETS.COM | THELOCATIONSOSCAR.COM |
| OSCARBLOG.COM | THEMORMONOSCARS.COM |
| OSCARBLOGGER.COM | THEOSCARCOPS.NET |
| OSCARCAM.COM | THEOSCARDOTCOM.COM |
| OSCARCLAIM.COM | THEOSCARGOES2.COM |
| OSCARCLAIM.NET | THEOSCARSATLANTA.COM |
| OSCARCLAIMS.NET | THEOSCARSTWEET.COM |
| OSCARCOMEDY.COM | THEOSCARSTWEETS.COM |
| OSCARCOMMUNITY.COM | THEOSCARTOUR.COM |

-15-

COMPLAINT

| | |
|---|---|
| OSCARDOESITAGAIN.COM | THINKOSCAR.COM |
| OSCARDOM.COM | THINKOSCAR.NET |
| OSCARDOW.COM | TRAVELOSCAR.COM |
| OSCARDVDS.COM | TRAVELOSCARS.COM |
| OSCARELIGIBLE.COM | TRAVELOSCARS.NET |
| OSCARELIGIBLE.NET | VOTEOSCARS.COM |
| OSCARFORWOMEN.COM | VOTEOSCARSADS.COM |
| OSCARGOODIES.COM | GREENOSCAR.COM |
| OSCARHOPE.COM | OSCARCINEMAS.COM |
| OSCARHOSPITALITY.COM | OSCARSLIST.COM |
| OSCARI.COM | THEOSCARTEAM.COM |
| OSCARI.NET | 2013OSCARS.COM |
| OSCARIMAGE.COM | 2013OSCARS.NET |
| OSCAR-INT.COM | ACADEMYAWARDBUZZ.COM |
| COLLEGIATEACADEMYAWARDS.COM | OSCAR360.COM |
| COLLEGIATEACADEMYAWARDS.ORG | OSCARENTERTAINMENT.COM |
| ACADEMYAWARDSINC.COM | OSCARMOVIES.NET |
| | OSCARSFASHION.COM |

ANDTHEOSCARGOESTOTHEHANGOVER.COM

OSCARSDISCOUNTEDPRICESONLINE.COM

MAKINGTHEROUNDSWITHOSCAR.COM

THEINTERNETACADEMYAWARDS.COM

    Because there are so many infringing domain names, attached as Exhibits 13-16 are a few screenshots of examples from the list in paragraph 34.

    35.    Indeed, in many instances, Defendant Domains by Proxy is the direct

registrant of the domain names listed in the preceding paragraph.  For example,

Domains by Proxy is the actual registrant for the following domain names listed in

preceding paragraph:

ACADEMYAWARDZ.COM

E-OSCARHOME.COM

E-OSCARONLINE.NET

JAYLENOSCARS.COM

JAYLENOSCARS.NET

OSCARSPICTURES.COM

OSCARSUNPLUGGED.COM

OSCARTRAILER.COM

OFFICIALE-OSCAR.COM

OFFICIALE-OSCARONLINE.COM

36.     As a direct and proximate result of Defendants' conduct alleged in this Complaint,  the Academy has suffered injury to its business and property, suffered financial loss, been deprived of property, and has otherwise been damaged by Defendants' misconduct.

37.     As part of its services, GoDaddy also offers its customers a "cash parking" service whereby the domain registrant pays a fee to allow GoDaddy, through its advertising partner, to place ads on the registrant's web page. The revenue generated through this advertising is then split between the registrant, GoDaddy, and GoDaddy's advertising partner.  The "CashParking" provision of GoDaddy's Domain Registration Agreement previously provided as follows (emphasis added):

> CashParking is a service that enables you to earn money on your parked domains. If you associate your domains with your CashParking account, our advertising partner places context-relevant advertisements on your page.

1
2
3
4
5

Each time a visitor clicks a displayed advertisement, you receive a share of the generated click-through revenue based on your CashParking plan (60% to 80% of the generated revenue). The amount you receive and the price you pay for the CashParking service depends on the plan you select. You can add an unlimited number of domains to your CashParking account.

6
7
8
9
10
11

38.     On information and belief, in or about March 12, 2010, GoDaddy revised its CashParking Service Agreement to make it less obvious that GoDaddy shares revenue with its customers who keep domain names in GoDaddy's CashParking program.  A true and correct copy of GoDaddy's current CashParking Service Agreement is attached hereto as Exhibit 17.  It provides as follows (emphasis added):

12
13

**1. THE SERVICE**

14
15

Go Daddy grants You a non-exclusive license to use the Services, provided, however, that You abide by the terms and conditions set forth herein and in each of Go Daddy's policies and procedures.

16
17

The Services generally allow You to:

18
19
20
21

i.      provide a platform for advertising link on parked pages;

ii.     generate revenue from the advertising links on a per click basis; and

iii.    receive a portion of the revenue generated from the advertising links.

22

**Calculation of Revenue; Cancellation**

23
24
25
26
27

Go Daddy shall use commercially reasonable efforts to provide You with accurate daily estimates of the revenue Your web site(s) generates. You acknowledge and agree any daily estimates are not an exact determination, do not represent an exact determination and the actual amount(s) determined at the end of any revenue generating period may be different. Additionally, in calculating the distribution of revenue generated by any web site, amounts may include fractions

28

of a cent. Go Daddy shall use commercially reasonable efforts to round these amounts to the nearest cent in a manner so as to benefit You. However, You acknowledge and agree that in calculating the distribution of revenue generated by any web site, Go Daddy's determination of any amount owed to You shall be the final and binding determination. Upon Your cancellation of Your Services, You acknowledge and agree Go Daddy has the right to charge You a Fifteen and No/100 Dollar ($15.00) administrative fee in connection with Your cancellation. This amount shall be deducted from any unpaid funds in Your Service account. Any funds in excess shall be paid to You in accordance with Your selected payment option.

39.    GoDaddy, as the authorized licensee of the registrants under the CashParking service, has used and/or trafficked in at least the following domain names, with bad intent to profit from the famous, Distinctive & Valuable Marks of the Academy:

| | |
|---|---|
| | OSCARSGIFTINGSUITE.COM |
| 3DOSCAR.COM | OSCARSMILE.COM |
| ACADEMYAWARDS.NET | OSCARSORNOT.COM |
| JONSTEWARTOSCARS.COM | OSCARSRESULTS.COM |
| MYOSCARSPEECH.COM | OSCARSRESULTS.NET |
| OSCARFAQS.COM | OSCARSWIN.COM |
| OSCARGURU.COM | OSCARUNIVERSE.COM |
| OSCARORNOT.COM | THEOSCARGURU.COM |
| OSCARRESULTS.COM | THEOSCARORNOT.COM |
| OSCARRESULTS.NET | THEOSCARSORNOT.COM |
| OSCARSEATON.COM | THEOSCARSXXX.COM |
| | WEBACADEMYAWARDS.COM |

Because there are so many infringing domain names, attached as Exhibits

-19-

1  18-20 are a few screenshots of examples from the list in paragraph 39.

2          Screen shots of the domain are attached hereto and incorporated herein as

3  *Group Exhibit B*.

4          40.    Indeed, in many instances, Defendant Domains by Proxy is the direct

5  registrant of the domain names listed in the preceding paragraph.  For example,

6  Domains by Proxy is the actual registrant for the following domain names listed in

7  preceding paragraph:

8      OSCARSRESULTS.COM

9      OSCARSRESULTS.NET

10     OSCARRESULTS.COM

11     OSCARRESULTS.NET

12         41.    Through its Cash Parking program, Defendant GoDaddy and the

13  Registrant Defendants have conspired to make money through their concerted

14  action in registering, monetizing and sharing revenue from parked domains that

15  infringe The Academy's Distinctive & Valuable Marks.

16         42.    Defendant GoDaddy and the Registrant Defendants engaged in acts in

17  furtherance of their conspiracy, including but not limited to:

18             a.    Registering the following domains:

19                       myoscarspeech.com,

20                       oscarseaton.com, and

21                       webacademyawards.com.

22             b.    Parking said domains and utilizing the parked domain to

23  display revenue generating advertisements (monetized parked domain); and

24             c.    Sharing revenue generated from parked domains.

25         43.    Defendant GoDaddy has continued to permit the domain names listed

26  in paragraphs 34 and 39 to be registered and parked, even though the Academy has

27  sent approximately 60 cease-and-desist letters to GoDaddy, Domains by Proxy,

28

-20-

and their registrants demanding that they stop "registering or using the Academy's trademarks, or any colorable imitations thereof, as domain names". The Academy sent the approximately 60 cease-and-desist letters to GoDaddy, Domains by Proxy, and their registrants between August 1, 2007, and February 5, 2010.  Many of the domain names that were the subject of these cease-and-desist letters are strikingly similar or identical to the domain names that Defendant GoDaddy later permitted to be registered and parked.  For example:

- On July 6, 2009, the Academy sent GoDaddy.com, Inc. a cease-and-desist letter for ACADEMYAWARDSDVD.COM. Despite that letter, Defendant GoDaddy later permitted OSCARDVDS.COM to be registered and parked; and

- On February 21, 2008, October 10, 2008, July 6, 2009, July 22, 2009, and August 6, 2009, the Academy sent Domains by Proxy and GoDaddy.com, Inc. cease-and-desist letters for domain names that incorporated variations of Academy Awards with the term "winners." Despite those letters, Defendant GoDaddy later permitted OSCARWINNERS.NET to be registered and parked.

## FIRST CLAIM FOR RELIEF

## (VIOLATION OF THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT)

### (Against Defendants GoDaddy.com, Inc., The GoDaddy Group, Inc., and Domains by Proxy, Inc.)

44.    Plaintiff hereby repeats and re-alleges all of the preceding paragraphs as though fully set forth herein.

45.    This Count is brought by Plaintiff against Defendants GoDaddy.com, Inc., The GoDaddy Group, Inc., and Domains by Proxy, Inc.

-21-

46.     Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of GoDaddy's actions as set forth above.

47.     In 1999, Congress passed the Anticybersquatting Consumer Protection Act ("ACPA" or "Act"), *15 U.S.C.A. § 1125(d)*, to protect consumers and American businesses, to promote the growth of online commerce, and to provide clarity in the law for trademark owners.

48.     15 U.S.C. 1125(d) provides:

> (d) **Cyberpiracy prevention**
> (1)(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—
>
> > (i)     has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
> > (ii)    registers, traffics in, or uses a domain name that—
> >
> > > (I)     in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
> > >
> > > (II)    in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
> > >
> > > (III)   is a trademark, word, or name protected by reason of section 706 of title 18 or section 220506 of title 36.

15 U.S.C. 1125 (d)(E) provides:

-22-

As used in this paragraph, the term "traffics in" refers to transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration.

49.    The ACPA applies  not only to individuals and companies who register domain names, but also to : (1) registrants of the Deceptive Domains; (2) anyone who "uses" the domain name which is defined as the registrant or the "authorized licensee" of the registrants of the Deceptive Domains; and (3) anyone who "traffics in" Deceptive Domains, which refers to anyone involved in any transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration, whether or not the person is the registrant of the Deceptive Domain.

50.    The ACPA makes unlawful the use, licensing, pledging, trafficking in, or any other exchange of consideration for the use of the Deceptive Domain Names. GoDaddy's conduct in monetizing the infringing Deceptive Domains violates the Act.

51.    As alleged herein, GoDaddy has acted as the authorized licensee of the registrants and used the infringing Deceptive Domains in violation of the ACPA, with bad faith intent to profit from The Academy's Distinctive & Valuable Marks.  Indeed, in many instances as alleged herein, Defendant Domains by Proxy has acted as the actual registrant of the infringing Deceptive Domains.

52.    GoDaddy's acts as alleged herein constitute the use of and trafficking in infringing Deceptive Domains, in violation of the ACPA with bad faith intent to profit from The Academy's Distinctive & Valuable Marks.

53.    GoDaddy's acts as alleged herein constitute cyberpiracy, cybersquatting, and/or typosquatting (a form of cybersquatting based on typographical errors users may make in entering domain names into a web

1   browser), in violation of the ACPA.

2       54.    The Academy's Distinctive & Valuable Marks are distinctive, famous,

3   venerable, valuable, and or federally registered at the USPTO at the time

4   GoDaddy, registered, trafficked in or acted as the authorized licensee of a

5   registrant and used the Deceptive Domains.

6       55.    The infringing Deceptive Domains as identified in paragraphs 34 and

7   39 are identical or confusingly similar to The Academy's Distinctive & Valuable

8   Marks.

9       56.    GoDaddy does not have any intellectual property rights or any other

10   rights in The Academy's Distinctive & Valuable Marks.

11       57.    None of the infringing Deceptive Domains consist of the legal name

12   of GoDaddy, or a name that is otherwise commonly used to identify GoDaddy.

13       58.    GoDaddy has never made any prior use of any of the infringing

14   Deceptive Domains in connection with the *bona fide* offering of any goods or

15   services.

16       59.    GoDaddy trafficked in and used the infringing Deceptive Domains to

17   divert consumers from Plaintiff's websites to websites accessible from the

18   infringing Deceptive Domains. GoDaddy thereby created a likelihood of confusion

19   as to the source, sponsorship, affiliation, or endorsement of the infringing

20   Deceptive Domain websites.

21       60.    GoDaddy has used, trafficked in, and acted as registrant's authorized

22   licensee in the infringing Deceptive Domains which it knew were identical or

23   confusingly similar to the protected and Distinctive & Valuable Marks of Plaintiff,

24   which were distinctive at the time of the registration and continue to be distinctive.

25       61.    GoDaddy's trafficking in, and/or use, as the authorized licensee of the

26   registrant, of the infringing Deceptive Domains constitutes cybersquatting in

27   violation of *15 U.S.C. § 1125(d)*.

28

-24-

62.     By reason of Defendants' acts alleged herein, a remedy at law is not adequate to compensate plaintiff for the injuries inflicted by GoDaddy. Accordingly, Plaintiff is entitled to preliminary and permanent injunctive relief pursuant to *15 U.S.C. § 1116.*

63.     By reason of GoDaddy's acts alleged herein, Plaintiff is entitled to recover GoDaddy's profits, actual damages and the costs of the action, or, on Plaintiff's election, statutory damages under *15 U.S.C. § 1117*, in an amount up to $100,000 per domain name infringement.

## SECOND CLAIM FOR RELIEF

### (Violation of California Business & Professions Code Section 17200 Et Seq. -Unfair Conduct)

### (Against Defendants GoDaddy.com, Inc., The GoDaddy Group, Inc., and Domains by Proxy, Inc.)

64.     Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

65.     This Count is brought by Plaintiff against Defendants GoDaddy.com, Inc., The GoDaddy Group, Inc., and Domains by Proxy, Inc.

66.     Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendants' actions as set forth above.

67.     Defendant GoDaddy's actions as alleged in this complaint constitute "unfair" conduct within the meaning of California Business and Professions Code sections 17200 *et seq.*

68.     Defendant GoDaddy's business practices, as alleged herein, are "unfair" because they offend established public policy and/or are immoral,

1  unethical, oppressive, unscrupulous and/or substantially injurious to business

2  owners and commerce within the State of California. Defendants' conduct is

3  "unfair" because Defendants' use valuable property that does not belong to

4  Defendants', without the owners' permission or consent, for Defendants' own

5  commercial/economic gain.

6       69.    As a result of Defendants' "unfair" conduct, Plaintiff has been

7  deprived of its property, had its property and goodwill diluted and diminished,

8  suffered economic/financial loss, and was otherwise injured and damaged.

9       70.    The general public was damaged by Defendants' unfair conduct by

10  being confused and misdirected on the internet.

11       71.    Defendants' wrongful business practices alleged herein constituted,

12  and continue to constitute, a continuing course of unfair competition since

13  Defendants continue to generate revenue in a manner that offends public policy

14  and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or

15  substantially injurious to its California businesses, commerce, competition and

16  general public.

17       72.    Pursuant to Cal. Bus. & Prof. Code §17203, Plaintiff seeks an order of

18  this Court enjoining Defendants from continuing to engage in unlawful, unfair,

19  and/or deceptive business practices and any other act prohibited by law, including

20  those acts set forth in this complaint.

21       73.    Plaintiff also seeks an order requiring Defendants to make full

22  restitution of all moneys it has wrongfully obtained from Plaintiff, along with all

23  other relief allowable under Cal. Bus. & Prof. Code §17200 *et seq.*

24  //

25  //

26  //

27  //

28

-26-

## THIRD CLAIM FOR RELIEF

### (Violation of California Business & Professions
### Code § 17200 Et Seq.-Unlawful Conduct)

### (Against Defendants GoDaddy.com, Inc., The GoDaddy Group, Inc., and Domains by Proxy, Inc.)

74.     Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

75.     This Count is brought by Plaintiff against Defendants GoDaddy.com, Inc., The GoDaddy Group, Inc., and Domains by Proxy, Inc.

76.     Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendants' actions as set forth above.

77.     Defendants' actions as alleged in this complaint constitute an "unlawful" practice within the meaning of California Business and Professions Code §17200 *et seq.* because Defendants' actions are "unfair" and violate both federal statutory law and California statutory and common law.

78.     Pursuant to Cal. Bus. & Prof. Code section 17203, Plaintiff seeks an order of this court enjoining Defendants from continuing to engage in unlawful business practices, including those acts set forth in this complaint.

79.     Plaintiff seeks an order requiring Defendants to make full restitution of all moneys it has wrongfully obtained from Plaintiff, along with all other relief allowable under Cal. Bus. & Prof. Code §17200 *et seq.*

//
//
//
//
//

-27-

## FOURTH CLAIM FOR RELIEF

### (Unjust Enrichment)

### (Against All Defendants)

80.     Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

81.     This claim is brought by the Academy against all Defendants.

82.     Through the actions described above, Defendants have received money belonging to Plaintiff through fees collected from ads placed on Deceptive Domains and through the unauthorized use of property belonging to Plaintiff.

83.     Defendants have also reaped substantial profit by collecting and retaining revenue from the use and monetization of Plaintiff's property.

84.     Defendants have received money belonging to Plaintiff.

85.     As a direct and proximate result of Defendants' misconduct, as set forth above, Defendants have been unjustly enriched.

86.     Defendants should not be permitted to keep sums that Defendants have unjustly received as a result of their actions.

## FIFTH CLAIM FOR RELIEF

### (CONVERSION)

### (Against All Defendants)

87.     Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

88.     This claim is brought by the Academy against all Defendants.

89.     Internet domain names constitute property rights sufficient to support

1  a claim for conversion under California law.

2       90.    Defendants' conduct, alleged herein, resulted in their unauthorized

3  exercise of dominion over Plaintiff's property.

4       91.    Defendants assumed control, license and/ or ownership over

5  Plaintiff's property, and Defendants applied the property to its own use.

6       92.    By the unlawful scheme set forth herein, Defendants converted and/or

7  disposed of Plaintiff's property rights without consent or authorization.

8       93.    As a direct and proximate result of Defendants' Conversion of

9  Plaintiff's property, each Plaintiff suffered deprivation of property, injury to

10  business and economic loss.

11

12                    **<u>SIXTH CLAIM FOR RELIEF</u>**

13          **<u>(Violation of ACPA - Defendant Greendomainmarket.com)</u>**

14

15       94.    Plaintiff realleges the preceding paragraphs as if fully set forth herein.

16       95.    This count is brought by the Academy against Defendant

17  Greendomainmarket.com.

18       96.    As alleged herein, Defendant Greendomainmarket.com registered

19  MYOSCARSPEECH.COM, and used the infringing Deceptive Domain in

20  violation of the ACPA, with bad faith intent to profit from the Academy's

21  Distinctive & Valuable Marks.  Attached hereto as Exhibit 21 is a true and correct

22  copy of the screenshot from this Deceptive Domain.

23       97.    Defendant Greendomainmarket.com's acts as alleged herein constitute

24  the registration, use of and trafficking in the infringing Deceptive Domain, in

25  violation of the ACPA with bad faith intent to profit from The Academy's

26  Distinctive & Valuable Marks.

27       98.    Defendant Greendomainmarket.com's acts as alleged herein constitute

28

-29-

1    cyberpiracy, cybersquatting, and/or typosquatting, in violation of the ACPA.

2          99.    The Academy's Distinctive & Valuable Marks are distinctive, famous,

3    venerable, valuable, and/or federally registered at the USPTO at the time

4    Defendant Greendomainmarket.com, registered, trafficked in and used the

5    Deceptive Domain(s).

6          100.   Defendant Greendomainmarket.com does not have any intellectual

7    property rights or any other rights in the Academy's Distinctive & Valuable Marks.

8          101.   The infringing Deceptive Domain does not consist of the legal name

9    of Defendant Greendomainmarket.com, or a name that is otherwise commonly

10   used to identify Defendant Greendomainmarket.com.

11         102.   Defendant Greendomainmarket.com has never made any prior use of

12   the infringing Deceptive Domain in connection with the bona fide offering of any

13   goods or services.

14         103.   Defendant Greendomainmarket.com registered, trafficked in and used

15   the infringing Deceptive Domain to divert consumers from the Academy's

16   websites to websites accessible from the infringing Deceptive Domain. Defendant

17   Greendomainmarket.com thereby created a likelihood of confusion as to the source

18   sponsorship, affiliation, or endorsement of the infringing Deceptive Domain

19   websites.

20         104.   Defendant Greendomainmarket.com has registered, used, and

21   trafficked in, the infringing Deceptive Domain which it knew was identical or

22   confusingly similar to the protected and Distinctive & Valuable Marks of the

23   Academy, which were distinctive at the time of the registration and continue to be

24   distinctive.

25         105.   Defendant Greendomainmarket.com's registration, trafficking in,

26   and/or use of the infringing Deceptive Domain constitutes cybersquatting in

27   violation of *15 U.S.C. § 1125(d)*.

28

COMPLAINT

## SEVENTH CLAIM FOR RELIEF

### (Violation of ACPA - Defendant BDS)

106.  Plaintiff realleges the preceding paragraphs as if fully set forth herein.

107.  This count is brought by the Academy against Defendant BDS.

108.  As alleged herein, Defendant BDS registered OSCARSEATON.COM, and used the infringing Deceptive Domain in violation of the ACPA, with bad faith intent to profit from the Academy's Distinctive & Valuable Marks.  Attached hereto as Exhibit 22 is a true and correct copy of the screenshot from this Deceptive Domain.

109.  Defendant BDS' acts as alleged herein constitute the registration, use of and trafficking in the infringing Deceptive Domain, in violation of the ACPA with bad faith intent to profit from the Academy's Distinctive & Valuable Marks.

110.  Defendant BDS' acts as alleged herein constitute cyberpiracy, cybersquatting, and/or typosquatting, in violation of the ACPA.

111.  The Academy's Distinctive & Valuable Marks are distinctive, famous, venerable, valuable, and or federally registered at the USPTO at the time Defendant BDS, registered, trafficked in and used the Deceptive Domain.

112.  Defendant BDS does not have any intellectual property rights or any other rights in the Academy's Distinctive & Valuable Marks.

113.  The infringing Deceptive Domain does consist of the legal name of Defendant BDS, or a name that is otherwise commonly used to identify Defendant BDS.

114.  Defendant BDS has never made any prior use of the infringing Deceptive Domain in connection with the bona fide offering of any goods or services.

115.  Defendant BDS registered, trafficked in and used the infringing

-31-

Deceptive Domain to divert consumers from the Academy's websites to websites accessible from the infringing Deceptive Domain. Defendant BDS thereby created a likelihood of confusion as to the source sponsorship, affiliation, or endorsement of the infringing Deceptive Domain websites.

116.   Defendant BDS has registered, used, and trafficked in, the infringing Deceptive Domain which it knew was identical or confusingly similar to the protected and Distinctive & Valuable Marks of the Academy, which were distinctive at the time of the registration and continue to be distinctive.

117.   Defendant BDS' registration, trafficking in, and/or use of the infringing Deceptive Domain constitutes cybersquatting in violation of *15 U.S.C. § 1125(d)*.

## EIGHTH CLAIM FOR RELIEF

### (Violation of ACPA - Defendant XP)

118.   Plaintiff realleges the preceding paragraphs as if fully set forth herein.

119.   This count is brought by the Academy against Defendant XP.

120.   As alleged herein, Defendant XP registered WEBACADEMYAWARDS.COM, and used the infringing Deceptive Domain in violation of the ACPA, with bad faith intent to profit from the Academy's Distinctive & Valuable Marks.  Attached hereto as Exhibit 23 is a true and correct copy of the screenshot from this Deceptive Domain.

121.   Defendant XP's acts as alleged herein constitute the registration, use of and trafficking in the infringing Deceptive Domain, in violation of the ACPA with bad faith intent to profit from the Academy's Distinctive & Valuable Marks.

122.   Defendant XP's acts as alleged herein constitute cyberpiracy, cybersquatting, and/or typosquatting, in violation of the ACPA.

-32-

123.   The Academy's Distinctive & Valuable Marks are distinctive, famous, venerable, valuable, and/or federally registered at the USPTO at the time Defendant XP, registered, trafficked in and used the Deceptive Domain.

124.   Defendant XP does not have any intellectual property rights or any other rights in the Academy's Distinctive & Valuable Marks.

125.   The infringing Deceptive Domain does not consist of the legal name of Defendant XP, or a name that is otherwise commonly used to identify Defendant XP.

126.   Defendant XP has never made any prior use of any of the infringing Deceptive Domain in connection with the bona fide offering of any goods or services.

127.   Defendant XP registered, trafficked in and used the infringing Deceptive Domain to divert consumers from the Academy's websites to websites accessible from the infringing Deceptive Domain. Defendant XP thereby created a likelihood of confusion as to the source sponsorship, affiliation, or endorsement of the infringing Deceptive Domain websites.

128.   Defendant XP has registered, used, and trafficked in, the infringing Deceptive Domain which it knew was identical or confusingly similar to the protected and Distinctive & Valuable Marks of the Academy, which were distinctive at the time of the registration and continue to be distinctive.

129.   Defendant XP's registration, trafficking in, and/or use of the infringing Deceptive Domain constitutes cybersquatting in violation of *15 U.S.C. § 1125(d).*

//

//

//

//

# NINTH CLAIM FOR RELIEF

## (Conspiracy)

## (Against All Defendants)

130.   Plaintiff realleges the preceding paragraphs as if fully set forth herein.

131.   This claim is brought by the Academy against all Defendants.

132.   GoDaddy conspired with the Registrant Defendants to unlawfully make money through their concerted action in registering, monetizing and sharing revenue from parked domains that infringe The Academy's Distinctive & Valuable Marks.

133.   Defendant GoDaddy and the Registrant Defendants engaged in acts in furtherance of their conspiracy, including but not limited to:

      a.   Registering the Deceptive Domains;

      b.   Parking said domains and utilizing the parked domain to display revenue generating advertisements (monetized parked domain); and

      c.   Sharing revenue generated from parked domains.

134.   Plaintiff has been damaged as a direct and proximate result of the Defendants' conduct as alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, the Academy prays for relief as follows:

a.   The Court enter a judgment that Defendants have violated the rights of the Academy in the Academy's Distinctive & Valuable Marks.

b.   The Court adjudge and decree that Defendants, their agents, representatives, employees, assigns and suppliers, and all persons acting in concert or privity with them, be preliminarily and permanently enjoined from the following

activities:

    1.    Registering, using, or trafficking in any manner, in any domain name that incorporates, in whole or in part, the Academy's Distinctive & Valuable Marks or any name, mark or designation confusingly similar thereto ("Deceptive Domains");

    2.    Using the Academy's Distinctive & Valuable Marks, or any other name, mark, designation or depiction in a manner that is likely to cause confusion regarding whether Defendant is affiliated or associated with or sponsored by Plaintiff;

    3.    Registering any domain name using an automated process that is intended to create (or which could result in the creation of) Deceptive Domains;

    4.    Engaging in typosquatting;

    5.    Engaging in cybersquatting;

    6.    Engaging in cyberpiracy;

    7.    Assisting, conspiring with, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to above.

    c.    The Court award  statutory damages under 15 U.S.C. § 1117(d), on election of Plaintiff, in an amount of One Hundred Thousand Dollars ($100,000.00) per domain name infringement; or alternatively the Court adjudge and decree that Defendants be ordered to account to Plaintiff and disgorge, all profits they have derived by reason of the infringing Deceptive Domains;

    d.    The Court adjudge and decree that Defendants be ordered to pay the Academy's reasonable attorney fees, prejudgment interest, and costs of this action;

    e.    That, with respect to state law claims,

    1. the Defendants be permanently enjoined and restrained from, in

1  any manner, directly or indirectly, continuing, maintaining, or engaging in the

2  unfair, unlawful, and/or deceptive practices alleged herein;

3         2. That Plaintiff be awarded full restitution of money Defendants

4  have unlawfully obtained, as well as compensatory damages and/or all other

5  available monetary and equitable remedies;

6         3. That Plaintiff be awarded both pre-and post-judgment interest at the

7  maximum allowable rate on any amounts awarded;

8         4. That Plaintiff recover its costs of suit, including reasonable

9  attorneys' fees as provided by law; and

10     f.    That Plaintiff be awarded such other and further relief as may be

11  necessary and appropriate.

12

13  Dated: May 18, 2010

14            BOIES, SCHILLER & FLEXNER LLP

15            FOOTE, MEYERS, MIELKE FLOWERS

16            LLC

17            LEE, TRAN & LIANG APLC

18            Counsel for Plaintiff Academy of Motion
          Picture Arts and Sciences

19

20

21

22

23

24

25

26

27

28

COMPLAINT

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Constitution of the United States, Plaintiff the Academy of Motion Picture Arts and Sciences demands a trial by jury for all issues so triable.

Dated: May 18, 2010

BOIES, SCHILLER & FLEXNER LLP

FOOTE, MEYERS, MIELKE FLOWERS LLC

LEE, TRAN & LIANG APLC

Counsel for Plaintiff Academy of Motion Picture Arts and Sciences

-37-

EXHIBIT 1

United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sat May 15 04:04:42 EDT 2010*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout   Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TARR Status | ASSIGN Status | TDR | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

### Typed Drawing

---

| | |
|---|---|
| **Word Mark** | ACADEMY AWARD |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Entertainment services, namely, an annual award program for presentation of awards in recognition of distinguished achievement in the motion picture industry; educational services, namely, providing incentives to persons to demonstrate excellence in the field of motion pictures through the issuance of awards. FIRST USE: 19290516. FIRST USE IN COMMERCE: 19530519 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 75450797 |
| **Filing Date** | March 16, 1998 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | February 23, 1999 |
| **Registration Number** | 2245965 |
| **Registration Date** | May 18, 1999 |
| **Owner** | (REGISTRANT) Academy of Motion Picture Arts and Sciences CORPORATION CALIFORNIA 8949 Wilshire Boulevard Beverly Hills CALIFORNIA 902111972 |
| **Attorney of Record** | Maureen Carroll |
| **Prior Registrations** | 1103859;1880473;1956313;AND OTHERS |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "AWARD" APART FROM THE MARK AS |

United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sat May 15 04:04:42 EDT 2010*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

[ Logout ]  Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TARR Status | ASSIGN Status | TDR | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

## Typed Drawing

| | |
|---|---|
| **Word Mark** | ACADEMY AWARD |
| **Goods and Services** | IC 041. US 100 101 107. G & S: Entertainment services, namely, an annual award program for presentation of awards in recognition of distinguished achievement in the motion picture industry; educational services, namely, providing incentives to persons to demonstrate excellence in the field of motion pictures through the issuance of awards. FIRST USE: 19290516. FIRST USE IN COMMERCE: 19530519 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 75450797 |
| **Filing Date** | March 16, 1998 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | February 23, 1999 |
| **Registration Number** | 2245965 |
| **Registration Date** | May 18, 1999 |
| **Owner** | (REGISTRANT) Academy of Motion Picture Arts and Sciences CORPORATION CALIFORNIA 8949 Wilshire Boulevard Beverly Hills CALIFORNIA 902111972 |
| **Attorney of Record** | Maureen Carroll |
| **Prior Registrations** | 1103859;1880473;1956313;AND OTHERS |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "AWARD" APART FROM THE MARK AS |

SHOWN

| | |
|---|---|
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL-2(F) |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20080922. |
| **Renewal** | 1ST RENEWAL 20080922 |
| **Live/Dead Indicator** | LIVE |

TESS HOME    NEW USER    STRUCTURED    FREE FORM    BROWSE DICT    SEARCH OG    TOP    HELP

| HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY |

# EXHIBIT 2

United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

# Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sat May 15 04:04:42 EDT 2010*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

**Logout**   Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TARR Status | ASSIGN Status | TDR | TTAB Status |   *( Use the "Back" button of the Internet Browser to return to TESS)*

### Typed Drawing

| | |
|---|---|
| **Word Mark** | ACADEMY AWARDS |
| **Goods and Services** | IC 016. US 038. G & S: BOOKS, PAMPHLETS, BROCHURES AND PRESS KITS ISSUED FROM TIME TO TIME. FIRST USE: 19280800. FIRST USE IN COMMERCE: 19280800 |
| | IC 041. US 107. G & S: EDUCATIONAL AND ENTERTAINMENT SERVICES RENDERED THROUGH THE MEDIUM OF AN ANNUAL LIVE, TELEVISION PROGRAM DEALING WITH MOTION PICTURES. FIRST USE: 19290516. FIRST USE IN COMMERCE: 19530319 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 73128830 |
| **Filing Date** | June 1, 1977 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Registration Number** | 1103859 |
| **Registration Date** | October 10, 1978 |
| **Owner** | (REGISTRANT) ACADEMY OF MOTION PICTURE ARTS AND SCIENCES CORPORATION CALIFORNIA 8949 WILSHIRE BLVD. BEVERLY HILLS CALIFORNIA 90211 |
| **Attorney of Record** | MAUREEN CARROLL |
| **Prior Registrations** | 1048964 |
| **Type of Mark** | TRADEMARK. SERVICE MARK |
| **Register** | PRINCIPAL |
| **Affidavit** | |

**Affidavit Text** SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20081011.

**Renewal** 2ND RENEWAL 20081011

**Live/Dead Indicator** LIVE

---

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP

---

| HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

EXHIBIT 3

United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sat May 15 04:04:42 EDT 2010*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout    Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TARR Status | ASSIGN Status | TDR | TTAB Status |    *( Use the "Back" button of the Internet Browser to return to TESS)*

### Typed Drawing

| | |
|---|---|
| **Word Mark** | ACADEMY AWARDS |
| **Goods and Services** | IC 009. US 021. G & S: pre-recorded video tapes featuring entertainment relating to motion pictures. FIRST USE: 19920201. FIRST USE IN COMMERCE: 19920201 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 74494848 |
| **Filing Date** | February 28, 1994 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | December 6, 1994 |
| **Registration Number** | 1880473 |
| **Registration Date** | February 28, 1995 |
| **Owner** | (REGISTRANT) Academy of Motion Picture Arts and Sciences CORPORATION CALIFORNIA 8949 Wilshire Boulevard Beverly Hills CALIFORNIA 90211 |
| **Attorney of Record** | DAVID A. PAYNE |
| **Prior Registrations** | 1103859 |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20040415. |
| **Renewal** | 1ST RENEWAL 20040415 |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |

| HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

EXHIBIT 4

United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

# Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sat May 15 04:04:42 EDT 2010*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout  Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TARR Status | ASSIGN Status | TDR | TTAB Status |  *( Use the "Back" button of the Internet Browser to return to TESS)*

## Typed Drawing

—

| | |
|---|---|
| **Word Mark** | ACADEMY AWARDS |
| **Goods and Services** | IC 025. US 022 039. G & S: sweatshirts; jackets; T-shirts; and, caps. FIRST USE: 19780000. FIRST USE IN COMMERCE: 19890400 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 74650050 |
| **Filing Date** | March 22, 1995 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | November 21, 1995 |
| **Registration Number** | **1956313** |
| **Registration Date** | February 13, 1996 |
| **Owner** | (REGISTRANT) ACADEMY OF MOTION PICTURE ARTS AND SCIENCES CORPORATION CALIFORNIA 8949 Wilshire Boulevard Beverly Hills CALIFORNIA 90211 |
| **Attorney of Record** | J. MITCHELL JONES |
| **Prior Registrations** | 1103959 |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20051130. |
| **Renewal** | 1ST RENEWAL 20051130 |
| **Live/Dead Indicator** | LIVE |

TESS HOME    NEW USER    STRUCTURED    FREE FORM    BROWSE DICT    SEARCH OG    TOP    HELP

| HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

EXHIBIT 5

United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sat May 15 04:04:42 EDT 2010*

**TESS HOME** | **NEW USER** | **STRUCTURED** | **FREE FORM** | **BROWSE DICT** | **SEARCH OG** | **BOTTOM** | **HELP**

Logout | Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

**TARR Status** | **ASSIGN Status** | **TDR** | **TTAB Status** | *( Use the "Back" button of the Internet Browser to return to TESS)*

## Typed Drawing

| | |
|---|---|
| **Word Mark** | OSCAR |
| **Goods and Services** | IC 041. US 100 101 107. G & S: ENTERTAINMENT AND EDUCATIONAL SERVICE-NAMELY, TELECASTS IN CONNECTION WITH THE RECOGNITION OF DISTINGUISHED ACHIEVEMENT IN THE MOTION PICTURE INDUSTRY; LIBRARY AND REFERENCE SERVICES; THEATRICAL EXHIBITIONS OF MOTION PICTURES. FIRST USE: 19740402. FIRST USE IN COMMERCE: 19740402 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 73047087 |
| **Filing Date** | March 19, 1975 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Registration Number** | 1096990 |
| **Registration Date** | July 18, 1978 |
| **Owner** | (REGISTRANT) ACADEMY OF MOTION PICTURE ARTS AND SCIENCES CORPORATION CALIFORNIA 8949 WILSHIRE BLVD BEVERLY HILLS CALIFORNIA 90211 |
| **Attorney of Record** | Thomas C. Howerton |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20080802. |
| **Renewal** | 2ND RENEWAL 20080802 |
| **Live/Dead** | |

**Live/Dead Indicator** LIVE

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

EXHIBIT 6

United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sat May 15 04:04:42 EDT 2010*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout   Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TARR Status | ASSIGN Status | TDR | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

### Typed Drawing

___

| Field | Value |
|---|---|
| **Word Mark** | OSCAR |
| **Goods and Services** | IC 016. US 038. G & S: BOOKS AND SUPPLEMENTS THERETO, PAMPHLETS, BROCHURES, DEALING WITH THE MOTION PICTURE INDUSTRY AND PERSONALITIES; PRESS KITS CONTAINING DETAILED INFORMATION AS TO BROADCASTS AND PRESENTATIONS OF AWARDS, INCLUDING CHRONOLOGICAL LIST OF EVENTS, PROGRAM FORMAT, PERSONALITIES INVOLVED, MOTION PICTURES INVOLVED AND OTHER ELEMENTS COMPRISING THE BROADCASTING OF MOTION PICTURE AWARDS. FIRST USE: 19741004. FIRST USE IN COMMERCE: 19741004 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 73041474 |
| **Filing Date** | January 10, 1975 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Registration Number** | 1118751 |
| **Registration Date** | May 22, 1979 |
| **Owner** | (REGISTRANT) ACADEMY OF MOTION PICTURES ARTS AND SCIENCES CORPORATION CALIFORNIA 8949 WILSHIRE BOULEVARD BEVERLY HILLS CALIFORNIA 90211 |
| **Attorney of Record** | Maureen Carroll |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20080825. |

**Renewal**    2ND RENEWAL 20080625

**Live/Dead Indicator**    LIVE

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |

| HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

EXHIBIT 7

United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sat May 15 04:04:42 EDT 2010*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout   Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TARR Status | ASSIGN Status | TDR | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

## Typed Drawing

| | |
|---|---|
| **Word Mark** | OSCAR |
| **Goods and Services** | IC 025. US 022 039. G & S: sweatshirts; jackets; T-shirts; and, caps. FIRST USE: 19890300. FIRST USE IN COMMERCE: 19890400 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 74650030 |
| **Filing Date** | March 22, 1995 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | June 4, 1996 |
| **Registration Number** | 1996585 |
| **Registration Date** | August 27, 1996 |
| **Owner** | (REGISTRANT) ACADEMY OF MOTION PICTURE ARTS AND SCIENCES CORPORATION CALIFORNIA 8949 Wilshire Boulevard Beverly Hills CALIFORNIA 90211 |
| **Attorney of Record** | J. MITCHELL JONES |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20060426. |
| **Renewal** | 1ST RENEWAL 20060426 |
| **Live/Dead Indicator** | LIVE |

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP

| HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

EXHIBIT 8

United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

# Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sat May 15 04:04:42 EDT 2010*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout   Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TARR Status | ASSIGN Status | TDR | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

### Typed Drawing

| | |
|---|---|
| **Word Mark** | OSCAR |
| **Goods and Services** | IC 009. US 021. G & S: prerecorded videotapes featuring entertainment relating to motion pictures and award ceremonies. FIRST USE: 19920201. FIRST USE IN COMMERCE: 19920201 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 74489503 |
| **Filing Date** | February 14, 1994 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | September 17, 1996 |
| **Registration Number** | **2021582** |
| **Registration Date** | December 10, 1996 |
| **Owner** | (REGISTRANT) Academy of Motion Picture Arts and Sciences CORPORATION CALIFORNIA 8949 Wilshire Boulevard Beverly Hills CALIFORNIA 90211 |
| **Attorney of Record** | J. Mitchell Jones |
| **Prior Registrations** | 1096699;1528890 |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20060413. |
| **Renewal** | 1ST RENEWAL 20060413 |

**Live/Dead
Indicator**          LIVE

**TESS HOME** | **NEW USER** | **STRUCTURED** | **FREE FORM** | **BROWSE DICT** | **SEARCH OG** | **TOP** | **HELP**

| HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

EXHIBIT 9

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

# Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sat May 15 04:04:42 EDT 2010*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout   Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TARR Status | ASSIGN Status | TDR | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

## Typed Drawing

| | |
|---|---|
| **Word Mark** | OSCARS |
| **Goods and Services** | IC 041. US 107. G & S: ENTERTAINMENT SERVICES, NAMELY, TELECASTS IN CONNECTION WITH THE RECOGNITION OF DISTINGUISHED ACHIEVEMENT IN THE MOTION PICTURE INDUSTRY. FIRST USE: 19870330. FIRST USE IN COMMERCE: 19870330 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 73741826 |
| **Filing Date** | July 25, 1988 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | December 13, 1988 |
| **Registration Number** | 1528890 |
| **Registration Date** | March 7, 1989 |
| **Owner** | (REGISTRANT) ACADEMY OF MOTION PICTURE ARTS AND SCIENCES CORPORATION CALIFORNIA 8949 WILSHIRE BOULEVARD BEVERLY HILLS CALIFORNIA 902111972 |
| **Attorney of Record** | Thomas C. Howerton |
| **Prior Registrations** | 1096990;1118751 |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Affidavit** | |

| | |
|---|---|
| **Affidavit Text** | |
| **Renewal** | 1ST RENEWAL 20080407 |
| **Live/Dead Indicator** | LIVE |

---

TESS HOME  NEW USER  STRUCTURED  FREE FORM  BROWSE DICT  SEARCH OG  TOP  HELP

---

| HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY

EXHIBIT 10

United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

# Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sat May 15 04:04:42 EDT 2010*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout   Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TARR Status | ASSIGN Status | TDR | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

### Typed Drawing

___

| | |
|---|---|
| **Word Mark** | OSCAR NIGHT |
| **Goods and Services** | IC 041. US 107. G & S: educational and entertainment services rendered through the medium of an annual live, televised program dealing with motion pictures. FIRST USE: 19870000. FIRST USE IN COMMERCE: 19870000 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 74483807 |
| **Filing Date** | January 28, 1994 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | October 22, 1996 |
| **Registration Number** | **2029445** |
| **Registration Date** | January 14, 1997 |
| **Owner** | (REGISTRANT) Academy of Motion Picture Arts and Sciences CORPORATION CALIFORNIA 8949 Wilshire Boulevard Beverly Hills CALIFORNIA 902111972 |
| **Attorney of Record** | J. MITCHELL JONES |
| **Prior Registrations** | 1096990 |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Affidavit** | |

| **Affidavit Text** | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20061025. |
| **Renewal** | 1ST RENEWAL 20061025 |
| **Live/Dead Indicator** | LIVE |

EXHIBIT 11

US 20080033822A1

(19) **United States**

(12) **Patent Application Publication**   (10) Pub. No.: US 2008/0033822 A1

Merdinger   (43) Pub. Date:   **Feb. 7, 2008**

(54) **SYSTEMS AND METHODS FOR FILTERING ONLINE ADVERTISEMENTS CONTAINING THIRD-PARTY TRADEMARKS**

(75) Inventor:   **Richard Merdinger**, Coralville, IA (US)

Correspondence Address:
**GO DADDY GROUP, INC.**
**14455 NORTH HAYDEN ROAD**
**SUITE 219**
**SCOTTSDALE, AZ 85260 (US)**

(73) Assignee:   **THE GO DADDY GROUP, INC.,** Scottsdale, AZ (US)

(21) Appl. No.:   **11/866,831**

(22) Filed:   **Oct. 3, 2007**

**Publication Classification**

(51) **Int. Cl.**
     *G06Q 30/00*   (2006.01)
(52) **U.S. Cl.** ................................................. 705/14

(57)   **ABSTRACT**

Systems and methods of the present invention allow for filtering online advertisements containing third-party trademarks. In an example embodiment, a webpage host may host a webpage that resolves from a domain name. A check trademark service may parse the domain name into a keyword that an advertising generator may use to generate an advertisement relevant to the keyword. Before the advertisement is generated, however, the check trademark service may download a list of registered trademarks from a trademark database into local storage and determine whether the subject keyword is trademarked by searching the downloaded list of trademarks for the keyword. If the keyword is present, the process may end. Otherwise, the advertising service may generate an advertisement for publication on the webpage. This process may be repeated if the domain name is parsed into more than one keyword.





FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5



FIG. 6



FIG. 7

Patent Application Publication    Feb. 7, 2008    Sheet 8 of 15        US 2008/0033822 A1



FIG. 8



FIG. 9



FIG. 10



FIG. 11

Case 2:10-cv-03738-AB-CW   Document 1   Filed 05/18/10   Page 82 of 134   Page ID #:82



FIG. 12



FIG. 13



FIG. 14

Case 2:10-cv-03738-AB-CW   Document 1   Filed 05/18/10   Page 85 of 134   Page ID #:85



FIG. 15

# SYSTEMS AND METHODS FOR FILTERING ONLINE ADVERTISEMENTS CONTAINING THIRD-PARTY TRADEMARKS

## FIELD OF THE INVENTION

[0001] The present inventions generally relate to the field of online advertising and, more specifically, systems and methods for filtering online advertisements containing third-party trademarks.

## BACKGROUND OF THE INVENTION

[0002] The Internet is a worldwide network of computers and computer networks arranged to allow the easy and robust exchange of information between computer users. Hundreds of millions of people around the world have access to computers connected to the Internet via Internet Service Providers (ISPs). Content providers place multimedia information (e.g., text, graphics, audio, video, animation, and other forms of data) at specific locations on the Internet referred to as websites. The combination of all the websites and their corresponding webpages on the Internet is generally known as the World Wide Web (WWW) or simply the Web.

[0003] Websites may be created using HyperText Markup Language (HTML) to generate a standard set of tags that define how the webpages for the website are to be displayed. Users of the Internet may access content providers' websites using software known as an Internet browser, such as MICROSOFT INTERNET EXPLORER or MOZILLA FIREFOX. After the browser has located the desired webpage, it requests and receives information from the webpage, typically in the form of an HTML document, and then displays the webpage content for the user. The user then may view other webpages at the same website or move to an entirely different website using the browser.

[0004] Browsers are able to locate specific websites because each website on the Internet has can be uniquely identified through the combination of an Internet Protocol (IP) address, a port, and/or a hostname. Each IP address is a 32 bit binary number, but is typically shown in dotted decimal notion (e.g., 192.145.68.112) to improve human readability. IP addresses, however, even in dotted decimal notation, are difficult for people to remember and use. A Uniform Resource Locator (URL) is much easier to remember and may be used to point to any computer, directory, or file on the Internet. A browser is able to access a website on the Internet through the use of a URL. The URL may include a Hypertext Transfer Protocol (HTTP) request combined with the website's Internet address, also known as the website's domain name. An example of a URL with a HTTP request and domain name is: http://www.companyname-.com. In this example, the "http" identifies the URL as a HTTP request and the "companyname.com" is the domain name.

[0005] Domain names are much easier to remember and use than their corresponding IP addresses. The Internet Corporation for Assigned Names and Numbers (ICANN) approves some Generic Top-Level Domains (gTLD) and delegates the responsibility to a particular organization (a "registry") for maintaining an authoritative source for the registered domain names within a TLD and their corresponding IP addresses. For certain TLDs (e.g., .biz, .info,

.name, and .org) the registry is also the authoritative source for contact information related to the domain name and is referred to as a "thick" registry. For other TLDs (e.g., .com and .net) only the domain name, registrar identification, and name server information is stored within the registry, and a registrar is the authoritative source for the contact information related to the domain name. Such registries are referred to as "thin" registries. Most gTLDs are organized through a central domain name Shared Registration System (SRS) based on their TLD.

[0006] The process for registering a domain name with .com, .net, .org, and some other TLDs allows an Internet user to use an ICANN-accredited registrar to register their domain name. For example, if an Internet user, John Doe, wishes to register the domain name "mycompany.com," John Doe may initially determine whether the desired domain name is available by contacting a domain name registrar. The Internet user may make this contact using the registrar's webpage and typing the desired domain name into a field on the registrar's webpage created for this purpose. Upon receiving the request from the Internet user, the registrar may ascertain whether "mycompany.com" has already been registered by checking the SRS database associated with the TLD of the domain name. The results of the search then may be displayed on the webpage to thereby notify the Internet user of the availability of the domain name. If the domain name is available, the Internet user may proceed with the registration process. Otherwise, the Internet user may keep selecting alternative domain names until an available domain name is found. Domain names are typically registered for a period of one to ten years with first rights to continually re-register the domain name.

[0007] Applicant has noticed that domain name registrants often post advertisements on webpages that resolve from their domain names (i.e., appear when the domain name is entered in a browser). Often these advertisements relate in some way to the registrant's domain name and include trademarks to which the registrant has no rights. For the foregoing reasons, there is a need for systems and methods for filtering online advertisements containing third-party trademarks.

## SUMMARY OF THE INVENTION

[0008] The limitations cited above and others are substantially overcome through the systems and methods disclosed herein, which allow for filtering online advertisements containing third-party trademarks.

[0009] In an example embodiment, a webpage host may host a webpage that resolves from a domain name. A check trademark service may parse the domain name into a keyword that an advertising generator may use to generate an advertisement relevant to the keyword. Before the advertisement is generated, however, the check trademark service may download a list of registered trademarks from a trademark database into local storage and determine whether the subject keyword is trademarked by searching the downloaded list of trademarks for the keyword. If the keyword is present, the process may end. Otherwise, the advertising service may generate an advertisement for publication on the webpage. This process may be repeated if the domain name is parsed into more than one keyword.

[0010] An exemplary system includes a webpage hosted by a webpage host; a trademark database having a plurality

of trademarks; a check trademark service to determine the absence of a keyword in said trademark database; an advertising generator generating an advertisement relevant to said keyword; an advertisement publisher publishing said advertisement on said webpage; and a network communicatively coupling said webpage host, said trademark database, said check trademark service, said advertising generator, and said advertising publisher.

[0011] An exemplary method of practicing the present invention may include the steps of receiving a keyword; searching a trademark database for said keyword; if said keyword is not found in said trademark database, generating an advertisement relevant to said keyword; and publishing said advertisement on a webpage. Among other things, the keyword could be a search term entered in a search engine, a parsed domain name, a parsed webpage content, or a parsed advertisement. The searching step may be accomplished by downloading a list of trademarks from a trademark database into local storage and searching the list for the keyword. The trademark databases to be searched may include USPTO databases (including TESS/TARR), databases maintained by any third party (e.g., individuals, entities companies, foreign nations, states, and/or the World Intellectual Property Organization (WIPO)), and/or a blacklist generated by a user. In addition to generating and publishing the advertisement locally, the advertisement may be received from—and/or published by—a third party advertising service.

[0012] The above features and advantages of the present invention will be better understood from the following detailed description taken in conjunction with the accompanying drawings.

## BRIEF DESCRIPTION OF THE DRAWINGS

[0013] FIG. 1 illustrates a possible embodiment of a system for filtering online advertisements containing third-party trademarks.

[0014] FIG. 2 illustrates a possible embodiment of a system for filtering online advertisements containing third-party trademarks.

[0015] FIG. 3 illustrates possible embodiments of a network.

[0016] FIG. 4 illustrates possible embodiments of a trademark database.

[0017] FIG. 5 illustrates a possible embodiment of a system for filtering online advertisements containing third-party trademarks.

[0018] FIG. 6 illustrates a possible embodiment of a system for filtering online advertisements containing third-party trademarks.

[0019] FIG. 7 illustrates possible embodiments of a keyword.

[0020] FIG. 8 is a flow diagram illustrating a possible embodiment of a method for filtering online advertisements containing third-party trademarks.

[0021] FIG. 9 is a flow diagram illustrating a possible embodiment of a method for filtering online advertisements containing third-party trademarks.

[0022] FIG. 10 is a flow diagram illustrating a possible embodiment of a method for filtering online advertisements containing third-party trademarks.

[0023] FIG. 11 is a flow diagram illustrating a possible embodiment of a method for filtering online advertisements containing third-party trademarks.

[0024] FIG. 12 is a flow diagram illustrating a possible embodiment of a method for filtering online advertisements containing third-party trademarks.

[0025] FIG. 13 is a flow diagram illustrating a possible embodiment of a method for filtering online advertisements containing third-party trademarks.

[0026] FIG. 14 is a flow diagram illustrating a possible embodiment of a method for filtering online advertisements containing third-party trademarks.

[0027] FIG. 15 is a flow diagram illustrating a possible embodiment of a method for filtering online advertisements containing third-party trademarks.

## DETAILED DESCRIPTION

[0028] The present inventions will now be discussed in detail with regard to the attached drawing figures which were briefly described above. In the following description, numerous specific details are set forth illustrating the Applicant's best mode for practicing the invention and enabling one of ordinary skill in the art to make and use the invention. It will be obvious, however, to one skilled in the art that the present invention may be practiced without many of these specific details. In other instances, well-known machines, structures, and method steps have not been described in particular detail in order to avoid unnecessarily obscuring the present invention. Unless otherwise indicated, like parts and method steps are referred to with like reference numerals.

[0029] After a customer registers a domain name, but before a fully-developed website is generated, he may post a temporary webpage that resolves from his domain name (i.e., appears when his domain name is entered in a browser). The temporary webpage may state "under construction," "'coming soon," "this domain was registered," "for sale," etc. These webpages are often provided to the customer by the registrar and may appear until such time that the customer replaces the temporary webpage with a functional website. Such temporary webpages without substantive content may be referred to as "parked" webpages, meaning the domain name is parked and awaiting further action (e.g., creating a website).

[0030] While the domain name is "parked," the domain name registrant may participate in a program that allows domain name registrants, registrars, and advertisers to jointly monetize the parked webpage by providing advertisements for the webpage. This practice is generally known as "domain parking," which works as follows. An advertising service (e.g., GOOGLE) maintains a database of advertisers who specify keywords that relate to their advertisements. The advertisers pay the advertising service for inclusion in the database. A registrar (e.g., GODADDY-.COM) may partner with the advertising service to provide advertising content on its customer's parked webpages. When Internet users access the parked webpage and click on

an advertisement, the advertising service pays the registrar a fee, which may be shared with the domain name registrant. This advertising model is known as "pay per click." Examples of such programs include GODADDY.COM CASHPARKING, GOOGLE ADSENSE AND ADWORDS, YAHOO! SEARCH MARKETING, and MICROSOFT ADCENTER. Usually, the domain owner and the registrar share in the profits paid by the advertising service based on how many links have been visited (e.g., pay per click) and on how beneficial those visits have been.

[0031] The parked webpage advertisements are often targeted to the predicted interests of Internet users who access the webpage. To accomplish this, the advertising service's advertisement generation software may parse the parked domain name into keywords, and generate content based upon those keywords. For example, if the domain name "greencelery.com" is parked, the temporary webpage may include advertisements and/or links for products or services related to the keywords "green" and/or "celery." Advertisers specify the keywords that should trigger their ads and bid on such keywords to obtain priority over competitors.

[0032] Individuals, companies, and other entities that provide content on the Web generally want to use their name or one of their trademarks as part of their domain names. Thus, domain names are often company trademarks, personal names, or short phrases concatenated with a top level domain name (TLD) extension (e.g., .com, .net, .org, .biz, .us, .cc, .ws, .de, etc.). The domain name "godaddy.com" is one such example. However, a registrant may register a domain name that incorporates a third parties' trademark (e.g., mygodaddy.com). Although the trademark owner may take legal action to recover ownership of such a domain name, often the trademark owner is unaware of the potentially infringing domain name. There will always be a period of time (before the trademark owner obtains legal relief) during which the potentially-infringing domain name is not under the trademark owner's control.

[0033] In such situations, an unscrupulous domain name registrant may attempt to financially gain from using the trademarked domain name. For example, he may sign up for one of the domain parking advertising methods discussed above. If the trademark owner is one of the advertisers partaking in the advertising program (many major products and services providers are), the trademark owner's advertisements and links may appear when an Internet user accesses the domain name registrant's parked webpage. Using the hypothetical example in the previous paragraph, if an Internet user accesses a parked webpage resolving from a domain name that includes a trademark (but is not owned or controlled by the trademark owner—such as www.my-godaddy.com), the trademark owner and legitimate business entity's (GODADDY.COM) advertisements and links may appear. Legitimate trademark owners may not want their trademarks, advertisements, links, and websites used in such a manner because it allows others to profit from their trademarks. Such practices also may add credence or an air of legitimacy to any products or services offered on the domain name registrant's webpage.

[0034] For these reasons, systems and methods for filtering online advertisements containing third-party trademarks are needed.

[0035] An example embodiment of a system for filtering online advertisements containing third-party trademarks is illustrated in FIG. 1. The illustrated embodiment includes a webpage 100 hosted by a webpage host 101; a trademark database 102 having a plurality of trademarks 103; a check trademark service 104 to determine the absence of a keyword 105 in said trademark database 102; an advertising generator 106 generating an advertisement 107 relevant to said keyword 105; an advertisement publisher 108 publishing said advertisement 107 on said webpage 100; and a network 109 communicatively coupling said webpage host 101, said trademark database 102, said check trademark service 104, said advertising generator 106, and said advertising publisher 108.

[0036] The embodiments illustrated herein place no limitation on network 109 configuration or connectivity. Thus, as non-limiting examples—and as illustrated in FIG. 3—the network 109 could comprise the Internet 301, an intranet 302, an extranet 303, a local area network 304, a wide area network 305, a wired network 306, a wireless network 307, a telephone network 308, or any combination thereof. The network 109 may utilize dedicated connections between the webpage host 101 and trademark database 102. As a non-limiting example, a hub service may be used to improve communications by attempting to keep open one or more secure connections, possibly via a Secure Socket Layer (SSL) connection. Alternatively, a connection admission control protocol may be use to limit, restrict, or otherwise govern such connections.

[0037] As non-limiting examples—and as illustrated in FIG. 7—the keyword 105 may be derived from a search term entered in a search engine 701, a parsed domain name 702, a parsed webpage content 703 (e.g., terms and/or images appearing on a webpage), or a parsed advertisement 704 (e.g., terms and/or images appearing in an advertisement). As is well known in the art, parsing is the process of analyzing a sequence of tokens to determine its grammatical structure with respect to a given formal grammar. Parsing transforms input text into a data structure, a keyword here. With the instant inventions, text may be parsed using any parsing methodology known in the art including, but not limited to, top-down parsing and/or bottom-up parsing. The parsing process also may include glyph or character substitution (i.e., identifying typographically improper characters and substituting characters that result in potentially-meaningful keywords). For example, the parsing process may replace the "0" in the domain name, "g0daddy.com" with an "o," resulting in more effective keyword parsing because "go" is more likely a valid keyword than "g0."

[0038] The webpage host 101 may comprise any entity that hosts a webpage including, but not limited to, a domain name registrar, registry, or reseller, a hosting service provider, an internet service provider, an advertising service, a search entity (including, but not limited to, any entity offering Internet, intranet, website, local or wide-area search engine functionality), a server, and/or a client.

[0039] The trademark database 102 may comprise any collection of data that includes a plurality of trademarks 103, which may be registered trademarks, unregistered trademarks, common-law trademarks, valid and enforceable trademarks, and/or invalid and unenforceable trademarks. The trademark database 102 need not be a complete collection of registered trademarks to function within the purview of the present invention. As illustrated in FIG. 4, the

4

trademark database 102 may comprise data maintained by the USPTO 401, the USPTO TESS database 402, the USPTO TARR database 403, a collection of data maintained by a third party 404, and/or a trademark database maintained by a third party 405. Such third parties may include individuals, entities companies, foreign nations, states, and/or the World Intellectual Property Organization (WIPO). The trademark database 102 also may comprise a blacklist 406 including trademarks determined to be precluded from use in online advertising. A system user may manually manage the blacklist 406 by adding or deleting trademarks. Alternatively, the system may automatically update the blacklist 406 by adding trademarks to the blacklist 406 that have been otherwise filtered from use (e.g., found in the trademark database 102).

[0040]   Structurally, the trademark database 102 may comprise any collection of data. As non-limiting examples, the trademark database 102 may comprise a local database, online database, desktop database, server-side database, relational database, hierarchical database, network database, object database, object-relational database, associative database, concept-oriented database, entity-attribute-value database, multi-dimensional database, semi-structured database, star schema database, XML database, file, collection of files, spreadsheet, and/or other means of data storage located on a computer, client, server, or other storage device.

[0041]   The check trademark service 104 may comprise search software that determines if at least one keyword 105 is present in the trademark database 102. This search may be accomplished by any data search mechanism known in the art including, but not limited to, desktop, network, or online search engines and may utilize, among others, uninformed, list, tree, graph, SQL, tradeoff based, informed, adversarial, constraint satisfaction, string, genetic, sorting, probabilistic, tabu, federated, minimax, and/or ternary search algorithms. The check trademark service 104 may, via the network 109, directly access the trademark database 102 and search for the keyword 105.

[0042]   The advertisement generator 106 then may—for each keyword 105 not found in the trademark database 102—generate an advertisement 107 relevant to the keyword 105 and, via an advertisement publisher 108, return the advertisement 107 to the webpage host 101 for publication on the webpage 100. The advertisement publisher 108 may comprise any means of publishing an advertisement known in the art including, but not limited to, computer-implemented software for posting data on a website. The advertisement 107 may comprise any form of online advertising including, but not limited to, text, graphics, video, and/or audio data. The advertisement 107 also could comprise a hyperlink to another website, another website, and/or both. Among other types, the advertisement 107 may be a pop-up, pop-under, banner, contextual, targeted, and/or focused ad that relates in some manner to the keyword 105. For example, if greencelery.com is the subject domain name, it may be parsed into the keywords "green" and/or "celery." The advertisement generator 106 then may generate advertisements and/or links for products or services related to the keywords "green" and/or "celery," such as advertisements for a farm stand, produce distributor, or a store having a sale on green paint. The advertisement generator 106 may comprise a third party advertisement generating service such as GOOGLE ADSENSE AND ADWORDS, YAHOO!

SEARCH MARKETING, or MICROSOFT ADCENTER or it may be a proprietary service. The advertisement 107 may be published by the advertising publisher 108 on a webpage 100 hosted by the webpage host 101 or any other webpage.

[0043]   Another example embodiment of a system for filtering online advertisements containing third-party trademarks is illustrated in FIG. 2. The illustrated embodiment includes a webpage 100 hosted by a webpage host 101; a trademark database 102 having a plurality of trademarks 103; a check trademark service 104 to determine the absence of a keyword 105 in said trademark database 102; an advertising generator 106 generating an advertisement 107 relevant to said keyword 105; an advertisement publisher 108 publishing said advertisement 107 on said webpage 100; and a network 109 communicatively coupling said webpage host 101, said trademark database 102, said check trademark service 104, said advertising generator 106, and said advertising publisher 108. As illustrated in this example embodiment, the check trademark service 102 may utilize a data transfer service 204 to download a plurality of data from the trademark database 102 (that may include the plurality of trademarks 103 and/or additional data) to a storage area 203 located within the check trademark service (e.g., a client or server's hard drive or other storage media).

[0044]   The data transfer service 204 may communicate with the trademark database 102 via the network 109 and may utilize any method of transferring data known in the art. Such methods can generally be classified in two categories: (1) "pull-based" data transfers where the receiver initiates a data transmission request; and (2) "push-based" data transfers where the sender initiates a data transmission request. Both types are expressly included in the Applicant's intended definition of "data transfer service 204," which also may include transparent data transfers over network file systems, explicit file transfers from dedicated file-transfer services like FTP or HTTP, distributed file transfers over peer-to-peer networks, file transfers over instant messaging systems, file transfers between computers and peripheral devices, and/or file transfers over direct modem or serial (null modem) links, such as XMODEM, YMODEM and ZMODEM. Data streaming technology also may be used to effectuate data transfer. A data stream may be, for example, a sequence of digitally encoded coherent signals (packets of data) used to transmit or receive information that is in transmission. Any data transfer protocol known to those skilled in the art may be used including, but not limited to: (1) those used with TCP/IP (e.g., FTAM, FTP, HTTP, RCP, SFTP, SCP, or FASTCopy); (2) those used with UDP (e.g., TFTP, FSP, UFTP, or MFTP); (3) those used with direct modem connections; (4) HTTP streaming; (5) Tubular Data Stream Protocol (TDSP); (6) Stream Control Transmission Protocol (SCTP); and/or (7) Real Time Streaming Protocol (RTSP).

[0045]   A data search service 205 may perform the keyword search locally, perhaps using the search techniques discussed above. Prior to searching, the downloaded data may be optimized for improved searchability. Such optimization may be accomplished by parsing the downloaded data to extract the trademarks, which may be stored in the storage area 203. Searches conducted on the optimized file may be accomplished faster than searching the entire trademark database 102. Such searches are also faster since they occur locally, rather than distally though the network 109. The

check trademark service 104 also may be conducted by a third party that returns search results to the webpage host 101 and/or advertisement generator 106, possibly via the network 109.

[0046] A streamlined example embodiment of a system for filtering online advertisements containing third-party trademarks is illustrated in FIG. 5. The illustrated embodiment includes a trademark database 102; means for receiving a keyword 500; means for searching a trademark database for said keyword 501; means for generating an advertisement relevant to said keyword if said keyword is not found in said trademark database 502; and means for publishing said advertisement on a webpage 503.

[0047] A more detailed example embodiment of a system for filtering online advertisements containing third-party trademarks is illustrated in FIG. 6. The illustrated embodiment includes a trademark database 102 having a plurality of trademarks 103; means for receiving a keyword 500; means for searching a trademark database for said keyword 501; means for generating an advertisement relevant to said keyword 502 (if said keyword is not found in said trademark database); and means for publishing 503 said advertisement on a webpage 503. The means for searching the trademark database 501 may comprise means 602 for downloading data from the trademark database 102, means 603 for storing the data, and means 604 for searching the data for a keyword 105.

[0048] As non-limiting examples, the means for receiving a keyword 500 may comprise deriving a keyword 105 from a search term entered in a search engine 701, parsing a domain name 702, parsing webpage content 703 (e.g., terms and/or images appearing on a webpage), parsing an advertisement 704 (e.g., terms and/or images appearing in an advertisement), and/or parsing any data into keywords. As is well known in the art, parsing is the process of analyzing a sequence of tokens to determine its grammatical structure with respect to a given formal grammar. Parsing transforms input text into a data structure, a keyword here. With the instant inventions, text may be parsed using any parsing methodology known in the art including, but not limited to, top-down parsing and/or bottom-up parsing. The parsing process also may include glyph or character substitution (i.e., identifying typographically improper characters and substituting characters that result in potentially-meaningful keywords). For example, the parsing process may replace the "0" in the domain name, "g0daddy.com" with an "o," resulting in more effective keyword parsing because "go" is more likely a valid keyword than "g0."

[0049] The means for searching the trademark database 501 may comprise search software that determines if at least one keyword 105 is absent in the trademark database 102. This search may be accomplished by any data search mechanism known in the art including, but not limited to, desktop, network, or online search engines and may utilize, among others, uninformed, list, tree, graph, SQL, tradeoff based, informed, adversarial, constraint satisfaction, string, genetic, sorting, probabilistic, tabu, federated, minimax, and/or ternary search algorithms. The means for searching the trademark database 501 may, via a network 109, directly access the trademark database 102 and search for the keyword 105.

[0050] Alternatively, the means for searching the trademark database 501 may utilize means 602 for downloading

data from the trademark database 102 to a means for storing data 603 (e.g., a client or server's hard drive, magnetic drive, temporary memory, flash memory, or other storage media) located within the means for searching the trademark database 501. The means 602 for downloading may utilize any method of transferring data known in the art. Such methods can generally be classified in two categories: (1) "pull-based" data transfers where the receiver initiates a data transmission request; and (2) "push-based" data transfers where the sender initiates a data transmission request. Both types are expressly included in the Applicant's intended definition of "data transfer service 204," which also may include transparent data transfers over network file systems, explicit file transfers from dedicated file-transfer services like FTP or HTTP, distributed file transfers over peer-to-peer networks, file transfers over instant messaging systems, file transfers between computers and peripheral devices, and/or file transfers over direct modem or serial (null modem) links, such as XMODEM, YMODEM and ZMODEM. Data streaming technology also may be used to effectuate data transfer. A data stream may be, for example, a sequence of digitally encoded coherent signals (packets of data) used to transmit or receive information that is in transmission. Any data transfer protocol known to those skilled in the art may be used including, but not limited to: (1) those used with TCP/IP (e.g., FTAM, FTP, HTTP, RCP, SFTP, SCP, or FASTCopy); (2) those used with UDP (e.g., TFTP, FSP, UFTP, or MFTP); (3) those used with direct modem connections; (4) HTTP streaming; (5) Tubular Data Stream Protocol (TDSP); (6) Stream Control Transmission Protocol (SCTP); and/or (7) Real Time Streaming Protocol (RTSP).

[0051] A means for searching the downloaded data 604 then may perform the keyword 105 search locally, perhaps using the search techniques discussed in detail above. Prior to searching, the downloaded data may be optimized for improved searchability. Such optimization may be accomplished by parsing the downloaded data to extract the trademarks, which may be stored in a separate file in the storage means 603. Searches conducted on the optimized file may be accomplished faster than searching the entire trademark database 102. Such searches are also faster since they occur locally, rather than distally though a network 109. The means for searching 501 also may be conducted by a third party that conducts the search and returns search results, perhaps to the means for generating an advertisement 502, possibly via a network 109.

[0052] The means for generating an advertisement 502 may generate an advertisement 107 relevant to the keyword 105 if the keyword 105 is not found in said trademark database 102. The means for generating an advertisement 502 may scan the text of a webpage for keywords, obtain keywords from a search engine, or parse a domain name into keywords, and return an advertisement 107 to the webpage 100 that is relevant to the keyword 105. Among other types, the advertisement 107 may be a pop-up, pop-under, banner, contextual, targeted, and/or focused ad that relates in some manner to the keyword 105. For example, if greencelery-.com is the subject domain name, it may be parsed into the keywords "green" and/or "celery." The means for generating an advertisement 502 then may generate advertisements and/or links for products or services related to the keywords "green" and/or "celery," such as an advertisement for a farm stand, produce distributor, or a store having a sale on green paint. The means for generating an advertisement 502 may

US 2008/0033822 A1

Feb. 7, 2008

6

comprise a third party, possibly an advertisement generating service such as GOOGLE ADSENSE AND ADWORDS, YAHOO! SEARCH MARKETING, or MICROSOFT ADCENTER or it may be a proprietary service. The advertisement 108 may be published by the means for publishing an advertisement 503 on a webpage 100 or any other advertising media.

[0053] Alternatively, the keyword filtering function may be performed after the means for generating an advertisement 502 generates an advertisement 107. This embodiment, which may incorporate any of the structures described above, may be particularly beneficial to any entity that subscribes to a third party advertising generation service, such as GOOGLE ADSENSE AND ADWORDS, YAHOO! SEARCH MARKETING, or MICROSOFT ADCENTER. This structure allows for the filtering of an incoming advertisement 107 that may or may not include a third-party trademark after the advertisement 107 is generated. With this embodiment, the searching means 501 may scan the text of the advertisement 107 for a keyword 105 that needs to be checked against the trademark database 102.

[0054] Several different methods may be used for filtering online advertisements containing third-party trademarks. In an example embodiment illustrated in FIG. 8, a keyword 105 may be received (Step 800). This embodiment places no limitations on the source of the keyword 105. As non-limiting examples—and as illustrated in FIG. 7—the keyword 105 may be derived from a search term entered in a search engine 701, parsing a domain name 702, parsing webpage content 703 (e.g., terms and/or images appearing on a webpage), or a parsing an advertisement 704 (e.g., terms and/or images appearing in an advertisement). As is well known in the art, parsing is the process of analyzing a sequence of tokens to determine its grammatical structure with respect to a given formal grammar. Parsing transforms input text into a data structure, a keyword here. With the instant inventions, text may be parsed using any parsing methodology known in the art including, but not limited to, top-down parsing and/or bottom-up parsing. The parsing process also may include glyph or character substitution (i.e., identifying typographically improper characters and substituting characters that result in potentially-meaningful keywords). For example, the parsing process may replace the "0" in the domain name, "g0daddy.com" with an "o," resulting in more effective keyword parsing because "go" is more likely a valid keyword than "g0."

[0055] A trademark database 102 then may be searched for the keyword (Step 801). This search may be accomplished via a dedicated connection to the trademark database 102. As a non-limiting example, a hub service may be used to improve communications by attempting to keep open one or more secure connections, possibly via a Secure Socket Layer (SSL) connection. A connection admission control protocol may also be used to limit, restrict, or otherwise govern such connections. An advertisement 107 then may be generated relevant to the keyword 105 if the keyword 105 is not found in the trademark database 102 (Step 802). The advertisement 107 then may be published on a webpage 100 (Step 803).

[0056] Another example embodiment of a method for filtering online advertisements containing third-party trademarks is illustrated in FIG. 9. In this example embodiment,

a keyword 105 may be received (Step 800) and a trademark database 102 then may be searched for the keyword 105 (Step 801). An advertisement 107 then may be generated relevant to the keyword 105 if the keyword 105 is not found in the trademark database 102 (Step 802). In this embodiment, the advertisement 107 may be generated by transmitting the keyword 105 to a third-party advertising service, such as GOOGLE ADSENSE AND ADWORDS, YAHOO! SEARCH MARKETING, or MICROSOFT ADCENTER (Step 901). An advertisement 107 is then received back from the advertisement service (Step 902) and published on a webpage 100 (Step 803).

[0057] Another embodiment of a method for filtering online advertisements containing third-party trademarks is illustrated in FIG. 10. In this embodiment, which re-filters an advertisement 107 once generated, a keyword 105 is received (Step 800) and a trademark database 102 is searched for the keyword 105 (Step 801). An advertisement 107 is then generated relevant to the keyword 105 if the keyword 105 is not found in the trademark database 102 (Step 802). The advertisement 107 is then parsed into a plurality of keywords (Step 1001) perhaps using the parsing techniques discussed elsewhere in this application. The plurality of keywords may be generated from the content of the advertisement 107 (e.g., terms, links, and/or images appearing in the advertisement). The trademark database 102 is then searched for each of the plurality of keywords (Step 1002). If none of the plurality of keywords are found in the trademark database 102, the advertisement 107 is published on a webpage 100 (Step 803). The second filtering step addresses the contingency that an advertisement 107 containing a third-party trademark may be generated from a trademark-filtered keyword. For example, using the generic keyword "truck" may result in advertisements for a trademarked manufacturer's name, such as FORD or CHEVRO-LET. The instant embodiment reduces this possibility.

[0058] In another embodiment illustrated in FIG. 11, a keyword 105 may be received (Step 800). A network 109 then may be searched for content relevant to the keyword 105 (Step 1101). The embodiments illustrated herein place no limitation on network 109 configuration or connectivity. Thus, as non-limiting examples—and as illustrated in FIG. 3—the network 109 could comprise the Internet 301, an intranet 302, an extranet 303, a local area network 304, a wide area network 305, a wired network 306, a wireless network 307, a telephone network 308, or any combination thereof. The network 109 may be searched with any search engine known in the art and may use any of the search methodologies discussed above. The relevant content then may be published (Step 1102), perhaps via hyperlinks on a webpage 100. Concurrent with the above-described network content search, a trademark database 102 also may be searched for the keyword (Step 801). An advertisement 107 then may be generated relevant to the keyword 105 if the keyword 105 is not found in the trademark database 102 (Step 802). It then may be published on the webpage 100 (Step 803) along with the above described content.

[0059] FIGS. 12 through 15 illustrate methods for filtering online advertisements containing third-party trademarks wherein the initial keyword filtering function is performed after an advertisement 107 is generated. These embodiments, which may incorporate many of the steps described

7

above, may be particularly beneficial to any entity that subscribes to a third party advertising generation service, such as GOOGLE ADSENSE AND ADWORDS, YAHOO! SEARCH MARKETING, or MICROSOFT ADCENTER. These methods allow for the filtering of an incoming advertisement **107** that may or may not include a third-party trademark. With these embodiments, the text of the advertisement **107** may be scanned for a keyword **107** that needs to be checked against the trademark database **102**.

[0060] In an example embodiment illustrated in FIG. **12**, a keyword **105** may be received (Step **800**). This embodiment places no limitations on the source of the keyword **105**. As non-limiting examples—and as illustrated in FIG. **7**—the keyword **105** may be derived from a search term entered in a search engine **701**, parsing a domain name **702**, parsing webpage content **703** (e.g., terms and/or images appearing on a webpage), or a parsing an advertisement **704** (e.g., terms and/or images appearing in an advertisement). As is well known in the art, parsing is the process of analyzing a sequence of tokens to determine its grammatical structure with respect to a given formal grammar. Parsing transforms input text into a data structure, a keyword here. With the instant inventions, text may be parsed using any parsing methodology known in the art including, but not limited to, top-down parsing and/or bottom-up parsing. The parsing process also may include glyph or character substitution (i.e., identifying typographically improper characters and substituting characters that result in potentially-meaningful keywords). For example, the parsing process may replace the "0" in the domain name, "g0daddy.com" with an "o," resulting in more effective keyword parsing because "go" is more likely a valid keyword than "g0."

[0061] An advertisement **107** then may be generated relevant to the keyword **105** (Step **802**). A trademark database **102** then may be searched for the keyword **105** (Step **801**). This search may be accomplished via a dedicated connection to the trademark database **102**. As a non-limiting example, a hub service may be used to improve communications by attempting to keep open one or more secure connections, possibly via a Secure Socket Layer (SSL) connection. A connection admission control protocol may also be used to limit, restrict, or otherwise govern such connections. If the keyword **105** is not found in the trademark database **102**, the advertisement **107** then may be published on a webpage **100** (Step **803**).

[0062] Another example embodiment of a method for filtering online advertisements containing third-party trademarks is illustrated in FIG. **13**. In this example embodiment, a keyword **105** may be received (Step **800**). An advertisement **107** then may be generated relevant to the keyword **105** (Step **802**). A trademark database **102** then may be searched for the keyword **105** (Step **801**). If the keyword **105** is not found in the trademark database **102**, the advertisement **107** then may be published on a webpage **100** (Step **803**). In this embodiment, the advertisement **107** may be generated by transmitting the keyword **105** to a third-party advertising service, such as GOOGLE ADSENSE AND ADWORDS, YAHOO! SEARCH MARKETING, or MICROSOFT ADCENTER (Step **901**). An advertisement **107** then may be received back from the advertisement service (Step **902**) and published on a webpage **100** (Step **803**).

[0063] Another embodiment of a method for filtering online advertisements containing third-party trademarks is

illustrated in FIG. **14**. In this embodiment, which filters an advertisement **107** once generated, a keyword **105** is received (Step **800**). An advertisement **107** is then generated relevant to the keyword **105**. The advertisement **107** is then parsed into a plurality of keywords (Step **1001**) perhaps using the parsing techniques discussed elsewhere in this application. The plurality of keywords may be generated from the content of the advertisement **107** (e.g., terms, links, and/or images appearing in the advertisement). The trademark database **102** is then searched for each of the plurality of keywords (Step **1002**). If none of the plurality of keywords are found in the trademark database **102**, the trademark database **102** then may be searched for the keyword **105** originally received in Step **800** (Step **801**). If the keyword is not found in the trademark database, the advertisement **107** is published on a webpage **100** (Step **803**).

[0064] In another embodiment illustrated in FIG. **15**, a keyword **105** may be received (Step **800**). A network **109** then may be searched for content relevant to the keyword **105** (Step **1101**). The embodiments illustrated herein place no limitation on network **109** configuration or connectivity. Thus, as non-limiting examples—and as illustrated in FIG. **3**—the network **109** could comprise the Internet **301**, an intranet **302**, an extranet **303**, a local area network **304**, a wide area network **305**, a wired network **306**, a wireless network **307**, a telephone network **308**, or any combination thereof. The network **109** may be searched with any search engine known in the art and may use any of the search methodologies discussed above. The relevant content then may be published (Step **1102**), perhaps via hyperlinks on a webpage **100**. Concurrent with the above-described network content search, an advertisement **107** then may be generated relevant to the keyword **105**. (Step **802**). A trademark database **102** then may be searched for the keyword **105** (Step **801**). If the keyword **105** is not found in the trademark database **102** (Step **802**), the advertisement **107** then may be published on the webpage **100** (Step **803**) along with the above described content.

[0065] In yet another example embodiment, a customer may register a domain name with a registrar (the webpage host **101**). Before the customer develops a fully-functional website, he may participate in his registrar's "domain parking" program to monetize his domain name, such as GODADDY.COM's CASHPARKING service. The registrar, who may partner with a third party advertising service (e.g., GOOGLE ADSENSE/ADWORDS) to provide advertising content, then may provide the customer with a "parked" webpage **100** to which his domain name may resolve. The trademark filter then may receive a keyword **105** from the registrar (Step **800**). The keyword **105** may have been generated by parsing the customer's domain name. The registrar then may search its internally-stored plurality of data downloaded from the USPTO to determine whether the keyword **105** is absent from the USPTO' TESS **402** or TARR **403** trademark databases, for example. If the keyword **105** is not found, it then may be transmitted to an advertising service (Step **901**). The advertising service then may generate an advertisement **107** relevant to the keyword **105** (Step **802**) by searching its internal inventory of advertisers for appropriate advertisements. The advertising service then may return the advertisement **107** to the registrar (Step **902**). To further reduce the probability that the generated advertisement **107** does not contain trademarks, the registrar then may re-filter the advertisement **107** by generating additional

keywords from the advertisement's **107** content by parsing the advertisement **107** into a plurality of keywords (Step **1001**). The registrar then may re-search its internally-stored plurality of data downloaded from the USPTO to determine whether any of the plurality keywords are present in the USPTO' TESS **402** or TARR **403** trademark database, for example. If none are found, the advertisement **107** relevant to the keyword **105** may be published on the customer's "parked" webpage **100** (Step **803**). When Internet traffic clicks on the advertisement **107**, the advertising service may pay a fee shared by the registrar and the customer.

[0066] Other embodiments and uses of this invention will be apparent to those having ordinary skill in the art upon consideration of the specification and practice of the invention disclosed herein. The specification and examples given should be considered exemplary only, and it is contemplated that the appended claims will cover any other such embodiments or modifications as fall within the true scope of the invention.

[0067] The Abstract accompanying this specification is provided to enable the United States Patent and Trademark Office and the public generally to determine quickly from a cursory inspection the nature and gist of the technical disclosure and in no way intended for defining, determining, or limiting the present invention or any of its embodiments.

The invention claimed is:

1. A system for filtering online advertisements containing third-party trademarks, comprising:

   a) a webpage hosted by a webpage host;

   b) a trademark database having a plurality of trademarks;

   c) a check trademark service to determine the absence of a keyword in said trademark database;

   d) an advertising generator generating an advertisement relevant to said keyword; and

   e) an advertisement publisher publishing said advertisement on said webpage,

   f) a network communicatively coupling said webpage host, said trademark database, said check trademark service, said advertising generator, and said advertising publisher.

2. The system of claim 1, wherein said keyword comprises a search term entered in a search engine, a parsed domain name, a parsed webpage content, or a parsed advertisement.

3. The system of claim 1, wherein said trademark database further comprises a collection of data maintained by the USPTO, the USPTO TESS database, the USPTO TARR database, a collection of data maintained by a third party, a trademark database maintained by a third party, a blacklist, or any combination thereof.

4. The system of claim 1, wherein said network comprises the Internet, an intranet, an extranet, a local-area network, a wide-area network, a wired network, a wireless network, a telephone network, or any combination thereof.

5. The system of claim 1, wherein said check trademark service further comprises:

   i) a storage area;

   ii) a data transfer service for downloading a plurality of data from said trademark database to said storage area; and

   iii) a data search service to determine the absence of said keyword in said storage area.

6. The system of claim 3, wherein said plurality of trademarks has been optimized for searching for the presence of keywords.

7. A system for filtering online advertisements containing third-party trademarks, comprising:

   a) means for receiving a keyword;

   b) means for searching a trademark database for said keyword;

   c) means for generating an advertisement relevant to said keyword if said keyword is not found in said trademark database; and

   d) means for publishing said advertisement on a webpage.

8. The system of claim 7, wherein said keyword comprises a search term entered in a search engine, a parsed domain name, a parsed webpage content, or a parsed advertisement.

9. The system of claim 7, wherein said trademark database comprises a collection of data maintained by the USPTO, the USPTO TESS database, the USPTO TARR database, a collection of data maintained by a third party, a trademark database maintained by a third party, a blacklist, or any combination thereof.

10. The system of claim 7, wherein said network comprises the Internet, an intranet, an extranet, a local-area network, a wide-area network, a wired network, a wireless network, a telephone network, or any combination thereof.

11. The system of claim 7, wherein said means for searching a trademark database further comprises:

   i) means for downloading a plurality of data from said trademark database;

   ii) means for storing said plurality of data; and

   iii) means for searching said plurality of data for said keyword.

12. The system of claim 7, wherein said plurality of data has been optimized for searching for the presence of keywords.

13. A method for filtering online advertisements containing third-party trademarks, comprising the steps of:

   a) receiving a keyword;

   b) searching a trademark database for said keyword;

   c) if said keyword is not found in said trademark database, generating an advertisement relevant to said keyword; and

   d) publishing said advertisement on a webpage.

14. The method of claim 13, wherein said keyword comprises a search term entered in a search engine, a parsed domain name, a parsed webpage content, or a parsed advertisement.

US 2008/0033822 A1

9

Feb. 7, 2008

**15.** The method of claim 13, wherein said trademark database comprises a collection of data maintained by the USPTO, the USPTO TESS database, the USPTO TARR database, a collection of data maintained by a third party, a trademark database maintained by a third party, a blacklist, or any combination thereof.

**16.** The method of claim 13, wherein said generating an advertisement step further comprises the steps of:

i) transmitting said keyword to an advertising service; and

ii) receiving said advertisement from said advertising service.

**17.** A method of claim 13, further comprising the steps of, prior to step d):

i) parsing said advertisement into a plurality of keywords;

ii) searching said trademark database for each of said plurality of keywords; and

iii) if none of said plurality of keywords are found in said trademark database, proceeding to step d).

**18.** The method of claim 13, further comprising the steps of, subsequent to step a):

i) searching a network for a plurality of content relevant to said keyword, said network comprising the Internet, an intranet, an extranet, a local-area network, a wide-area network, a wired network, a wireless network, a telephone network, or any combination thereof; and

ii) publishing said plurality of content on a webpage.

**19.** A method for filtering online advertisements containing third-party trademarks, comprising the steps of:

a) receiving a keyword;

b) generating an advertisement relevant to said keyword;

c) searching a trademark database for said keyword; and

d) if said keyword is not found in said trademark database, publishing said advertisement on a webpage.

**20.** The method of claim 19, wherein said keyword comprises a search term entered in a search engine, a parsed domain name, a parsed webpage content, or a parsed advertisement.

**21.** The method of claim 19, wherein said generating an advertisement step further comprises the steps of:

i) transmitting said keyword to an advertising service; and

ii) receiving said advertisement from said advertising service.

**22.** The method of claim 19, wherein said trademark database comprises a collection of data maintained by the USPTO, the USPTO TESS database, the USPTO TARR database, a collection of data maintained by a third party, a trademark database maintained by a third party, a blacklist, or any combination thereof.

**23.** A method of claim 19, further comprising the steps of, prior to step c):

i) parsing said advertisement into a plurality of keywords;

ii) searching a trademark database for each of said plurality of keywords; and

iii) if none of said plurality of keywords are found in said trademark database, proceeding to step c).

**24.** The method of claim 19, further comprising the steps of, subsequent to step a):

i) searching a network for a plurality of content relevant to said keyword, said network comprising the Internet, an intranet, an extranet, a local-area network, a wide-area network, a wired network, a wireless network, a telephone network, or any combination thereof; and

ii) publishing said plurality of content on a webpage.

**25.** A method for filtering online advertisements containing third-party trademarks, comprising:

a) receiving at least one keyword, said keyword comprising a search term entered in a search engine, a parsed domain name, a parsed webpage content, or a parsed advertisement;

b) searching a network for a plurality of content relevant to said keyword, said network comprising the Internet, an intranet, an extranet, a local-area network, a wide-area network, a wired network, a wireless network, a telephone network, or any combination thereof;

c) publishing said plurality of content on a webpage;

d) searching a trademark database for said at least one keyword, said trademark database comprising a collection of data maintained by the USPTO, the USPTO TESS database, the USPTO TARR database, a collection of data maintained by a third party, a trademark database maintained by a third party, a blacklist, or any combination thereof, said searching step comprising the steps of: i) downloading a plurality of data from said trademark database, said plurality of data having been optimized for searching for the presence of keywords; ii) storing said plurality of data; and iii) searching said plurality of data for said at least one keyword;

e) if said at least one keyword is not found in said trademark database, generating an at least one advertisement relevant to said at least one keyword, said generating step comprising the steps of: i) sending said at least one keyword to an advertising service; and ii) receiving said at least one advertisement relevant to said at least one keyword from said advertising service;

f) parsing said at least one advertisement into a plurality of keywords;

g) searching said trademark database for each of said plurality of keywords, said searching step comprising the steps of: i) downloading a plurality of data from said trademark database, said plurality of data having been optimized for searching for the presence of keywords; ii) storing said plurality of data; and iii) searching said plurality of data for said at least one keyword; and

h) if none of said plurality of keywords are found in said trademark database, publishing said at least one advertisement on said webpage.

\* \* \* \* \*

EXHIBIT 12

Case 2:10-cv-03738-AB-CW   Document 1   Filed 05/18/10   Page 96 of 134   Page ID #:96

# GO DADDY
# PARKED PAGE SERVICE AGREEMENT

This Parked Page Service Agreement ("Agreement") is by and between GoDaddy.com, Inc. ("Go Daddy") a/an Arizona corporation and you, your heirs, agents, successors and assigns ("You"), and is made effective as of the date of electronic execution. This Agreement sets forth the terms and conditions of Your use of Go Daddy's Parked Page Service, which includes, but is not limited to, the monetization of pages parked on Go Daddy nameservers, One Page Web Site and Domain For Sale (all parked pages, collectively, the "Parked Pages"), and represents the entire agreement between You and Go Daddy. By participating in this transaction, You acknowledge that You have read, understand and agree to be bound by all the terms and conditions of this Agreement, including our dispute policy, along with any new, different or additional terms, conditions or policies including the Universal Terms of Service which Go Daddy may establish from time to time. Such Agreements may be found here.

In addition to transactions entered into by You on Your behalf, You also agree to be bound by the terms of this Agreement for transactions entered into on Your behalf by anyone acting as Your Agent, and transactions entered into by anyone who uses the account You've established with Go Daddy, whether or not the transactions were in Your behalf. You acknowledge Go Daddy's acceptance of any application made by You for services provided by Go Daddy will take place at the Internet Corporation for Assigned Names and Numbers ("ICANN") accredited registrar's offices located in Scottsdale, Arizona, USA.

## 1. FEES AND RENEWALS

If You received Go Daddy's Domain for Sale service free as part of a package when You purchased a domain name, You are not required to pay Go Daddy any extra fees for the service. Your service will last as long as Your domain is registered with us, unless You notify us that You would like the service terminated. You can log onto Your Account Manager to cancel Your service at any time.

If You purchased Go Daddy's Domain for Sale service separately, or You purchased a One Page Web Site, as consideration for the services provided to You by Go Daddy, You agree to pay Go Daddy an annual fee. Your annual billing date will be determined based on the month You establish Your Parked Page with Go Daddy. Payment is to be made by You by providing either a valid credit card, an online check, Go Daddy Gift Card, PayPal, or using "Good As Gold" to establish a cash reserve for charge by Go Daddy (collectively, the "Payment Method"). If You purchase an automatically renewing service or product by personal check, it is Your responsibility to make payment arrangements for each renewal payment. Payments are non-refundable. If for any reason Go Daddy is unable to charge Your Payment Method for the full amount owed Go Daddy for the service provided, or if Go Daddy is charged a penalty for any fee it previously charged to your Payment Method, You agree that Go Daddy may pursue all available remedies in order to obtain payment. You agree that among the remedies Go Daddy may pursue in order to effect payment, shall include but will not be limited to, immediate cancellation without notice to You of Your service. Go Daddy reserves the right to charge a reasonable service fee for administrative tasks outside the scope of its regular services. These include, but are not limited to, customer service issues that cannot be handled over email but require personal service, and disputes that require legal services. These charges will be billed to the Payment Method we have on file for You. You may change Your Payment Method at any time by logging into Your Account Manager.

You agree that You will be responsible for notifying Go Daddy should you desire to terminate

Your use of any of Go Daddy's Parked Page Services, including, but not limited to, those You have purchased. Notification of Your intent to terminate a Parked Page must be provided to Go Daddy no earlier than ten (10) days prior to Your billing date but no later than three (3) days prior to Your billing date. In the absence of notification from You, Go Daddy will automatically continue Your Parked Page service indefinitely and will charge the Payment Method You have on file with Go Daddy, at Go Daddy's then current rates. It is Your responsibility to keep Your Payment Method information current, which includes the expiration date if You are using a credit card. In the event You terminate a One Page Web Site, moving Your web site off of the Go Daddy hosting servers will be Your responsibility. Go Daddy will not transfer or FTP Your web site to another provider.

## 2. DESCRIPTION OF SERVICE

Go Daddy currently provides One Page Web Sites and Domains for Sale to its customers, as well as monetizing other Parked Pages. Go Daddy will provide You with these services as long as You abide by the terms and conditions set forth herein and in each of Go Daddy's policies and procedures found here.

If You are using any of Go Daddy's Parked Pages services, You agree that Go Daddy may point the domain name or DNS to one of Go Daddy's or Go Daddy's affiliates web pages, and that they may place advertising on Your web page and Go Daddy specifically reserves this right.

If You are using Go Daddy's One Page Web Site, You are responsible for ensuring Your web site conforms to all local, state, federal, and international laws. Further, You are responsible for ensuring the legal copyright to any images, text, or other web site elements not provided by Go Daddy. In order to use Go Daddy's One Page Web Site, You must have a domain name registered with Go Daddy. Go Daddy is not responsible for making back-up copies of Your web site; this is solely Your responsibility.

If Your One Page Web Site includes GIF images and You are not using Go Daddy's WebSite Complete software, You must ensure that Your GIF images are licensed with Unisys or were created with Unisys Authorized Software.

## 3. YOUR OBLIGATIONS

You agree You have provided accurate, current and complete information in the application and/or registration process and You will notify Go Daddy within five (5) business days when any of the information You provided as part of the application and/or registration process changes. Failure by You, for whatever reason, to respond within five (5) business days to any inquiries made by Go Daddy to determine the validity of information provided by You, will constitute a material breach of this Agreement.

If You provide any information that is inaccurate, not current, false, misleading or incomplete, or if Go Daddy has reasonable grounds to suspect Your information is inaccurate, not current, false, misleading or incomplete, Go Daddy has the absolute right, in its sole discretion, to terminate its Parked Page services and close Your account.

You warrant each application You make is being done so in good faith and You have no knowledge of it infringing upon or conflicting with the legal rights of a third party or a third party's trademark or trade name. You also warrant the web site being hosted by Go Daddy will not be used in connection with any illegal activity.

## 4. GO DADDY 'S RIGHTS

Go Daddy provides its Parked Page services exclusively and makes no effort to edit, control, monitor or restrict the content of data other than as necessary to provide such services. Further, the services provided, including, but not limited to, the advertisements, shall be based upon the content of Your web site and may include, but are not limited to, advertisements of

Your competitors. Go Daddy explicitly reserves the right and sole discretion to:

a. Censor any web site hosted on its Parked Page servers that, in Go Daddy's sole discretion, is deemed inappropriate;

b. Review every Parked Page for excessive space and bandwidth utilization disrupting the normal use of the system or consuming excessive amounts of memory or CPU and to terminate or apply additional fees to those accounts exceeding allowed levels;

c. Modify its pricing through email notification;

d. Terminate Your Parked Page service for unsolicited, commercial e-mailing (i.e., Spam), using internal or external mail servers, illegal access to other computers or networks (i.e., hacking), distribution of Internet viruses or similar destructive activities, non-payment of Parked Page fees, and other activities whether lawful or unlawful Go Daddy determines to be harmful to its other customers, operations, or reputation;

e. Terminate Your Parked Page service if the contents of Your web site result in, or are the subject of, legal action or threatened legal action, against You and/or Go Daddy or any of its affiliates or partners, without consideration for whether such legal action or threatened legal action is eventually determined to be with or without merit; and

f. Terminate Your Parked Page service if You violate or potentially violate any criminal laws or any rights of any third parties, including, but not limited to, such violations as infringement or misappropriation of any copyright, patent, trademark, trade secret, music, image, or other proprietary or property right, false advertising, unfair competition, defamation, business or personal dispute or argument, invasion of privacy or rights of celebrity, violation of any anti-discrimination law or regulation, or any other right of any person or entity, or any personal or business argument or dispute.

You agree to indemnify and hold harmless Go Daddy for any complications arising out of Your use of Go Daddy's Parked Page services, including, but not limited to, actions Go Daddy chooses to take to remedy Your improper or illegal use of a web site hosted by Go Daddy. You agree You will not be entitled to a refund of any fees paid to Go Daddy if, for any reason, Go Daddy takes corrective action with respect to Your improper or illegal use of its Parked Page services.

## 5. DISPUTE RESOLUTION POLICY

You agree to be bound by Go Daddy's current Dispute Resolution Policy found herein .

You agree that if a dispute arises as a result of one (1) or more Parked Pages, You will indemnify, defend and hold Go Daddy harmless for damages arising out of such dispute. You also agree that if Go Daddy is notified a complaint has been filed with a governmental, administrative or judicial body, regarding a web site hosted by Go Daddy, that Go Daddy, in its sole discretion, may take whatever action Go Daddy deems necessary regarding further modification, assignment of and/or control of the web site to comply with the actions or requirements of the governmental, administrative or judicial body until such time as the dispute is settled.

Revised: 4/24/2009
Copyright © 2001-2009 GoDaddy.com, Inc. All Rights Reserved.

EXHIBIT 13

academyawardspreview.com

**This Web page is parked FREE,**
**courtesy of GoDaddy.com**

▸▸ Today's offers at GoDaddy.com

academyawardspreview.com

[ SEARCH ]

## ▸▸ Watch Top Movies Free
Reviews, Clips & More For Top Movie Releases - New Titles Added Weekly!
filmfanatic.mywebsearch.com

## ▸▸ Movies in Theaters Now
Try Bing's New Interactive Guide of Current In-Theater Movies Today!
www.Bing.com/VisualSearch

## ▸▸ Digital Cinema Production
Brooks Institute Is Offering New Programs. Request Info Today!
Brooks.edu/Digital_Cinema

## ▸▸ Academy Awards Gift Bag
Gifting Suite For Award Shows At Feinstein/McGuiness PR
fmpr.tv/services/gifting-suites

## ▸▸ Catherine Zeta-Jones Fail
Actor Tops PETA's 'Worst-Dressed' List. See All The Losers Here!
PETA.org

## ▸▸ Precious On YouTube
Watch Academy Award Nominee Gabourey Sidibe In "Precious"
www.youtube.com/precious

## ▸▸ Collins College (Arizona)
Film and Video Production Program Request Degree Info or Apply Today!
CollinsCollege.edu/Film&VideoDegree

## ▸▸ Hollywood Decorations
Free Shipping on orders over $50. Throw your own red carpet party.
www.PartyCheap.com

## ▸▸ Award Show VIP Tickets
VIP Access & Exclusive Experiences Awards Show & VIP Party Tickets
www.theVIPconcierge.com

## ▸▸ Angelina Jolie Oscars
Be a red carpet critic and vote on Angelina Jolie's Oscar Dress.
zimbio.com/angelina+jolie+oscars

**Learn how to succeed—in life and online—with straight**
**talk from Go Daddy's CEO & Founder, Bob Parsons®.**
*Viewer discretion advised!*



$1⁹⁹ Domains

**Find a domain name now:**

[ .com ▾ ] [ GO ]

What's a Domain? Advanced Search

*Plus ICANN fee of 18 cents per domain name a year.

**Want to buy this domain?**
**Let us help you get it!**

Related Searches

▸▸ Oscar Winners

▸▸ Academy Awards

▸▸ Oscar Nominees

▸▸ Oscar Sale

▸▸ Oscar Awards

▸▸ Oscar Nominations


.CO Pre-registration now open!
Choose your .CO domain,
*before someone else does!* [ Start! ]


**Find great deals NOW!**
GO DADDY
**MARKETPLACE**
Electronics • Clothing • Bath & Body • Sports

**Save up to 15%**
**on multi-year**
**hosting plans!**




Get started FREE!
Affiliate Program



**Get what you need in UNDER 5 MINUTES with our Product Advisor**



**BIG OR SMALL BUSINESS**
Everything you need to succeed on the Web!

I'm interested in: Selling
products online, securing my
site, hosting, reseller programs



This Web page is parked FREE, courtesy of **GoDaddy.com**

**ICANN** ACCREDITED

**Visit GoDaddy.com for the best values on:**

Domain names  •  Web Hosting  •  Web Site Builders  •  Email Accounts  •  SSL Certificates  •  Ecommerce Products  •  And More!  •  See Product Catalog

Go Daddy Super Bowl Commercial  •  Danica Patrick  •  Dale Jr.  •  Go Daddy Girls

GoDaddy.com is the world's No. 1 ICANN-accredited domain name registrar for .COM, .NET, .ORG, .INFO, .BIZ and .US domain extensions.
Source: Name Intelligence, Inc. 2006

Copyright © 1999-2010 GoDaddy.com, Inc. All rights reserved.

EXHIBIT 14



**This Web page is parked FREE,
courtesy of GoDaddy.com**

▸▸ Today's offers at GoDaddy.com

oscarlist.com

SEARCH





▸▸ **Digital Cinema Production**
Brooks Institute Is Offering New Programs. Request Info Today!
Brooks.edu/Digital_Cinema

▸▸ **Oscars Gifting**
Gifting Suite For Award Shows At Feinstein/McGuiness PR
fmpr.tv/services/gifting-suites

▸▸ **Advanced Acting Class**
with Academy Award Nominated Actor Lindsay Crouse
www.lindsaycrouse.org

▸▸ **Red Carpet Holiday Party**
Create Your OWN Red Carpet Event! Custom Backdrop Red Carpet
RedCarpetRunway.com

▸▸ **Dry Shampoos at Sephora**
Save Your Style, Wash Without Water Top Brands, Free Shipping Over $50!
www.Sephora.com

▸▸ **Preview Award Winners**
Free HD Trailers for the Winners of This Year's Awards - Download Now!
filmfanatic.mywebsearch.com

▸▸ **Temporary Power**
From Cords to Distribution boxes Full line of temp power & customs
www.ericson.com

▸▸ **1 Tip for a Flat Belly :**
Cut down 3 lbs Belly Fat every week just by using this 1 Weird Old Tip.
www.TheDietSolutionProgram.com

▸▸ **Famous Directors at Bing™**
Sort Movie Directors by Awards, Top Grossing Films, and More. Try Now!
www.Bing.com/VisualSearch

▸▸ **ABS Dresses: Private Sale**
Save 70+% ABS Allen Schwartz! Your Wish List, Come True
MyPerfectSale.com/ABSAllenSchwartz



Related Searches

▸▸ **Oscar**

▸▸ **Schindler**

▸▸ **Oscar Awards 2008**

▸▸ **Oscar Winners List**

▸▸ **Oscar Schindler Tour**

▸▸ **Mejor Pelicula Oscar**





Save up to 15%
on multi-year
hosting plans!

Learn how to succeed—in life and online—with straight
talk from Go Daddy's CEO & Founder, Bob Parsons®.
*Viewer discretion advised!*



Get what you need in UNDER 5 MINUTES with our Product Advisor



This Web page is parked FREE, courtesy of **GoDaddy.com**

**Visit GoDaddy.com for the best values on:**

Domain names • Web Hosting • Web Site Builders • Email Accounts • SSL Certificates • Ecommerce Products • And More! • See Product Catalog

Go Daddy Super Bowl Commercial • Danica Patrick • Dale Jr. • Go Daddy Girls

GoDaddy.com is the world's No. 1 ICANN-accredited domain name registrar for .COM, .NET, .ORG, .INFO, .BIZ and .US domain extensions.
Source: Name Intelligence, Inc. 2006

Copyright © 1999-2010 GoDaddy.com, Inc. All rights reserved.

EXHIBIT 15



**This Web page is parked FREE,**
courtesy of **GoDaddy.com**

academyawardsinc.com



Today's offers at GoDaddy.com

SEARCH

### Watch Top Movies Free
Reviews, Clips & More For Top Movie Releases - New Titles Added Weekly!
filmfanatic.mywebsearch.com

### Torrance Movie Theaters
Find Listings for Movie Theaters -- Cinemas, Multiplex, Local only.
yellowpages.com

### Movies in Theaters Now
Try Bing's New Interactive Gallery of Current In-Theater Movies Today!
www.Bing.com/VisualSearch

### Digital Cinema Production
Brooks Institute Is Offering New Programs. Request Info Today!
Brooks.edu/Digital_Cinema

### Mtv Movie Awards Gifting Suite
The Original and the best gifting suite by Feinstein/McGuiness PR.
fmpr.tv

### Catherine Zeta-Jones Fail
Actor Tops PETA's 'Worst-Dressed' List. See All The Losers Here!
PETA.org

### Collins College (Arizona)
Film and Video Production Program Request Degree Info or Apply Today!
CollinsCollege.edu/Film&VideoDegree

### Award Show VIP Tickets
VIP Access & Exclusive Experiences Awards Show & VIP Party Tickets
www.theVIPconcierge.com

### Angelina Jolie Oscars
Be a red carpet critic and vote on Angelina Jolie's Oscar Dress.
zimbio.com/angelina+jolie+oscars

### Official Secret Life Site
Should Ben be with Adrian or Amy? Tell us & watch on June 7 at 8/7c!
www.ABCFamily.go.com

Learn how to succeed—in life and online—with straight
talk from Go Daddy's CEO & Founder, Bob Parsons®.
*Viewer discretion advised!*





Related Searches

### Academy Awards

### Oscar Nominees

### Oscar Awards

### Oscar Sale

### Oscar Nominations

### Oscar 2007





Save up to 15%
on multi-year
hosting plans!





Get what you need in UNDER 5 MINUTES with our Product Advisor



**BIG OR SMALL BUSINESS**
Everything you need to succeed on the Web!
I'm interested in: Selling
products online, securing my
site, hosting, reseller programs

This Web page is parked FREE, courtesy of **GoDaddy.com**    

**Visit GoDaddy.com for the best values on:**

Domain names  •  Web Hosting  •  Web Site Builders  •  Email Accounts  •  SSL Certificates  •  Ecommerce Products  •  And More!  •  See Product Catalog

Go Daddy Super Bowl Commercial  •  Danica Patrick  •  Dale Jr.  •  Go Daddy Girls

GoDaddy.com is the world's No. 1 ICANN-accredited domain name registrar for .COM, .NET, .ORG, .INFO, .BIZ and .US domain extensions.
Source: Name Intelligence, Inc. 2006

Copyright © 1999-2010 GoDaddy.com, Inc. All rights reserved.

EXHIBIT 16



This Web page is parked FREE, courtesy of GoDaddy.com.

➤ Today's offers at GoDaddy.com

oscarmovies.net



SEARCH

## ➤ Watch Top Movies Free
Reviews, Clips & More For Top Movie Releases - New Titles Added Weekly!
filmfanatic.mywebsearch.com

## ➤ Movie Gallery at Bing™
Try Bing's New Visual Search Gallery of Great Movies Today!
www.Bing.com/VisualSearch

## ➤ Acting
Acting For 6 to 19, Proven Results. Start Now! TV-Film-Commercials.
ActingCareersNow.com/los-angeles/

## ➤ Torrance Movie Theaters
Find Listings for Movie Theaters -- Cinemas, Multiplex, Local only.
yellowpages.com

## ➤ SFV Coupons
50%-90% Off The Valley's Best Restaurants, Spas & More. No Catch!
www.Groupon.com/San-Fernando-Valley

## ➤ Unlimited Movies Online
Free 7 Day Trial! Best Independent & Foreign Movies
www.bigstar.tv

## ➤ Advanced Acting Class
with Academy Award Nominated Actor Lindsay Crouse
www.lindsaycrouse.org

## ➤ Mtv Movie Awards Gifting Suite
The Original and the best gifting suite by Feinstein/McGuiness PR.
fmpr.tv

## ➤ Digital Cinema Production
Brooks Institute Is Offering New Programs. Request Info Today!
Brooks.edu/Digital_Cinema

## ➤ Full Movies
All About Full Movies Full Movies and Much More!
Peeplo.com/Full+Movies

Learn how to succeed—in life and online—with straight talk from Go Daddy's CEO & Founder, Bob Parsons®.
*Viewer discretion advised!*



Get what you need in UNDER 5 MINUTES with our Product Advisor



**Go Daddy.com $1⁹⁹ Domains**
Domains, websites & everything in between! With any new, non-domain purchase! No quantity limit!*

**Find a domain name now:**

[_____] .com [▼] [GO]

What's a Domain? Advanced Search
*Plus ICANN fee of 18 cents per domain name a year.


Want to buy this domain? Let us help you get it!

### Related Searches

➤ The Movies

➤ Oscar Winners

➤ Internet Movies

➤ 3D Movies

➤ Remember Me Movies

➤ Movies on Line


.CO Pre-registration now open!
Choose your .CO domain, before someone else does! ➤ Start!


Free Shipping on over 80,000 Items at GO DADDY MARKETPLACE®

Save up to 15% on multi-year hosting plans!


GET A FREE DOMAIN

Plans from $3.59/mo!

**BIG OR SMALL BUSINESS**
Everything you need to succeed on the Web!


I'm interested in: Selling products online, securing my site, hosting, reseller programs

This Web page is parked FREE, courtesy of **GoDaddy.com**

ICANN ACCREDITED

**Visit GoDaddy.com for the best values on:**

Domain names • Web Hosting • Web Site Builders • Email Accounts • SSL Certificates • Ecommerce Products • And More! • See Product Catalog

Go Daddy Super Bowl Commercial • Danica Patrick • Dale Jr. • Go Daddy Girls

GoDaddy.com is the world's No. 1 ICANN-accredited domain name registrar for .COM, .NET, .ORG, .INFO, .BIZ and .US domain extensions.
Source: Name Intelligence, Inc. 2006

Copyright © 1999-2010 GoDaddy.com, Inc. All rights reserved.

EXHIBIT 17

# GO DADDY
# CASHPARKING SERVICE AGREEMENT

This CashParking Service Agreement ("Agreement") is entered into by and between GoDaddy.com, Inc. ("Go Daddy") a/an Arizona corporation and you and your heirs, agents, successors and assigns (collectively, "You"), and is made effective as of the date of electronic execution. This Agreement sets forth the terms and conditions of Your use of Go Daddy's CashParking service and its related services (collectively, the "Services") and represents the entire agreement between You and Go Daddy concerning the subject matter hereof. By using the Services, You acknowledge that You have read, understand, acknowledge and agree to be bound by all the terms and conditions of this Agreement, along with any new, different or additional terms, conditions or policies including, but not limited to, the Universal Terms of Service that Go Daddy may establish from time to time, in its sole discretion, and any agreements that Go Daddy is currently bound by or may become bound by in the future. Such Agreements may be found here. All Go Daddy policies and agreements related to Your use of the Services are incorporated herein and made part of this Agreement by reference.

## 1. THE SERVICE

Go Daddy grants You a non-exclusive license to use the Services, provided, however, that You abide by the terms and conditions set forth herein and in each of Go Daddy's policies and procedures.

The Services generally allow You to:

    i.  provide a platform for advertising link on parked pages;

    ii.  generate revenue from the advertising links on a per click basis; and

    iii.  receive a portion of the revenue generated from the advertising links.

**Availability of Services**

Subject to the terms and conditions of this Agreement and each of Go Daddy's policies and procedures, Go Daddy shall use commercially reasonable efforts to attempt to provide the Services on a twenty-four (24) hours a day, seven (7) days a week basis throughout the term of this Agreement. You acknowledge and agree that from time to time the Services may be inaccessible or inoperable for any reason, including, without limitation: (i) equipment malfunctions; (ii) periodic maintenance procedures or repairs that Go Daddy may undertake from time to time; or (iii) causes beyond the reasonable control of Go Daddy or that are not reasonably foreseeable by Go Daddy, including, without limitation, interruption or failure of telecommunication or digital transmission links, hostile network attacks, network congestion or other failures. You acknowledge and agree Go Daddy has no control over the availability of the Services on a continuous or uninterrupted basis.

**Calculation of Revenue; Cancellation**

Go Daddy shall use commercially reasonable efforts to provide You with accurate daily estimates of the revenue Your web site(s) generates. You acknowledge and agree any daily estimates are not an exact determination, do not represent an exact determination and the actual amount(s) determined at the end of any revenue generating period may be different. Additionally, in calculating the distribution of revenue generated by any web site, amounts may include fractions of a cent. Go Daddy shall use commercially reasonable efforts to round these amounts to the nearest cent in a manner so as to benefit You. However, You acknowledge and

agree that in calculating the distribution of revenue generated by any web site, Go Daddy's determination of any amount owed to You shall be the final and binding determination. Upon Your cancellation of Your Services, You acknowledge and agree Go Daddy has the right to charge You a Fifteen and No/100 Dollar ($15.00) administrative fee in connection with Your cancellation. This amount shall be deducted from any unpaid funds in Your Service account. Any funds in excess shall be paid to You in accordance with Your selected payment option.

## 2. PAYMENT

Commission payments for all domestic Cashparking Customers ("You") will be paid by via direct deposit into the U.S. bank account of their choice ("Direct Deposit Account"). You understand it is Your responsibility to provide a valid U.S. bank account number and the related direct deposit information by signing into the Go Daddy Control Center. Failure to provide a valid Direct Deposit Account will cause Your commission payments to be withheld pending receipt by Go Daddy of proper direct deposit instructions. You can find the instructions on how to set up a Direct Deposit Account at any time by clicking on the "Payment Information" link from Your home page on the Go Daddy Control Center.

Domestic Cashparking Customers hereby authorize Go Daddy to initiate and post credit (positive) entries for commission payments to the Direct Deposit Account. Domestic Cashparking Customers understand the amount initiated and posted to the Direct Deposit Account on a monthly basis will represent payment for commissions earned in the preceding second month, less any applicable fees and/or charge backs. For example -- commissions earned in January 2009 would be paid by March 15, 2009. Direct Deposit Account owners hereby authorize their Depository Institution to accept credits on behalf of the Direct Deposit Account owner. Direct deposit transactions will be initiated on the 15th day of each month or if the 15th falls on a non-banking day, then direct deposit transactions will be initiated the next banking day. A $50.00 minimum threshold is required before a payment is made to the Direct Deposit Account.

Domestic Cashparking Customers hereby authorize Go Daddy to initiate and post debit (negative) entries to the Direct Deposit Account to reverse erroneous commission payments and/or make adjustments to incorrect commission payments.

The authority granted to Go Daddy by the Direct Deposit Account owner herein will remain in full force and effect until Go Daddy or the Depository Institution has received written notification from the Direct Deposit Account owner that such authority has been revoked, but in any event, such writing shall be provided in such a manner as to afford Go Daddy or the Depository Institution a reasonable opportunity to act on such revocation, or until Go Daddy or the Depository Institution has sent notice of Go Daddy or the Depository Institution's termination of this Agreement.

Commission checks for domestic Cashparking Customers who fail to establish a Direct Deposit Account will be cut monthly on the 15th of the month for the previous second month's commission. Should the fiftheenth (15th) day of the month fall on a Saturday, the payout date will be on the previous business day. Should the fiftheenth (15th) day of the month fall on a Sunday or holiday, the payout date will be on the next business day. A $100.00 minimum threshold is required before a check will be issued. Domestic Cashparking Customers receiving commission payments via paper checks acknowledge a $25 check processing fee will be levied each time a commission check is printed. This fee is not applicable to foreign Cashparking Customers.

Commission checks for foreign Cashparking Customers will be cut quarterly on the 15th of the month for the previous quarter's commissions. A $100.00 minimum threshold is required before a check will be issued. Quarterly pay dates are May 15, August 15, November 15, and February 15th.

Domestic Cashparking Customers utilizing PayPal will be paid out monthly on the fiftheenth

(15th) day of the month. Should the fifteenth (15th) day of the month fall on a Saturday, the payout date will be on the previous business day. Should the fifteenth (15th) day of the month fall on a Sunday or holiday, the payout date will be on the next business day. A Twenty-Five Dollar ($25.00) minimum threshold is required before payment will be made to those accounts. If the payment amount exceeds $10,000.00, it will be split into two PayPal payment transactions. Please refer to the PayPal account set-up requirements for Your country, which may be found here, to ensure Your PayPal account has the ability to receive payments from third parties. Transaction fees for PayPal will be the responsibility of Go Daddy and will not be deducted from Your Commission Payment.

Domestic Cashparking Customers utilizing Go Daddy's "Good As Gold" program will be paid out monthly on the fifteenth (15th) day of the month. Should the fifteenth (15th) day of the month fall on a Saturday, the payout date will be on the previous business day. Should the fifteenth (15th) day of the month fall on a Sunday or holiday, the payout date will be on the next business day. A Five Dollar ($5.00) minimum threshold is required before payment will be made to those accounts.

## 3. TRADEMARK DISPUTE POLICY

Go Daddy supports the protection of intellectual property, and has developed policies and procedures to assist intellectual property rights owners in the protection of their brands. If You believe a domain name is in itself an infringement of Your intellectual property, please follow the dispute procedure outlined below. If You believe the advertising and links present on a domain name using the Services is infringing, please submit a complaint to trademarkclaims@godaddy.com , and insert "CashParking Trademark Claim" in the subject line.

To be considered effective, the email notification must contain the following information:

    i. sufficient evidence the party posting the trademark that is claimed to be infringing is a Go Daddy customer;

    ii. the trademark, service mark, trade dress, name, or other indicia of origin (the "Mark") that is claimed to be infringed;

    iii. the name, post office address and telephone number of the owner of the Mark identified above;

    iv. the goods and/or services covered by or offered under the Mark identified above;

    v. the date of first use of the Mark identified above;

    vi. the date of first use in interstate commerce of the Mark identified above;

    vii. the advertisement, text link or domain name You believe is an infringement of the Mark identified above;

    viii. the goods and/or services covered by or offered under the mark claimed to be infringing;

    ix. the precise location of the advertisement, text link or domain name that is claimed to be infringing, including electronic mail address, etc.; and

    x. a good faith certification signed under penalty of perjury, stating: (i) the mark [identify mark] infringes the rights of another party; (ii) the name of such said party; (iii) the Mark [identify mark] being infringed, and (iv) that the use of the mark [identify mark] claimed to be infringing at issue is not defensible.

Upon receipt of the appropriate information identified above, Go Daddy will initiate an investigation. If Go Daddy determines in its sole discretion that You have raised a legitimate trademark claim, Go Daddy may, in its sole discretion and without any legal obligation to do so, notify the posting party, remove any disputed domain name and/or redirect the offending domain name to an alternative page.

### Notification to Go Daddy Customers and Account Holders

It is Go Daddy's policy to provide for the termination, in appropriate circumstances, of Go Daddy customers and account holders who are repeat infringers of trademarks or any other intellectual property.

## 4. GO DADDY 'S RIGHTS AND RESTRICTIONS; REMEDIES AND PENALTIES

Go Daddy explicitly reserves the right and sole discretion to:

  i. modify its pricing, if desired by Go Daddy ;

  ii. review Your use of the Services for excessive space and bandwidth utilization, if applicable, and to terminate Your use of the Services or apply additional fees if You exceed allowed levels;

  iii. establish limits and guidelines concerning the use of the Services;

  iv. terminate Your use of the Services for use of the Services to unnecessarily or illegally harass, non-payment of fees for the Services, activities designed to defame, embarrass, harm, abuse, threaten, slander or harass third parties, activities prohibited by the laws of the United States and/or foreign territories in which You conduct business, activities designed to encourage unlawful behavior by others, such as hate crimes, terrorism and child pornography, activities that are tortious, vulgar, obscene, invasive of the privacy of a third party, racially, ethnically, or otherwise objectionable in the sole opinion of Go Daddy, activities designed to impersonate the identity of a third party, activities designed to harm minors in any way, and other activities whether lawful or unlawful that Go Daddy determines, in its sole discretion, to be harmful to its other customers, operations, or reputation;

  v. terminate Your use of the Services if Your use of the Services results in, or is the subject of, legal action or threatened or proposed legal action, against Go Daddy or any of its affiliates or partners, without consideration for whether such legal action or threatened or proposed legal action is eventually determined to be with or without merit; and

  vi. terminate Your use of the Services if You have not accessed or logged into it for more than ninety (90) days.

You may not purchase or generate traffic to Your web site or Go Daddy's links by any of the following methods: listing on newsgroups, bulk e-mailing, icq postings, chatroom postings, iframes, zero pixel frames, hitbots, clickbots, spiders, cgi-scripts, JavaScript, click farms, advertising the domain name or purchasing advertising for the domain name or any other similar method. You may not beg, ask, entice or incentivize users into clicking on Go Daddy's links. You may not mislead visitors into believing that he/she shall receive anything other than an internet search by clicking on a textlink or search box. Referring pages must not be password protected in any way.

### Remedies and Penalties

Notwithstanding anything to the contrary in this Agreement, in addition to any and all other remedies to which Go Daddy is entitled, Go Daddy specifically reserves the right to:

  i. immediately suspend any domain names that Go Daddy believes in its sole discretion to be violating the terms of this Agreement;

  ii. charge You a Twenty Nine and No/100 Dollars ($29.00) administrative fee for any and each domain name that Go Daddy believes in its sole discretion to be violating the terms of this Agreement;

  iii. require the forfeiture of any previously earned revenue in connection with the Services, which has yet to be paid;

    iv. deactivate any and all accounts and domains that Go Daddy believes in its sole discretion to be violating the terms of this Agreement; and

    v. provide advertising partners with any and all domain names that Go Daddy believe in its sole discretion to be violating the terms of this Agreement.

**Additional Restrictions**

You shall not:

    i. edit, modify, filter or change the order of the information contained in any search results page or on the landing page without Go Daddy's prior written consent;

    ii. host the search results pages;

    iii. redirect an end user away from the search results page, provide a version of the search results page different from the page served to an end user by or as directed by Go Daddy, cache, capture, or store any search results; or intersperse any content between the landing page and the search results page, including, without limitation, content framing landing pages or search results pages;

    iv. display any search results pages or landing pages, or the content thereof, in part or in total, to any third parties, including, without limitation, display on any Your Web sites or anywhere else;

    v. enter into any arrangement or agreement under which any third party pays You fees or shares in any revenue payments and/or royalties for any search results displayed on the Your web site, except as permitted in this Agreement;

    vi. display graphical or text units in any form (including but not limited to pop-up, pop-under or exit windows, expanding buttons and animation) that block or otherwise inhibit the full and complete display to end users of any search results pages, landing pages, and/or web pages accessed by clicking on any part of a search result;

    vii. provide any interface for downloading any computer software application (each, an "Downloadable App"), any marketing materials for any Downloadable App, or any hyperlinks to any of the foregoing.

You shall also abide by the following limitations, among others:

    i. under no circumstances shall Your web site be a downloadable or internet accessible application, as determined by Go Daddy in its sole reasonable discretion;

    ii. search results pages accessed through the Program shall be solely through Go Daddy's servers (or such other servers as Go Daddy in its sole discretion may use), hosted on Go Daddy's servers or domains, meaning that Go Daddy shall host or on its behalf provide for hosting of all Search Results Pages in response to valid queries;

    iii. Your Web site may not place or display any unauthorized branding or attribution of any kind, including without limitation on any landing page, search results page or framed in conjunction with any such pages, to indicate that any search engine is providing such results or for other promotional purposes;

    iv. Your web site shall not contain any pornographic, hate-related or violent content or contain any other material, products or services that (a) violate or encourage conduct that would violate any criminal laws, any other applicable laws, or any third party rights, or (b) would otherwise give rise to civil liability; or

    v. under no circumstances shall You include content above or below the landing page unless that content is pre-approved in writing by Go Daddy, and all changes to any such content must also be pre-approved in writing by Go Daddy.

Revised: 3/12/2010
Copyright © 2006-2009 GoDaddy.com, Inc. All Rights Reserved.

EXHIBIT 18

# OSCARFAQS.COM

Sponsored Listings

**Need A Reverse Mortgage?**
Use Our Free Retirement Calculator, Calculate How Much You Qualify for!
www.NewRetirement.com

**Advanced Acting Class**
with Academy Award Nominated Actor Lindsay Crouse
www.lindsaycrouse.org

**Game Walk Through**
Get The Latest Walkthroughs For Any Game With The Free Games Toolbar
Games.alot.com

**Bing™ Visual Search**
Try the new Visual Search Gallery to See Top Movie Directors Now!
www.Bing.com/VisualSearch

**Oscar Winners 2009**
Preview Award-Winning Movies with High-Res Trailers - 100% Free!
filmfanatic.mywebsearch.com

**1 Tip for a Flat Belly :**
Cut down 3 lbs Belly Fat every week just by using this 1 Weird Old Tip.
www.TheDietSolutionProgram.com

**BraveHeart Women**
Inspiration in Action! Try the Only Social Network for Empowered Women.
BraveHeartWomen.com

**Walkthroughs**
Find more sources/options for Walkthroughs
webcrawler.com/walkthroughs

**Temporary Power**
From Cords to Distribution boxes Full line of temp power & customs
www.ericson.com

**Liked Lost Planet 2?**
Pre-Order Red Dead Redemption & Choose From 1 of 7 Special Offers!
RockstarGames.com/RedDeadRedemption

Search:

Search

**Related Searches**

▶ **Game com**

▶ **Game Walkthroughs**

▶ **Game FAQs**

▶ **PS2 Walkthroughs**

▶ **Oscar Winners**

▶ **Game KB**

▶ **Walkthrough for Xbox**

▶ **Oscar Sale**

▶ **3D Walkthroughs**

▶ **WWW Game**

This page is provided courtesy of GoDaddy.com. Copyright © 1999-2010 GoDaddy.com, Inc. All rights reserved.

EXHIBIT 19

# THEOSCARGURU.COM

Sponsored Listings

**Search:**

[　　　　　　　　] [ Search ]

**Related Searches**

▶ **Guru**

▶ **Oscar Winners**

▶ **Oscar Sale**

▶ **Oscar Nominees**

▶ **Oscar Awards**

▶ **Oscar Nominations**

▶ **Academy Awards**

▶ **Oscar 2007**

▶ **The Guru Movie**

▶ **Travel Guru In**

**Red Carpet Holiday Party**
Create Your OWN Red Carpet Event! Custom Backdrop Red Carpet
RedCarpetRunway.com

**FACS and Artiva Experts**
Remotely administrate and optimize your collection workflow.
www.MapesConsulting.com

**Advanced Acting Class**
with Academy Award Nominated Actor Lindsay Crouse
www.lindsaycrouse.org

**A.D.A. Compliance Experts**
Reduce Risk & Exposure Avoid Litigation & Remove Barriers
www.arcor-inc.com

**Winners Oscar**
Preview Award-Winning Movies with High-Res Trailers - 100% Free!
filmfanatic.mywebsearch.com

**Post a Job on Indeed.com**
Reach quality candidates on the job site with the most jobseekers.
ads.indeed.com

**Dry Shampoos at Sephora**
Save Your Style, Wash Without Water Top Brands, Free Shipping Over $50!
www.Sephora.com

**Beyonce Oscar Dress**
Be a red carpet critic and vote on Beyonce Knowles' Oscars dress.
Zimbio.com/beyonce+oscar+dress

**1 Tip for a Flat Belly :**
Cut down 3 lbs Belly Fat every week just by using this 1 Weird Old Tip.
www.TheDietSolutionProgram.com

**Hollywood Decorations**
Free Shipping on orders over $50. Throw your own red carpet party.
www.PartyCheap.com

This page is provided courtesy of GoDaddy.com. Copyright © 1999-2010 GoDaddy.com, Inc. All rights reserved.

EXHIBIT 20

# WEBACADEMYAWARDS.COM

Sponsored Listings

### Watch Top Movies Free
Reviews, Clips & More For Top Movie Releases - New Titles Added Weekly!
filmfanatic.mywebsearch.com

### Movie Gallery at Bing™
Try Bing's New Visual Search Gallery of Great Movies Today!
www.Bing.com/VisualSearch

### Digital Cinema Production
Brooks Institute Is Offering New Programs. Request Info Today!
Brooks.edu/Digital_Cinema

### Torrance Movie Theaters
Find Listings for Movie Theaters -- Cinemas, Multiplex, Local only.
yellowpages.com

### Advanced Acting Class
with Academy Award Nominated Actor Lindsay Crouse
www.lindsaycrouse.org

### Catherine Zeta-Jones Fail
Actor Tops PETA's 'Worst-Dressed' List. See All The Losers Here!
PETA.org

### VIP Award Show Tickets
Awards Show & VIP Party Tickets Mingle w/ celebrities on Red Carpet
www.theVIPconcierge.com

### Collins College (Arizona)
Film and Video Production Program Request Degree Info or Apply Today!
CollinsCollege.edu/Film&VideoDegree

### NBC - Last Comic Standing
It's Back And Funnier Than Ever! Premieres Monday, June 7 at 8/7c
NBC.com/LastComicStanding

### Hollywood Party Theme
Free Shipping on orders over $50 Make your party a big production!
www.PartyCheap.com



**Search:**
[            ] [ Search ]

Related Searches

▶ Hospedaje Web

▶ Academy Awards Game

▶ Oscar Awards

▶ Best Web Design

▶ Oscar 2007

▶ Celular Web

▶ Web Email

▶ Web CopyWriter

▶ Host Web

▶ Desarrollos Web



**AUCTIONS**

**This domain is for sale!**
Click here for details

This page is provided courtesy of GoDaddy.com. Copyright © 1999-2010 GoDaddy.com, Inc. All rights reserved.

EXHIBIT 21

# MYOSCARSPEECH.COM



Sponsored Listings

**Search:**
[ ] Search

**Related Searches**
- ▶ Movie Review
- ▶ Movie Search
- ▶ Monster House Movie
- ▶ Movie Film
- ▶ Find a Movie
- ▶ American Movie
- ▶ Newest Movie
- ▶ Movie Critic
- ▶ Movie Tomatoes
- ▶ IRONMAN2 Movie

**SFV Coupons**
50%-90% Off The Valley's Best Restaurants, Spas & More. No Catch!
www.Groupon.com/San-Fernando-Valley

**Torrance Movie Theaters**
Find Listings for Movie Theaters -- Cinemas, Multiplex, Local only.
yellowpages.com

**Movies in Theaters Now**
Try Bing's New Interactive Gallery of Current In-Theater Movies Today!
www.Bing.com/VisualSearch

**Watch Movies Online Free**
15,000 Movies in high quality Completely free - no credit card
www.Graboid.com

**Watch New Movies**
Search New Movies & Watch Trailers, Interviews & More!
filmfanatic.mywebsearch.com

**Study Film Production**
Begin Your Film Career Today! Learn Filmmaking at LA Film School.
www.LAFilm.edu

**Official Secret Life Site**
Should Ben be with Adrian or Amy? Tell us & watch on June 7 at 8/7c!
www.ABCFamily.go.com

**Daily Variety Only $205**
250 weekday issues new subscriptions and renewals
www.ecrater.com

**Film & Cinema - Tucson**
Cinema & Film news reviews Movies and show times in Tucson
www.tucsonweekly.com

**The Vicious Kind**
See Adam Scott's mesmerizing performance!
tvkmovie.com

Search: [ ] Search

This page is provided courtesy of GoDaddy.com. Copyright © 1999-2010 GoDaddy.com, Inc. All rights reserved.

EXHIBIT 22

# OSCARSEATON.COM

Sponsored Listings

**Eaton distributor**
Huge in Stock Selection & More Same Day Shipping
www.newark.com

**PLATT Electric Supply**
Electrical wholesaler providing a full line of Cutler-Hammer products
www.Platt.com

**Eaton Switches - In Stock**
Huge Inventory of Eaton Switches Military and Commercial Components
www.MarineAirSupply.com

**Orthodontic Webinars**
Scarlett Thomas specializing in Case Acceptance and Marketing
orthoconsulting.com

**Powerware UPS Sale at PEI**
Refurbished used buy sell lease with warranty only at pei.com
www.pei-ups.com

**Advanced Acting Class**
with Academy Award Nominated Actor Lindsay Crouse
www.lindsaycrouse.org

**Eaton corporation distributors**
Automation equipment Save 40-60% on New, Surplus, Repair
www.PlcCenter.com

**Eaton Colorado House**
Your Eaton dream home is waiting. Can you find yours?
Eaton.AutomatedHomefinder.com

**Angelina Jolie Oscars**
Be a red carpet critic and vote on Angelina Jolie's Oscar Dress.
zimbio.com/angelina+jolie+oscars

**Speedtweekerz Performance**
Free Shipping on All Kits Procharger Dealer and Installer
Speedtweekerz.com

Search: [            ] [ Search ]

**Related Searches**

▶ Oscar Winners

▶ Oscar Sale

▶ Eaton

▶ Oscar Favorites

▶ Oscar Nominees

▶ Oscar Awards

▶ Oscar Nominations

▶ Oscar 2007

▶ Academy Awards

▶ Oscars Picks

This page is provided courtesy of GoDaddy.com. Copyright © 1999-2010 GoDaddy.com, Inc. All rights reserved.

EXHIBIT 23

Case 2:10-cv-03738-AB-CW   Document 1   Filed 05/18/10   Page 130 of 134   Page ID #:130

# WEBACADEMYAWARDS.COM

Sponsored Listings

**Watch Top Movies Free**
Reviews, Clips & More For Top Movie Releases - New Titles Added Weekly!
filmfanatic.mywebsearch.com

**Movie Gallery at Bing™**
Try Bing's New Visual Search Gallery of Great Movies Today!
www.Bing.com/VisualSearch

**Digital Cinema Production**
Brooks Institute Is Offering New Programs. Request Info Today!
Brooks.edu/Digital_Cinema

**Torrance Movie Theaters**
Find Listings for Movie Theaters -- Cinemas, Multiplex, Local only.
yellowpages.com

**Advanced Acting Class**
with Academy Award Nominated Actor Lindsay Crouse
www.lindsaycrouse.org

**Catherine Zeta-Jones Fail**
Actor Tops PETA's 'Worst-Dressed' List. See All The Losers Here!
PETA.org

**VIP Award Show Tickets**
Awards Show & VIP Party Tickets Mingle w/ celebrities on Red Carpet
www.theVIPconcierge.com

**Collins College (Arizona)**
Film and Video Production Program Request Degree Info or Apply Today!
CollinsCollege.edu/Film&VideoDegree

**NBC - Last Comic Standing**
It's Back And Funnier Than Ever! Premieres Monday, June 7 at 8/7c
NBC.com/LastComicStanding

**Hollywood Party Theme**
Free Shipping on orders over $50 Make your party a big production!
www.PartyCheap.com



**Search:**
[              ] [ Search ]

**Related Searches**

▶ **Hospedaje Web**

▶ **Academy Awards Game**

▶ Oscar Awards

▶ **Best Web Design**

▶ Oscar 2007

▶ **Celular Web**

▶ Web Email

▶ **Web CopyWriter**

▶ Host Web

▶ **Desarrollos Web**

**This domain is for sale!**
Click here for details

This page is provided courtesy of GoDaddy.com. Copyright © 1999-2010 GoDaddy.com, Inc. All rights reserved.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dale S. Fischer and the assigned discovery Magistrate Judge is Alicia G. Rosenberg.

The case number on all documents filed with the Court should read as follows:

## CV10- 3738 DSF (AGRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

====================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

---

LEE TRAN & LIANG APLC
Enoch H. Liang (CA Bar No. 2   324)
601 S. Figueroa Street, Suite 4025
Los Angeles, CA 90017

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACADEMY OF MOTION PICTURE ARTS AND SCIENCES, a California nonprofit corporation,<br><br> PLAINTIFF(S) <br>v.<br><br>GODADDY.COM, INC., a Delaware corporation; THE GODADDY GROUP INC.; a Delaware corporation; DOMAINS BY PROXY, INC., a Delaware corporation; GREENDOMAINMARKET.COM, an unknown entity; BDS, an unknown entity; and XP DREAMTEAM LLC, a California limited liability company,      DEFENDANT(S). | CASE NUMBER<br><br>CV10  3738  DSF<br>(AGRx)<br><br><br>SUMMONS |

TO:   DEFENDANT(S): _____
_____

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, __LEE TRAN & LIANG APLC_____, whose address is __601 S. FIGUEROA STREET, SUITE 4025, LOS ANGELES, CA  90017_____ . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _____     MAY 1 8 2010

By: **CHRISTOPHER POWERS**
_____
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                    SUMMONS

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
ACADEMY OF MOTION PICTURE ARTS AND SCIENCES

**DEFENDANTS**
GODADDY.COM, INC.; THE GODADDY GROUP INC.; DOMAINS BY PROXY, INC.; GREENDOMAINMARKET.COM; BDS; and XP DREAMTEAM LLC

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
LEE TRAN & LIANG APLC
Enoch H. Liang (CA Bar No. 212324)
601 S. Figueroa Street, Suite 4025, Los Angeles, CA 90017

Attorneys (If Known)

---

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

---

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No    ☒ **MONEY DEMANDED IN COMPLAINT:** $ According to proof.

---

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Cybersquatting under 15 U.S.C. Sec. 1125(d); violation of Cal. Bus. Prof. Code Sec. 17200

---

**VII. NATURE OF SUIT** (Place an X in one box only.)

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Act
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Info. Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Fed. Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury-Med Malpractice
☐ 365 Personal Injury-Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus-Alien Detainee
☐ 465 Other Immigration Actions

**TORTS**
**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 445 American with Disabilities - Employment
☐ 446 American with Disabilities - Other
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence Habeas Corpus
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus/Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety /Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☒ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS-Third Party 26 USC 7609

---

CV10 3738

**FOR OFFICE USE ONLY:**   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No   ☑ Yes
If yes, list case number(s):  See Notice of Related Cases (concurrently filed)

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or

☑ B.  Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or

☑ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Academy of Motion Picture Arts and Sciences - Los Angeles County | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| GreenDomainMarket.com/BDS - Los Angeles County | GoDaddy.com, Inc./The GoDaddy Group Inc./Domains by Proxy, Inc. - Arizona XP DreamTeam LLC - San Diego County |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER):  _____   Date 5/18/10

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |