1  **BRYAN CAVE LLP**
Gregory D. Trimarche, Bar No. 143686
2  Aaron M. McKown, Bar No. 208781
Paula L. Zecchini, Bar No. 238731
3  3161 Michelson Dr., Suite 1500
Irvine, California 92612-4414
4  Telephone:  (949) 223-7000
Facsimile:   (949) 223-7100
5  Email: gregory.trimarche@bryancave.com
        aaron.mckown@bryancave.com
6        paula.zecchini@bryancave.com

7  **BRYAN CAVE LLP**
Kara Cenar, *Pro Hac Vice Pending*
8  161 North Clark Street, Suite 4300
Chicago, IL 60601-3315
9  Telephone:  (312) 602-5000
Facsimile:   (312) 602-5050
10 Email: kara.cenar@bryancave.com

11 **GODADDY.COM, INC./DOMAINS BY PROXY, INC.**
Christine Jones, *Pro Hac Vice Pending*
12 Kelly Lewis, *Pro Hac Vice Pending*
14455 North Hayden Road
13 Scottsdale, AZ 85260

14 Attorneys for Defendants
GODADDY.COM, INC. AND DOMAINS BY PROXY, INC.

15

16           **UNITED STATES DISTRICT COURT**

17           **CENTRAL DISTRICT OF CALIFORNIA**

18

| | |
|---|---|
| 19  ACADEMY OF MOTION PICTURES ARTS AND SCIENCES, a California non-profit corporation, | Case No. CV10-3738 ABC (CW) |
| 20                    Plaintiff, | **DEFENDANTS GODADDY.COM, INC.  AND DOMAINS BY PROXY, INC.'S JOINT NOTICE OF MOTION AND MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 21                    vs. | |
| 22  GODADDY.COM, INC., a Delaware corporation; THE GODADDY GROUP, INC., a Delaware corporation; DOMAINS BY PROXY, INC., a Delaware corporation; GREENDOMAINMARKET.COM, an unknown entity; BDS, an unknown entity; XPDREAMTEAM, LLC, a California limited liability corporation, | |
| 23 | |
| 24 | [Federal Rules of Civil Procedure 12(b)(6) and 12(e)] |
| 25 | |
| 26 | Hearing |
| 27                    Defendants. | Date:       September 20, 2010 Time:       10:00 a.m. |
| 28 | Location:  Courtroom 680 |

1  TO ALL PARTIES AND THEIR COUNSEL OF RECORD

2  PLEASE TAKE NOTICE that on September 20, 2010, at 10:00 a.m., or as

3  soon thereafter as this matter may be heard, before the Honorable Audrey B. Collins

4  in Courtroom 680 of the United States District Court for the Central District of

5  California, located at 312 N. Spring Street, Los Angeles, California, Defendants

6  GoDaddy.com, Inc., and Domains By Proxy, Inc. will, and hereby do, jointly move

7  this Court for an Order, pursuant to Federal Rule of Civil Procedure 12(b)(6),

8  dismissing Causes of Action Nos. One through Five and Nine from the Complaint of

9  Plaintiff Academy of Motion Pictures Arts and Sciences ("AMPAS"), filed on May

10  18, 2010.

11  As more fully explained in the accompanying Memorandum of Points and

12  Authorities, this Motion is made on the grounds that each and every cause of action

13  asserted in the Complaint fails to state a claim for relief against GoDaddy.com, Inc.

14  or Domains By Proxy, Inc. as required by Federal Rule of Civil Procedure 12(b)(6).

15  GoDaddy.com, Inc. and Domains By Proxy, Inc. also move, in the alternative,

16  for a more definite statement of the allegations contained in the Complaint pursuant

17  to Federal Rule of Civil Procedure 12(e). This Motion is made on the grounds that

18  the Complaint is impermissibly vague because it fails to identify the conduct

19  attributable to each defendant and instead referring to each of them in the collective.

20  This Motion is based on this Notice of Motion and Motion, the attached

21  Memorandum of Points and Authorities in support thereof, all pleadings and papers

22  on file in the action, all other matters of which the Court may take judicial notice,

23  and such other and further matters as may be presented to the Court at, or in

24  connection with, the hearing.

25  ///

26  ///

27  ///

28  ///

1

1       This motion is made following the conference of counsel pursuant to Local

2   Rule 7-3, during which the parties met and conferred "to discuss thoroughly . . . the

3   substance of the contemplated motion and any potential resolution."  Specifically,

4   the parties' counsel conferred by telephone on July 2, 7, and 12, 2010.

5

6   Dated:  July 14, 2010

         **BRYAN CAVE LLP**
         Gregory Trimarche

7            Aaron M. McKown
         Paula L. Zecchini

8

9            By:   s/ Aaron M. McKown

10              Aaron M. McKown
         Attorneys for Defendants

11           GODADDY.COM, INC. and DOMAINS
         BY PROXY, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................1

II.   SUMMARY OF ALLEGATIONS ........................................................3

    A.    The Parties ................................................................................3

    B.    GoDaddy.com's Page Parking Services.....................................3

    C.    GoDaddy.com's Trademark Protection Practices .....................4

    D.    The Registration and Parking of the Domain Names at Issue .......4

III.  THE COMPLAINT IS IMPERMISSIBLY UNCERTAIN. ..................5

IV.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST
    GODADDY.COM OR DOMAINS BY PROXY. ....................................6

    A.    Federal Rule of Civil Procedure 12(b)(6) ...............................6

    B.    AMPAS Fails to State a Claim for Violation of the ACPA Against
        GoDaddy.com or Domains by Proxy. ..........................................7

        1.    AMPAS Fails to Allege a Violation of the ACPA by
            GoDaddy.com. ......................................................................7

        2.    AMPAS Fails to Allege a Violation of the ACPA by Domains
            By Proxy.............................................................................15

    C.    AMPAS Fails to State a Claim Against GoDaddy.Com or Domains
        By Proxy on Any of its State Law Claims. .................................17

        1.    AMPAS Fails to State a Claim for Violation of Business &
            Professions Code section 17200 in the Second or Third
            Count. ..................................................................................17

        2.    California Does Not Recognize AMPAS' Fourth Count For
            Unjust Enrichment..............................................................22

        3.    California Law Does Not Recognize AMPAS' Fifth Count
            for Conversion of a Domain Name. ....................................22

        4.    California Law Does Not Recognize AMPAS' Ninth Count
            for Conspiracy. ...................................................................24

V.    CONCLUSION ................................................................................25

MOTION TO DISMISS

# TABLE OF AUTHORITIES

## CASES

*Alfus v. Pyramid Technology Corp.,*
    745 F. Supp. 1511 (N.D. Cal. 1990) ...................................................................... 24

*American Girl, LLC v. Nameview, Inc.,*
    381 F. Supp. 2d 876 (E.D. Wis. 2005) .................................................................... 9

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,*
    7 Cal. 4th 503 (1994) ............................................................................................ 24

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009) ............................................................................................ 6

*Barcelona.com v. Excelentisimo Ayuntamiento De Barcelona,*
    330 F. 3d 617 (4th Cir. 2003) ................................................................................. 7

*Bell Atlantic Corp. v. Twombly,*
    127 S. Ct. 1955 (2007) ...................................................................................... 6, 18

*Berryman v. Merit Prop. Management, Inc.,*
    152 Cal. App. 4th 1544 (2007) ............................................................................. 21

*Big Time Worldwide Concert & Sport Club at Town Center, LLC v. Marriott*
    *International, Inc.,* 236 F. Supp. 2d 791 (E.D. Mich. 2003) ................................. 23

*Bird v. Parsons,*
    127 F. Supp. 2d 885 (S.D. Ohio 2000) ................................................................ 13

*Buckland v. Threshold Enterprises, Ltd.,*
    155 Cal. App. 4th 798 (2007) ............................................................................... 18

*Burlesci v. Petersen,*
    68 Cal. App. 4th 1062 (1998) ............................................................................... 23

*Californians for Disability Rights v. Mervyn's, LLC,*
    39 Cal. 4th 223 (2006) .......................................................................................... 18

*Cel-Tech Committee, Inc. v. L.A. Cellular Telegraph Co.,*
    20 Cal. 4th 163 (1999) ..................................................................................... 20, 22

*Citizens of Humanity, LLC v. Costco Wholesale Corp.,*
    171 Cal. App. 4th 1 (2009) ............................................................................... 18, 19

*Davis v. Ford Motor Credit Co. LLC,*
    179 Cal. App. 4th 581 (2009) ............................................................................... 22

*Ford Motor Co. v. GreatDomains.com, Inc.,*
    177 F. Supp. 2d 635 (E.D. Mich. 2001) ....................................................... 1, 8, 10

*Hamptons Locations, Inc. v. Rubens,*
    2005 U.S. Dist. LEXIS 43888 (E.D.N.Y. 2005) ............................................. 12, 13

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,*
    456 U.S. 844 (1982) ............................................................................................... 9

*Johnnie Walker dba PJ's Automobile Body v. USAA Casualty Insurance Co.,*
    474 F. Supp. 2d 1168 (E.D.Cal. 2007) ................................................................. 19

*Kasky v. Nike, Inc.,*
    27 Cal. 4th 939 (2002) ................................................................. 17
*Klein v. Earth Elements,*
    59 Cal. App. 4th 965 (1997) ....................................................... 20
*Korea Supply Co. v. Lockheed Martin Corp.,*
    29 Cal. 4th 1134 (2003) .......................................................... 18, 19
*Krantz v. BT Visual Images,*
    89 Cal. App. 4th 164 (2001) ....................................................... 21
*Lauriedale Associates, Ltd. v. Wilson,*
    7 Cal. App. 4th 1439 (1992) ....................................................... 22
*Lazar v. Hertz Corp.,*
    69 Cal. App. 4th 1494 (1999) ................................................... 20, 21
*Lockheed Martin Corp. v. Network Solutions, Inc.,*
    141 F. Supp. 2d 648 (N.D. Tex. 2001) ......................................... 8, 9
*McBride v. Boughton,*
    123 Cal. App. 4th 379 (2004) ...................................................... 22
*Meeker v. Meeker,*
    2004 U.S. Dist. LEXIS 22986 (N.D. Cal. 2004) ........................... 23
*Melchior v. New Line Productions, Inc.,*
    106 Cal. App. 4th 779 (2003) ...................................................... 23
*Neles-Jamesbury, Inc. v. Bill's Valves,*
    974 F. Supp. 979 (S.D. Tex. 1997) .............................................. 23
*Papasan v. Allain,*
    478 U.S. 265 (1986) .................................................................... 6
*Puentes v. Wells Fargo Home Mortgage, Inc.,*
    160 Cal. App. 4th 638 (2008) ...................................................... 21
*SMI Industries Canada Ltd. v. Caelter Industries, Inc.,*
    586 F. Supp. 808 (1984) .............................................................. 14
*Scripps Clinic v. Superior Court,*
    108 Cal. App. 4th 917 (2003) ...................................................... 20
*Solid Host, NL v. Namecheap, Inc.,*
    652 F. Supp. 2d 1092 (C.D. Cal. 2009) ....................................... 16
*Veltmann v. Walpole Pharmacy, Inc.,*
    928 F. Supp. 1161 (M.D. Fla. 1996) ............................................ 5
*Vulcan Golf, LLC v. Google, Inc.,*
    2010 U.S. Dist. LEXIS 56786 (N.D. Ill. 2010) ...................... 11, 12, 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOTION TO DISMISS

# STATUTES

15 U.S.C. 1114(2) .................................................................................. 2, 8
15 U.S.C. § 1125(d)(1)(A) ........................................................................ 7
15 U.S.C. § 1125(d)(1)(D) ....................................................................... 10
15 U.S.C. section 1114(2) ................................................................. 7, 8, 9
15 U.S.C. section 1125(d)(1)(A) ............................................................... 7
15 U.S.C. section 1125(d)(1)(D) ........................................................ 7, 11
15 U.S.C. section 1125(d) ......................................................................... 1
FRCP 12(e) ............................................................................................... 5
Prof. Code, § 17200 .................................................................. 2, 17, 19, 20
Prof. Code § 17204 .......................................................................... 18, 20

MOTION TO DISMISS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiff Academy of Motion Picture Arts and Sciences ("AMPAS") filed this lawsuit against Defendants The GoDaddy Group, Inc., GoDaddy.com, Inc., and Domains By Proxy, Inc., based on third party registration of domain names that allegedly infringe upon the trademarks registered to AMPAS.

AMPAS seeks to hold each of these defendants liable for, among other things, violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. section 1125(d) ("ACPA"). In doing so, AMPAS ignores Congressional intent to *prevent* the ACPA "from being trolled as a dragnet, catching every . . . domain name [that] happens—in some small degree—to correspond with a protected trademark." *Ford Motor Co. v. GreatDomains.com, Inc.*, 177 F. Supp. 2d 635, 643 (E.D. Mich. 2001).

AMPAS attempts to do exactly what the express intent of the ACPA seeks to prevent in requesting that this Court enjoin the use of nearly every domain name registered with GoDaddy.com that incorporates letters spelling the words "academy," or "oscar(s)"; all without notification to the actual domain name owners ("registrants"). Even more egregious, however, is AMPAS' seemingly careless and irresponsible inclusion of third party domain names that are not in any way a trademark use of "oscar" or "academy" (e.g., Jay Leno's cars as AMPAS' accused domain names "jaylenoscars.com" and "jaylenoscars.net," Cos Car Audio Sales as AMPAS' accused domain name "coscaraudiosales.com," and the accused domain names "oscari.net" and "oscardoesitagain.com"). AMPAS' attempt to hold "GoDaddy" liable for the registration of such domain names is an improper use of the ACPA and an abuse of both its trademark rights and the pleading requirements under the Federal Rules.

Regardless, AMPAS fails to allege facts demonstrating that any of the defendants violated the ACPA. AMPAS admits as much with regard to The GoDaddy Group, which is referenced only once in the Complaint as the parent

1 | company of GoDaddy.com.[1]  Indeed, throughout the Complaint, The GoDaddy
2 | Group, GoDaddy.com, and Domains By Proxy are collectively referred to as the
3 | single actor "GoDaddy."  On this defect alone, the Court should require AMPAS to
4 | file an amended complaint pursuant to Federal Rule of Civil Procedure 12(e).

5 |       The Complaint is also deficient under the standard set forth in Federal Rule of
6 | Civil Procedure 12(b)(6).  With regard to the ACPA claim asserted against
7 | GoDaddy.com and Domains By Proxy, AMPAS fails to allege facts to state a claim
8 | against either entity.  GoDaddy.com, as a domain name registrar, is insulated by the
9 | "safe harbor" provisions of 15 U.S.C. 1114(2)(D).  Moreover, AMPAS fails to plead
10 | facts demonstrating that either GoDaddy.com or Domains By Proxy, as a domain
11 | name privacy service, "register[ed], traffic[ked] in, or use[d]" the domain names at
12 | issue "with the bad-faith intent to profit" from AMPAS' registered trademarks.

13 |       The state law claims submitted by AMPAS are similarly deficient.  AMPAS
14 | lacks standing to assert a claim for violation of California Business and Professions
15 | Code section 17200 and, regardless, fails to plead facts supporting an unfair or
16 | unlawful business practice on the part of GoDaddy.com or Domains By Proxy.  The
17 | claim for conversion fails as a matter of law because California does not recognize a
18 | claim for conversion of a domain name based solely on one's trademark rights.  The
19 | claims for unjust enrichment and civil conspiracy also fail because neither is a
20 | recognized independent cause of action under California law.

21 |       AMPAS fails to state a claim under any theory against GoDaddy.com or
22 | Domains By Proxy.  The Court should dismiss the Complaint as to these entities or,
23 | in the alternative, require AMPAS to file an amended pleading identifying the
24 | specific conduct attributed to each of the named defendants.
25 | ///

26 |

27 | [1]    Recognizing the improvident filing of the claims asserted against The GoDaddy
28 | Group, AMPAS dismissed The GoDaddy Group from this action.

1    **II.**    **SUMMARY OF ALLEGATIONS**

2      **A.**    **The Parties**

3      AMPAS is a non-profit corporation with trademark rights in the marks,

4 "OSCAR®," "OSCARS®," "OSCAR NIGHTS®," "ACADEMY AWARD®," and

5 "ACADEMY AWARDS®." Comp., ¶ 2.

6      GoDaddy.com is the world's leading ICANN-accredited domain name

7 registrar for .COM, .NET, .ORG, .INFO, .BIZ, and .US domain extensions. *See*

8 Comp., ¶ 14. In that capacity, GoDaddy.com acts as the registrar for over forty (40)

9 million domain names. *See id.*

10      Domains By Proxy offers private domain name registration services on behalf

11 of domain name registrants. *See* Comp., ¶¶ 15, 25.

12      **B.**    **GoDaddy.com's Page Parking Services**

13      GoDaddy.com offers page parking as a free service to those customers who

14 register a domain name through GoDaddy.com. *See id.* at ¶¶ 32, 33. After a person

15 has registered a domain name, but before a fully designed webpage is generated, the

16 domain name registrant may create a temporary webpage offering the domain name

17 for sale, explaining that the webpage is under construction, or that the space is

18 available for advertising, among other things. *See* Comp., Exh. 11 at ¶ 29. These

19 temporary webpages are commonly referred to as "parked pages" meaning that the

20 domain name is parked on the Internet. *See id.*

21      While the domain name is "parked," the registrant may elect to participate in

22 one of various programs that allow the registrant, a registrar such as GoDaddy.com,

23 and advertisers to earn money from the "parked" page. *See id.*, Exh. 11 at ¶ 30.

24 This practice is commonly known as "domain parking." *See id.*

25      In addition to the page parking service, GoDaddy.com also offers domain

26 name parking services through its Cash Parking program. *See id.* at ¶ 37. Under

27 this program, GoDaddy.com grants a domain name registrant a license to use

28 GoDaddy.com's platform for providing advertising links on parked pages. *See id.* at

1   ¶ 38.  The advertising links themselves are not placed on the parked page by

2   GoDaddy.com, but rather, are placed on the parked page by one of GoDaddy.com's

3   advertising customers.  *See id.* at ¶ 37.  GoDaddy.com further allows the domain

4   name registrant to generate revenue from such links and to receive a portion of the

5   revenue generated.  *See id.* at ¶ 38.

6   Registrants that participate in GoDaddy.com's page parking and domain

7   parking programs do *not* license the use of their domain names to GoDaddy.com.

8   *See* Comp., ¶¶ 32, 33, 37, 38; Exh. 12, 17.

9   **C.    GoDaddy.com's Trademark Protection Practices**

10   GoDaddy.com "supports the protection of intellectual property, and has

11   developed policies and procedures to assist intellectual property right owners in the

12   protection of their brands."  Comp., Ex. 17, ¶ 3.  As part of its comprehensive

13   trademark protection practices, GoDaddy.com requires every domain name owner

14   utilizing its parked page services, including those utilizing GoDaddy.com's Cash

15   Parking program, to represent and warrant that:  (1) the parked webpage does not

16   "violate . . . any third party rights;" (2) the owner has no knowledge of any

17   "infring[ment] or conflict[] with the legal rights of a third party or a third party's

18   trademark or trade name;" and (3) that the registrant's website "conforms to all

19   local, state, federal, and internal laws."  Comp., ¶ 33; Ex. 12 at ¶ 3; Ex. 17 at ¶

20   4(iv)(a).  Indeed, GoDaddy.com has a policy of terminating its relationship with

21   "customers and account holders who are repeat infringers of trademarks or any other

22   intellectual property."  Comp., Ex. 17, ¶ 3.

23   **D.    The Registration and Parking of the Domain Names at Issue**

24   Despite GoDaddy.com's trademark protective efforts, AMPAS alleges that

25   domain names incorporating its trademarks and/or words confusingly similar to

26   these marks were illegally registered by GoDaddy.com, as a domain name registrar,

27   and by Domains By Proxy, as a domain name privacy registration service.  *See*

28   Comp., ¶¶ 2, 14, 15, and 23.  AMPAS further alleges the registrants of these domain

1  names utilize GoDaddy.com's page parking services to generate revenue for
2  themselves, GoDaddy.com, and GoDaddy.com's advertising partners. *See* Comp.,
3  ¶¶ 3, 32, 38.

4      AMPAS seeks to hold GoDaddy.com and Domains By Proxy liable for the
5  third party registration of these allegedly infringing domain names because
6  GoDaddy.com earns revenues from the advertisements registrant's place on their
7  websites while Domains By Proxy allows a domain name owner to register a
8  domain name without revealing her identity at the time of registration. *See* Comp.,
9  ¶¶ 23, 25.

10 **III.    THE COMPLAINT IS IMPERMISSIBLY UNCERTAIN.**

11     Where "a pleading to which a responsive pleading is permitted is so vague or
12 ambiguous that a party cannot reasonably be required to frame a responsive
13 pleading, the party may move for a more definite statement before interposing a
14 responsive pleading." Fed. R. Civ. P. 12(e).

15     In this case, the Complaint filed by AMPAS is impermissibly vague and
16 ambiguous because it makes only general allegations against The GoDaddy Group,
17 Godaddy.com, and Domains By Proxy as a collective group. *See* Fed. R. Civ. P.
18 12(e). The Complaint does not differentiate between the conduct of each of the
19 named defendants nor explain how the alleged conduct of *each* defendant injured
20 AMPAS. Instead, AMPAS almost exclusively refers to the three defendants as the
21 single actor "GoDaddy" or "Defendants" *See, e.g.*, Comp., ¶¶ 16, 17, 22-34, 37-39,
22 41-43 46-63, 67-73, 76-79, 81-88, 89-93.

23     AMPAS should be required to "separate each act by each defendant into
24 individually numbered paragraphs" so that the defendants may "ascertain from the
25 Complaint which defendant committed which alleged act," especially now that The
26 GoDaddy Group has been dismissed. *Veltmann v. Walpole Pharmacy, Inc.*, 928 F.
27 Supp. 1161, 1164 (M.D. Fla. 1996).

28 ///

## IV. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST GODADDY.COM OR DOMAINS BY PROXY.

### A. Federal Rule of Civil Procedure 12(b)(6)

Although a court, in ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), must accept as true properly pleaded factual allegations in a complaint, a plaintiff cannot survive a motion to dismiss simply by making conclusory assertions that track the elements of a cause of action. *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("Although . . . we must take all the factual allegations as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.").

Indeed, in *Twombly*, the Supreme Court expressly *rejected* the proposition that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69 (holding that "[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard," and that the phrase "has earned its retirement").

To avoid a Federal Rule of Civil Procedure 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1939 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.

///

1    As discussed below, AMPAS fails to state a claim for relief against
2  GoDaddy.com or Domains By Proxy with respect to any of the six claims asserted.

3    **B.    AMPAS Fails to State a Claim for Violation of the ACPA Against**
4           **GoDaddy.com or Domains by Proxy.**

5    The ACPA is primarily intended to protect against cybersquatters, not
6  registrars of domain names. *See Barcelona.com v. Excelentisimo Ayuntamiento De*
7  *Barcelona*, 330 F. 3d 617, 624 (4th Cir. 2003). As such, ACPA imposes liability
8  only on one who "registers, traffics in, or uses" certain kinds of misleading domain
9  names with a bad-faith intent to profit from the allegedly infringing marks. 15
10  U.S.C. section 1125(d)(1)(A). The range of potential defendants is further narrowed
11  by 15 U.S.C. section 1125(d)(1)(D), which states, "[a] person shall be liable for
12  using a domain name under subparagraph (A) only if that person is the domain name
13  registrant or that registrant's authorized licensee." *Id.*

14    The Complaint does not and cannot allege that either GoDaddy.com or
15  Domains By Proxy violated the ACPA. As an initial matter, GoDaddy.com, as a
16  registrar, is protected by the safe harbor provisions of 15 U.S.C. section
17  1114(2)(D)(iii). Moreover, AMPAS fails to allege that either GoDaddy.com or
18  Domains By Proxy "registered, trafficked in, or used" the domain names at issue as
19  a "registrant or the registrant's authorized licensee" or that any such use was
20  committed in "bad faith with the intent to profit" from the allegedly infringed marks.

21    1.    AMPAS Fails to Allege a Violation of the ACPA by
22           GoDaddy.com.

23    The ACPA creates a cause of action for cybersquatting against anyone who
24  (1) registers, (2) traffics in, or (3) uses a domain name that is identical or
25  confusingly similar to a trademark with the bad-faith intent to profit from the
26  goodwill associated with the mark. *See* 15 U.S.C. § 1125(d)(1)(A). Despite
27  conclusory allegations that "GoDaddy" "registered," "trafficked," and "used" the
28  domain names at issue, AMPAS fails to allege *facts* that would give rise to a claim.

a.   GoDaddy.com Cannot Be Held Liable for "Registering"
the Domain Names at Issue.

As defined by the ACPA, the word "register," refers to a person who presents a domain name for registration, not to the registrar. *See Lockheed Martin Corp. v. Network Solutions, Inc.,* 141 F. Supp. 2d 648, 655 (N.D. Tex. 2001). Here, AMPAS alleges that GoDaddy.com is the *registrar* of the allegedly infringing domain names, not the registrant, and thus, cannot be liable for registering the domain names at issue. *See* Comp., ¶ 14. In fact, 15 U.S.C. section 1114(2)(D)(iii) provides a "safe harbor" for GoDaddy.com as a registrar under the ACPA:

> A domain name registrar, a domain name registry, or other domain name registration authority shall not be liable for damages under this section for the registration or maintenance of a domain name for another absent a showing of bad faith intent to profit from such registration or maintenance of the domain name.

15 U.S.C. § 1114(2)(D)(iii); *see also Lockheed Martin,* 141 F. Supp. 2d at 655.

In light of the ACPA's safe harbor provision, GoDaddy.com can be liable only for "registering" the domain names at issue if AMPAS alleges facts demonstrating that GoDaddy.com performed its registration services with the requisite "bad faith intent to profit" from the domain names *at the time of registration.* AMPAS makes no such allegation. AMPAS does not allege that at the time GoDaddy.com registered each of the domain names at issue, it had the requisite bad faith intent to profit from the registration. Nor could AMPAS make such an allegation as GoDaddy.com is not aware of the intended use by the registrant at the time of registration. *See Ford Motor Co. v. Greatdomains.com, Inc.,* 177 F. Supp. 2d 635, 645-46 (E.D. Mich. 2001) (refusing to require Great Domains to engage in the complex process of determining infringement at the time of registration).

The only "bad faith" allegations related to GoDaddy.com's registration of the domain names at issue are based on GoDaddy.com's alleged failure to perform a gatekeeping function after being advised that it previously registered domain names containing trademarks registered by AMPAS. *See, e.g.,* Comp., ¶ 43. Registrars,

1    however, "are not obliged to examine domain names to ensure that the registrant is

2    not violating the rights of a third-party" and courts have repeatedly precluded

3    liability in the face of such allegations. *American Girl, LLC v. Nameview, Inc.*, 381

4    F. Supp. 2d 876, 881 (E.D. Wis. 2005) (citing *Lockheed Martin*, 141 F. Supp. 2d at

5    651); *see also Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844,

6    854 n. 13 (1982) (stating that for contributory liability to lie, a defendant must do

7    more than "reasonably anticipate" a third party's infringing conduct).

8         As explained by the court in *Lockheed Martin*, it was the recognition that a

9    registrar could not possibly examine every domain name for infringement that led to

10   the enactment of the safe harbor provision:

11          It is quite understandable that Congress did not cause defendant as a
            domain name registrar, or as a keeper of the registry, to be subject to
12          civil liability under § 1125(d).   Although plaintiff now tries to
            backtrack somewhat from the position that defendant as registrar
13          should perform gatekeeper functions for mark owners, even the
            modified gatekeeper role it now proposes is untenable. Sheer volume
14          alone would prohibit defendant performing the role plaintiff would
            assign.   Defendant simply could not function as a registrar, or as
15          keeper of the registry, if it had to become entangled in, and bear the
            expense of, disputes regarding the right of a registrant to use a
16          particular domain name. The fact that defendant could theoretically
            do what plaintiff asks does not mean that defendant is obligated to do
17          so at the risk of financial ruin.

18   *Lockheed Martin*, 141 F. Supp. 2d at 655.

19        As AMPAS stated in the Complaint, GoDaddy.com is the world's leading

20   ICANN-accredited domain name registrar. *See* Comp., ¶ 14. In that capacity,

21   GoDaddy.com has registered over forty (40) million domain names. *See id.* As

22   recognized by *Lockheed II*, the sheer volume of applications prohibits

23   GoDaddy.com from examining every domain name sought to be registered. Indeed,

24   it is specifically *exempted* from acting as such a gatekeeper under the ACPA.

25        Absent allegations of a bad faith intent by GoDaddy.com at the time of

26   registration of the domain names at issue, GoDaddy.com's activities in registering

27   (or re-registering) domain names is protected by the safe harbor provisions of 15

28   U.S.C. section 1114(2)(d)(iii).

IR01DOCS452418.1                              9

                                                         MOTION TO DISMISS

b.   AMPAS Cannot Plead Facts Alleging That GoDaddy.com "Trafficked" in the Domain Names at Issue.

Pursuant to Section 1125(d)(1)(E), the phrase "traffics in" for purposes of the ACPA means "transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration."

Despite the broad language of the statute, courts have interpreted the statutory scheme of the ACPA to require "a direct transfer or receipt of ownership interest in a domain name to or from the defendant" before liability will attach under the "trafficking" prong. *Greatdomains.com, Inc.*, 177 F. Supp. 2d at 646. In recognition of the "direct transfer" requirement, courts have made clear that ancillary services such as hosting, auctioning, or privacy domain name services do not constitute "trafficking" of the domain name where the "property interests associated with each domain name remain" with the domain name registrant. *Id.*

While the Complaint alleges in conclusory fashion that GoDaddy.com "trafficked" in the domain names at issue, AMPAS does not allege a direct transfer or receipt of ownership of a domain name to or from GoDaddy.com (or Domains By Proxy) to support a claim of "trafficking" under the ACPA. This failure is also fatal to any claim of bad faith. "In addition to the plain meaning of 'traffics in,' the bad faith element further mandates that the ACPA be limited in its application to persons directly transferring or receiving a property interest in the domain name at issue." *Greatdomains.com, Inc.*, 177 F. Supp. 2d at 646. As a result, GoDaddy.com cannot be liable for "trafficking" in the domain names at issue under the ACPA.

c.   AMPAS Fails to Plead Facts Alleging That GoDaddy.com "Used" the Domain Names at Issue.

The ACPA expressly limits liability for "use" of a domain name to use by the domain name "registrant or the registrant's authorized licensee." 15 U.S.C. § 1125(d)(1)(D). The Complaint fails to allege any facts to support the conclusion

1   that GoDaddy.com is, or at any time was, the registrant or the "authorized licensee"

2   of the registrants for the domain names at issue, as required by 15 U.S.C. section

3   1125(d)(1)(D). AMPAS also fails to allege that GoDaddy.com "used" the domain

4   names at issue as defined by the ACPA, or that any such use was done in bad faith.

5        Although AMPAS asserts that GoDaddy.com is a "licensee" of the registrants

6   for the domain names at issue, the only basis in the Complaint for conclusory

7   allegation is the registrants' participation in the "parked page" and "cashparking"

8   services offered by GoDaddy.com. *See* Comp., ¶¶ 32, 34, 37. In support of this

9   position, AMPAS cites to the sample parking agreements located on

10  GoDaddy.com's webpage and attached to the Complaint as Exhibits 12 and 17. *See*

11  Comp., ¶ 33; Exs. 12 and 17.

12       These exhibits, however, do not support AMPAS' contention that

13  GoDaddy.com received a license to operate the domain names at issue. In fact, the

14  language of these agreements belies any such claim. For example, Exhibit 12 (the

15  former servicing agreement) does not create a licensing agreement between

16  GoDaddy.com and any participant in its Cash Parking Program. *See generally,*

17  Comp., Ex. 12. Rather, the registrant of the domain name merely allowed

18  GoDaddy.com's affiliates to place advertising content on a domain name

19  registrant's parked page. *See id.* The mere grant of permission to place such

20  content on a website neither constitutes nor creates a license in the allegedly

21  infringing domain name. *See Vulcan Golf, LLC v. Google, Inc.*, 2010 U.S. Dist.

22  LEXIS 56786, *19, n. 4 (N.D. Ill. June 9, 2010).

23       The same is true with respect to Exhibit 17 (the revised servicing agreement).

24  As demonstrated by Exhibit 17, the revised servicing agreement does not establish a

25  license in domain name in favor of GoDaddy.com. Rather, it is GoDaddy.com who

26  "grants [the domain name registrant] a non-exclusive license to use the [cash

27  parking services]" offered by GoDaddy.com. Comp., ¶ 38, lines 12-21; Ex. 17, ¶ 1.

28

1   In other words, GoDaddy.com is the licensor of its services, not a licensee of the

2   domain names. *See* Comp., Ex. 12 and 17.

3       Courts facing similar facts have refused to impose a license between two

4   parties to an internet advertising agreement where the agreement did not expressly

5   license the domain name to the other party. *See Vulcan Golf*, 2010 U.S. Dist.

6   LEXIS 56786, *19, n. 4 (N.D. Ill. 2010); *Hamptons Locations, Inc. v. Rubens*, 2005

7   U.S. Dist. LEXIS 43888, *23-24 (E.D.N.Y. 2005).

8       In *Vulcan Golf*, the plaintiff filed suit against Google claiming that Google's

9   AdSense for Domains ("AFD") program constituted cybersquatting under the

10  ACPA.  With respect to some of the domain names at issue, Google had entered into

11  an express licensing agreement whereby Google was granted a non-exclusive

12  license in the domain names. *See id.* at *12-*13 ("Customer grants Google

13  Technology a worldwide, sublicensable (to corporate affiliates of Google

14  Technology), non-exclusive, fully paid up, royalty free right and license to use the

15  domain names . . . .").  The court held that, for the purposes of the ACPA, Google

16  was the registrant's licensee "[t]o the extent that the [express] license provision

17  existed in relevant contracts between Google and its AFD partners who had

18  registered the domain names at issue." *Id.* at *18-*19.

19      The *Vulcan Golf* court, however, rejected plaintiff's attempt to expand

20  Google's liability beyond those instances where Google had entered into an

21  agreement with a registrant that contained a provision expressly licensing the use of

22  the domain names to Google. *See id.* at *19, n. 4.  As the court noted,

23
24          the plaintiffs argue that regardless of whether the license language is
            actually used in the agreement, Google should be held to be a licensee
25          because the "effect is the same" in that "Google receives the right to
            use the domains in the AFD program and to show advertising which
26          generates revenue for Google and others, all predicated on capturing
            traffic using Plaintiffs' valuable trademarks."  But the plaintiffs do not
27          point to any authority in support of their contention that a license can
            exist in such circumstances and the court rejects this argument.

28  *Id.*

1    The same holding was reached in *Hamptons Locations*. In *Hamptons*
2 *Locations*, a competitor brought suit against a husband and wife's architecture
3 company, and their son, alleging that they registered and operated a confusingly
4 similar domain name. *Id.* at *1-2. The court found sufficient allegations that the
5 son had in fact registered the domain name, but nonetheless dismissed the ACPA
6 claims against the parents on the ground that, although the domain name was used in
7 connection with their business, they had not registered the domain name, and their
8 son had not licensed the domain name to them. *See id.* at *23-24. Rather, the son
9 merely allowed his parents to use the domain name for their website. *See id.*

10    The result should be no different here than it was in *Vulcan Golf* and
11 *Hamptons Locations*. AMPAS cannot and does not point to any agreement between
12 GoDaddy.com and any of the domain name registrants that grants to GoDaddy.com
13 a license to use or operate the domain name. Neither the servicing agreements
14 attached to the Complaint nor the domain name registration agreement referenced in
15 Paragraph 33 provide for such a license. Nor can one be implied. Absent an
16 express licensing agreement between GoDaddy.com and the domain name
17 registrants for use of the domain names at issue, GoDaddy.com cannot be deemed
18 an "authorized licensee" under the ACPA as a matter of law. *See Vulcan Golf*, 2010
19 U.S. Dist. LEXIS 56786, at *18-*19, n. 4; *Hamptons Locations*, 2005 U.S. Dist.
20 LEXIS 43888 at *23-24. As such, AMPAS fails to state a claim against
21 GoDaddy.com based on its alleged "use" of the website.

22    AMPAS also fails to allege that GoDaddy.com "used" the domain names at
23 issue within the meaning of that term under the ACPA. As with "trafficking,"
24 courts have repeatedly made clear that ancillary services such as hosting, auctioning,
25 or otherwise supporting the website owner do not constitute "use" of a domain
26 name. *See Bird v. Parsons*, 127 F. Supp. 2d 885, 888 (S.D. Ohio 2000).

27    Yet even if AMPAS is somehow able to allege that GoDaddy.com "used" the
28 domain names at issue, AMPAS does not allege that any such "use" was done with

1   the requisite "bad faith intent to profit."  In support of its "bad faith" claim regarding

2   GoDaddy.com's alleged "use" of the domain names at issue, AMPAS alleges that

3   GoDaddy.com's offering of the Cash Parking program, and its ultimate use by the

4   domain name registrants, constitutes a bad-faith intent to profit *specifically* from the

5   registered trademarks at issue. *See* Comp., ¶ 29.  However, the conclusory

6   statements that GoDaddy.com "conspired" with the registrants to monetize the

7   domain names containing AMPAS' trademarks are insufficient to allege bad faith

8   on the part of GoDaddy.com under the ACPA as a matter of law.

9        AMPAS alleges no more than the fact that registrants for the domain names at

10  issue availed themselves of the same services offered to the forty (40) million other

11  domain names registered by GoDaddy.com. *See* Comp., ¶ 14.  AMPAS does not

12  allege that GoDaddy.com *specifically* sought out the registrants for the domain

13  names at issue for inclusion in its parking programs.  Nor does AMPAS claim that

14  GoDaddy.com offered services *specifically* to the registrants for the domain names

15  at issue that were any different than those offered to other GoDaddy.com customers.

16       Ultimately, AMPAS only alleges that GoDaddy.com failed to perform a

17  gatekeeping function in the operation of its page parking services.  This alleged

18  failure does not provide a basis for liability under the ACPA, nor does it support a

19  *prima facie* case of bad faith in the "use" of the domain names.

20       The facts alleged by AMPAS do not meet the "plausibility standard" required

21  by *Iqbal* for establishing that GoDaddy.com had a *specific* bad-faith intent to profit

22  from any of AMPAS' trademarks.  Indeed, far from demonstrating bad faith on the

23  part of GoDaddy.com, AMPAS alleges facts establishing GoDaddy.com's *good*

24  *faith* efforts to ensure that third party intellectual property rights are not infringed.

25       The protection of a trademark is a duty primarily reserved to the owner of the

26  mark. *See SMI Industries Canada Ltd. v. Caelter Industries, Inc.*, 586 F. Supp. 808,

27  822 (1984).  Nonetheless, GoDaddy.com has undertaken efforts to ensure that it

28  does not inadvertently assist in the violation of third party intellectual property

1  rights.  For example, The GoDaddy Group has applied for a patent on a program

2  that would allow it to monitor domain names for infringing uses.  *See* Comp., Ex.

3  11.  GoDaddy.com also requires each of the registrants that license its Cash Parking

4  software to agree that their domain name does not "infringe[] upon or conflict[] with

5  the legal rights of a third party or a third party's trademark or trade name."  Comp.,

6  Ex. 12 at ¶ 2.  The Complaint also demonstrates, by inference from the allegations

7  *not* contained therein, that GoDaddy.com takes its commitment to compliance with

8  intellectual property seriously—taking immediate action to disable those domain

9  names that are claimed to include an infringing trademark upon notification by a

10  trademark owner.  *See* Comp., ¶ 43.  Thus, not only does AMPAS fail to allege facts

11  to support its conclusory allegations of bad faith by GoDaddy.com, but the facts

12  AMPAS does allege actually compel the contrary conclusion.  As such, the Court

13  should dismiss AMPAS' claim for violation of the ACPA as to GoDaddy.com.

14          2.    <u>AMPAS Fails to Allege a Violation of the ACPA by Domains</u>

15              <u>By Proxy.</u>

16        The Complaint's reference to Domains By Proxy by way of the collective

17  term "GoDaddy" makes it difficult to distinguish exactly which acts Domains By

18  Proxy is alleged to have committed in the context of the ACPA.  The only specific

19  allegations against Domains By Proxy relate to its proxy service role in the

20  registration of certain domain names on behalf of private registrants.[2]  What is clear

21  from the allegations, however, is that Domains by Proxy is not the actual registrant

22  of any of the domain names at issue.  *See* Comp., ¶ 25.  This admission, combined

23  with AMPAS' failure to allege that Domains By Proxy was a licensee of any

24  registrant, renders the ACPA claim against Domains By Proxy insufficient as a

25  matter of law.

26  [2]    To the extent that AMPAS argues Domains By Proxy somehow "trafficked" or

27  "used" the domain names at issue, Domains By Proxy incorporates by reference the same

28  law and arguments made by GoDaddy.com in Section IV., C., *supra*.

1    Even assuming AMPAS' contradictory allegations regarding Domains By

2    Proxy's registrant status are sufficient to meet the requirements of the ACPA,

3    AMPAS fails to allege facts sufficient to support a claim that Domains By Proxy

4    acted with a "bad faith intent to profit" from the registrations.  AMPAS alleges only

5    that "the anonymity offered by Domains by Proxy has facilitated the unauthorized

6    license, use, trafficking in, conversion and monetization of Internet domain names."

7    Comp., ¶ 15.  The offering of domain name registration privacy services alone,

8    however, is not actionable under the ACPA.  *See Solid Host, NL v. Namecheap, Inc.*,

9    652 F. Supp. 2d 1092, 1105 (C.D. Cal. 2009).

10    In order to meet the bad faith requirement of 15 U.S.C. section 1125(d)(1)(D)

11    with regard to a domain privacy company, plaintiff must allege some misconduct

12    other than the mere provision of domain name registration privacy services.  *See*

13    *Solid Host*, 652 F. Supp. 2d at 1097.  For example, the court in *Solid Host* found that

14    the plaintiff had met its pleading burden with respect to the bad faith claim because,

15    in addition to alleging that the defendant provided domain name registration privacy

16    services, the complaint also alleged that the defendant refused to reveal the

17    customer's identity after the plaintiff requested it, and even after being provided

18    with evidence that its customer stole the domain name.  *See id.*  In other words, a

19    defendant's bad faith refusal to disclose the identity of the domain name owners is

20    required before a privacy services company can be held liable under the ACPA.

21    No such allegations exist here.  AMPAS does not allege that it requested the

22    identity of Domains By Proxy's customers, let alone that Domains By Proxy refused

23    to provide such information.  The lack of any such allegations against Domains By

24    Proxy renders AMPAS' claim insufficient to meet the pleading requirements

25    imposed by the ACPA.  As such, the Court should dismiss AMPAS' claim for

26    violation of the ACPA as to Domains By Proxy.

27    ///

28    ///

IR01DOCS452418.1

MOTION TO DISMISS

C.   **AMPAS Fails to State a Claim Against GoDaddy.Com or Domains By Proxy on Any of its State Law Claims.**

The Complaint contains four state law claims against GoDaddy.com and Domains by Proxy:  Unfair Practices Act violations (counts 2 and 3); unjust enrichment (count 4); conversion (count 5); conspiracy (count 9).  Each claim fails.

1.   AMPAS Fails to State a Claim for Violation of Business & Professions Code section 17200 in the Second or Third Count.

In counts two and three, AMPAS vaguely asserts that "GoDaddy's" conduct was "unfair" and "unlawful" in violation of California's Unfair Competition Law ("UCL"), Business & Professions Code section 17200 *et seq.*  In support of its UCL claim, AMPAS incorporates the same allegations of conduct set forth in its failed ACPA claim, i.e., that GoDaddy.com and Domains By Proxy "register[], traffic[] in, or use[]" domain names that allegedly infringe on AMPAS' trademarks "with bad faith intent to profit from [those] marks."  Comp., ¶¶ 64-71; 74-78.

AMPAS' claims fail because AMPAS lacks standing to assert a violation of the UCL.  AMPAS also fails to adequately allege an unlawful or unfair business practice of either GoDaddy.com or Domains By Proxy.

a.   AMPAS Lacks Standing to Assert a UCL Claim.

AMPAS seeks restitution and injunctive relief for alleged violations of the UCL.  It is entitled to neither and, as a result, lacks standing to pursue these claims.

The UCL permits civil recovery for "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Bus. & Prof. Code, §§ 17200, 17203.  The UCL's purpose is to protect consumers and competitors from unlawful, unfair, or fraudulent business practices "by promoting fair competition in commercial markets for goods and services."  *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002).

Prior to the passage of Proposition 64 in 2004, California law authorized any person acting for the general public to sue for relief from unfair competition.

1  *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 227 (2006).

2  Proposition 64 amended Business & Professions Code section 17204 to provide that

3  an individual has standing to pursue a claim for violation of the UCL only if he or

4  she "has suffered injury in fact and has lost money or property as a result of the

5  unfair competition." Bus. & Prof. Code § 17204; *Mervyn's*, 39 Cal. 4th at 228.  The

6  proposition also amended section 17203—the statute authorizing injunctive relief

7  and class actions—by adding the following words: "Any person may pursue

8  representative claims or relief on behalf of others only if the claimant meets the

9  standing requirements of Section 17204 . . . ." Bus. & Prof. Code § 17203;

10  *Mervyn's*, 39 Cal. 4th at 228-29.

11    "Because remedies for individuals under the UCL are restricted to injunctive

12  relief and restitution, the import of [section 17204] is to limit standing to individuals

13  who suffer losses of money or property that are eligible for restitution." *Buckland v.*

14  *Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798, 817 (2007); *accord Citizens of*

15  *Humanity, LLC v. Costco Wholesale Corp.*, 171 Cal. App. 4th 1, 22 (2009).

16  Restitution allows a plaintiff "to recover money or property in which he or she has a

17  vested interest." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134,

18  1149 (2003).

19    Here, AMPAS does not allege facts showing that it sustained an injury in fact

20  *and* lost money or property as a result of GoDaddy.com's or Domains By Proxy's

21  alleged actions; the conclusory allegation that AMPAS "lost money or property and

22  suffered injury in fact" is insufficient to establish standing under the UCL.  *See*

23  Comp., ¶¶ 66, 76; *Twombly*, 127 S. Ct. 1955 at 1964-65.

24    The claim for restitution contained in the Complaint fails under the California

25  Supreme Court's decision in *Korea Supply* because AMPAS never had an

26  "ownership interest" in any money received by GoDaddy.com or Domains By

27  Proxy.  As a result, AMPAS cannot seek restitution under Business & Professions

28  Code section 17203.  Despite the claim that AMPAS is entitled to restitution of "all

1  monies wrongfully obtained by Plaintiff," the Complaint does not contain a single
2  allegation that AMPAS paid any money to or lost property to either GoDaddy.com
3  or Domains by Proxy. Comp., ¶¶ 73, 39. To the extent AMPAS seeks "restitution"
4  of the goodwill it claims to have lost or of any lost business opportunity,
5  compensation for such claims is "a measure of damages and not restitution." *Korea*
6  *Supply*, 29 Cal. 4th at 1151; *Citizens of Humanity*, 171 Cal. App. 4th at 22 (holding
7  that harm to a company's goodwill does not constitute a "loss of money or property
8  as a result of unfair competition sufficient to confer standing" for a UCL claim).

9       Insofar as the UCL claim asserted by AMPAS seeks disgorgement of any
10  monies received by GoDaddy.com and Domains By Proxy as a result of its alleged
11  business practices, such a claim for damages is similarly unavailable to confer
12  standing. Disgorgement is available in a UCL action only to the extent that it
13  constitutes restitution. *See Korea Supply*, 29 Cal. 4th at 1151.

14      Because AMPAS lacks standing to pursue a claim for restitution under
15  Business & Professions Code section 17203, it also lacks standing, as a matter of
16  law, to seek injunctive relief under Business & Professions Code section 17204
17  because both statutes require that a plaintiff have suffered an injury in fact *and* have
18  "lost money or property." *Johnnie Walker dba PJ's Auto Body v. USAA Casualty*
19  *Ins. Co.*, 474 F. Supp. 2d 1168, 1173-74 (E.D.Cal. 2007).

20      In *Johnnie Walker*, the court concluded that standing under Section 17204 for
21  injunctive relief should be interpreted in the same way as "standing" is interpreted
22  under Section 17203 for plaintiffs seeking restitution, i.e., as interpreted in *Korea*
23  *Supply*. *See id.* Accordingly, because AMPAS lacks standing to pursue a claim for
24  restitution under Business and Professions Code section 17203, AMPAS also lacks
25  standing to pursue a claim for injunctive relief under Section 17204.

26      AMPAS did not—and cannot—allege that it lost any money or property *in*
27  *which it had an ownership interest* as a result of the alleged business practices of
28  GoDaddy.com or Domains By Proxy. Absent such an allegation, AMPAS does not

1 have standing to prosecute an action under the UCL and the Court should dismiss

2 AMPAS' claims for violation of Business and Professions Code section 17200.

3                  b.     <u>AMPAS Fails to Allege an Unlawful or Unfair Practice to</u>

4                      <u>Support its UCL Claim Under Section 17200.</u>

5       Even assuming that AMPAS is able to plead facts sufficient to confer

6 standing, AMPAS fails to state a claim for relief under either the "unlawful" or

7 "unfair" prong of Section 17200.

8       The UCL prohibits unlawful, fraudulent and unfair business practices. *See*

9 Bus. & Prof. Code § 17200. For a business to be "unlawful," a predicate violation

10 of an applicable statute or regulation must be shown. *See Lazar v. Hertz Corp.*, 69

11 Cal. App. 4th 1494, 1505 (1999). To show a business practice is "unfair," the

12 plaintiff must demonstrate that the harm to the victim outweighs the utility of the

13 defendant's conduct. *Klein v. Earth Elements*, 59 Cal. App. 4th 965, 969-970

14 (1997).

15       With regard to the alleged conduct of GoDaddy.com, AMPAS cannot use the

16 UCL to circumvent the safe harbor provisions of the ACPA. Where "the Legislature

17 has permitted certain conduct or considered a situation and concluded no action

18 should lie, courts may not override that determination. When specific legislation

19 provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to

20 assault that harbor." *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 938

21 (2003) (quoting *Cel-Tech Comm., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182

22 (1999)). To hold otherwise would elevate form over substance:

23         the resulting immunity [conferred by some other law] should not
24         evaporate merely because the plaintiff discovers a conveniently different label for pleading what is in substance an identical grievance
25         arising from identical conduct . . . We thus conclude that a plaintiff may not bring an action under the unfair competition law if some other
26         provision bars it.

27 *Cel-Tech*, 20 Cal. 4th at 182,184.

28 ///

Even absent the protections of the ACPA's safe harbor provision, AMPAS fails to allege "unlawful" or "unfair" conduct on the part of either GoDaddy.com or Domains By Proxy. AMPAS claims that "GoDaddy" collectively violated the UCL by violating "both federal statutory law and California statutory and common law." Comp., ¶ 77. However, a "violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007). Thus, a claim for unfair competition stands or falls depending on the fate of antecedent substantive causes of action. *Krantz v. BT Visual Images*, 89 Cal. App. 4th 164, 178 (2001). "In effect, the UCL borrows violations of other laws . . . and makes those unlawful practices actionable under the UCL." *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505 (1999).

As explained above, AMPAS fails to allege a *prima facie* claim for violation of the ACPA against either GoDaddy.com or Domains By Proxy. To the extent the UCL claim is based on the ACPA claim, AMPAS' claim for violation of the UCL fails. *See id.* The same holds true for AMPAS' state law claims. AMPAS fails to state a claim for conversion and the purported claims for unjust enrichment and conspiracy are not recognized as independent causes of action under California law. As a result, AMPAS is left with no predicate wrongs on which to base its claim of "unlawful" business practices under the UCL. Accordingly, AMPAS' claim under the unlawful prong fails.

AMPAS' claim for "unfair" business practices in violation of Business & Professions Code section 17200 is similarly deficient. Although the definition of "unfair" under Business & Professions Code section 17200 is "uncertain" under California law, AMPAS fails to allege facts establishing a violation under any existing definition in use by the courts. *See Puentes v. Wells Fargo Home Mortgage, Inc.*, 160 Cal. App. 4th 638 (2008).

For instance, AMPAS does not allege facts establishing that a business practice of either GoDaddy.com or Domains By Proxy "threatens an incipient

21

1  violation of an antitrust law, or violates the policy or spirit of one of those laws

2  because its effects are comparable to or the same as a violation of the law, or

3  otherwise significantly threatens or harms competition." *Cel-Tech Comm.*, 20 Cal.

4  4th at 187.  Moreover, to the extent the claim of unfair business practices is

5  predicated on public policy, AMPAS fails to allege that the public policy which is a

6  predicate to the action is "tethered" to a specific constitutional, statutory or

7  regulatory provision.  *See Davis v. Ford Motor Credit Co. LLC*, 179 Cal. App. 4th

8  581, 595 (2009).

9       AMPAS fails to establish either standing or grounds to assert a claim for

10  violation of Business & Professions Code section 17200 against either

11  GoDaddy.com or Domains By Proxy.  The Court should dismiss AMPAS' claim.

12            2.    California Does Not Recognize AMPAS' Fourth Count for

13                  Unjust Enrichment.

14       Unjust enrichment is not a cause of action.  *See McBride v. Boughton*, 123

15  Cal. App. 4th 379, 387-88 (2004).  "The phrase 'Unjust Enrichment' does not [even]

16  describe a theory of recovery," but rather "an effect: the result of a failure to make

17  restitution under circumstances where it is equitable to do so."  *Lauriedale Assocs.,*

18  *Ltd. v. Wilson*, 7 Cal. App. 4th 1439, 1448 (1992).  Likewise, restitution is not a

19  claim for relief, just a remedy.  As addressed, AMPAS does not plead any facts that

20  would give rise to grounds for relief in the manner of restitution.  *See* Section

21  IV(D)(1)(a), *supra*.  The Court should dismiss AMPAS' claim for unjust enrichment

22  *with prejudice*.

23            3.    California Law Does Not Recognize AMPAS' Fifth Count for

24                  Conversion of a Domain Name.

25       AMPAS seeks to state a conversion claim based on the alleged use of its

26  registered trademarks in the domain names at issue.  Such a claim is not recognized

27  under California law.

28  ///

An action for conversion properly lies where there is a wrongful exercise of dominion over the property of another. *See Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1065 (1998). To establish a claim for conversion, a plaintiff must demonstrate: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. *See id.* at 1066.

"Conversion requires interference with tangible rather than intangible property." *Melchior v. New Line Productions, Inc.*, 106 Cal. App. 4th 779, 792 (2003). Although recognizing that a trademark conveys a property right, district courts across the country have consistently refused to recognize trademark conversion claims. *See, e.g, Meeker v. Meeker*, 2004 U.S. Dist. LEXIS 22986, *17-19 (N.D. Cal. 2004) (dismissing claim for conversion of trademark under California law); *see also Big Time Worldwide Concert & Sport Club at Town Center, LLC v. Marriott Int'l, Inc.*, 236 F. Supp. 2d 791, 794 (E.D. Mich. 2003) (dismissing claim for conversion of trademark under Michigan law); *Neles-Jamesbury, Inc. v. Bill's Valves*, 974 F. Supp. 979 (S.D. Tex. 1997) (rejecting claim for conversion of trademark under Texas law).

To the extent AMPAS attempts to claim conversion of a domain name based on its trademark rights, such a claim fails under California. AMPAS does not allege that it owns any of the domain names at issue in this litigation. Rather, AMPAS appears to allege that it has the right to the domain names as a result of its trademark rights and that the use or registration of the domain names that infringe its trademark rights constitutes conversion. The court in *Meeker v. Meeker* rejected this exact claim. *See Meeker*, 2004 U.S. Dist. LEXIS 22986 at *18.

In *Meeker*, the plaintiff sought to amend his complaint to add a claim of conversion of his alleged trademark ("Meeker Vineyards") as a result of the defendants' use of the trademark in a domain name (www.meekervineyards.com). *See id.* at *11-12. The court denied leave to amend finding that although California

1   law allows for a conversion claim for intangible property, such a cause of action

2   "should not be extended to reach the intangible intellectual property rights in a

3   trademark." *Id.* at \*18.  The court further held that even if a conversion claim under

4   California law extended to trademarks, there cannot be a conversion of a domain

5   name based on one's trademark rights. *See id.*

6       This is precisely the claim AMPAS asserts in its fifth count for conversion.

7   As in *Meeker*, however, AMPAS cannot state a claim for conversion of the domain

8   names at issue because it does not have, nor allege, a property right in the actual

9   domain names.  As such, the Court should dismiss AMPAS' claim for conversion

10   *with prejudice*.

11         4.    <u>California Law Does Not Recognize AMPAS' Ninth Count for</u>

12               <u>Conspiracy.</u>

13       "Conspiracy is not a cause of action, but a legal doctrine that imposes

14   liability on persons who, although not actually committing a tort themselves, share

15   with the immediate tortfeasors a common plan or design in its perpetration."

16   *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514 (1994).

17       In order for a civil conspiracy to be actionable, an underlying tort must be

18   committed. *See id.* at 511 ("Standing alone, a conspiracy does no harm and

19   engenders no tort liability.  It must be activated by the commission of an actual

20   tort.").  As discussed above, AMPAS fails to plead a valid tort claim against

21   GoDaddy.com or Domains By Proxy.  As such, AMPAS' conspiracy claim fails as a

22   matter of law.

23       Even if AMPAS adequately pled at least one of the tort claims alleged in the

24   Complaint, the conspiracy allegations remain deficient.  A conspiracy, like fraud,

25   must be pled with particularity pursuant to Federal Rule of Civil Procedure 9(b), and

26   ///

27   ///

28   ///

1   with more than mere conclusory language.  *See Alfus v. Pyramid Technology Corp.,*

2   745 F. Supp. 1511, 1521 (N.D. Cal. 1990).  As explained in *Alfus,*

> [t]o survive a motion to dismiss, plaintiff must allege with sufficient factual particularity that defendants reached some explicit or tacit understanding or agreement . . . .  It is not enough to show that defendants might have had a common goal unless there is a factually specific allegation that they directed themselves towards the wrongful goal by virtue of a mutual understanding or agreement.

*Id.*

AMPAS does not make any *specific* factual allegations to support the alleged conspiracy.  Instead, AMPAS alleges only that "GoDaddy" "conspired with numerous California residents . . . through GoDaddy's Cash Parking Program" and "engaged in acts in furtherance of their conspiracy" by registering domain names and sharing revenue from the parked domain names.  Comp. ¶¶ 29, 42.  These allegations are insufficient to meet the heightened pleading requirement necessary to allege a conspiracy.

AMPAS fails to state a claim for, or plead the existence of, a conspiracy, including the predicate tort.  The Court should dismiss the claim *with prejudice.*

## V.   **CONCLUSION**

For all the foregoing reasons, Defendants GoDaddy.com, Inc. and Domains By Proxy, Inc. respectfully request that the Court dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, require the filing of an amended pleading that identifies the specific conduct attributed to each.

Dated:  July 14, 2010

**BRYAN CAVE LLP**
Gregory Trimarche
Aaron M. McKown
Paula L. Zecchini

By:   s/ Aaron M. McKown
          Aaron M. McKown
Attorneys for Defendants
GODADDY.COM, INC. and DOMAINS
BY PROXY, INC.

MOTION TO DISMISS