BOIES, SCHILLER & FLEXNER, LLP
Stuart Singer (*pro hac vice*), ssinger@bsfllp.com
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Tel: (954) 356-0011; Fax: (954) 356-0022
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACADEMY OF MOTION PICTURE ARTS AND SCIENCES, a California nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>GODADDY.COM, INC., a Delaware corporation; THE GODADDY GROUP INC., a Delaware corporation; DOMAINS BY PROXY, INC., a Delaware Corporation; GREENDOMAINMARKT.COM, an unknown entity; BDS, an unknown entity; and XPDREAMTEAM LLC, a California limited liability corporation,<br><br>Defendants. | Case No. CV10 3738 ABC (CWx)<br><br>**PLAINTIFF THE ACADEMY'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF JOINT STIPULATION RE:**<br><br>**(1) MOTION FOR SANCTIONS FOR GODADDY'S FAILURE TO COMPLY WITH THIS COURT'S SEPTEMBER 13, 2011 DISCOVERY ORDER;**<br><br>**AND**<br><br>**(2) TO COMPEL PRODUCTION OF AGGREGATE FINANCIAL DATA FOR YEARS 2011 AND 2012**<br><br>Hearing Date: March 5, 2013<br>Hearing Time: 10:00 a.m.<br><br>Date Action Filed: May 18, 2010<br>Pre-Trial Conference: May 6, 2013<br>Trial Date: May 21, 2013<br><br>[DISCOVERY MATTER] |

The Academy's Supplemental Memorandum ISO Motion to Compel Aggregate Financial Data and for Sanctions

## I. ARGUMENT

### A. The Academy Did Not Waive Its Right To Move to Compel; Nor is this Motion Untimely

GoDaddy argues that the Academy's motion is untimely, since it was filed after the fact discovery cut-off date. [Joint Stip. at 14-18]. Yet, despite the fact discovery cut-off passing, GoDaddy has continued to serve fact discovery on the Academy, including (a) supplemental responses to the Academy's requests for admission on February 4, 2013; and (b) another set of interrogatory requests to the Academy on *both* December 19, 2012 and January 16, 2013. [Supp. Liang Decl., Exhs. K, L & M]. GoDaddy cannot use the discovery cut-off as a sword and a shield, by arguing that the discovery cut-off precludes this motion on the one hand, while GoDaddy continues to send post-discovery cut-off discovery on the other.

GoDaddy cites cases in which courts have found motions to compel untimely where they were filed after the discovery cut-off date. [Joint Stip. at 14-18]. However, these cases merely underscore the fact that courts have discretion to determine whether a motion to compel is timely. Courts look at many factors in deciding whether a post-discovery motion to compel should be permitted:

> (1) the length of time since the expiration of the deadline, (2) the length of time that the moving party has known about the discovery, (3) whether the discovery deadline has been extended, (4) the explanation for the tardiness or delay, (5) whether dispositive motions have been scheduled or filed, (7) the age of the case, (8) any prejudice to the party from whom late discovery was sought, and (9) disruption of the court's schedule.

*Days Inn Worldwide, Inc. v. Sonia Investments*, 237 F.R.D. 395, 398 (N.D. Tex. 2006); *see also U.S. ex rel. Purcell v. MWI Corp.*, 232 F.R.D. 14, 16-17 (D.D.C. 2005) ("dispositive factor" in determining whether motion to compel was timely was whether "order requiring further discovery would have disturbed either the consideration of a dispositive motion or the conduct of the trial") (motion to

compel timely even though party waited *two years after discovery requests served* and *more than seven months after the close of discovery* to file).

Applying these factors weighs in favor of finding the Academy's motion timely. Any tardiness in bringing this motion was created by GoDaddy's delay in producing its revenue information. The Academy's diligence is evidenced below:

- By definition, the Academy could not obtain GoDaddy's aggregate revenue information for 2011 and 2012 until those years were over;
- GoDaddy waited until November 2012 to produce its *complete* revenue from Parked Pages through 2010, including (1) pay-per-click revenue from Google, (2) GoDaddy's *own* banner ad revenue, and (3) GoDaddy's *own* monthly subscription fees for Cash Parking, [Joint Stip. at 3:7-12];
- GoDaddy waited until January 14, 2013 to disclose 2011 (entire year) and 2012 (Q1 only) revenue in its expert report of James Pampinella, [Joint Stip. at 3:13-17]; and
- When it became clear that GoDaddy was not producing aggregate revenue for 2011 and 2012, the Academy *immediately* asked for it, especially after it became clear that GoDaddy's experts relied on this information.

It is worth noting the lengths GoDaddy will go to in order to avoid complying with this Court's discovery order. On February 11—nearly a month after initial expert reports were served on January 14, and after receiving the Academy's portion of this Joint Stipulation—GoDaddy served its "Second Notice of Errata" to James Pampinella's expert report. In this "errata," GoDaddy claimed that the financial data relied on by Mr. Pampinella for 2011 and 2012 were just "estimates" and not actual figures, contrary to the original report. [Supp. Liang Decl., Exh. N].

Whether this delayed "errata" is true or not, GoDaddy does not respond to or dispute the fact that (1) the Academy still requires GoDaddy's actual revenue figures to rebut Pampinella's expert opinion and test the accuracy of his

assumptions, and (2) that GoDaddy *concedes* that the Academy requires this same revenue information to rebut Professor Nass's expert opinion. [*See* Joint Stip. at 19 n.5].

Additional factors also weigh in favor of considering this motion timely. GoDaddy will suffer no prejudice if the Court grants this motion. The deadline for dispositive motions in this action is scheduled for March 18, 2013, and trial is set for May 21, 2013. [Dkt. No. 313.] The fact that GoDaddy's experts have opined on its aggregate financials for 2011 and 2012 indicates such information is easily accessible and therefore, GoDaddy should suffer no burden in producing the information in a timely fashion.

### B. GoDaddy Clearly Had a Duty To Supplement

As set forth in the Academy's moving papers, both Fed. R. Civ. P. 26(e) and case law make clear that GoDaddy has a duty to supplement its discovery responses—here, its response to RFP 28—*as well as its* expert disclosures. [Joint Stip. at 7:1-8:5]. GoDaddy cites one case, *Dong Ah Tire*, for the proposition that the duty to supplement does not cover documents generated after the date of the discovery request. [Joint Stip. at 12]. As one court recently noted however, the *Dong Ah Tire* court failed to "analyze the language of [Rule 26(e)], the Advisory Committee Notes, or other legal authority." *Switch Communications Gp. v. Ballard*, 2012 WL 2342929, at *7 (D. Nev. June 19, 2012).

The *Switch* court adopted the detailed historical analysis of Rule 26(e) set forth in *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 74 (W.D.N.Y. 2011), finding that the duty to supplement under Rule 26(e) includes later-created information and documents. *Id.* at *6-7. A party has a duty to supplement its production with later-created responsive documents "to the extent they materially affect the completeness or correctness of the previous responses." *Id.* at *7. Here, GoDaddy has a duty to supplement with its later-created aggregate financials for

2011 and 2012 because they clearly affect the completeness of its prior response, especially in light of this Court's September 13, 2011 order.

GoDaddy's duty to supplement is even greater here, where its experts have put its 2011 and 2012 aggregate financials at issue. *See* Fed. R. Civ. P. 26(e)(2). GoDaddy does not dispute that the Academy requires the aggregate financials to rebut the opinions of *both* Pampinella and Professor Nass. GoDaddy's late-served "Second Notice of Errata" to the Pampinella report does not moot the issue. GoDaddy must produce the information sought as the motion to compel is necessary and timely under both Rules 26(e)(1) and (e)(2).

### C. RFP 28 Is Not Limited to Google Pay-Per-Click Revenues

GoDaddy's tortured argument that RFP 28 is limited to *solely* Google-related pay-per-click revenues from 2004-2010 should be rejected.

<u>First</u>, the clear language of the Request includes all revenues received by GoDaddy. RFP 28 ("All documents, data, and information related to YOUR, or any other Defendant's, income from any advertising and marketing program, including but not limited to YOUR Cash Parking and Free Parking Programs."). [Joint Stip. Liang Decl., Exh. A at p. 5].

<u>Second</u>, the Court's September 13, 2011 order says nothing about the aggregate being limited *only* to Google pay-per-click revenue. The order states "Plaintiff's motion is granted with respect to the *aggregate financial data*. Defendant is to produce documents sufficient to show revenues and profits for Page Parking Programs from 2004 to date." [Joint Stip. Liang Decl., Exh. B (emphasis added)].

<u>Third</u>, GoDaddy's argument that such a limitation was "understood" by the parties' and evidenced by their "subsequent conduct" must be rejected, as the parties never agreed, in writing or otherwise, to such a limitation. GoDaddy can point to no agreement with the Academy to limit RFP 28 to either (1) 2004-2010

timeframe only, and/or (2) only Google-related pay-per-click revenue. That is because no such agreement existed. [Joint Stip. at 13-14].

<u>Fourth</u>, GoDaddy claims that the Academy must have understood that RFP No. 28 only related to Google pay-per-click revenue because the Academy subsequently propounded a separate RFP for GoDaddy banner ad revenue. [Joint Stip. at 14:7-20]. However, as this Court has seen throughout this case and in sanctioning GoDaddy, GoDaddy has refused to abide by even the most basic discovery procedures. By issuing a separate RFP for GoDaddy's banner-ad revenue, the Academy was not waiving its rights to "aggregate revenue" under RFP No. 28 and this Court's September 13, 2011 Order. Instead, the Academy was just heading off any sharp tactics by GoDaddy, to avoid yet another discovery dispute with GoDaddy.

Indeed, under GoDaddy's tortured, narrow reading of RFP No. 28, GoDaddy would not have been required to provide its monthly subscription fees for the Cash Parking Program either, since monthly subscription fees are not received from Google. But GoDaddy still provided its monthly subscription revenue to the Academy (in November 2012) without a separate RFP from the Academy.

GoDaddy knows full well what RFP No. 28 and the September 13, 2011 Order require. It has willfully refused to comply and should be sanctioned.

## II. CONCLUSION

The Academy's motion to compel was timely filed soon after it discovered (1) GoDaddy's failure to produce 2011 and 2012 aggregate revenues, and (2) GoDaddy's reliance on this information in its expert reports. This information is clearly relevant to both fact and expert discovery. GoDaddy has willfully violated this Court's discovery order and ignored its duty to supplement under Fed. R. Civ. P. 26(e)(1) and 26(e)(2) and should be sanctioned.

DATED: February 19, 2013     By:   /s/ Enoch H. Liang

| | |
|---|---|
| 1 | BOIES, SCHILLER & FLEXNER, LLP |
| 2 | Stuart Singer (*pro hac vice*) |
|   | David Nelson (*pro hac vice*) |
| 3 | 401 East Las Olas Blvd., Suite 1200 |
| 4 | Fort Lauderdale, FL 33301 |
|   | Telephone: (954) 356-0011 |
| 5 | Facsimile: (954) 356-0022 |
| 6 | *Attorneys for Plaintiff* |
| 7 | |
|   | LEE TRAN & LIANG APLC |
| 8 | James M. Lee, California Bar No. 192301 |
|   | Enoch H. Liang California Bar No. 212324 |
| 9 | 601 South Figueroa Street, Suite 4025 |
| 10 | Los Angeles, CA 90017 |
|    | Telephone: (213) 612-3737 |
| 11 | Facsimile: (213) 612-3773 |
| 12 | *Additional Attorneys for Plaintiff* |
| 13 | |
|    | FOOTE, MEYERS, MIELKE FLOWERS LLC |
| 14 | Kathleen Chavez (*pro hac vice*) |
| 15 | Matthew Herman (*pro hac vice*) |
|    | 30 North LaSalle Street, Suite 2340 |
| 16 | Chicago, IL 60602 |
|    | Telephone: (630) 232-6333 |
| 17 | Facsimile: (630) 845-8982 |
| 18 | *Additional Attorneys for Plaintiff* |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |