**WRENN BENDER  LLLP**
Aaron M. McKown, California Bar No. 208781
Paula L. Zecchini, California Bar No. 238731
2 Park Plaza, Suite 550
Irvine, California  92614
Telephone.: (949) 202-5810
Facsimile:   (949) 679-7939
E-Mail:        amckown@wrennbender.com
                   pzecchini@wrennbender.com

Attorneys for Defendants
GODADDY.COM, INC. and DOMAINS BY PROXY, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACADEMY OF MOTION PICTURE ARTS AND SCIENCES, a California nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>GODADDY.COM, INC., a Delaware corporation; THE GODADDY GROUP INC., a Delaware corporation; DOMAINS BY PROXY, INC., a Delaware Corporation; GREENDOMAINMARKET.COM, an unknown entity; BDS, an unknown entity; and XPDREAMTEAM LLC, a California limited liability corporation,<br><br>Defendants. | Case No. CV10-3738-ABC (CW)<br><br>Assigned to Hon. Audrey B. Collins<br>Courtroom 680<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT GODADDY.COM, INC.'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**<br><br>Date: April 22, 2013<br>Time: 10:00am<br><br>Complaint Filed:   May 18, 2010<br>Trial Date:           May 21, 2013 |

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................ - 1 -

II.   LEGAL STANDARD ................................................................. - 2 -

III.  SUMMARY OF FACTS ............................................................ - 3 -

A.   THE PARTIES ........................................................................- 3 -

B.   THE DISPUTED DOMAINS ....................................................- 3 -

C.   GO DADDY AND THE DOMAIN NAME REGISTRATION PROCESS ....................- 4 -

IV.   AMPAS CANNOT PRESENT EVIDENCE TO RAISE A TRIABLE
      ISSUE OF FACT ON ITS CYBERSQUATTING CLAIM ...................... - 6 -

A.   GO DADDY DID NOT REGISTER ANY OF THE DISPUTED DOMAINS ................- 6 -

B.   GO DADDY DID NOT TRAFFIC IN ANY OF THE DISPUTED DOMAINS .............- 7 -

C.   GO DADDY DID NOT USE ANY OF THE DISPUTED DOMAINS ......................- 10 -

    1.   Go Daddy Is Not The Registrant Or Registrant's Authorized Licensee for
         Any Of The Disputed Domains ................................................ - 10 -

    2.   Go Daddy Did Not "Use" The Disputed Domains As The Registrant's
         Authorized Licensee ................................................................ - 11 -

    3.   AMPAS Admits That The "Use" At Issue Is The Placement Of Ads Related
         To The AMPAS Marks On Parked Pages ................................ - 13 -

D.   A SUBSET OF DISPUTED DOMAINS ARE NOT "IDENTICAL OR CONFUSINGLY
      SIMILAR" TO THE AMPAS MARKS ........................................- 14 -

    1.   None Of The Disputed Domains Identified In Appendices 4-6 Are Identical
         To The AMPAS Marks ............................................................ - 14 -

    2.   None Of The Disputed Domains Identified in Appendices 4-6 Are
         Confusingly Similar To The AMPAS Marks ........................... - 14 -

        a.   The Uncontroverted Survey Evidence Demonstrates That 74 Of The
             Disputed Domains Are Not Confusingly Similar To The AMPAS Marks.-

i

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

15 -

    b.   Linguistic Evidence Demonstrates That 134 Of The Disputed Domains Are Not Confusingly Similar To The AMPAS Marks ........................ - 16 -

    c.   Third Party Evidence Demonstrates That 40 Of The Disputed Domains Are Not Confusingly Similar to the AMPAS Marks .......................... - 18 -

E.  THERE IS NO EVIDENCE THAT ANY OF THE DISPUTED DOMAINS ARE "DILUTIVE OF" THE AMPAS MARKS ........................................................... - 19 -

V.  AMPAS FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUPPORT ITS CONTRIBUTORY CYBERSQUATTING CLAIM ..... - 21 -

VI. AMPAS' UNFAIR COMPETITION CLAIM FAILS WITHOUT A VIABLE CYBERSQUATTING CLAIM ................................................ - 25 -

VII.   CONCLUSION ........................................................................ - 25 -

# TABLE OF AUTHORITIES

## CASES

*Abrams v. Horizon Corp.*,

669 P.2d 51 (1983) ------------------------------------------------------------ - 9 -

*accord Appliance Recycling Ctrs. of Am., Inc. v. JACO Envtl., Inc.*,

*No.* 09-55168, 378 Fed. Appx. 652 (9th Cir. May 4, 2010)--------------------- 25 -

*Anlin Indus. v. Burgess*,

2007 U.S. Dist. LEXIS 20516, at *12 (E.D. Cal. Mar. 5, 2007) ----------- - 2 -, - 3 -

*Bird v. Parsons*,

289 F.3d 865, (6th Cir. 2002) ---------------------------------------------- - 11 -

Bosley Medical Inst., Inc. v. Kremer,

*403 F.3d 672 (9th Cir. 2005)*------------------------------------------ - 6 -, - 20 -

*Bridgeport Music, Inc. v. Diamond Time, Ltd.*,

371 F.3d 883 (6th Cir. 2004) ---------------------------------------------- 22 -

*Brooks Shoe Mfg. Co. v. Suave Shoe Corp.*,

533 F. Supp. 75 (S.D. Fla. 1981) ---------------------------------------- 16 -

*Celotex Corp. v. Catrett*,

477 U.S. 317 (1986) ----------------------------------------------- - 2 -, - 3 -

*cf. AMF, Inc. v. Sleekcraft Boats*,

599 F.2d 341 (9th Cir. 1979) ---------------------------------------------- 17 -

*Citizens Banking Corp. v. Citizens Fin. Group, Inc.*,

No. 07-11514, 2008 WL 1995104, at *5 (E.D. Mich. May 6, 2008) ----------- 15 -

*Cleary v. News Corp.*,

30 F.3d 1255 (9th Cir. 1994) ---------------------------------------------- 25 -

*Crabb v. GoDaddy.com, Inc.*,

CV10-00940-PHX-NVW, 2011 WL 4479043, *4 (D. Ariz. Sept. 27, 2011)- - 7 -, - 8 -, - 9 -, - 11 -

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

*Donald F. Duncan, Inc. v. Royal Tops Mfg. Co.,*

 343 F.2d 655 (7th Cir. 1965) ------------------------------------------------- 16 -

*Ford Motor Co. v. Greatdomains.Com, Inc.,*

 177 F. Supp. 2d 635, n. 3 ---------------------------------- 19 -, - 22 -, - 23 -

*Hancock v. American Steel & Wire Co.,*

 203 F.2d 737 (C.C.P.A. 1953) ----------------------------------------------- 19 -

*Lebow Bros. v. Lebole Euroconf S.p.A.,*

 503 F. Supp. 209 (E.D. Pa. 1980) ------------------------------------------- 16 -

*Lockheed Martin Corp. v. Network Solutions, Inc.* ("*Lockheed II*"), 141 F. Supp. 2d

 648, 655 (N.D. TExh. 2001) --------------------------------- 7 -, - 10 -, - 13 -

*Lockheed Martin Corp. v. Network Solutions, Inc.,*

 194 F.3d 980 (9th Cir. 1999) ----------------------------------------------- 13 -

*Lockheed Martin Corp. v. Network Solutions, Inc.,*

 194 F.3d 980 (9th Cir.1999)------------------------------------------------- 22 -

*McDonald v. Sun Oil Co.,*

 548 F.3d 774 (9th Cir. 2008) ----------------------------------------------- 20 -

Microsoft Corp. v. Shah,

 No. C–10–0653 RSM, 2011 WL 108954 at *1–3 (W.D. Wash., Jan. 12, 2011)- 22 -

*Mister Twister, Inc. v. Jenem Corp.,*

 710 F. Supp. 202 (S.D. Ohio 1989) ---------------------------------------- 16 -

*Moseley v. V Secret Catalogue, Inc.,*

 537 U.S. 418 (2003) ------------------------------------------- 20 -, - 21 -

*Pathfinder Commc'ns Corp. v. Midwest Commc'ns Co.,*

 593 F. Supp. 281 (S.D. Ind. 1984)------------------------------------------ 16 -

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,*

 494 F.3d 788 (9th Cir. 2007)------------------------------------------------ 22 -

**WRENN BENDER LLLP**
2 Park Plaza, Suite 550
Irvine, California 92614

*Petroliam Nasional Berhad v. GoDaddy.com, Inc.*,

2012 WL 10532, *9 (N.D. Cal. Jan. 3, 2012) -------------- - 13 -, - 21 -, - 22 -, - 23 -

*Roselux Chem. Co. v. Parsons Ammonia Co.*,

299 F.2d 855 (C.C.P.A. 1962) ---------------------------------------------- - 15 -

*Sanofi-Aventis v. Advancis Pharm. Corp.*,

453 F. Supp. 2d 834 (D. Del. 2006) ------------------------------------------ - 16 -

*United Cal. Bank v. Prudential Ins. Co. of America*,

681 P.2d 390 (AZ Ct. App. 1983) ---------------------------------------------- - 9 -

Verizon California, Inc. v. Above.com,

No. CV–11–0973 ABC, slip op. at 5–11 (C.D. Cal., July 13, 2011)------------ - 22 -

STATUTES

15 U.S.C. § 1125(d)(1)(A) --------------------------------- 6 -, - 14 -, - 19 -, - 20 -

15 U.S.C. § 1125(d)(1)(D) ------------------------------------------------------- - 10 -

15 U.S.C. § 1125(d)(1)(E) -------------------------------------------------------- - 7 -

OTHER AUTHORITIES

J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR

COMPETITION, § 25:78 (4th ed. 2004) ----------------------------------- 14 -, - 17 -

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

# I.     INTRODUCTION

This case involves the registration of several hundred domain names by persons other than Defendant GoDaddy.com, Inc. ("Go Daddy").  Instead of pursuing the domain name registrants who registered the allegedly infringing domain names and/or pursuing the domain names themselves in an *in rem* action, AMPAS seeks to recover from Go Daddy a $32 million statutory damage windfall under theories of direct cybersquatting, unfair competition, and contributory cybersquatting.  After nearly three years of protracted litigation, the undisputed evidence precludes a finding of liability as a matter of law.

During the course of discovery, AMPAS clarified the exact conduct upon which it basis its claims.  AMPAS admitted that it does not object to the domain names themselves; rather, the sole basis for AMPAS' claims is Go Daddy's alleged placement of advertisements incorporating AMPAS' trademarks on parked pages resolving from these domain names.  Yet, there is no evidence that any of the domain names at issue contained such advertisements.  As a result, AMPAS cannot prove the facts upon which it asserts Go Daddy's liability.

Even more problematic for AMPAS is the fact that it cannot demonstrate that Go Daddy registered, trafficked in, or used any of the domain names at issue.  It is undisputed that Go Daddy is a domain name registrar and was not the domain name registrant for any of the domain names.  Moreover, Go Daddy lacked contractual authority to use these domain names.  As the United States District Court for the District of Arizona recently determined, the very agreements at issue in this case failed to provide Go Daddy with contractual authority to place advertisements on a registrant's domain name as a matter of law.  Absent the contractual authority to place advertisements on the domain names at issue, Go Daddy could neither traffic in nor use the domain names as the registrants' authorized licensee.

Even if AMPAS is able to present admissible evidence demonstrating that Go Daddy registered, trafficked in, or used any of the domain names at issue, Go Daddy

is entitled to partial summary judgment because the domain names in dispute were not dilutive of the AMPAS Marks.  In order to prove that a domain name is dilutive under the ACPA, AMPAS is required to demonstrate actual dilution.  Yet, AMPAS admits that it has no evidence that any of its marks suffered any economic harm.  As such, Go Daddy is entitled to a finding that, as a matter of law, none of the domain names at issue were dilutive of AMPAS' marks.

Moreover, the Court should grant partial summary judgment with regard to those domain names that are clearly not identical or confusingly similar to AMPAS' marks.  Conceding that it overreached in identifying allegedly infringing domain names, AMPAS dismissed today domain names such as DosCarlos.com, CosCarAudioSales.com, UncleLeosCarShop.com, and DermoScars.com.  Yet, there remain another 131 domain names that are neither identical nor confusingly similar to the AMPAS marks, which also must be dismissed.   These domain names either consist of the names of the registrants, their family members, businesses, or pets, or they relate to goods and services wholly unrelated to AMPAS.

AMPAS' contributory cybersquatting claim similarly fails for two reasons: (1) there is no evidence to support a finding of direct cybersquatting by any of the purchasers of Go Daddy's Cash Parking service; and (2) there is no evidence that Go Daddy either knew or should have known through "exceptional circumstances" that the purchasers at issue were engaged in trademark infringement.

Lastly, because each of the federal cybersquatting claims fail as a matter of law, so too must AMPAS' state law claim for unfair competition.  Go Daddy respectfully requests the Court grant the relief sought herein.

## II.    LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See Anlin Indus. v. Burgess*, 2007 U.S. Dist. LEXIS 20516, at *12 (E.D. Cal. Mar. 5, 2007) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  If

**WRENN BENDER LLLP**
2 Park Plaza, Suite 550
Irvine, California 92614

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

the burden of persuasion at trial would be on the *non-moving party*, as it is here, the party moving for summary judgment may satisfy its burden of production in either of two ways. *See Celotex*, 477 U.S. at 331. First, the moving party may submit affirmative evidence that negates an essential element of the non-moving party's claim. *Id.* Second, the moving party may demonstrate that the non-moving party's evidence is insufficient to establish an essential element of their claim. *Id.*

If the party seeking summary judgment "'meets its initial burden . . .,' the burden of production shifts and 'the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial.'" *Anlin Indus.*, 2007 U.S. Dist. LEXIS 20516, at *12. "If the non-moving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law." *Celotex*, 477 U.S. at 331 (citation omitted).

## III.   SUMMARY OF FACTS

### A.   The Parties

AMPAS is a non-profit founded "for the purpose of advancing the motion pictures arts and sciences by promoting cultural, educational and technological achievements." Second Amended Complaint ("SAC") at ¶ 7 [Dkt. 170]. AMPAS owns the following registered trademarks: OSCARNIGHT, ACADEMY AWARD, OSCAR, OSCARS, and ACADEMY AWARDS (the "AMPAS Marks"). *Id.* at ¶ 2.

Go Daddy is a domain name registrar. *Id.* at ¶ 15; Declaration of Aaron McKown ("McKown Decl.") at ¶ 2, Exh. A at 57:20-22; Declaration of Paul Nicks ("Nicks Decl.") at ¶ 2.

### B.   The Disputed Domains

AMPAS alleges that Go Daddy registered, trafficked in, and/or used 310 domain names (the "Disputed Domains")[1] by monetizing parked pages resolving

---

[1]   317 non-duplicative domain names have been identified at various stages of the lawsuit. AMPAS dismissed with prejudice the following seven domain names: DOSCARLOS.COM, OSCARMOVIEPOSTERS.COM, DERMOSCARS.COM, COSCARAUDIOSALES.COM,

from those domain names that "have no legitimate business purpose, display no substantive content, and are used exclusively for the display of revenue generating advertisements." [2]  SAC ¶¶ 3, 46-65.  As AMPAS clarified during discovery, "it is not the domain name itself that the Academy objects to; instead, it is the monetization of the domain name by GoDaddy to promote goods and services obviously relating to the Academy Awards® and the OSCARS®" from the revenue generating advertisements resolving from the Disputed Domains.  Declaration of Aaron McKown ("McKown Decl.") at ¶ 3, Exh. B (*passim*).

### C.   Go Daddy And The Domain Name Registration Process

Go Daddy is not the registrant for any of the Disputed Domains; instead, it provides an automated registration process for anyone seeking to register a domain name (the "domain name registrant" or "registrant").  SAC at ¶ 15; McKown Decl. at ¶ 2, Exh. A at 57:20-22; Declaration of Paul Nicks ("Nicks Decl.") at ¶ 2.  The registrant submits the proposed domain name for registration through Go Daddy's online "dashboard", which determines the availability of the domain name.  Nicks Decl. at ¶ 3.

The registrant is then presented with a series of decisions to make, such as how long to register the domain name and the designation of the domain name server where the domain name will be routed so that content resolving from the domain name can be located and viewed online.  *Id.* at ¶ 4.

A registrant's routing options include the ability to configure the domain

---

JAYLENOSCARS.NET, JAYLENOSCARS.COM, and UNCLELEOSCARSHOP.COM.
AMPAS also agreed to dismiss OSCAR-2011.COM, but would not agree to do so as of this filing.

[2]      The parties disagree about the number of allegedly infringing domain names in dispute.  AMPAS disclosed 66 domain names months and/or years after the September 14, 2011 deadline to disclose additional allegedly infringing domain names as stipulated to by the parties and ordered by the Court.  *Compare* Order Granting Joint Motion to Continue All Pre-Trial and Trial Related Dates (Dkt. 95) *with* Order Granting Joint Motion to Continue All Pre-Trial and Trial Related Dates (Dkt. 150); McKown Decl. ¶ 22, Exh. U.  Nonetheless, because there has been no determination by the Court regarding whether any of these 66 domain names are at issue in this action, Go Daddy moves for summary judgment on all of the domain names.

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

name server so that it routs to a "record not found" error message, to a newly created website on a server hosted by Go Daddy or a third party, or to an existing website associated with another domain name.  Nicks Decl. at ¶ 6; McKown Decl. at ¶ 18, Exh. Q at 3:7-26.  Alternatively, the registrant can select Go Daddy's parked page servers or elect not to designate a domain name server at all.  *Id.*  In the event a registrant does not select a domain name server at the time of registration, the domain name server for Go Daddy's parked page servers will be designated by default.  Nicks Decl. at ¶ 6.  The registrant may change his or her domain name server at any time.  *Id.*

Unlike traditional websites, such as godaddy.com, Go Daddy's parked pages are "dynamic" – meaning a parked page does not exist nor is it created unless and until an Internet user types a domain name into a web browser and presses enter.  *Id.* at ¶¶ 7-8.  The parked page exists only for the duration that the Internet user keeps the page open on the computer.  *Id.*  Once the Internet user closes the parked page, that particular parked page ceases to exist so that the next time the domain name is entered into a browser, a new page with entirely new content is created.  *Id.*

When a parked page is created, an impression is made and tracked by Go Daddy.  *Id.* at ¶ 9.  Go Daddy does not track the domain name server for a domain name unless an impression is made.  *Id.*  The new page will create a new impression, which will again be tracked.  *Id.*  Because of the dynamic nature of the pages, the content used to populate the parked page is not stored on the hosting server.  *Id.*

The content that resolves from a domain name whose name server is routed to Go Daddy's parked page servers depends on the template assigned to the domain name.  *Id.* at ¶ 10.  Go Daddy maintains different templates for its monetized and non-monetized parked pages.  *Id.* at ¶ 10; McKown Decl. at ¶ 18, Exh. Q at 3:7-26. Monetized parked pages may contain Go Daddy banner advertisements, Google-provided pay-per-click links, or some combination of both.  Nicks Decl. at ¶ 10.

WREN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

- 5 -

Non-monetized parked pages do not contain advertisements, but may contain statements such as "Sorry, this site is not currently available!," "Coming Soon," or may not have any content (i.e., blank pages). *Id.* at ¶ 10; McKown Decl. at ¶ 18, Exh. Q at 3:7-26.

Whether advertisements are displayed on a domain name whose name server is routed to Go Daddy's parked page servers depends on the template designated for the domain name. *Id.* at ¶ 11. The template designation may be set by Go Daddy or by the domain name registrant. *Id.* The template designation for a given domain name may change minute-to-minute based on the registrant's right to control content resolving from their domain name at any time. *Id.* Go Daddy's participation in the registration, routing, and resolution process is entirely automated. *Id.* at ¶ 12.

Cash Parking is a service offered by Go Daddy to domain name registrants. *Id.* at ¶ 13. Go Daddy does not default domain names into its Cash Parking program. *Id.* Rather, registrants pay Go Daddy a fee to use Go Daddy's advertising platform. *Id.* A registrant's election to purchase the Cash Parking service is not contemporaneous with the selection of the domain name by the registrant. *Id.*

## IV.   AMPAS CANNOT PRESENT EVIDENCE TO RAISE A TRIABLE ISSUE OF FACT ON ITS CYBERSQUATTING CLAIM

In order to prevail on its claim for cybersquatting under the Anticybersquatting Consumer Protection Act ("ACPA"), AMPAS must establish *inter alia* that (1) Go Daddy registered, trafficked in, or used each of the Disputed Domains, and (2) each of the Disputed Domains is identical or confusingly similar to, or in the case of famous marks, dilutive of, the AMPAS Marks. *See* 15 U.S.C. § 1125(d)(1)(A); *Bosley Medical Inst., Inc. v. Kremer*, 403 F.3d 672, 680 (9th Cir. 2005). AMPAS cannot prove either element as a matter of law.

### A.   Go Daddy Did Not Register Any Of The Disputed Domains

Go Daddy is a domain name registrar; it was not the registrant for any of the Disputed Domains. SAC at ¶ 15; Nicks Decl. at ¶ 2. As such, Go Daddy did not

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

"register" any of the domain names under the ACPA.  *See Lockheed Martin Corp. v. Network Solutions, Inc.* ("*Lockheed II*"), 141 F. Supp. 2d 648, 655 (N.D. TExh. 2001) (the plain meaning of the word "registers" in the statute "obviously refers to a person who presents a domain name for registration, not the registrar").

## B.   Go Daddy Did Not Traffic In Any Of The Disputed Domains

The ACPA defines "trafficked in" as "transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration."  15 U.S.C. § 1125(d)(1)(E).  In this case, AMPAS alleges that Go Daddy's agreements with registrants contractually authorized Go Daddy to place advertisements on parked pages resolving from each of the Disputed Domains.[3]  SAC ¶¶ 33-34.   It is this contractual authority that AMPAS relies upon in claiming that Go Daddy "traffics in" the Disputed Domains.

The U.S. District Court for the District Court of Arizona, however, recently determined that the very contracts relied upon by AMPAS – the Universal Terms of Service ("UTOS"), the Domain Name Registration Agreement, and Parked Page Service Agreement – do not provide Go Daddy with the contractual authority to place advertisements on parked pages as a matter of law.  *Crabb v. GoDaddy.com, Inc.*, CV10-00940-PHX-NVW, 2011 WL 4479043, *4 (D. Ariz. Sept. 27, 2011).

In 2011, the *Crabb* court was presented with the issue of whether Go Daddy had the contractual authority to place advertisements on domain names in the Parked Page Program.  There, Go Daddy made the same argument AMPAS makes in this case – that Go Daddy had "contractual permission from [registrants] to use [their] domain names as advertising space by 'parking' them on Go Daddy-created pages

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

---

[3]     There is no evidence demonstrating which version of the UTOS or Parked Page Agreement formed the basis of the contractual relationship between Go Daddy and any specific registrant of a Disputed Domain.  McKown Decl. at ¶¶ 5, 7, 11, 18, Exhs. D, F, L, and T.

1    of advertising." *Crabb*, 2011 WL 4479043 at *1.  The court disagreed, granting

2    summary judgment to the registrants on this issue.[4]

3        In reaching its determination, the court rejected Go Daddy's claim that the

4    UTOS incorporated the Parked Page Service Agreement by reference and that the

5    registrants had therefore authorized Go Daddy to use their domain names as

6    advertising space.  *Id.* at *4.  "[W]hile Go Daddy's Universal Terms of Service

7    informed customers that specific agreements would apply when specific services

8    were purchased, it did not clearly and unequivocally inform customers which

9    agreements applied to which service. . . . [i]n particular . . . [the UTOS] did not

10   communicate that the Parked Page Service Agreement applies to anyone registering

11   a domain name." *Id.*

12       The court further explained that even if the Parked Page Service Agreement

13   was unequivocally incorporated into the UTOS and agreed to by the registrant, Go

14   Daddy would still not be authorized to use the registrants' domain names to place

15   advertisements.  *Id.*  As the court explained, "the portion of the Parked Page Service

16   Agreement to which Go Daddy [and AMPAS] look[] for authority is unhelpful

17   because it is circular with respect to the question at hand." *Id.*

18       Like the registrants in *Crabb*, the only two agreements that a domain name

19   registrant must agree to at the time of registering a domain name are the UTOS and

20   the Domain Name Registration Agreement.  Declaration of Linda Jett ("Jett

21   Declaration") at ¶ 2; McKown Decl. at ¶ 4, Exh. C at 53:13-21.  The UTOS,

22   however, does not unequivocally incorporate by reference the Parked Page Service

23   Agreement.[5]  Specifically, the UTOS does not clearly and unequivocally inform

24   _____

25   [4]     The Court's ruling was based on Arizona law because all versions of the Universal Terms
        of Service, Parked Page Service Agreements, and Domain Registration Agreements designate
26   Arizona law as the governing law for purposes of contractual interpretation of those agreements.
        McKown Decl. at ¶¶ 5, 6, 7, 8, Exhs. D, E, F, and G.

27   [5]     All but eight of the UTOS produced by Go Daddy in this action (all prior to the ruling in
        *Crabb*), contain the language at issue in that action.  *Compare Crabb*, 2011 WL 4479043, *3-4
28   *with* McKown Decl. ¶ 5, Exh. D.  The eight versions that do not contain the same language also do

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

1  customers which agreements applied to which services.  McKown Decl. at ¶ 5, Exh.

2  D.  Nor does it notify customers that certain unrequested "services" would be

3  bundled with requested services.  *Id.*  In particular, it did not communicate that the

4  Parked Page Service Agreement applies to anyone registering a domain name.  *Id.*

5       Similarly, the Domain Name Registration Agreements neither authorize Go

6  Daddy to park domain names nor prohibit it from doing so.  McKown Decl. at ¶ 6,

7  Exh. E.  Thus, as the court in *Crabb* determined, neither of these agreements

8  unequivocally authorizes Go Daddy to use registrants' domain names for the

9  placement of advertisements.  *Crabb*, 2011 WL 4479043, *3-4; *see also United Cal.*

10  *Bank v. Prudential Ins. Co. of America*, 681 P.2d 390, 420 (AZ Ct. App. 1983) ("It

11  is a basic rule of contract construction" that incorporating agreements by reference

12  requires a "'clear and unequivocal'" reference.); *Abrams v. Horizon Corp.*, 669 P.2d

13  51, 57 (1983) (recognizing that under Arizona law, ambiguities are construed

14  against the drafter").

15       Nor does the language of the Parked Page Services Agreement create the right

16  relied upon by AMPAS.  *See* SAC at ¶ 34 [Dkt. 170]; McKown Decl. at ¶ 8, Exh. G.

17  Specifically, Go Daddy's alleged authorization from the registrant to place

18  advertisements on parked pages resolving from their domain names is expressly

19  contingent on whether the domain name registrant is using any of Go Daddy's

20  parked page services.  As the court in *Crabb* explained, however, how would a

21  registrant know whether it was using one of Go Daddy's free parked page services?

22  *Crabb*, 2011 WL 4479043 at *4.  As such, the terms of those agreements do not

23  evidence any "transfer for consideration or receipt in exchange for consideration"

24  between Go Daddy and the registrants as required for a finding of trafficking under

25  the ACPA.

26

27  not contain any reference to software and service specific agreements generally, or the Parked
    Page services in particular.  McKown Decl. at ¶ 7, Exh. F.  Thus, the terms of those agreements

28  do not evidence any "transfer for consideration or receipt in exchange for consideration" between
    Go Daddy and the registrants as required by the ACPA for trafficking.

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

1    AMPAS is similarly incapable of relying on the Cash Parking Agreement to
2    support its position with regard to the Disputed Domains utilizing the Cash Parking
3    service.  As the various iterations of the Cash Parking Agreements make clear, the
4    registrants who purchased the Cash Parking service did not provide any license
5    rights to Go Daddy related to their domains.  To the contrary, the express language
6    in the majority of the Cash Parking Agreements produced in this action
7    demonstrates that it was the registrant who licensed the relevant software necessary
8    to utilize the Cash Parking service from Go Daddy, not the other way around.
9    McKown Decl. at ¶ 9, Exh. H.  Although the remainder of the Cash Parking
10   Agreements omit the specific licensing language, the terms of the agreement remain
11   clear:  Go Daddy did not secure any licensing or other property rights in the domain
12   names utilizing the Cash Parking service.  McKown Decl. at ¶ 10, Exh. I.

13   **C.   <u>Go Daddy Did Not Use Any Of The Disputed Domains</u>**

14   AMPAS alleges that Go Daddy used each of the Disputed Domains by
15   monetizing parked pages resolving from the Disputed Domains.  SAC at ¶ 3 [Dkt.
16   170].   The undisputed facts do not support such a finding as a matter of law.

17        1.   <u>Go Daddy Is Not The Registrant Or Registrant's Authorized</u>
18             <u>Licensee for Any Of The Disputed Domains</u>

19   Only the domain name registrant or the registrant's authorized licensee can
20   "use" a domain name for purposes of the ACPA.  *See* 15 U.S.C. § 1125(d)(1)(D);
21   *see also Lockheed II*, 141 F.Supp.2d at 655 (N.D. TExh. 2001) (*Lockheed II*)
22   ("Section 1125(d)(1)(D) expressly limits the 'uses' feature to the domain name
23   registrant or the registrant's authorized licensee.").  The undisputed evidence
24   establishes that Go Daddy was not the registrant for any of the Disputed Domains.
25   *See* SAC at ¶¶ 35, 40 [Dkt. 170]; *see also* Nicks at ¶ 2.  Accordingly, Go Daddy can
26   only be liable if it is an "authorized licensee" of the registrant.
27   Go Daddy anticipates that AMPAS will seek to rely upon the Parked Page
28   Service Agreements produced in this litigation to support its claim that Go Daddy

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

- 10 -

1  was the authorized licensee of the registrants of the Disputed Domains.  *See* SAC at

2  ¶¶ 35-40 [Dkt. 170].  As discussed above, however, AMPAS' claim is barred by the

3  deficiencies in the agreements at issue.  *See Crabb*, 2011 WL 4479043, *3-4.

4         AMPAS is similarly unable to present any evidence demonstrating that even

5  one of the registrants of the Disputed Domains agreed to the Parked Page Service

6  Agreement or the Cash Parking Agreement separate and apart from their general

7  agreement to the UTOS at the time of registration.  McKown Decl. at ¶¶ 4, 5, 6, 7, 8,

8  21, Exhs. C, D, E, F, G, T at 7:1-18; Jett Decl. at ¶2.  Nor can AMPAS present this

9  Court with any other evidence that Go Daddy was the authorized licensee of any

10 registrant of a Disputed Domain.  *Id.*  Because there is no genuine issue of material

11 fact as to whether Go Daddy was acting as the authorized licensee of the registrant,

12 Go Daddy is entitled to summary judgment on AMPAS' direct cybersquatting

13 claim.  *See Bird v. Parsons*, 289 F.3d 865, 881 (6th Cir. 2002) (plaintiff failed to

14 state a cybersquatting claim based on "use" of a domain name because there was no

15 allegation that defendant was the registrant's authorized licensee).

16              2.    Go Daddy Did Not "Use" The Disputed Domains As The

17                    Registrant's Authorized Licensee

18        Even if the Court determines that Go Daddy's agreements with the registrants

19 of the Disputed Domains render it the registrants' authorized licensee for purposes

20 of the ACPA, the purported "license" provided by the registrants was limited to the

21 placement of advertisements on parked pages resolving from their domain names.

22 *See* SAC at ¶¶ 33-35.  There is no evidence, however, that Go Daddy acted within

23 the scope of its purported license with respect to 237 of the Disputed Domains.

24        For 68 of these 237 Disputed Domains, [6] there is no evidence that these

25 domain names were ever routed to Go Daddy's parked page servers let alone that

26 Go Daddy or its affiliates placed advertising on them of any kind.  McKown Decl. at

27 _____

28 [6]     A list of these 68 Disputed Domains is attached hereto as Appendix 2.

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT GO DADDY.COM'S MOTION FOR SUMMARY JUDGMENT

¶¶ 2, 11, 12, 13, Exhs. A at 50:15-51:21, 37:9-38:3, J, K at ¶10, L; Nicks Decl. at ¶ 6.  For example, none of the registrant, impression, or revenue data produced by Go Daddy in this action identify any of these 68 Disputed Domains.  *Id.*  As such, Go Daddy is entitled to summary judgment on these 68 Disputed Domains as a matter of law.

There is also no evidence that Go Daddy placed revenue generated advertisements on the other 169 of 237 Disputed Domains.[7]  While these 169 Disputed Domains were routed to Go Daddy's parked page servers as indicated by the impression and registrant data produced by Go Daddy, there is no evidence that Go Daddy "used" any of these domain names by placing advertisements on them.  McKown Decl. at ¶¶ 12, 13, 18, 19, Exhs. K at ¶ 10, n. 3, L, Q at 3:7-26, Exh. R (*passim*); Nicks Decl. at ¶¶ 9, 10.  It is undisputed that Go Daddy's parked page program consists of both monetized and non-monetized parked pages, that a domain name registrant has the ability to control the content resolving from its domain name at all times, and that a parked page does not exist unless and until an Internet user places the domain name into his or her web browser.  McKown Decl. at ¶ 2, 23, Exhs. A at 37:9-38:3, V at 34:25-36:22, 75:20-77:7; Nicks Decl. at ¶ 11.  It is also undisputed that these 169 Disputed Domains did not generate any revenue while pointed to Go Daddy's parked page servers.  McKown Decl. 13, Exh. L.  The fact that an impression was made on a parked page does not mean that the content that resolved from the parked page contained advertisements.  Indeed, the lack of revenues generated from a parked page with impressions is indicative of the fact that the parked page did not contain ads.  Regardless, AMPAS cannot show that Go Daddy placed advertisements on any of these 169 Disputed Domains.  As such, Go Daddy is entitled to summary judgment on each.

---

[7]    A list of these 169 Disputed Domains is attached hereto as Appendix 3.

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

1    In opposition, AMPAS is likely to argue that the mere routing of the Disputed

2  Domains to Go Daddy's parked page servers is sufficient to constitute "use" under

3  the ACPA.  This argument is without merit.  First, domain name routing is not a

4  "use" for purposes of the ACPA.  *See Petroliam Nasional Berhad v. GoDaddy.com,*

5  *Inc.*, 2012 WL 10532, *9 (N.D. Cal. Jan. 3, 2012) ("*Petronas*") (granting motion for

6  summary judgment on the grounds that Go Daddy's routing of the disputed domain

7  names did not constitute a "use" under the ACPA).   This is particularly true where,

8  as here, there is no evidence that Go Daddy actually routed any of the 237 Disputed

9  Domains to a monetized parked page, but rather, merely created the infrastructure to

10 rout to its parked page servers in the event an Internet user placed one of the 237

11 Disputed Domains in its web browser.

12    Second, even if routing is deemed a "use" under the ACPA, courts have

13 uniformly held that routing is a core registrar function for which registrars have

14 immunity.  *See Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980,

15 984-85 (9th Cir. 1999) (registration and routing of a domain name does not extend

16 registrar's involvement beyond registration services); *Lockheed II*, 141 F. Supp. 2d

17 at 651-55 (defendant, which maintained a directory that linked domain names with

18 IP addresses of domain name servers that connected the domain names with other

19 Internet computers that host websites not subject to ACPA liability).  Thus, any

20 attempt by AMPAS to claim that Go Daddy "used" the Disputed Domains for

21 purposes of the ACPA by either providing the infrastructure to rout the Disputed

22 Domains and/or by routing them to its parked page servers fails as a matter of law.

23           3.    <u>AMPAS Admits That The "Use" At Issue Is The Placement Of</u>

24                 <u>Ads Related To The AMPAS Marks On Parked Pages</u>

25    Even assuming, *arguendo*, that each of the Disputed Domains resolved to a

26 monetized parked page in either the Free Parking or Cash Parking programs, there is

27 no evidence that Go Daddy engaged in the conduct for which AMPAS claims

28 liability.  In response to Requests for Admissions (Set Two), AMPAS repeatedly

- 13 -

admitted that "it is not the domain name itself that the Academy objects to; instead, it is the monetization of the domain name by GoDaddy to promote goods and services obviously relating to the AcademyAwards® and the OSCARS®." McKown Decl. at ¶ 3, Exh. B (*passim*).  Despite nearly three years of litigation, AMPAS did not produce any admissible evidence, such as authenticated screen shots, to demonstrate that Go Daddy placed advertisements that promoted goods and services relating to the AMPAS Marks on any of the Disputed Domains.  McKown Decl. at ¶ 18, 19, Exh. Q at 3:7-26, Exh. R (*passim*).  As a result, Go Daddy did not "use" any of the Disputed Domains as claimed.

### D.   A Subset Of Disputed Domains Are Not "Identical Or Confusingly Similar" To The AMPAS Marks

In addition to the arguments above, AMPAS' direct cybersquatting claim fails because a subset of Disputed Domains are not identical or confusingly similar to the AMPAS Marks as a matter of law.

#### 1.   None Of The Disputed Domains Identified In Appendices 4-6 Are Identical To The AMPAS Marks

A determination as to whether a domain name is "identical" to a given trademark, as that term is used in the ACPA, can be accomplished by a simple comparison of the domain name string to the marks at issue.  *See* 15 U.S.C. § 1125(d)(1)(A).  The specific Disputed Domains listed in Appendices 4-6, while bearing the character strings *oscar* or *academyaward* within the domain string, are not identical to any of the AMPAS Marks.  *See* Appendices 4-6.

#### 2.   None Of The Disputed Domains Identified in Appendices 4-6 Are Confusingly Similar To The AMPAS Marks

"In the cybersquatting context, 'confusing similarity' must simply mean that the plaintiff's mark and the defendant's domain name are so similar in sight, sound and meaning that they could be confused."  J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 25:78 (4th ed. 2004).

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

a.   The Uncontroverted Survey Evidence Demonstrates That
74 Of The Disputed Domains8 Are Not Confusingly
Similar To The AMPAS Marks

Go Daddy retained Dr. Carol Scott, a survey expert, to assess consumer perceptions regarding 75 of the Disputed Domains alleged by AMPAS to infringe on the AMPAS Marks.  In January 2013, Dr. Scott conducted a series of surveys testing 75 of the Disputed Domains to determine the extent to which each of the domain names is confusingly similar to the AMPAS Marks.  McKown Decl. at ¶ 16, Exh. O at ¶¶3, 4, and Exhibit 5.  Based on the survey results, Dr. Scott determined that with a single exception, each of the domain names tested was not confusingly similar to the AMPAS Marks.  *Id.* at ¶4.  Specifically, when consumers were shown each of the domain names and asked what associations came to mind, consumers generally did not provide responses that related to entertainment industry.  *Id.* Indeed, when compared to the average of three control marks, net associations even broadly related to the entertainment industry ranged only from zero to 6% for 74 of the domain names tested.   *Id.*  Even more attenuated was the association of the domain names with the AMPAS Marks.   *Id.*

Based on the low levels of association identified in her expert report, Dr. Scott opines that the 74 domain names identified in Appendix 4 are not confusingly similar to the AMPAS Marks.  *See* McKown Decl. at ¶ 16, Exh. O at ¶¶ 4-13 and Exhibits 2-5.  Her opinion is an accord with courts generally considering survey evidence in the context of trademark infringement.  *See, e.g., Roselux Chem. Co. v. Parsons Ammonia Co.*, 299 F.2d 855, 862 (C.C.P.A. 1962) (survey showing that only 10% of actual users associated a name with a single source insufficient to show the name served as a designation of origin); *Citizens Banking Corp. v. Citizens Fin. Group, Inc.*, No. 07-11514, 2008 WL 1995104, at *5 (E.D. Mich. May 6, 2008) (8%

---

8   A list of these 36 Disputed Domains is attached hereto as Appendix 4.

1   identification of name with plaintiff insufficient to demonstrate confusion); *Brooks*

2   *Shoe Mfg. Co. v. Suave Shoe Corp.*, 533 F. Supp. 75, 81 (S.D. Fla. 1981) (2.7%

3   recognition level "indicates to this Court that the public's association between the

4   'V' and Brooks Shoe Manufacturing Company is de minimus").

5       Dr. Scott's surveys are the only surveys presented in this case; AMPAS has

6   not presented a survey nor designated an expert to rebut the opinion offered.  Based

7   on the survey evidence, the 74 domain names identified in Appendix 4 are not

8   confusingly similar to the AMPAS Marks and should be dismissed.

9                       b.      Linguistic Evidence Demonstrates That 134 Of The

10                              Disputed Domains Are Not Confusingly Similar To The

11                              AMPAS Marks

12      Go Daddy retained Dr. Geoffrey Nunberg as an expert witness to conduct a

13  linguistic and lexicographical analysis measuring the similarity of the Disputed

14  Domains to the AMPAS Marks.  McKown Decl. at ¶ 17, Exh. P at 1-2, 11-41.

15  Linguists study how people understand words or sounds based on seeing, hearing, or

16  reading them.  *Lebow Bros. v. Lebole Euroconf S.p.A.*, 503 F. Supp. 209, 212 (E.D.

17  Pa. 1980).  Courts have routinely admitted expert testimony from linguists in

18  trademark cases to assist in determining the similarity of trademarks, words, and

19  sounds.  *See e.g.*, *Sanofi-Aventis v. Advancis Pharm. Corp.*, 453 F. Supp. 2d 834,

20  848-49 (D. Del. 2006); *Donald F. Duncan, Inc. v. Royal Tops Mfg. Co.*, 343 F.2d

21  655, 660-61 (7th Cir. 1965); *Mister Twister, Inc. v. Jenem Corp.*, 710 F. Supp. 202,

22  204 (S.D. Ohio 1989); *Pathfinder Commc'ns Corp. v. Midwest Commc'ns Co.*, 593

23  F. Supp. 281, 283-85 (S.D. Ind. 1984).

24      Because "confusing similarity" under the ACPA is essentially an analysis of

25  confusion under the first prong of the likelihood of confusion standard—sight,

26  sound and meaning—the use of linguists in an ACPA case is consistent with the

27  admission of expert testimony in trademark infringement cases.  *See* J. Thomas

28  McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION,

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

- 16 -

§25:78 (4th ed. 2004); *cf. AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) (similarity of the marks is tested on three levels: sight, sound, and meaning).

In analyzing the Disputed Domains, Dr. Nunberg determined that 131 of the Disputed Domains were not linguistically or lexographically similar to the AMPAS Marks in sight, sound or meaning.  McKown Decl. at ¶ 17, Exh. P at ¶¶ 4-9, Exh. A. Dr. Nunberg categorized the Disputed Domains into five categories and provided a basis for each classification.  Go Daddy now moves for summary judgment on three of those categories.[9]

The first category upon which Go Daddy moves for summary judgment involves 37 Disputed Domains bearing "name identity" to the AMPAS Marks; i.e., where one of the domain names consist of either a personal name or part of a surname or business name.[10]  *Id.* at ¶¶ 23-25.  Dr. Nunberg determined that each of these 37 Disputed Domains is not similar to the AMPAS Marks because a person seeing, reading, and understanding the domain name would not associate it with AMPAS, let alone believe that the site resolving from these domain names was sponsored by or affiliated with AMPAS.   *Id.* at ¶¶ 24-25.  As Dr. Nunberg explains, AMPAS' indiscriminate inclusion of these marks absurdly presupposes that the mere presence of the personal name "oscar" automatically renders a domain name confusingly similar.  *Id.* at ¶ 25.

The second category involves 39 Disputed Domains in which the character string *oscar* and/or *academyaward* appear in the domain name string, but are interpreted in the generic sense, which the Oxford English Dictionary defines as "any award for outstanding performance or achievement" unrelated to AMPAS or its marks.[11]  *Id.* at ¶¶ 26-29.  Dr. Nunberg explained that each of the domain names

---

[9]     AMPAS dismissed the Disputed Domains identified by Dr. Nunberg in Category 1. Genuine issues of material fact exist regarding the Disputed Domains identified in Category 5.

[10]    A list of these 36 Disputed Domains is attached hereto as Appendix 5-1.

[11]    A list of these 39 Disputed Domains is attached hereto as Appendix 5-2.

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

in this category bears no similarity to the AMPAS Marks because *oscar* and

*academy awards* are polysemous words (i.e. words having more than one sense)

that, as used in these category of domain names, would not cause a person seeing,

reading, and understanding the domain name to associate it with AMPAS, let alone

believe that the site resolving from these domain names was sponsored by or

affiliated with AMPAS.  *Id.*

The final category involves 55 Disputed Domains which Dr. Nunberg defines

as "coreferential incomparables and implausibles."[12]  *Id.* at ¶¶ 30-38.  Dr. Nunberg

determined that these 55 Disputed Domains are not similar from a linguistic

approach to the AMPAS Marks so as to cause confusion because (1) based on the

most plausible reading of the domain name, the purpose or content of the site is

inconsistent with the information presumably provided by the Academy's own site,

or (2) it is implausible that AMPAS would use the domain name for its own site, so

that the name would not serve the purposes of someone trying to divert traffic from

the AMPAS site.  *Id.* at ¶¶ 30-38.

AMPAS did not designate a linguistic or lexicographic expert to dispute the

conclusions reached by Dr. Nunberg and no rebuttal testimony from such an expert

was offered.  Based on the uncontroverted expert testimony of Dr. Nunberg, the 131

domain names identified above are not confusingly similar to the AMPAS Marks

and should be dismissed.

        c.        <u>Third Party Evidence Demonstrates That 40 Of The</u>

                <u>Disputed Domains[13] Are Not Confusingly Similar to the</u>

                <u>AMPAS Marks</u>

As stated earlier, confusing similarity under the ACPA is determined by

examining the "sight, sound, and meaning" of a given domain name and comparing

---

[12]     A list of these 56 Disputed Domains is attached hereto as Appendix 5-3.

[13]     A list of these 40 Disputed Domains, along with reference to declarations submitted in direct reference to those domains, is attached hereto as Appendix 6.

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

that information with the trademarks at issue.  Where a domain name conveys a meaning different than that conjured by the trademarks at issue, the domain name would not be confusingly similar based on the difference in meaning.  *See Ford Motor Co. v. Greatdomains.Com, Inc.*, 177 F. Supp. 2d 635, n. 3 (domain name fordtrucks.com would be confusingly similar to the FORD mark of the Ford Motor Co., but the domain name fordstheatre.org used for a web page of Ford's Theatre in Washington, D.C. would probably not be confusingly similar because it would convey a different meaning).  Evidence as to the meaning of the mark may include standard dictionary definitions.  *Hancock v. American Steel & Wire Co.*, 203 F.2d 737, 740 (C.C.P.A. 1953).

As supported by the testimony provided in the sworn declarations submitted herewith, the undisputed meaning of each of the domain names identified in Appendix 6 bears no relation to the AMPAS Marks.  *See* Appendix 6.  Rather, the declarations make clear that these domain names refer to the name of the registrants, their families, businesses, or pets, or relate to goods and services wholly unrelated to AMPAS.  *Id.*

The meaning of each of these domain names has no relation to AMPAS or its marks.  Indeed, the declarations identified in Appendix 6 and submitted for the Court's review are indicative of why the consumer surveys failed to associate these domain names with the entertainment industry and why, from a linguistics perspective, there would be no similarity in meaning.  Therefore, Go Daddy is entitled to summary judgment with respect to these 40 domain names.

**E.      There Is No Evidence That Any Of The Disputed Domains Are "Dilutive of" The AMPAS Marks**

Under the ACPA, a trademark owner who demonstrates that the trademarks at issue are famous may avoid the "identical or confusingly similar" requirement by instead demonstrating that the domain name is "dilutive of" of its famous marks.  *See* 15 U.S.C. § 1125(d)(1)(A).  While the issue of whether the AMPAS Marks are

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

1   famous is in dispute, the Court need not determine the issue of fame because there is

2   no evidence that any of the Disputed Domains were "dilutive of" the AMPAS

3   Marks.

4        Interpretation of the term "dilutive of" under the ACPA appears to be a matter

5   of first impression.  While numerous courts have interpreted federal and state

6   dilution statutes, Go Daddy is not aware of a court that has interpreted the meaning

7   of "dilutive" under the ACPA.  Nonetheless, applying traditional rules of statutory

8   interpretation, the term "dilutive of" for purposes of the ACPA unambiguously

9   requires that a plaintiff show actual dilution by objective proof of actual injury to the

10  economic value of its marks.  In this case, AMPAS has not, nor can it, demonstrate

11  such injury as a result of any alleged use of the Disputed Domains.  As such, the

12  Disputed Domains are not dilutive of the AMPAS Marks.

13       In construing the provisions of a statute, courts look first to the language of

14  the statute to determine whether it has a plain meaning.  *See McDonald v. Sun Oil*

15  *Co.*, 548 F.3d 774, 780 (9th Cir. 2008).  Here, the statutory text unambiguously

16  requires actual dilution.

17       The ACPA states that "[a] person shall be liable [under the Act] . . . if . . . that

18  person registers, traffics in, or uses a domain name that . . . is . . . dilutive of that

19  mark . . . ."  15 U.S.C. 1125§ (d)(1)(A).  A domain name can only be dilutive of a

20  mark if it causes actual dilution.  The fact that a domain name may cause dilution

21  does not make that domain name dilutive.  As such, the statute unambiguously

22  requires actual dilution.  *See Bosley*, 403 F.3d at 680 (construing the phrase "dilutive

23  of" to mean "dilutes," i.e. actual dilution).

24       The Supreme Court's ruling in *Moseley v. V Secret Catalogue, Inc.* is

25  instructive on what evidence is required for a showing of actual dilution.  *See*

26  *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 428 (2003), *superseded by*

27  *statute on other grounds*.   Specifically, the *Moseley* Court explained that while

28  actual loss of sales or profits is not necessarily required, a party must show more:

**WRENN BENDER LLLP**
2 Park Plaza, Suite 550
Irvine, California 92614

"[T]he mere fact that consumers mentally associate the junior user's mark with a famous mark is not sufficient to establish actionable dilution." *Id.* (rejecting arguments that actual dilution was too difficult to prove).

In this case, there is no evidence of any lessening of the capacity of the AMPAS Marks to identify and distinguish goods or services sold by AMPAS, let alone an affirmative showing that any of the Disputed Domains actually diluted any of the AMPAS Marks.  To the contrary, AMPAS admits that it has no knowledge of lost profits, diversion of traffics from its own websites, tarnishment, harm, or any other indicator of dilution resulting from any of the Disputed Domains.  McKown Decl. at ¶¶ 14, 15, Exhs. M at 38:25-41:28, N at 89:13-19, 89:21-91:6, 91:8-92:7, 92:21-93:21, 93:24-94:14.  As such, AMPAS cannot rely on the dilutive prong to prove its ACPA claim and thus, Go Daddy requests partial summary judgment on this issue as a matter of law.

## V.     AMPAS FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUPPORT ITS CONTRIBUTORY CYBERSQUATTING CLAIM

AMPAS seeks to hold Go Daddy liable for contributory cybersquatting with respect to those Disputed Domains that purchased its Cash Parking service, based on three facts: (1) Go Daddy offers its registration services to the public, (2) in conjunction with those services, Go Daddy's "dashboard" suggests domain names to a registrant based on the preferred domain name sought by the registrant, and (3) Go Daddy provides registrants the opportunity to monetize their domains by purchasing in the Cash Parking service.  *See* SAC ¶110.  Without evidence, AMPAS assumes that each of the registrants who placed their domains into the Cash Parking Program actually utilized the technology offered by Go Daddy in selecting their domain names and as such, Go Daddy can be held liable for contributory cybersquatting. The lack of evidentiary support, however, bars AMPAS' claim.

As discussed in *Petronas*, district courts considering claims for contributory cybersquatting have analyzed such claims under the rubric of contributory

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

1   trademark infringement.  *Petronas*, 2012 WL 10532 at *10; *see, e.g., Verizon*

2   *California, Inc. v. Above.com,* No. CV–11–0973 ABC, slip op. at 5–11 (C.D. Cal.,

3   July 13, 2011) (citing *Microsoft Corp. v. Shah,* No. C–10–0653 RSM, 2011 WL

4   108954 at *1–3 (W.D. Wash., Jan. 12, 2011); *Ford*, 177 F. Supp. 2d at 646–47).

5        In the Ninth Circuit, one is liable for contributory trademark infringement

6   when he has knowledge of another's infringement, and either materially contributes

7   to or induces that infringement.  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d

8   788, 795 (9th Cir. 2007); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194

9   F.3d 980, 984–85 (9th Cir.1999).  The existence of direct infringement is a

10  necessary element of a claim for contributory infringement.  *Perfect 10*, 494 F.3d at

11  795; *see also Bridgeport Music, Inc. v. Diamond Time, Ltd*., 371 F.3d 883 (6th Cir.

12  2004) ("Without proof of direct infringement there can be no liability for

13  contributory infringement").

14        AMPAS cannot proceed with its contributory cybersquatting claim because it

15  cannot present sufficient evidence for a jury to conclude that the registrants of the

16  Disputed Domains engaged in direct cybersquatting.  Discovery has closed, yet

17  AMPAS did not obtain, nor even seek, discovery from the parties that allegedly

18  engaged in the underlying cybersquatting.  AMPAS offers no evidence of the

19  registrants' intent beyond the fact that the Disputed Domains included the letter

20  string *oscar* or *academyaward*.  McKown Decl. at ¶¶ 14, 15, 24, Exh. M at 7:4-8:12,

21  Exh. N at 86:8-11, Exh. W at 12:17-14:14, 17:1-18:24.  Without such discovery, it is

22  impossible to determine the registrant's motives in registering the Disputed

23  Domains, whether they utilized a domain name suggested by Go Daddy, or whether

24  they acted with a bad faith intent to profit from the AMPAS Marks in placing their

25  domain in the Cash Parking Program.  There is simply no record for determining the

26  registrants' bad faith intent to profit.

27        The *Petronas* case is instructive in this regard.   In that matter, the plaintiff

28  asserted a claim for contributory cybersquatting against Go Daddy based on the

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

registration of domain names by a third party registrant containing the plaintiffs' marks.  *Petronas*, 2012 WL 10532 at *2.  The plaintiff, however, failed to produce any evidence to determine the intent of the third party registrant.  In granting summary judgment in favor of Go Daddy on the contributory cybersquatting claim, the Court noted *inter alia* that:

> Arguably, the fact that the registrant arranged to have Internet traffic directed from the Disputed Domains to a pornographic website is sufficient to show some variety of bad faith. However, the record is silent as to the intent of the registrant—that is, there is absolutely no evidence of bad faith *intent to profit* from Petronas' mark.  It is not enough to say that one can "infer" a bad faith intent to profit, even were such an inference sufficient to establish that element of the claim.  One could just as easily infer a bad faith intent to create mischief, or a bad faith intent to annoy the owner of the Petronas mark.

*Petronas*, 2012 WL 10532 at *12.  Because AMPAS, like the plaintiff in *Petronas*, failed to procure evidence sufficient to support the statutory elements of a claim of direct cybersquatting, it cannot show that Go Daddy engaged in contributory cybersquatting.

Even assuming the registrants of the Disputed Domains were engaged in cybersquatting, Go Daddy remains entitled to summary judgment on this claim.  In the specific context of the ACPA, to be liable for contributory cybersquatting, a defendant must have known or have had reason to know that the direct cybersquatter was acting in bad faith; this can be demonstrated by direct evidence or the existence of "exceptional circumstances."  *Ford*, 177 F. Supp. 2d at 647.

Go Daddy is also entitled to summary judgment on AMPAS' contributory cybersquatting claim for the independent reason that there are no "exceptional circumstances" that would justify imputing to Go Daddy knowledge that any registrant registered the Disputed Domains with a bad faith intent to profit from the

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

AMPAS Marks.  *Id.*  AMPAS alleges that the "exceptional circumstance" that exists in this matter is the fact that Go Daddy's "dashboard" offers suggested domain names to a registrant based on the preferred domain name sought.  SAC, ¶110 [Dkt. 170].  AMPAS, however, confuses:  (1) the initial presentation of suggested domain names to registrants at the time of registration, based on the registrant's input of its desired domain name; with (2) the election of a Go Daddy customer to purchase Go Daddy's Cash Parking service, which occurs in one of two distinct contexts, neither of which is contemporaneous to the selection of the domain name.  Nicks Decl. at ¶ 13; McKown Decl. at ¶ 24, Exh. W at 18:24-20:19.  The undisputed evidence demonstrates that, contrary to AMPAS' unsubstantiated allegations, an individual who purchases the Cash Parking service is not contemporaneously presented with additional suggested domain names for registration.  *Id.*

Even more problematic for AMPAS is that it cannot produce evidence to demonstrate that Go Daddy induced the registrants of the Disputed Domains to register any domain names that infringed third party trademarks, let alone evidence that any of the registrants utilized the technology at issue in selecting and/or registering any of the Disputed Domains.  There is no evidence that any registrant who purchased the Cash Parking service selected their domain name at the suggestion of Go Daddy.  McKown Decl. at ¶ 15, 24 at Exhs. N at 86:8-11, W at 15:7-16:28; Nicks Decl. at ¶¶ 3, 13.  The mere possibility that a registrant may choose to register a domain name containing third party trademarks after a suggestion of alternatively available domains is made by Go Daddy's automated program at the time of registration is not sufficient to find bad faith in the absence of evidence that such a situation actually occurred.

In light of the absence of any evidence to support AMPAS' claim for contributory cybersquatting, the Court should grant partial summary judgment on this claim in favor of Go Daddy.

/ / / /

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

## VI.   AMPAS' UNFAIR COMPETITION CLAIM FAILS WITHOUT A VIABLE CYBERSQUATTING CLAIM

AMPAS' remaining claim is based on the exact same factual allegations as the above-discussed ACPA claims and is otherwise "substantially congruent" to those claims.  SAC at ¶¶ 76-81.   The Ninth Circuit has "consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act."  *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994); *accord Appliance Recycling Ctrs. of Am., Inc. v. JACO Envtl., Inc., No.* 09-55168, 378 Fed. Appx. 652, 656 (9th Cir. May 4, 2010) (same).  Because summary judgment must be granted on the ACPA claims, it also must be granted on AMPAS' derivative state law claim.

## VII.   CONCLUSION

In light of the foregoing, Go Daddy respectfully requests that the Court grant its motion for summary judgment in its entirety.  Alternatively, Go Daddy respectfully requests that the Court grant Go Daddy partial summary judgment finding that (1) none of the Disputed Domains are dilutive of the AMPAS Marks; (2) Go Daddy did not register, traffic in, or use 237of the Disputed Domains; (3) 131 of the Disputed Domains are not identical or confusingly similar to the AMPAS Marks.

Dated:  March 14, 2013

**WRENN BENDER LLLP**
Aaron M. McKown
Paula L. Zecchini

By:  */s/ Aaron M. McKown*
Aaron M. McKown
Attorneys for Defendants
GODADDY.COM, INC.

**WRENN BENDER LLLP**
2 Park Plaza, Suite 550
Irvine, California 92614

# APPENDICES

# APPENDIX 1

Second Amended Complaint (10/27/11)

| | |
|---|---|
| 2011OSCARS.COM | LEEZAGIBBONSOSCARNIGHT2011.COM |
| 2013OSCARS.COM | LEEZAGIBBONSOSCARPARTY.COM |
| 2013OSCARS.NET | LISTOSCAR.COM |
| 3DOSCAR.COM | LOCATIONSOSCAR.COM |
| ACADEMYAWARDBUZZ.COM | MAKINGTHEROUNDSWITHOSCAR.COM |
| ACADEMYAWARDS.NET | MYOSCARCOLLECTION.COM |
| ACADEMYAWARDSINC.COM | MYOSCARCOLLECTION.NET |
| ACADEMYAWARDSPREVIEW.COM | MYOSCARCOLLECTIONNOW.COM |
| ACADEMYAWARDZ.COM | MYOSCARCOLLECTIONONLINE.COM |
| ANDTHEOSCARGOESTOTHEHANGOVER.COM | MYOSCARSPEECH.COM |
| AWARDSOSCAR.COM | OASINOSCAR.COM |
| BETACADEMYAWARDS.COM | OFFICEOSCARS.COM |
| BOOTLEGOSCARS.COM | OFFICIALE-OSCAR.COM |
| BOOTLEGOSCARS.NET | OFFICIALE-OSCARONLINE.COM |
| COLLEGIATEACADEMYAWARDS.COM | OSCAR2.COM |
| COLLEGIATEACADEMYAWARDS.ORG | OSCAR360.COM |
| DOGACADEMYAWARD.COM | OSCARANDEMMY.COM |
| E-OSCAR.COM | OSCARATTHEMOVIES.COM |
| E-OSCARHOME.COM | OSCARAWARDBOOKS.COM |
| E-OSCARONLINE.NET | OSCARBET.COM |
| FUTUREOSCARWINNER.NET | OSCARBETANCUR.COM |
| GREENOSCAR.COM | OSCARBETS.COM |
| GUIDE2OSCARSEVENTS.COM | OSCARBLOG.COM |
| GUIDETOOSCARSEVENTS.COM | OSCARBLOGGER.COM |
| HOLLYWOODOSCAR.COM | OSCARCAM.COM |
| HOMEMOVIEOSCARS.COM | OSCARCINEMAS.COM |
| HOMEOSCARS.COM | OSCARCLAIM.COM |
| IMAGEOSCAR.NET | OSCARCLAIM.NET |
| IMAGEOSCARS.COM | OSCARCLAIMS.NET |
| INTERNETOSCAR.COM | OSCARCOMEDY.COM |
| INTERNET-OSCAR.COM | OSCARCOMMUNITY.COM |
| IXOSCAR.COM | OSCARDOESITAGAIN.COM |
| JONSTEWARTOSCARS.COM | OSCARDOM.COM |
| LEEZAGIBBONSOSCARNIGHT2009.COM | OSCARDOW.COM |

# APPENDIX 1

| | |
|---|---|
| OSCARDVDS.COM | OSCARSLIST.COM |
| OSCARELIGIBLE.COM | OSCARSLIVEBLOGGING.COM |
| OSCARELIGIBLE.NET | OSCARSLLC.COM |
| OSCARENTERTAINMENT.COM | OSCARSMILE.COM |
| OSCARFAQS.COM | OSCARSNUB.COM |
| OSCARFORWOMEN.COM | OSCARSONLINE.NET |
| OSCARGOODIES.COM | OSCARSOPENHOUSE.COM |
| OSCARGURU.COM | OSCARSORNOT.COM |
| OSCARHOPE.COM | OSCARSOTO.COM |
| OSCARHOSPITALITY.COM | OSCARSPICTURES.COM |
| OSCARI.COM | OSCARSRESULTS.COM |
| OSCARI.NET | OSCARSRESULTS.NET |
| OSCARIMAGE.COM | OSCARSTWEET.COM |
| OSCAR-INT.COM | OSCARSUNPLUGGED.COM |
| OSCARLIST.COM | OSCARSWIN.COM |
| OSCARLOCATIONS.COM | OSCARTEL.COM |
| OSCARMOVIEMAKER.COM | OSCARTHEATERS.COM |
| OSCARMOVIES.NET | OSCARTRAILER.COM |
| OSCARORNOT.COM | OSCARTRAVELWEB.COM |
| OSCARRESPONSE.COM | OSCARTWEETS.COM |
| OSCARRESULTS.COM | OSCARTWIST.COM |
| OSCARRESULTS.NET | OSCARUNIVERSE.COM |
| OSCARRUN.COM | OSCARWEAR.NET |
| OSCARSARCHIVES.COM | OSCARWINNERS.NET |
| OSCARSBALL.COM | OSCARWINNERSCOMMUNITY.COM |
| OSCARSBLOG.COM | OSCARWINNINGFILMS.COM |
| OSCARSDISCOUNTEDPRICESONLINE.COM | OSCARWORTHYMANSION.COM |
| OSCARSEATON.COM | ROUNDINGWITHOSCAR.COM |
| OSCARSFANTASY.COM | ROUNDING-WITH-OSCAR.COM |
| OSCARSFASHION.COM | SAYSOSCAR.COM |
| OSCARSGIFTINGSUITE.COM | TEXTILEOSCARS.COM |
| OSCARSGOODIEBAGS.COM | TEXTILEOSCARS.NET |
| OSCARSGOODIES.COM | THEFANTASYOSCARS.COM |
| OSCARSHOMEMOVIES.COM | THEIMAGEOSCAR.COM |
| OSCARSHOTELS.COM | THEIMAGEOSCARS.COM |
| OSCARSHOTELS.NET | THEINTERNETACADEMYAWARDS.COM |
| OSCARSINAMINUTE.COM | THELIQUIDOSCARS.COM |

# APPENDIX 1

| | |
|---|---|
| THELOCATIONSOSCAR.COM | THEOSCARSXXX.COM |
| THEMORMONOSCARS.COM | THEOSCARTEAM.COM |
| THEOSCARCOPS.NET | THEOSCARTOUR.COM |
| THEOSCARDOTCOM.COM | THINKOSCAR.COM |
| THEOSCARGOES2.COM | THINKOSCAR.NET |
| THEOSCARGURU.COM | TRAVELOSCAR.COM |
| THEOSCARORNOT.COM | TRAVELOSCARS.COM |
| THEOSCARSATLANTA.COM | TRAVELOSCARS.NET |
| THEOSCARSORNOT.COM | VOTEOSCARS.COM |
| THEOSCARSTWEET.COM | VOTEOSCARSADS.COM |
| THEOSCARSTWEETS.COM | WEBACADEMYAWARDS.COM |

# APPENDIX 1

First Disclosure of Additional Infringing Domain Names (4/14/2011)

| |
|---|
| 2OSCARS.NET |
| ACADEMY-AWARDS.INFO |
| ACADEMYAWARDSDB.COM |
| ACADEMYAWARDSLIVE.COM |
| ACADEMYAWARDWINNINGFILMS.COM |
| AKSARBENOSCARS.COM |
| APP-OSCARS.COM |
| APPSOSCARS.COM |
| APPS-OSCARS.COM |
| DEREKOSCARSON.COM |
| GLOBEACADEMYAWARD.COM |
| GLOBEACADEMYAWARDS.COM |
| GLOBEACADEMYAWARDS.ORG |
| INTERNETACADEMYAWARDS.COM |
| MOISESOSCAR.COM |
| OSCARANDEDEN.COM |
| OSCARJAFFE.COM |
| OSCARKIDS.COM |
| OSCAR-MIKE.COM |
| OSCARMONSALVE.COM |
| OSCARNOMINATEDFILMS.COM |
| OSCARNOMINATIONS2011.COM |
| OSCARS2011LIVE.COM |
| OSCAR-2011.COM |
| OSCARSEASON.NET |
| OSCARSRAMIREZ.COM |
| OSCARSROOM.COM |
| OSCARWELCH.COM |
| OSCARWELCH.NET |
| OSCARYLALO.COM |
| PETACADEMYAWARDS.COM |
| PETACADEMYAWARDS.INFO |
| THEOSCARBODY.COM |
| THEOSCARS.CO |
| THEWORLDAWARDACADEMY.COM |
| THEWORLDAWARDACADEMY.ORG |
| THINKQUICKOSCAR.COM |
| WORMACADEMYAWARDS.ORG |

# APPENDIX 1

Second Disclosure of Additional Infringing Domain Names (9/14/2011)

| |
|---|
| 411-ACADEMYAWARDS.COM |
| ACADEMYAWARDMOVIES.COM |
| ACADEMYAWARDS2011LIVE.COM |
| ACADEMYAWARDS2012.NET |
| ATTHEOSCARS.COM |
| BOLLYWOODOSCARAWARDS.COM |
| DJ-ACADEMY-AWARDS.COM |
| GOTOSCAR.COM |
| METAVERSEACADEMYAWARDS.COM |
| OSCAR4RE.COM |
| OSCARACADEMYAWARD.COM |
| OSCARANDREW.COM |
| OSCARAPP.COM |
| OSCARBRIGHT.COM |
| OSCARBRITE.COM |
| OSCARCHALLENGE.COM |
| OSCARCHALLENGE.NET |
| OSCARDVD.COM |
| OSCARHICKS.COM |
| OSCARHICKS.NET |
| OSCARLARSON.COM |
| OSCARMAK.COM |
| OSCARNELSON.COM |
| OSCARNIGHTDRESSES.COM |
| OSCARPARDO.COM |
| OSCARPAUL.COM |
| OSCARS3D.COM |
| OSCARSANTOLALLA.COM |
| OSCARSDRESSREGISTRY.COM |
| OSCARSENN.COM |
| OSCARSOASIS.COM |
| OSCARSPEAR.COM |
| OSCARSREDCARPET.COM |
| OSCARUNRUH.COM |
| OSCARVIEWINGPARTY.COM |
| OSCARWALTERS.NET |
| OSCARWAY.COM |
| OSCARWHIMPER.COM |
| OSCARWHIMPER.NET |
| SOCIALMEDIAACADEMYAWARDS.COM |
| VIRTUALACADEMYAWARDS.COM |
| VIRTUALWORLDACADEMYAWARDS.COM |

# APPENDIX 1

Third (Untimely) Disclosure of Additional Infringing Domain Names (12/12/2011)

| |
|---|
| 2011THEOSCARS.COM |
| 2012ACADEMYAWARDS.COM |
| 2013ACADEMYAWARDS.COM |
| 24HOURSATOSCARS.COM |
| 24HOURSATTHEOSCARS.COM |
| 2OSCARS.COM |
| ACADEMYAWARDS2011WINNERS.COM |
| ACADEMYAWARDS2012WINNERS.COM |
| ALLOSCAR.COM |
| ALLOSCARWINNERS.COM |
| BILLYCRYSTAL2012ACADEMYAWARDS.COM |
| BILLYCRYSTAL2012OSCARS.COM |
| LISTOFACADEMYAWARDWINNERS.COM |
| MYOSCARORNOT.COM |
| MYOSCARSORNOT.COM |
| NIGHTATOSCARS.COM |
| OSCARBUZ.COM |
| OSCARCAP.COM |
| OSCARGOODIEBAGS.COM |
| OSCARIMAGES.COM |
| OSCARMOMINEE.COM |
| OSCARMOMINEES.COM |
| OSCARMONLINE.COM |
| OSCARREDCARPET.COM |
| OSCARS-EMPORIUM.COM |
| OSCARWINNERS2009.COM |
| OSCARWINNERS2012.COM |
| OSCARWINNINGMOVIES.COM |
| THEOSCARS2011.COM |
| TWOOSCARS.COM |

# APPENDIX 1

Fourth (Untimely) Disclosure of Additional Infringing Domain Names (6/07/2012)

| |
|---|
| 100OSCAR.COM |
| 100OSCARS.COM |
| 100THOSCAR.COM |
| ACADEMYAWARD100.COM |
| ACADEMY-AWARDS-POOL.COM |
| ACDEMYAWARDSWINNERSLIST.COM |
| BESTOSCARPARTYINTOWN.COM |
| BESTPICTUREOSCARNOMINATIONS.COM |
| COMEDYOSCARS.COM |
| IAMANOSCARWINNER.COM |
| LETSTALKOSCARS.COM |
| OSCAR2013LIVE.COM |
| OSCAR2013LIVESTREAM.COM |
| OSCAR2014LIVE.COM |
| OSCARAWARD2013LIVE.COM |
| OSCARAWARDS2013.COM |
| OSCAR-AWARDS-POOL.COM |
| OSCARHOSTS.COM |
| OSCARLIVE2013.COM |
| OSCARNOMINATEDMOVIES.COM |
| OSCARNOMINATIONS2013.COM |
| OSCARPICTURES.COM |
| OSCARS2013LIVE.COM |
| OSCARSFILM.COM |
| OSCARSNOBINATIONS.COM |
| OSCARSWINNER.COM |
| OSCARWEEK.COM |
| OSCARWINNINGACTORS.COM |
| WATCHACADEMYAWARDS2012ONLINE.COM |
| WATCHOSCAR2013ONLINE.COM |
| WATCHOSCARAWARDS2012ONLINE.COM |
| YOUTUBEOSCARS.COM |
| ZBIGATTIACADEMYAWARDS.COM |

# APPENDIX 1

Fifth (Untimely) Disclosure of Additional Infringing Domain Names (3/08/2013)

| |
|---|
| 2006ACADEMYAWARDS.COM |
| ACADEMYAWARDSSHOW.COM |
| THEACADEMYAWARDSLIVE.COM |

# APPENDIX 2

| | |
|---|---|
| 100OSCAR.COM | OSCARAWARD2013LIVE.COM |
| 100OSCARS.COM | OSCARAWARDS2013.COM |
| 100THOSCAR.COM | OSCAR-AWARDS-POOL.COM |
| 2011THEOSCARS.COM | OSCARBUZ.COM |
| 2012ACADEMYAWARDS.COM | OSCARCAP.COM |
| 2013ACADEMYAWARDS.COM | OSCARGOODIEBAGS.COM |
| 24HOURSATOSCARS.COM | OSCARHOSTS.COM |
| 24HOURSATTHEOSCARS.COM | OSCARIMAGES.COM |
| 2OSCARS.COM | OSCARLIVE2013.COM |
| ACADEMYAWARD100.COM | OSCARMOMINEE.COM |
| ACADEMYAWARDS.NET | OSCARMOMINEES.COM |
| ACADEMYAWARDS2011WINNERS.COM | OSCARMONLINE.COM |
| ACADEMYAWARDS2012WINNERS.COM | OSCARNOMINATEDMOVIES.COM |
| ACADEMYAWARDSLIVE.COM | OSCARNOMINATIONS2013.COM |
| ACADEMY-AWARDS-POOL.COM | OSCARPICTURES.COM |
| ACDEMYAWARDSWINNERSLIST.COM | OSCARREDCARPET.COM |
| ALLOSCAR.COM | OSCARS2013LIVE.COM |
| ALLOSCARWINNERS.COM | OSCARS-EMPORIUM.COM |
| BESTOSCARPARTYINTOWN.COM | OSCARSFILM.COM |
| BESTPICTUREOSCARNOMINATIONS.COM | OSCARSNOBINATIONS.COM |
| BILLYCRYSTAL2012ACADEMYAWARDS.COM | OSCARSWINNER.COM |
| BILLYCRYSTAL2012OSCARS.COM | OSCARWEEK.COM |
| COMEDYOSCARS.COM | OSCARWINNERS.NET |
| GLOBEACADEMYAWARDS.COM | OSCARWINNERS2009.COM |
| IAMANOSCARWINNER.COM | OSCARWINNERS2012.COM |
| INTERNETACADEMYAWARDS.COM | OSCARWINNINGACTORS.COM |
| LETSTALKOSCARS.COM | OSCARWINNINGMOVIES.COM |
| LISTOFACADEMYAWARDWINNERS.COM | THEOSCARS2011.COM |
| MYOSCARORNOT.COM | TWOOSCARS.COM |
| MYOSCARSORNOT.COM | WATCHACADEMYAWARDS2012ONLINE.COM |
| NIGHTATOSCARS.COM | WATCHOSCAR2013ONLINE.COM |
| OSCAR2013LIVE.COM | WATCHOSCARAWARDS2012ONLINE.COM |
| OSCAR2013LIVESTREAM.COM | YOUTUBEOSCARS.COM |
| OSCAR2014LIVE.COM | ZBIGATTIACADEMYAWARDS.COM |

# APPENDIX 3

| | |
|---|---|
| 2011OSCARS.COM | INTERNETOSCAR.COM |
| 2013OSCARS.NET | INTERNET-OSCAR.COM |
| 2OSCARS.NET | IXOSCAR.COM |
| 411-ACADEMYAWARDS.COM | LEEZAGIBBONSOSCARNIGHT2011.COM |
| ACADEMYAWARDBUZZ.COM | LISTOSCAR.COM |
| ACADEMY-AWARDS.INFO | LOCATIONSOSCAR.COM |
| ACADEMYAWARDS2012.NET | MAKINGTHEROUNDSWITHOSCAR.COM |
| ACADEMYAWARDSDB.COM | MOISESOSCAR.COM |
| ACADEMYAWARDSINC.COM | MYOSCARCOLLECTION.COM |
| AKSARBENOSCARS.COM | MYOSCARCOLLECTION.NET |
| ANDTHEOSCARGOESTOTHEHANGOVER.COM | MYOSCARCOLLECTIONNOW.COM |
| APP-OSCARS.COM | MYOSCARCOLLECTIONONLINE.COM |
| APPSOSCARS.COM | OASINOSCAR.COM |
| APPS-OSCARS.COM | OFFICIALE-OSCAR.COM |
| BETACADEMYAWARDS.COM | OFFICIALE-OSCARONLINE.COM |
| BOLLYWOODOSCARAWARDS.COM | OOSCARCAM.COM |
| BOOTLEGOSCARS.COM | OSCAR360.COM |
| BOOTLEGOSCARS.NET | OSCARACADEMYAWARD.COM |
| COLLEGIATEACADEMYAWARDS.COM | OSCARANDEDEN.COM |
| COLLEGIATEACADEMYAWARDS.ORG | OSCARANDEMMY.COM |
| DEREKOSCARSON.COM | OSCARANDREW.COM |
| DJ-ACADEMY-AWARDS.COM | OSCARAPP.COM |
| DOGACADEMYAWARD.COM | OSCARATTHEMOVIES.COM |
| E-OSCARONLINE.NET | OSCARAWARDBOOKS.COM |
| FUTUREOSCARWINNER.NET | OSCARBET.COM |
| GLOBEACADEMYAWARD.COM | OSCARBETANCUR.COM |
| GLOBEACADEMYAWARDS.COM | OSCARBLOGGER.COM |
| GLOBEACADEMYAWARDS.ORG | OSCARCHALLENGE.NET |
| GOTOSCAR.COM | OSCARCINEMAS.COM |
| GREENOSCAR.COM | OSCARCLAIM.COM |
| GUIDE2OSCARSEVENTS.COM | OSCARCLAIM.NET |
| GUIDETOOSCARSEVENTS.COM | OSCARCLAIMS.NET |
| HOMEMOVIEOSCARS.COM | OSCARCOMEDY.COM |
| HOMEOSCARS.COM | OSCARDOM.COM |
| IMAGEOSCAR.NET | OSCARDOW.COM |
| IMAGEOSCARS.COM | OSCARELIGIBLE.COM |
| INTERNETACADEMYAWARDS.COM | OSCARELIGIBLE.NET |

# APPENDIX 3

| | |
|---|---|
| OSCARENTERTAINMENT.COM | OSCARSNUB.COM |
| OSCARFORWOMEN.COM | OSCARSONLINE.NET |
| OSCARHICKS.COM | OSCARSOPENHOUSE.COM |
| OSCARHICKS.NET | OSCARSOTO.COM |
| OSCARHOPE.COM | OSCARSPEAR.COM |
| OSCARI.NET | OSCARSRAMIREZ.COM |
| OSCARJAFFE.COM | OSCARSROOM.COM |
| OSCARKIDS.COM | OSCARSTWEET.COM |
| OSCARLARSON.COM | OSCARSUNPLUGGED.COM |
| OSCARLOCATIONS.COM | OSCARTEL.COM |
| OSCAR-MIKE.COM | OSCARTHEATERS.COM |
| OSCARMONSALVE.COM | OSCARTRAILER.COM |
| OSCARMOVIEMAKER.COM | OSCARTRAVELWEB.COM |
| OSCARMOVIES.NET | OSCARTWEETS.COM |
| OSCARNELSON.COM | OSCARTWIST.COM |
| OSCARPAUL.COM | OSCARVIEWINGPARTY.COM |
| OSCARRESPONSE.COM | OSCARWALTERS.NET |
| OSCARRUN.COM | OSCARWAY.COM |
| OSCARS2011LIVE.COM | OSCARWEAR.NET |
| OSCARS3D.COM | OSCARWELCH.COM |
| OSCARSANTOLALLA.COM | OSCARWELCH.NET |
| OSCARSARCHIVES.COM | OSCARWHIMPER.COM |
| OSCARSBALL.COM | OSCARWHIMPER.NET |
| OSCARSDISCOUNTEDPRICESONLINE.COM | OSCARWORTHYMANSION.COM |
| OSCARSDRESSREGISTRY.COM | PETACADEMYAWARDS.INFO |
| OSCARSEASON.NET | ROUNDINGWITHOSCAR.COM |
| OSCARSENN.COM | ROUNDING-WITH-OSCAR.COM |
| OSCARSFANTASY.COM | SAYSOSCAR.COM |
| OSCARSFASHION.COM | SOCIALMEDIAACADEMYAWARDS.COM |
| OSCARSGOODIEBAGS.COM | TEXTILEOSCARS.COM |
| OSCARSGOODIES.COM | TEXTILEOSCARS.NET |
| OSCARSHOMEMOVIES.COM | THEFANTASYOSCARS.COM |
| OSCARSHOTELS.NET | THEIMAGEOSCAR.COM |
| OSCARSINAMINUTE.COM | THEIMAGEOSCARS.COM |
| OSCARSLIST.COM | THEINTERNETACADEMYAWARDS.COM |
| OSCARSLIVEBLOGGING.COM | THELIQUIDOSCARS.COM |
| OSCARSLLC.COM | THELOCATIONSOSCAR.COM |

# APPENDIX 3

| |
|---|
| THEOSCARBODY.COM |
| THEOSCARCOPS.NET |
| THEOSCARDOTCOM.COM |
| THEOSCARGOES2.COM |
| THEOSCARS.CO |
| THEOSCARSATLANTA.COM |
| THEOSCARSTWEET.COM |
| THEOSCARSTWEETS.COM |
| THEOSCARSXXX.COM |
| THEOSCARTEAM.COM |
| THEOSCARTOUR.COM |
| THEWORLDAWARDACADEMY.ORG |
| THINKOSCAR.COM |
| THINKOSCAR.NET |
| THINKQUICKOSCAR.COM |
| TRAVELOSCARS.COM |
| TRAVELOSCARS.NET |
| VIRTUALACADEMYAWARDS.COM |
| VIRTUALWORLDACADEMYAWARDS.COM |
| VOTEOSCARSADS.COM |
| WORMACADEMYAWARDS.ORG |

# APPENDIX 4

C. Scott Surveyed Domain Names

| | |
|---|---|
| ALLOSCAR.COM | OSCARBRITE.COM |
| OSCARSGOODIES.COM | OSCARSRAMIREZ.COM |
| OSCARWEAR.NET | OSCARUNRUH.COM |
| OSCARBETS.COM | OSCARMAK.COM |
| IMAGEOSCAR.NET | TRAVELOSCAR.COM |
| BOOTLEGOSCARS.NET | GREENOSCAR.COM |
| OSCARSOASIS.COM | OSCARSDISCOUNTEDPRICESONLINE.COM |
| OSCARWAY.COM | OSCARSHOTELS.COM |
| MAKINGTHEROUNDSWITHOSCAR.COM | OSCARSHOTELS.NET |
| 2OSCARS.NET | OSCARPARDO.COM |
| OSCARSPEAR.COM | OSCARTRAVELWEB.COM |
| THINKQUICKOSCAR.COM | SAYSOSCAR.COM |
| OSCARCAP.COM | OSCARMONLINE.COM |
| OSCARWHIMPER.NET | AKSARBENOSCARS.COM |
| OSCARSOTO.COM | GOTOSCAR.COM |
| OSCARI.COM | IXOSCAR.COM |
| OSCARKIDS.COM | OSCARMONSALVE.COM |
| OSCARTWIST.COM | OSCARPAUL.COM |
| THEWORLDAWARDACADEMY.COM | OSCARWELCH.NET |
| 24HOURSATOSCARS.COM | OSCARNELSON.COM |
| OSCARTEL.COM | OSCARHICKS.COM |
| ROUNDINGWITHOSCAR.COM | OSCARANDEDEN.COM |
| OSCARSENN.COM | OSCARJAFEE.COM |
| 3DOSCAR.COM | OSCARLARSON.COM |
| OSCARHOSPITALITY.COM | ARKSARBENOSCARS.COM |
| OSCARHICKS.NET | OSCARWALTERS.COM |
| BOOTLEGOSCARS.COM | ROUNDING-WITH-OSCAR.COM |
| OSCARI.NET | DERMOSCARS.COM |
| OSCAR-MIKE.COM | LOCATIONSOSCAR.COM |
| LISTOSCAR.COM | DEREKOSCARSON.COM |
| OSCARBRIGHT.COM | DOSCARLOS.NET |
| OSCARSANTOLALLA.COM | OSCARWELCH.COM |
| OSCARSMILE.COM | UNCLEOSCARSHOP.COM |
| MOISESOSCAR.COM | OSCARYLALO.COM |
| OSCARSEATON.COM | APPSOSCARS.COM |
| OSCARANDREW.COM | COSCARAUDIOSALES.COM |
| OSCARDOW.COM | |
| OASINOSCAR.COM | |

# APPENDIX 5

G. Nunberg Category 1: String Identity

| coscaraudiosales.com | coscaraudiosales.com | uncleleocarshop.com |
|---|---|---|

# APPENDIX 5

G. Nunberg Category 2: Name Identity

| | | |
|---|---|---|
| oscarandrew.com | oscarandeden.com | derekoscarson.com |
| oscarbetancur.com | oscarunruh.com | oscarjaffe.com |
| oscardow.com | oscarmonsalves.com | oscarramirez.com |
| oscarhicks.com | the oscarbody.com | oscarwelch.com |
| oscarhicks.net | roundingwithoscar.com | oscarwelch.net |
| oscarlarson.com | rounding-with-oscar.com | oscarylalo.com |
| oscarmak.com | oscarsdiscountedonlineprices.com | moisesoscar.com |
| oscarnelson.com | oscarsoto.com | oscarsdressregistry.com |
| oscarpardo.com | oscarwalters.com | oscarsoasis.com |
| oscarpaul.com | oscrarapp.com | oscarseaton.com |
| oscarsenn.com | oscarwalters.com | oscarsdiscountedprices.com |
| oscarspear.com | makingtheroundswithoscar.com | oscarsantolalla.com |

# APPENDIX 5

### G. Nunberg Category 3: Generic Uses of *Oscar* and *Academy Award*

| | | |
|---|---|---|
| aksarbenoscars.com | thefantasyoscars.com | thinkoscar.net |
| app-oscars.com | theimageoscars.com | voteoscarads.com |
| apps-oscars.com | theliquidoscards.com | oscarcinemas.com |
| appsoscars.com | thelocationoscars.com | oscars4re.com |
| d-j-academyawards.com | theoscarsxxx.com | bollywoodoscarawards.com |
| dogacademyaward.com | themormonoscars.com | internetacademyawards.com |
| greenoscar.com | traveloscars.com | socialmediaacademyawards.com |
| imageoscar.net | traveloscar.com | collegiateacademyawards.com |
| imageoscars.com | traveloscar.net | metaverseacademyawards.com |
| officeoscars.com | theoscardotcom.com | petacademyawards.com |
| oscarworthymansion.com | theoscarsatlanta.com | virtualworldacademyawards.com |
| textileoscars.com | theoscartour.com | webacademyawards.com |
| textileoscars.net | thinkoscar.com | wormacademyawards.org |

# APPENDIX 5

G. Nunberg Category 4: Coreferential Incomparables and Implausibles

| | | |
|---|---|---|
| globeacademyawards.com | oscarsliveblogging.com | theoscarguru.com |
| globeacademyaward.com | oscarsnub.com | theoscarornot.com |
| theworldawardacademy.com | oscartel.com | theoscarsornot.com |
| theworldawardacademy.org | oscartravelweb.com | oscarchallenge.com |
| bootlegoscars.com | oscarwear.net | oscarchallenge.net |
| bootlegoscars.net | oscarwinnerscommunity.com | oscardvd.com |
| futureoscarwinner.net | oscarandemmy.com | oscarnightdresses.com |
| homevideooscars.com | oscarawardbooks.com | oscarwhimper.com |
| myoscarcollection.com | oscardvds.com | oscarwhimper.net |
| myoscarcollection.net | oscarsgoodies.com | oasinoscar.com |
| myoscarcollectionnow.com | oscarhope.com | oscartweets.com |
| oscarrun.com | oscari.com | oscardoesitagain.com |
| oscarsfantasy.com | oscari.net | oscarsmile.com |
| oscargoodiebags.com | oscar-int.com | oscargiftingsuite.com |
| oscargoodies.com | academyawardsbuzz.com | oscartheaters.com |
| oscarshomemovies.com | oscarguru.com | traveloscars.com |
| oscarhotels.com | oscarhotels.net | oscarawardbooks.com |
| oscarclaims.net | oscarclaim.com | oscarclaim.net |
| oscarbets.com | | |

# APPENDIX 6

| Domain Name | Meaning |
|---|---|
| OSCAR360.COM | Refers to the registrant's first name and his philosophy of life.  Decl. of Oscar Moskaluk, ¶2. |
| OSCARCOMEDY.COM | Refers to the registrant's first name and the fact that he is stand-up comedian.  Decl. of Oscar Sagastume, ¶2. |
| OSCARWEAR.NET | Refers to a planned line of dog harnesses and belly bands named after the registrant's dog. Decl. of Beth Parker-Humphrey, ¶2. |
| OSCARBETANCUR.COM | Refers to the registrant's first and last names. Decl. of  Oscar Betancur, ¶2. |
| OSCARSEATON.COM | Refers to the first and last name of the individual upon whose behalf the domain name was registered.  Decl. of Monique Birault , ¶2. |
| OSCARKIDS.COM | Refers to the registrant's first name and his portfolio of children's photography.  Decl. of Oscar Setiawan, ¶2. |
| THEOSCARS.CO | Refers to oscar fish.  Decl. of Mark Kleinfeld, ¶2. |
| OASINOSCAR.COM | Refers to the letter and corresponding code word of the NATO phonetic alphabet.  Decl. of Evgeny Belyakov, ¶2. |
| SAYSOSCAR.COM | Refers to quotations from the famous author Oscar Wilde.  Decl. of Valerie Krise, ¶2. |
| OSCARHOPE.COM | refers to the first name of the registrant's son. Decl. of Yuan He, ¶2. |
| OSCAR-MIKE.COM | Refers to the joint venture created by the registrant, which is named after the military term "Oscar-Mike". Decl. of Ian Kremke, ¶2. |
| OSCARCLAIM.COM OSCARCLAIM.NET OSCARCLAIMS.NET | Refers to the selection of the proper name Oscar by the National Oceanic and Atmospheric Administration as a potential hurricane.  Decl. of Ron Roberts, ¶2. |
| THEOSCARBODY.COM | Refers to the registrant's first name and his anticipated fitness business.  Decl. of Oscar Roa, ¶2. |
| OSCARRAMIREZ.COM | Refers to the registrant's first and last names. Decl. of Oscar Ramirez, ¶2. |

# APPENDIX 6

| | |
|---|---|
| OSCARSOTO.COM | Refers to the registrant's first and last names. Decl. of Oscar Soto Guzman, ¶2. |
| OSCARANDEDEN.COM | Refers to the first names of the registrant's children.  Decl. of Dave Matthews, ¶2. |
| THEOSCARTEAM.COM | Refers to the first name of the registrant, who is a realtor, and the marketing of his anticipated realty team.   Decl. of Oscar Hernandez, ¶2. |
| DEREKOSCARSON.COM | Refers to the registrant's first and last names. Decl. of Derek Oscarson, ¶2. |
| THEOSCARORNOT.COM THEOSCARSORNOT.COM | Refers to Open Source ("OS") drive automotive groups (cars).  Decl. of Andrew Palmer, ¶2. |
| OSCARWELCH.COM OSCARWELCH.NET | Refers to the registrant's professional name and last name.  Decl. of Everett Welch, ¶2. |
| OSCARSROOM.COM | Refers to the registrant's son.  Decl.of Lisa Keegan, ¶2. |
| OSCARYLALO.COM | Refers to a restaurant located in the Riviera Maya of southern Mexico.  Decl. of Oscar Gonzalez, ¶2. |
| MOISESOSCAR.COM | Refers to the registrant's first and middle names. Decl. of Moises Oscar De La Renta, ¶2. |
| OSCARHOSPITALITY.COM | Refers to the registrant's middle name, as well as his grandfather's first name, and an anticipated hotel consulting firm.  Decl. of David Acevedo, ¶2. |
| OSCARNELSON.COM | Refers to the registrant's first and middle names. Decl. of Oscar Nelson, ¶2. |
| OSCARLARSON.COM | Refers to the first and last name of the registrant's son.  Decl. of Eric Larson, ¶2. |
| OSCARSPEAR.COM | Refers to the first and last name of the registrant's son.  Decl. of Keith Joseph Spear, ¶2. |
| OSCARANDREW.COM | Refers to the middle name of the registrant, the first name of his grandfather, and an anticipated clothing business. Decl. of Shawn Balysky, ¶2. |
| OSCARPAUL.COM | Refers to the first and middle name of the registrant's son.  Decl. of Derek Tutschulte, ¶2. |
| OSCARSOASIS.COM | Refers to the registrant's deceased cat and an anticipated facility for stray cats.  Decl. of Frank Reidel IV, ¶2. |

# APPENDIX 6

| | |
|---|---|
| OSCARWAY.COM | Refers to the name of the registrant's ancestor and an anticipated product line.  Decl. of Remy Mattei, ¶2. |
| OSCARSENN.COM | Refers to the registrant's first and last names. Decl. of Oscar Senn, ¶2. |
| OSCARHICKS.COM | Refers to the registrant's first and last names. Decl. of Oscar Hicks, ¶2. |
| OSCARUNRUH.COM | Refers to the first and last name of the registrant's son.  Decl. of Kurt Unruh, ¶2. |
| IXOSCAR.COM | Refers to an automobile and home electronics company.  Decl. of Alberto Lopez , ¶2. |
| AKSARBENOSCARS.COM | Refers to the registrant's pizza and sports grille. Decl. of Dustin Heng, ¶2. |