**WRENN BENDER  LLLP**
Aaron M. McKown, California Bar No. 208781
Paula L. Zecchini, California Bar No. 238731
2 Park Plaza, Suite 550
Irvine, California  92614
Telephone.: (949) 202-5810
Facsimile:   (949) 679-7939
E-Mail:        amckown@wrennbender.com
                   pzecchini@wrennbender.com

Attorneys for Defendant
GODADDY.COM, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACADEMY OF MOTION PICTURE ARTS AND SCIENCES, a California nonprofit corporation, | Case No. CV10-3738-ABC (CW) |
| Plaintiff, | Assigned to Hon. Audrey B. Collins Courtroom 680 |
| v. | **DEFENDANT GO DADDY.COM, INC.'S** |
| GODADDY.COM, INC., a Delaware corporation; THE GODADDY GROUP INC., a Delaware corporation; DOMAINS BY PROXY, INC., a Delaware Corporation; GREENDOMAINMARKET.COM, an unknown entity; BDS, an unknown entity; and XPDREAMTEAM LLC, a California limited liability corporation, | **(1) STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT, AND** **(2) COUNTER-STATEMENT OF UNCONTROVERTED FACTS** |
| Defendants. | **IN SUPPORT OF ITS OPPOSITION TO MOTION FOR SUMMARY PARTIAL SUMMARY JUDGMENT** |
| | Date:  April 22, 2013 Time: 10:00 a.m. |
| | Complaint Filed:   May 18, 2010 Trial Date:          May 21, 2013 |

**WRENN BENDER LLLP**
2 Park Plaza, Suite 550
Irvine, California 92614

Pursuant to Local Rule 56-1 of the United States Court for the Central District of California, Defendant GoDaddy.com, Inc. ("Go Daddy") submits this Statement of Uncontroverted Facts and Conclusions of Law in support of its Opposition to Plaintiff Academy of Motion Picture Arts and Sciences' ("AMPAS" or "Plaintiff") Motion for Partial Summary Judgment.

# I.    STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| AMPAS' Uncontroverted Facts and Support Evidence | Go Daddy's Response and Supporting Evidence |
|---|---|
| 1. GoDaddy is the largest domain name registrar in the world.<br><br>[Nicks Depo. (6/16/11) (Ex. 3) at 54:7-14; Pampinella Report (Ex. 24) at 18 and; Michaels Decl. Ex. 13.] | Uncontroverted.<br><br>Objection: Misstates Testimony. Lacks Foundation. |
| 2. The challenged conduct in this case relates to GoDaddy's parked page program which, to use the words of one GoDaddy employee, is "distinct from [GoDaddy's] the domain registration programs."<br><br>[Nicks Depo. (6/16/11) (Ex. 3) at 54:7-14.] | Controverted.<br><br>Objection: Calls for a legal conclusion.<br><br>[Nicks Decl., ¶¶ 3-12; McKown Decl. at ¶ 8, Exh. G at 33:8-34:10, 49:23-50:7 (Deposition of Christine Jones).] |
| 3. GoDaddy commenced its operations as a domain name registrar sometime in the year 2000.<br><br>[Rechterman (6/21/11) Depo. (Ex. | Uncontroverted. |

WRENN BENDER LLLP<br>2 Park Plaza, Suite 550<br>Irvine, California 92614

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

| | |
|---|---|
| 10) at 10:11-15; *id.* at 11:10-18.] | |
| 4.  GoDaddy created two programs - the "Free Parking" program and the "CashParking" program -pursuant to which registrants grant Go Daddy the right to point their domain names to websites hosted on GoDaddy's own servers that contain advertisements which generate revenue for GoDaddy (and sometimes the registrant) whenever an Internet user visits the website and clicks on an advertisement.<br><br>[Nicks 30(b)(6) Depo. (6/16/11) (Ex. 2) at 9:9-17; *id.* at 30:15-17; *id.* at 48:5-8; *id.* at 44:25; *id.* at 95:20-25; *id.* at 98:18-99:3; *id.* at 102:5-15; *id.* at 103:4-16.; Merdinger 30(b)(6) (6/15/11) (Ex. 7) at 9:24-10:4; *id.* at 75:8-10; Hanyen (6/29/2011) 30(b )(6) Depo. (Ex. 8) at 9:18-21, *id.* at 10:4-10; and Rechterman (6/21/11) Depo. (Ex. 10) at 54:9-13.] | Controverted.<br><br>Objection:  Misstates testimony.  Calls for a legal conclusion.  Lacks foundation.<br><br>Nicks Decl. ¶¶ 3, 6-9, 11-13; McKown ¶ 9, Exh. H (agreements); ¶ 8, Exh. G at 34:13-17, 35:9-37:4 (Deposition of Christine Jones); ¶ 11, Exh. J at 9:20-12:10; 30:5-17, 50:15-51:21 (30(b)(6) Deposition (Paul Nicks)). |
| 5.  Whenever a user registers a domain name through GoDaddy, and does not affirmatively designate another | Uncontroverted that Go Daddy's parked page servers will be designated as the domain name server ("DNS") by default |

| | |
|---|---|
| website to which to point the domain name, GoDaddy, by default, points the domain to its Free Parking program.<br><br>[Nicks 30(b)(6) Depo. (6/16111)(Ex. 2) at 11:17-21; *id.* at 12:11-16; *id.* at 13:6-12; *id.* at 14:8-13; 24:3-9; *id.* at 120:10-17; Hanyen (6/29/2011) 30(b)(6) Depo. (Ex. 8) at 12:15-18; *id.* at15:13-16; *id.* at 15:23-16:1; Merdinger Depo. (6/15/11) (Ex. 5) at 27:19-28:3 *id.* at 96:13-21; Jones (8/7/12) Depo. (Ex. 9) at 85:21-86:11; and Rechterman (6/21/11) Depo. (Ex.10) at 28:7-9; *id.* at 31 :5-9; *id.* at35:21-25; *id.* at 50:8-19; *id.* at 80:24-81 :2; *id.* at 81:11-15; *id.* at 120:1-6 *id.* at 121:14-20.] | if a registrant who registers a domain name through Go Daddy's automated "dashboard" does not select a DNS at the time of registration.<br><br>Objection:  Misstates testimony.<br><br>Nicks Decl., ¶ 6; McKown Decl. ¶ 8, Exh. G at 37:9-38:3 (Deposition of Christine Jones); ¶ 11, Exh. J at 9:20-12:10 (30(b)(6) Deposition (Paul Nicks)). |
| 6.  To register a domain name with GoDaddy, registrants must affirmatively grant GoDaddy the right to monetize their domain names in GoDaddy's Free Parking program.<br><br>[Michaels Decl. Ex. 23.] | Controverted.<br><br>Objection:  Calls for a legal conclusion.<br><br>Nicks Decl., ¶ 6, 8-9, 11-12; McKown Decl. at ¶ 8, Exh. G at 34:13-17, 35:9-37:4 (Deposition of Christine Jones); ¶ 11, Exh. J at 9:20-12:10, 50:15-51:21 (30(b)(6) Deposition (Paul Nicks)); |

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND COUNTER-STATEMENT OF UNCONTROVERTED FACTS

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

| | |
|---|---|
| | Declaration of David Michaels, Exh. 7 at 9:24-10:13; 81:24-82:15 (30(b)(6) Deposition (Richard Merdinger). |
| 7.  Numerous GoDaddy witnesses admitted that GoDaddy could change its default settings to direct Domain names to parked pages that do not contain advertisements that generate revenue for GoDaddy (such as blank or "under construction" page), but GoDaddy does not do so.<br><br>[Nicks 30(b)(6) (6/16/11) (Ex. 2) 14:14-22; *id.* at 19:3-5; and Merdinger 30(b)(6) Depo. (6/15/11) (Ex. 7) at 10:5-8; *id.* at 82:3-6.] | Controverted.<br><br>Objection:  Misstates Testimony. Testimony cited directly contradicts statement.<br><br>McKown Decl. at ¶ 8, Exh. G at 34:13-17, 35:9-37:4 (Deposition of Christine Jones); ¶ 11, Exh. J at 50:15-51:21 (30(b)(6) Deposition (Paul Nicks)). |
| 8.  When GoDaddy originally created the parked pages program, domain names defaulted to non-monetized pages.<br><br>[Merdinger Depo. (6/15/11) (Ex. 5) at 82:25-83:12; Jones Depo. (Ex. 9) at 85:11-20.] | Controverted.<br><br>Objection:  Lacks foundation.  Calls for speculation.  Misstates testimony.<br><br>McKown Decl. at ¶ 8, Exh. G at 33:8-34:10, 35:9-37:4 (Deposition of Christine Jones). |
| 9.  In GoDaddy's CashParking program, registrants pay GoDaddy a fee to allow GoDaddy, through its | Controverted.<br><br>Objection:  Best Evidence Rule (FRE |

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

| | |
|---|---|
| advertising partner, to place ads on the web page associated with a domain name, and the revenue generated through that advertising is split among the registrant, GoDaddy, and the advertising partner.<br><br>[Hanyen (6/29/2011) 30(b)(6) (Ex.8) at 9:22-10:3; *id.* at 10:11-13; Nicks 30(b)(6) (6/16/11) (Ex. 2) at 27:22-29:16; 33:9-23; and Merdinger Depo. (6/15/11) (Ex. 5)]. | 1002/1003). Misstates testimony. Calls for a legal conclusion.<br><br>McKown Decl. ¶¶ 17-18, Exhs. P and Q (Cash Parking Agreements); Declaration of David Michaels, Exh. 2 at 40:20-41:21 30(b)(6) Deposition (Paul Nicks)). |
| 10. The advertisements on any given domain in the parked pages program are contextual to the domain name.<br><br>[Jones (8/7/12) Depo. (Ex.9) at 261:4-6; and Nicks 30(b)(6) Depo. (6/16/11) (Ex. 2) at 47:20-25.] | Controverted.<br><br>Objection: Misstates testimony.<br><br>Nicks Decl., ¶¶ 8-9, 11-13; McKown Decl. at ¶ 8, Exh. G at 34:13-17; 35:9-37:4; 260:15-261:6 (Deposition of Christine Jones); ¶ 11, Exh. J at 50:15-51:21 (30(b)(6) Deposition (Paul Nicks)). |
| 11. The parked pages for the domain names at issue all contain advertisements referring to the general subject of Academy's business and activities, such as the Academy | Objection: Lacks Foundation; Not Properly Authenticated (FRE 901); Sword/Shield Doctrine. |

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

| | |
|---|---|
| Awards, the Oscars, Hollywood, cinema, movies, awards and award shows.<br><br>[Michaels Decl. Ex. 28.] | |
| 12.  Between for the years 2002 through 2010 GoDaddy generated at least $60.5 million in net revenue from its Parked Page Programs.<br><br>[Michaels Decl. Ex. 25.] | Uncontroverted that the total aggregate revenues between 2002 and 2010 from Google, sales of Go Daddy products and services, and subscription fees from registrants who purchase Go Daddy's Cash Parking service was approximately $60.5 million.<br><br>Objection:  Misstates document.  Lacks foundation.  Relevance.<br><br>McKown Decl. at ¶ 8, Exh. G at 218:11-219:2 (Deposition of Christine Jones); ¶ 11, Exh. J at 50:15-51:21 (30(b)(6) Deposition (Paul Nicks)). |
| 13.  GoDaddy does not share the revenue it generates from the advertising it places on Free Parked pages with the owners (registrants) of the domain names associated with such pages. | Uncontroverted that Go Daddy does not pay domain name registrants a portion of the revenues Go Daddy receives from Google for third-party clicks on advertising links placed by Google on parked pages resolving from domain names whose DNS is designated to Go |

- 6 -

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

| [Nicks 30(b)(6) (6/11/11) (Ex.2) at 44:20-21; 44:25; 45:5-6.] | Daddy's parked page servers and whose template designation is set to include Google-placed links.

Objection:  Misstates Testimony.

Nicks Decl., ¶¶ 8-9, 11-12; McKown Decl. at ¶ 8, Exh. G at 34:13-17, 35:9-37:4 (Deposition of Christine Jones); ¶ 11, Exh. J at 50:15-51:21 (30(b)(6) Deposition (Paul Nicks)). |
| 14.  Mr. Pampinella admitted that did not have "any reason to believe" that the Oscar mark had diminished in value since the publication of the article in question. Mr. Pampinella, GoDaddy's damages expert, cited in his report to an October 2007 article entitled "The World's Most Recognizable Symbols and Trademarks" "in which the Oscar trademark is identified as one of the fifteen most recognizable marks in the world .... "

[Pampinella Report (Ex. 24) at ¶18; Pampinella (2/19/12) Depo. (Ex. 11) | Objection:  Misstates testimony. Outside scope of expertise.  Best Evidence Rule (FRE 1002). |

- 7 -

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

| | |
|---|---|
| at 87:1-18.] | |
| 15.  AMP AS licenses its trademarks for substantial value: "Between 2006 and 2010, AMP AS entered into license agreements that totaled over $134 million in payments in exchange for the use of the AMP AS marks and other benefits." [Pampinella Report (Ex. 24) at ¶18.] | Objection:  Misstates Testimony.  Best Evidence Rule (FRE 1002). |
| 16.  The global reach of the Academy's marks is further demonstrated by a decision of the Office for Harmonization in the Internal Market (OHIM), the European Union's equivalent of  the USPTO, which ruled that "the mark 'OSCAR' is highly valued due to its world-wide popularity and ... has become the icon of the top achievement one can get in the motion picture field, a financial value that third parties have tried to spoil by trying to transfer it to other sectors." | Objection:  Hearsay.  Relevance.  Lacks foundation.  Not properly authenticated (FRE 901). |

- 8 -

| | |
|---|---|
| [Michaels Decl. Ex. 14.] | |
| 17.  The global geographic reach of the Academy Awards and Oscars is supported by the Academy's substantial investment in advertising which, averaged over $2 million a year from 2007 through 2010, and totaled over $4 million in 2011.<br><br>[Michaels Decl. Exs. 15-17] | Uncontroverted that AMPAS spent approximately $12 million in advertising between 2007 and 2012. |
| 18.  Additional GoDaddy witnesses confirmed the global reach and famousness of the Academy A wards and Oscars. GoDaddy' s expert Professor Carol Scott was unaware of any evidence to suggest that the Academy's marks were not famous but that she was aware of the Academy Awards and the Oscars.<br><br>[Scott (2/20/13) Depo. (Ex. 12) at 10:20-25; 70:8-16.] | Objection:  Misstates testimony.  Lacks foundation. |
| 19.  Professor Scott acknowledged, she could "name about 18,000 television shows" that discuss the Oscars because they "have such a | Objection:  Relevance.  Lacks foundation. |

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

| | |
|---|---|
| wide demographic audience" and "are promoted in the general process ...... , the Oscars are a big topic of conversation in the media."<br><br>Scott (2/20/13) Depo. (Ex. 12) at 27:2-6, .*id* 27:8-9. | |
| 20.  GoDaddy's expert, Geoffrey Nunberg, similarly admitted that "the Oscars are famous."<br><br>[Geoffrey Nunberg (2/22/13) Depo. (Ex. 19) at 33:10-11.] | Objection:  Outside scope of expert testimony. |
| 21.  Every GoDaddy employee deposed in this case admitted that they were familiar with the Academy Awards and Oscars.<br><br>[Ede (6/28/2011) Depo. (Ex. 20) at 160:7-19; Merdinger Depo. (6/15/11) (Ex. 5) at 72:10-19; and Nicks Depo. (6/16/11)(Ex. 3) at 10:12-24.] | Controverted.<br><br>Objection:  Misstates testimony. Misstates record.<br><br>McKown Decl. ¶ 20. |
| 22.  Not only are the asserted marks are all registered with the USPTO, the office actually uses the Academy's marks in an | Objection:  Relevance.  Lacks foundation.  Hearsay.  Calls for a legal conclusion. |

STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND COUNTER-STATEMENT OF UNCONTROVERTED FACTS

| | |
|---|---|
| instructional video introducing famous marks.<br><br>[Michaels Decl. Ex. 18.] | |
| 23.  GoDaddy's role in registering a domain name is separate from its parked pages program – which goes beyond the role of registrar-has been borne out in the discovery taken in this case.<br><br>[Nicks 6/16/11 Depo. (Ex.3) at 54:7-14.] | Controverted.<br><br>Objection:  Calls for a legal conclusion. Lacks foundation.<br><br>Nicks Decl., ¶ 3; McKown Decl. at ¶ 8, Exh. G at 33:8-34:10, 49:23-50:7 (Deposition of Christine Jones). |
| 24.  Several witnesses for GoDaddy also testified that GoDaddy can register a domain name for a registrant without parking that domain.  To the extent GoDaddy wishes to resolve registered domain names to a parking service, domains can be pointed to pages without advertising (for example, a so-called "Under Construction" page).<br><br>[Nicks 30(b)(6) Depo. (6/16/11) (Ex. 2) at 14:5-22;<br>Merdinger 30(b)(6) Depo. | Uncontroverted that a person who registers a domain name is not required to designate Go Daddy's parked page servers as his or her DNS and that the domain name can resolve to pages without advertising.<br><br>Nicks Decl., ¶¶ 8-9, 11-12; McKown Decl. at ¶ 8, Exh. G at 34:13-17, 35:9-37:4 (Deposition of Christine Jones); ¶ 11, Exh. J at 9:20-12:10; 50:15-51:21 (30(b)(6) Deposition (Paul Nicks)). |

STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND COUNTER-STATEMENT OF UNCONTROVERTED FACTS

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

| | |
|---|---|
| (6/15/11)(Ex. 7) at 81:24-82:15; and Merdinger Depo. (6/15/11) (Ex. 5) at 31:3-17.] | |
| 25.  When GoDaddy first started the Parked Page Program, it defaulted domain names to such non-monetized pages.<br><br>[Merdinger 30(b)(6) Depo. (6115/11) (Ex. 7) at 82:25-83:18; and Jones (8/7/12) Depo. (Ex. 9) at 85:11-86:11.] | Controverted.<br><br>Objection:  Misstates Testimony.<br><br>McKown Decl. at ¶ 8, Exh. G at 33:8-34:10, 35:9-37:4 (Deposition of Christine Jones). |
| 26.  Go Daddy's own counsel repeatedly stated during discovery that GoDaddy's role as a registrar was separate from its operation of the Parked Page Program.<br><br>[Nicks 30(b)(6) Depo. (6/16/11) (Ex. 2) at 183:14-18, id. at 182:12-25.] | Objection:  Misstates objections.  Best Evidence Rule (FRE 1002); Lacks Foundation.  Statements and argument of counsel are not evidence.  *See U.S. v. Hudson*, 432 F.2d 413, 414 (9th Cir. 1970) |
| 27.  Go Daddy produced its "Domain Name Registration Agreement"- the contract governing GoDaddy's relationship with its registrant customers.<br><br>[Michaels Decl. Ex. 23.] | Uncontroverted that Go Daddy produced numerous versions of the Domain Name Registration Agreement and that the DNRA is one of two agreements that registrants must accept at the time of registration. |

STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND COUNTER-STATEMENT OF UNCONTROVERTED FACTS

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

| | |
|---|---|
| | Declaration of Linda Jett ISO Go Daddy's Motion for Summary Judgment at ¶ 2 [Dkt. 345]; McKown Decl. at ¶ 12, Exh. K at 53:13-21 (Deposition of Linda Jett); ¶ 9, Exh. H (Domain Name Registration Agreements). |
| 28.  When Christine Jones, GoDaddy's General Counsel for the time period relevant to this case, was asked whether "GoDaddy got contractual permission from the registrant that allowed it, in turn, to go to Google and have Google place ads on these Parked Pages, "she answered, "Yes, of course."<br><br>[Jones (8/7/12) Depo. (Ex. 9) at 77:21-25.] | Objection:  Relevance.  Calls for a legal conclusion. |
| 29.  GoDaddy is the registrants' authorized licensee is also confirmed by GoDaddy's agreements with Google governing the placement of advertising on parked pages. In those agreements, GoDaddy represented to Google that, for the domain names in the parked page programs, GoDaddy either (a) owns | Controverted.<br><br>Objection:  Calls for a legal conclusion. |

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

| | |
|---|---|
| the domain name; or (b) owns the right to control the domain name.<br><br>[Michaels Decl. Ex. 21.] | |
| 30.  It is undisputed that GoDaddy exercises its contractual right to point domain names, including the Accused Domain Names, to websites hosted by GoDaddy, and that Go Daddy, through its advertisement providers, places advertisements on those websites; and that the advertisements generate revenue for GoDaddy whenever an Internet user visits a parked website and clicks on an advertisement.<br><br>[Rechterman (6/21/11) Depo. (Ex. 10) at 35:21-25.] | Controverted.<br><br>Objection:   Lacks foundation. Misstates testimony.<br><br>Nicks Decl., ¶¶ 8-9, 11-12; McKown Decl. at ¶ 8, Exh. G at 34:13-17, 35:9-37:4 (Deposition of Christine Jones); ¶ 11, Exh. J at 50:15-51:21 (30(b)(6) Deposition (Paul Nicks)). |
| 31.  GoDaddy created and hosts the website to which the disputed domains resolve, and placed content (advertisements) on those websites, and generates revenue whenever an Internet user clicks on that content. | Controverted.<br><br>Objection:  Misstates testimony.  Calls for speculation.  Lacks foundation. Failure to Authenticate (FRE 901); Sword/Shield Doctrine. |

STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND COUNTER-STATEMENT OF UNCONTROVERTED FACTS

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

| | |
|---|---|
| [Nicks 30(b)(6) Depo. (6/16/11) (Ex. 2) at 9:9-17; *id*. At 40:14-19; id. At 30:15-17; id. At 40:20-41:7; *id*. At 41:15-16; 9d. at 42:3-7; *id*. At 44:25; id. At 48:5-8; id. At 51:22 62:4; *id*. At 95:20-25; *id*. At 98:18-99:3; *id*. at 102:5-15; *id*. at 103:4-16; *id*. at 126:23-127:2; *id*. at 171:7-11; Merdinger 30(b)(6) (6/15/11) (Ex. 7) at 9:24-10:7; *id*. at 9:24-10:4; *id*. at 75:8-10; Hanyen (6/29/2011) 30(b )(6) Depo. (Ex.8) at 9:18-21; *id*. at 10:4-1 0; and Rechterman (6/2111) Depo. (Ex. 10) at 52:21-53:3; *id*. at 54:9-13; *id*. at 80:2-23; *id*. at 119:19-22; *id*. at 120:4-19.] | Nicks Decl., ¶¶ 8-9, 11-12; McKown Decl. at ¶ 8, Exh. G at 34:13-17, 35:9-37:4 (Deposition of Christine Jones); ¶ 11, Exh. J at 9:20-12:10; 50:15-51:21 (30(b)(6) Deposition (Paul Nicks)); Declaration of David Michaels, Exh. 2 at 40:20-41:21 (30(b)(6) Deposition (Paul Nicks)). |
| 32.  GoDaddy has taken such an ownership interest by sharing in (or taking all of) the revenue derived from the advertisements it has placed on the domains.<br><br>[Nicks 30(b)(6) (6/16/11) (Ex. 2) at 44:20-21; 44:25; 45:5-6.] | Controverted.<br><br>Objection:  Lacks Foundation.  Calls for speculation.<br><br>Nicks Decl., ¶¶ 8-9, 11-12; McKown Decl. at ¶ 8, Exh. G at 34:13-17, 35:9-37:4 (Deposition of Christine Jones); ¶ 11, Exh. J at 50:15-51:21 (30(b)(6) Deposition (Paul Nicks)). |
| 33.  Each domain name at issue | Controverted. |

- 15 -

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

| | |
|---|---|
| defaulted to parked page which contained advertisements referring to the general subject of Academy's business and activities, such as the Academy Awards, the Oscars, Hollywood, cinema, movies, awards and award shows.<br><br>[Jones (8/7/12) Depo. (Ex. 9) at pp. 92-94; Exhibit 4 to the Jones (8/7/12) Depo. (Ex. 27).] | Objection:  Misstates testimony.  Calls for speculation.  Lacks foundation. Failure to Authenticate (FRE 901); Sword/Shield Doctrine.<br><br>Nicks Decl., ¶¶ 8-9, 11-12; McKown Decl. at ¶ 8, Exh. G at 34:13-17, 35:9-37:4 (Deposition of Christine Jones); ¶ 11, Exh. J at 50:15-51:21 (30(b)(6) Deposition (Paul Nicks)). |
| 34.  Pay-per-click ads are placed on these websites pursuant to agreements between GoDaddy and Google as part of Google's AdSense program.<br><br>[Nicks 30(b)(6) Depo. (Ex. 2) at 40:14-19; 40:20-41:7; 41:14-16; 42:3-7; 52:2-5; 126:23-127:2; 171:7-11; Jones Depo. (Ex. 9) at 71:5-8.] | Controverted.<br><br>Objection:  Misstates testimony.  Calls for speculation.  Lacks foundation. Failure to Authenticate (FRE 901). Sword/Shield Doctrine.  Vague as to "these domains."<br><br>Nicks Decl., ¶¶ 8-9, 11-12; McKown Decl. at ¶ 8, Exh. G at 34:13-17, 35:9-37:4 (Deposition of Christine Jones); ¶ 11, Exh. J at :20-12:10; 50:15-51:21 (30(b)(6) Deposition (Paul Nicks)). |

STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND COUNTER-STATEMENT OF UNCONTROVERTED FACTS

## II.    GO DADDY'S COUNTER-STATEMENT OF UNCONTROVERTED FACTS

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| 1.    Go Daddy is a domain name registrar. | Declaration of Paul Nicks ("Nicks Decl.") ¶ 2. |
| 2.    Go Daddy provides an automated registration process for any person who seeks to register a domain name (the "domain name registrant"). | Nicks Decl., ¶ 2. |
| 3.    Go Daddy's automated "dashboard" prompts a registrant to designate a domain name server ("DNS") for the routing of a domain name at the time of registration. | Nicks Decl., ¶ 3. |
| 4.    A domain name is required to have its DNS designated at the time of registration in order to ensure the orderly process for acquiring domain names and the proper functioning of the DNS system. | Nicks Decl., ¶ 3; McKown Decl. at ¶ 8, Exh. G at 33:8-34:10, 49:23-50:7 (Deposition of Christine Jones). |
| 5.    A registrant's routing options include the ability to configure his or her name server so that it routes to a "record not found" error message, to a newly created website on a server hosted by Go Daddy or another third | Nicks Decl., ¶ 6; McKown Decl. at ¶ 8, Exh. G at 34:13-17 (Deposition of Christine Jones); ¶ 11, Exh. J at at 9:20-12:10 (30(b)(6) Deposition (Paul Nicks). |

WREN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

- 17 -

| | |
|---|---|
| party, or to an existing website already associated with another domain name. | |
| 6.    Alternatively, the registrant can select Go Daddy's parked page servers or elect not to designate a DNS at all. | Nicks Decl., ¶ 6; McKown Decl. at ¶ 8, Exh. G at 35:9-37:4 (Deposition of Christine Jones); ¶ 11, Exh. J at at 9:20-12:10 (30(b)(6) Deposition (Paul Nicks). |
| 7.    In the event a registrant does not select a DNS at the time of registration, the DNS for Go Daddy's parked page servers will be designated by default. | Nicks Decl., ¶ 6. |
| 8.    The registrant may change his or her DNS at any time. | Nicks Decl., ¶ 6; McKown Decl. at ¶ 8, Exh. G at 34:13-17 (Deposition of Christine Jones); ¶ 11, Exh. J at at 9:20-12:10 (30(b)(6) Deposition (Paul Nicks). |
| 9.    The designation of Go Daddy's parked page servers does not result in the creation of a webpage or any content. | Nicks Decl., ¶ 7. |
| 10.    Rather, a webpage will only resolve from a domain name whose DNS is designated to Go Daddy's parked page servers when an Internet user places the domain name in their web browser and presses enter. | Nicks Decl., ¶ 7. |
| 11.    At that point, a webpage will be created and exist only for the length of time that the Internet user keeps the webpage open. | Nicks Decl., ¶ 7. |

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

- 18 -

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

| | |
|---|---|
| 12.     Once the registrant closes the webpage, the webpage ceases to exist; the content is not stored or preserved on any host server. | Nicks Decl., ¶ 7. |
| 13.     Go Daddy has had a Parked Page Program since it became a domain name registrar. | Nicks Decl., ¶ 8. |
| 14.     Since its inception, the Parked Page Program has contained templates causing a domain name to resolve to a webpage containing non-monetized content. | Nicks Decl., ¶ 8; McKown Decl. at ¶ 8, Exh. G at 34:13-17, 35:9-37:4 (Deposition of Christine Jones); ¶ 11, Exh. J at 19:3-8 (30(b)(6) Deposition (Paul Nicks)). |
| 15.     This non-monetized content includes "coming soon" pages," "sorry this site is not currently available" pages, and blank pages, among others. | Nicks Decl., ¶ 8; McKown Decl. at ¶ 8, Exh. G at 34:13-17, 35:9-37:4 (Deposition of Christine Jones); ¶ 11, Exh. J at 19:3-8 (30(b)(6) Deposition (Paul Nicks)); Declaration of David Michaels, Exh. 7 at 9:24-10:13; 81:24-82:15 (30(b)(6) Deposition (Richard Merdinger). |
| 16.     Go Daddy eventually added templates to its Parked Page Program that included Go Daddy banner ads as well as Google-provided contextual ads. | Nicks Decl., ¶ 9; McKown Decl. at ¶ 8, Exh. G at 34:13-17, 35:9-37:4 (Deposition of Christine Jones). |
| 17.     These templates were in addition to, not in lieu of, the non-monetized templates that have always existed in Go Daddy's Parked Page Program. | Nicks Decl., ¶ 9; McKown Decl. at ¶ 8, Exh. G at 34:13-17, 35:9-37:4 (Deposition of Christine Jones); Declaration of David Michaels, Exh. 7 at 9:24-10:13; 81:24-82:15 (30(b)(6) Deposition (Richard Merdinger)). |

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

| | |
|---|---|
| 18.    The content that resolves from a domain name whose DNS is designated to Go Daddy's parked page servers is dependent on the template assigned to the domain name. | Nicks Decl., ¶ 11; McKown Decl. at ¶ 8, Exh. G at 34:13-17, 35:9-37:4 (Deposition of Christine Jones). |
| 19.    Go Daddy maintains various templates associated with its parked page servers. | Nicks Decl., ¶ 11. |
| 20.    These templates include both monetized and non-monetized parked pages. | Nicks Decl., ¶ 11. |
| 21.    The template designation for a given domain name can change at any time based on the registrant's continual right to control content resolving from their domain name. | Nicks Decl., ¶ 12. |
| 22.    Go Daddy expert witness Dr. Carol Scott surveyed nearly 15,000 people relating to 75 of the domain names at issue in this case, each of which included the string "oscar" or "oscars". | McKown Decl. at ¶ 5, Exh. D (Expert report of Dr. Carol Scott). |
| 23.    Net associations between the domain name and the entertainment industry in general for these domain names was generally between 0–6%. | Nicks Decl., ¶ 9. |
| 24.    Number trademark registrations | McKown Decl. at ¶ 6, Exh. E (Trademark Certifications). |

STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND COUNTER-STATEMENT OF UNCONTROVERTED FACTS

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

| | |
|---|---|
| have been issued by the United States Patent and Trademark Office for the mark OSCAR unrelated to AMPAS. | |
| 25.     AMPAS relies on only one of the 26 versions of the Domain Name Registration Agreement produced in this case. | McKown Decl. at ¶ 9, Exh. H. |
| 26.     This version, dated May 28, 2010, along with eight (8) others published in 2010, includes a Paragraph 8 entitled Parked Page Service. | McKown Decl. at ¶ 9, Exh. H. |
| 27.     Seventeen (17) versions of the Domain Name Registration Agreement produced in this action and in use prior to 2010 do not include the language it admits is required for a finding of authority. | McKown Decl. at ¶ 10, Exh. I. |
| 28.     Rather, the language of the Parked Page Service section merely advises the registrant that "[f]or every domain registered, Go Daddy will provide the Parked Page service free to its customers." | McKown Decl. at ¶ 9, Exh. H. |
| 29.     The agreement goes on to state that "**If You [the registrant] are using Go Daddy's Parked Page services**, You [the registrant] agree that Go | McKown Decl. at ¶ 9, Exh. H (emphasis added). |

- 21 -

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

| | |
|---|---|
| Daddy may point the domain name or DNS to one of Go Daddy's or Go Daddy's affiliates web pages, and that they may place advertising on Your web page." | |
| 30.    AMPAS admits that it has no evidence of actual confusion. | McKown Decl., ¶ 13, Exh. L at 156:11-16 (AMPAS 30(b)(6) (S. Miller)). |
| 31.    AMPAS admits, the word "oscar" has at least 25 common meanings and usages, any one of which can be at issue in analyzing confusing similarity based on the context of the other words present in the domain name. | McKown Decl., ¶ 15, Exh. N (AMPAS' Supplemental Responses to Requests for Admission Nos. 37-59, 66, 67). |
| 32.    AMPAS admits that (1) the term "oscar" is defined in the common English language as a general award of achievement and (2) the USPTO has registered other OSCAR trademarks related to awards of achievement undermines AMPAS' confusing similarity argument. | McKown Decl., ¶ 16, Exh. O (AMPAS' First Supplemental Responses to Requests for Admission Nos. 63, 65); ¶ 14, Exh. M at ¶¶ 26-29 (Expert Report of G. Nunberg); ¶ 6, Exh. E (Certified Copy of OSCAR Trademark Registrations); Declaration of Registrants [Dkt 342-344; 352]. |
| 33.    The trademarked terms ACADEMY AWARD and ACADEMY AWARDS, which Go Daddy's linguistic expert opines may be used in | McKown Decl., ¶ 14, Exh. M at ¶ 27 (Expert Report of G. Nunberg). |

a "generic fashion . . . hav[ing] distinct references which are wholly independent of the AMPAS awards and ceremonies," without causing confusion to a consumer.

Dated:  April 1, 2013

**WRENN BENDER LLLP**
Aaron M. McKown
Paula L. Zecchini

By:  */s/ Aaron M. McKown*
Aaron M. McKown
Attorneys for Defendant
GODADDY.COM, INC.

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND COUNTER-STATEMENT OF UNCONTROVERTED FACTS