**WRENN BENDER LLLP**
Aaron M. McKown, California Bar No. 208781
Paula L. Zecchini, California Bar No. 238731
Gregory D. Trimarche, California Bar No. 143686
2 Park Plaza, Suite 550
Irvine, California  92614
Telephone.: (949) 202-5810
Facsimile:   (949) 679-7939
E-Mail:       amckown@wrennbender.com
                    pzecchini@wrennbender.com
                    gtrimarche@wrennbender.com

Attorneys for Defendant
GODADDY.COM, INC.

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACADEMY OF MOTION PICTURE ARTS AND SCIENCES, a California nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>GODADDY.COM, INC., a Delaware corporation; THE GODADDY GROUP INC., a Delaware corporation; DOMAINS BY PROXY, INC., a Delaware Corporation; GREENDOMAINMARKET.COM, an unknown entity; BDS, an unknown entity; and XPDREAMTEAM LLC, a California limited liability corporation,<br><br>Defendants. | Case No. CV10-3738-ABC (CW)<br><br>Assigned to Hon. Audrey B. Collins<br>Courtroom 680<br><br>**AFFIDAVIT OF NIMA KELLY IN SUPPORT OF MOTION TO RECUSE THE HON. AUDREY B. COLLINS**<br><br>[28 U.S.C. Sections 144 and 455]<br><br>Complaint Filed:    May 18, 2010<br>Trial Date:           July 28, 2014<br><br><br>Date:      January 28, 2014<br>Time:     9:00 a.m.<br>Dept.:     TBD |

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

I, Nima Kelly, declare:

1.    I am General Counsel for Defendant GoDaddy.com, Inc. ("GoDaddy"). I make this declaration based on my own personal knowledge and would testify to the same if required to do so in a court of law.

2.    GoDaddy brings this motion to recuse Judge Collins in this case on the grounds that the totality of the circumstances demonstrates a clear appearance of partiality in favor of AMPAS.  These circumstances include:  (1) Judge Collins' acceptance of two dozen unrelated AMPAS cases over the past fifteen years  in contravention of the Court's General Orders; (2) Judge Collins' abuse of her discretion, and her deviation from her own prior rulings and the Federal Rules of Civil Procedure, by denying GoDaddy's Rule 37 motion to exclude Joe Presbrey in order to salvage AMPAS' claims from dismissal; (3) Judge Collins' extrajudicial statements on June 24, 2013, which not only telegraphed her predetermined outcome of both that and this case, but were made to coerce GoDaddy into settlement over its objection, and (4) the statements by AMPAS' counsel that Judge Collins is "the Academy's Judge."

## I.    Judge Collins Abused Her Discretion In Denying GoDaddy's Motion to Exclude Joe Presbrey In Order To Salvage AMPAS' Claims

3.    In October 2009, AMPAS' counsel retained a "non-testifying litigation consultant" by the name of Joe Presbrey to identify domain names containing AMPAS' marks within domain name strings resolving from GoDaddy's parked page servers.  Eight months later, AMPAS filed this case based entirely on the domain names discovered by this "consultant."  Despite being the only fact witness with knowledge regarding the discovery of these domain names and the creation of purported screenshots related thereto, AMPAS refused to identify this witness in its Initial Disclosures or at any other time during the course of discovery.  Indeed, AMPAS refused to disclose even the existence of this witness for years.

AFFIDAVIT OF NIMA KELLY IN
SUPPORT OF MOTION TO RECUSE

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

4.      GoDaddy propounded its First Request for Production of Documents ("First RFPs") on March 10, 2011 and its Second Request for Production of Documents ("Second RFPs") on November 22, 2011.   These requests sought documents related to (a) how and when AMPAS first discovered each of the domain names at issue; (b) any investigations conducted by AMPAS concerning its claims; and (c) AMPAS' trademark policing efforts, including processes and vendors used.

5.      For nine months, the parties met and conferred over AMPAS responses, particularly AMPAS' failure to provide basic information regarding how, when, and by whom the domain names were discovered, as well as the origins of the screenshots produced.   During that same time, AMPAS produced three separate privilege logs identifying a total of 661 documents, none of which disclosed either the existence of a litigation consultant or any privileged documents generated by him.   When GoDaddy threatened to file a motion to compel this information, AMPAS initially claimed that its counsel had used a computer software program to discover the domain names – a statement that AMPAS knew was false at the time it was made.   Only after additional inquisition by GoDaddy did AMPAS finally admit on December 5, 2011 that it had retained a "non-testifying litigation consultant" who was responsible for developing automated software programs that discovered all of the domain names and purportedly captured each of the screenshots at issue.

6.      Nonetheless, AMPAS refused not only to disclose the identity of this fact witness (as Judge Collins later confirmed him to be in her July 12, 2013 minute order), but it also refused to produce any data generated by the software programs this individual employed.   As a result, in March 2012, GoDaddy filed a motion to compel the production of such data and, at the hearing, requested this individual's identity to allow for discovery into basic information about the identification of the domain names and the origins of the screenshots at issue.

7.      In opposing GoDaddy's motion, AMPAS claimed that "the documents

AFFIDAVIT OF NIMA KELLY IN
SUPPORT OF MOTION TO RECUSE

created by the Academy's . . . litigation consultant are not, as GoDaddy claims, 'factual in nature and simply tend[] to show the time and manner in which the parked pages that allegedly support AMPAS' ACPA claims were discovered.'" This representation to the Court was patently false.  Contrary to AMPAS' initial contention, the data that resides on the computers and servers used by Presbrey contains factual information critical to resolving substantial discrepancies as to when and how often Presbrey's automated software program visited a domain name at issue in this case.

8.     At the April 10, 2012 hearing, Magistrate Judge Woehrle ultimately upheld AMPAS' assertion of the attorney-client privilege and work product doctrine to shield discovery into this fact witness and his related data.  In so ruling, however, she admonished AMPAS:

> At this point, I'm certainly not going to order disclosure of the consultant's name, but, you know, at some point . . . Somebody's going to have to testify what these pages looked like when they went there and you may want to just make up your mind about that sooner rather than later.

9.     Rather than heed Judge Woehrle's warning, AMPAS continued to shield both the identity of the witness and all data created by him in searching for, locating, and capturing screenshots of the domain names at issue through both fact and expert discovery.

10.     Fact discovery closed in September 2012; expert discovery closed on March 4, 2013.  AMPAS did not designate or otherwise disclose its "litigation consultant" as an expert in that case.  As a result of AMPAS' decision to shield the "litigation consultant" from discovery through the assertion of privilege, GoDaddy moved for summary judgment on the grounds that AMPAS could not authenticate the screenshots upon which it sought to rely in proving its claims and thus, had no admissible evidence that the domain names at issue ever participated in the

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

AFFIDAVIT OF NIMA KELLY IN
SUPPORT OF MOTION TO RECUSE

1  programs in dispute.

2      11.    In opposition to GoDaddy's motion for summary judgment, and nearly

3  four years after hiring and utilizing the litigation consultant to discover facts in

4  support of its claims, AMPAS submitted a declaration signed by its litigation

5  consultant in a belated attempt to authenticate the screenshots.   In response,

6  GoDaddy (a) filed evidentiary objections to the declaration supporting AMPAS'

7  opposition to GoDaddy's summary judgment motion and (b) filed a motion to

8  exclude all testimony of the litigation consultant pursuant to Rule 37 of the Federal

9  Rules of Civil Procedure.

10      12.    After the motions for summary judgment and motions to exclude

11  certain witnesses were fully briefed, Judge Collins entered an order *sua sponte*

12  vacating the trial and all related dates.  She also continued the hearing date to June

13  24, 2013.

14      13.    On June 21, 2013, Judge Collins issued a series of orders, including an

15  order granting AMPAS' motion to exclude two of GoDaddy's experts while

16  concurrently denying GoDaddy's motion to exclude AMPAS' untimely disclosed

17  witness despite recognizing that (i) the consultant was a fact witness, (ii) AMPAS

18  had an affirmative obligation to disclose this witness three years prior as part of its

19  initial disclosures, and (iii) that AMPAS violated its obligations under Rule 26.

20      14.    In denying GoDaddy's Rule 37 motion, Judge Collins acknowledged

21  that FRCP 37 "gives teeth" to FRCP 26 "by forbidding the use at trial of any

22  information required to be disclosed by Rule 26(a) that is not properly disclosed."

23  Moreover, she admitted that AMPAS' "decision not to disclose Presbrey . . . was ill-

24  advised" and that "the Academy could have avoided this whole problem by timely

25  disclosing Presbrey."   Yet, Judge Collins issued a wholesale denial of GoDaddy's

26  Rule 37 motion.   In fact, despite the mandatory sanctions required by Rule 37

27  against a party who knowingly fails to disclose a witness, Judge Collins failed to

28

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

5

1    issue a single sanction against AMPAS.  To the contrary, Judge Collins effectively
2    penalized GoDaddy by ordering limited discovery of Presbrey in order to allow
3    AMPAS the opportunity to secure the evidence it needed to salvage its claims.  True
4    and correct copies of Judge Collins' June 21, 2013 order and her July 12, 2013
5    minute order clarifying her June 21, 2013 ruling are attached hereto as **Exhibit A**.

6          15.    In addition to denying GoDaddy's motion, Judge Collins notified the
7    parties that she would not hear oral argument on the various summary judgment and
8    expert disqualification motions set for hearing on June 24, 2013, but instead,
9    ordered the parties to meet and confer on various issues, including settlement and
10   AMPAS' filing of a second lawsuit, and then appear for a Status Conference on
11   June 24, 2013.

12   **II.   Extrajudicial Statements At June 24, 2013 Status Conference Begin To**
13   **Reveal Judge Collins' Bias In Favor Of AMPAS**

14         16.    On June 24, 2013, the parties attended the Status Conference as ordered
15   by Judge Collins.  Judge Collins began by warning GoDaddy of her inclination to
16   adjudicate issues and claims in this action in a manner benefitting AMPAS:

17
18   > I put settlement in there because it does seem to me that somewhere
19   > around here it might be good **now that you [found] out how things
20   > are going** to discuss settlement or to have your settlement conference
     > whether you do that now or after discovery of Mr. Presbrey, whatever.
     > **But it's certainly, time to start thinking about that because I think
21   > you can see the outlines of the way it's going**.

22   These statements were made directly to GoDaddy's counsel, Aaron McKown.

23         17.    In response, Mr. McKown attempted to explain to Judge Collins that
24   additional mediation would be a waste of the parties' and the Court's time, given
25   past experiences and the recent rulings by the Court.  Mr. McKown explained that
26   he would discuss the possibility of future mediation with GoDaddy, but that his
27   sense was that additional mediation would not be useful, and that GoDaddy would
28   likely not be inclined to engage in further settlement discussions.

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

6

AFFIDAVIT OF NIMA KELLY IN
SUPPORT OF MOTION TO RECUSE

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

18.     Judge Collins, in response, stated: "[Y]ou can make it clear to your client that you're going to go to another settlement conference before I would let this case go to trial. . . . [T]here will be another settlement attempt before this case goes to trial."   Judge Collins then further stated: "I'm telling you you will go to settlement before this case ever goes back to trial. That's for sure, you'll go back." In order to justify her coercive demands that GoDaddy attend a further court-ordered mediation, Judge Collins stated that the parties' participation in a previously court-ordered mediation occurred too early in the case:  "I mean I understand you did something early.  That's fine; but, obviously, there will be another -- there will be another settlement attempt before this case goes to trial."  The parties, however, had just attended a court-ordered mediation three months earlier—during the pendency of the summary judgment motions—and were vastly apart with respect to settlement.  A true and correct copy of the transcript from the June 24, 2014 Status Conference is attached hereto as **Exhibit B**.

**III.     AMPAS Repeatedly Flaunts That Judge Collins Is "the Academy's Judge" and Has Been For Fifteen Years**

19.     On August 27, 2012, I personally attended an informal meeting among counsel in this action.  The meeting took place at the offices of Quinn Emanuel Urquhart & Sullivan LLP ("Quinn Emanuel") in Los Angeles, California.  I was joined by Aaron McKown of Wrenn Bender McKown & Ring LLLP on behalf of GoDaddy.  The Academy of Motion Pictures Arts and Sciences ("AMPAS") was represented by David Quinto of Quinn Emanuel; Bob Foote of Foote Milke Chavez & O'Neill LLP; Stuart Singer of Bois, Schiller & Flexner LLP; and Scott Miller, in-house counsel for AMPAS.

20.     While Quinn Emanuel is not counsel of record for AMPAS in this action, David Quinto has been consistently involved in this litigation, including as a participant in all settlement discussions.  As Mr. Quinto explained during his

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

deposition, he formulated the initial claims, aided AMPAS in securing counsel of record due to a conflict of interest presented by Quinn Emanuel's representation of Google, and joined in strategy discussions with AMPAS' counsel throughout the pendency of that proceeding.   Mr. Quinto also attended hearings before Judge Collins—though there was no apparent reason for his presence—and participated in discussions regarding the potential resolution of all claims between AMPAS and GoDaddy.   In fact, Mr. Quinto was deposed in this case because of his extensive pre-litigation involvement.

21.   After initial pleasantries were exchanged at the August 27, 2012 meeting, GoDaddy explained the parameters of a potential settlement, albeit a non-monetary one.   Mr. Quinto responded by stating that AMPAS has a long history with Judge Collins and that we should know "she is the Academy's judge."   Mr. Singer then stated that while they were encouraged with the non-monetary terms offered by GoDaddy, any settlement would require a substantial monetary payment. Mr. Singer then proposed an eight-figure number to resolve all disputes between the parties.   The presentations by Mr. Quinto and Mr. Singer clearly implied that either GoDaddy could reach an agreement with AMPAS at that time or Judge Collins would award a substantially higher judgment later.   While I was taken aback by the brashness of Mr. Quinto's asserted relationship with Judge Collins, I assumed at the time that the comment was merely a form of ill-advised posturing.   It was not until after a series of events over the following year, coupled with subsequent investigation undertaken at my direction, that it became apparent how truthful Mr. Quinto's statement appears to be.

22.   Pursuant to Judge Collins' October 5, 2010 Scheduling Order, the parties participated in a formal mediation with the Hon. Stephen E. Haberfeld (Ret.) on March 18, 2013.   Although the parties were separated for the majority of the mediation, at one point, AMPAS requested that it be permitted to make a

presentation to Aaron McKown and me.  In the spirit of good faith, I agreed to listen to AMPAS' presentation, which included AMPAS' continued leverage of its long-standing history with Judge Collins and the repeated favorable rulings received by her in the case, as was to be expected from "the Academy's judge."  Despite the best efforts of Judge Haberfeld, the parties were vastly separated in their settlement terms.

23.    As a result of the direct instructions by Judge Collins at the June 24, 2013 Status Conference mandating further settlement discussions between the parties, Stuart Singer sent Aaron McKown a settlement demand letter on July 19, 2013 reiterating AMPAS' prior eight-figure settlement demand.    The letter repeatedly referred to anticipated actions and rulings by Judge Collins as justification for its demand.  A true and correct copy of this letter is attached hereto as **Exhibit C**.

24.    On September 6, 2013, Aaron McKown sent Stuart Singer an email informing him that GoDaddy's Executive Committee would be discussing the substance of Mr. Singer's letter "at the end of the month."  A true and correct copy of this email is attached hereto as **Exhibit D**.

25.    On September 17, 2013, in advance of GoDaddy's meeting, Steve Madison, a partner at Quinn Emanuel, sent an email to Bill Sonnenborn, a senior advisor for KKR & Co., L.P. ("KKR"), which holds a seat on GoDaddy's Executive Committee.    Mr. Madison's letter encouraged GoDaddy to settle the case.  Specifically, Mr. Madison explained that Judge Collins "has handled all [of] the Academy's federal litigation for more than 15 years.  She ruled in The Academy's favor on most issues but damages and fees have yet to be determined."  A true and correct copy of Mr. Madison's email is attached hereto as **Exhibit E**. Neither Mr. Madison nor any other person affiliated with AMPAS sought permission to speak to Mr. Sonnenborn prior to his email as required by the

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

9

1  California Rules of Professional Conduct.

**IV.  AMPAS' Statements Trigger An Investigation By GoDaddy Which Shockingly Reveals AMPAS' Fifteen Year History Of Having Its Trademark Cases Improperly Reassigned To Judge Collins With Her Assistance**

26.     The improper contact by Mr. Madison was eerily similar in tone to the August 2012 meeting with Mr. Quinto and the mediation in March 2013, including Mr. Quinto's statement that Judge Collins "is the Academy's judge."  Indeed, Mr. Madison confirmed that Judge Collins has handled AMPAS' affirmative litigation in the Central District almost exclusively for more than 15 years.  As a result of Mr. Madison's email, coupled with the Court's statement at the June 24, 2013 Status Conference, her rulings on June 21, 2013, and the prior statements by Mr. Quinto, I authorized GoDaddy's counsel to investigate the historical relationship between Judge Collins and AMPAS.  GoDaddy's counsel concluded its investigation in late November 2013.  Based on what counsel discovered, in combination with Judge Collins' statements at the June 24, 2013 Status Conference and Quinn Emanuel's repeated representation that Judge Collins "is the Academy's judge," and the Second Circuit's decision issued on November 13, 2013 recusing a judge for similar statements (*In re: Reassignment of Cases*, 736 F.3d 118 (2d. Cir. 2013)), GoDaddy's Executive Committee authorized the filing of this motion on December 6, 2013.

27.     GoDaddy's investigation revealed that AMPAS has a long history of litigation in the Central District.  AMPAS was first randomly assigned to Judge Collins in a trademark case it filed on May 4, 1999, captioned *AMPAS v. Harwood*.[1]  The *Harwood* matter closed on November 29, 1999 after the defendants entered into a stipulated judgment on the merits and Judge Collins issued a permanent injunction

---

[1]     Judge Collins has been on the bench in the Central District since 1994.  From 1994 through May 1999, AMPAS did not have a case assigned to Judge Collins.

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

in favor of AMPAS.

28.     AMPAS next filed a trademark suit in the Central District on August 27, 2001 in a matter captioned *AMPAS v. Butterfields Auction*.   AMPAS filed a Notice of Related Case in the *Butterfields Auction* matter claiming that it related to the *Harwood* case previously assigned to Judge Collins.   Despite General Order 224's prohibition on the relation of cases to previous matters that had been closed at least one year after a determination on the merits, the case was improperly deemed related and accepted by Judge Collins for reassignment.

29.     Over the course of the next 13 years, AMPAS filed similarly defective related case notifications in twenty-seven (27) consecutive trademark cases it filed (not including this case).   In each case, Judge Collins was not the originally assigned judge.   Indeed, in several cases, not only was Judge Collins not initially assigned the case, she was also not the second judge assigned (i.e., a few of the AMPAS-Collins cases went back to the clerk for random reassignment, were reassigned to other judges, and then still ended up being transferred to her).   Nonetheless, in all but two cases, Judge Collins accepted the cases for reassignment pursuant to AMPAS' filing of a Notice of Related Case.   The only two exceptions involved a case in which Judge Collins' family member was an employee of the defendant and one in which she had a financial interest in the defendant; both instances in which Judge Collins' had a clear and obvious conflict of interest.   A summary of the AMPAS-Collins cases with the exception of this one is set forth in a chart attached hereto as **Exhibit F**.

30.     Although Judge Collins accepted both the *Butterfield Auctions* case and twenty-five (25) of the next twenty-six (26) cases for reassignment, one of the cases she accepted was denied reassignment because the originally assigned judges (Judge Otero) found that none of the criteria required to relate a case under the Court's General Orders applied.   The other case was dismissed before a ruling on the Notice

of Related Case was issued.

31.     Like the two cases that were denied reassignment by Judge Otero and Judge Real, not a single one of the other twenty-four (24) cases reassigned to Judge Collins met the requirements necessary to be deemed related under any of the applicable General Orders of this Court.  For example, AMPAS filed twenty (20) of the twenty-four (24) reassigned cases between August 27, 2001, when it filed the *Butterfield Auctions* case, and February 2007.  During that period, General Order 224 was in effect and precluded the relation of any case filed more than a year after a determination had been made on the merits.  Yet in each of the twenty (20) cases, AMPAS filed a Notice of Related Case claiming that the new case related to the *Harwood* case even though each case was filed well after the one year anniversary of the closure date (November 29, 1999) for *Harwood*.  As such, not one of these twenty (20) lawsuits met the requirements for reassignment to Judge Collins.

32.     The same is true with respect to the three cases AMPAS filed between May 2007 and September 2007.  In March 2007, the Court adopted General Order 07-02, which superseded General Order 224.  General Order 07-02 further restricted the circumstances under which a case could be deemed related to a previously-filed matter.  Specifically, a case could not be deemed related simply because it involved the same trademark (assuming the timing requirements were otherwise satisfied).  Instead, even if the cases involve the same trademark, they could only be deemed related if they (a) arose from the same or similar transaction, (b) called for a determination of the same or substantially similar questions of law *and* fact, or (c) for other reasons would entail substantial duplication of labor if heard by different judges.  Despite not meeting any of these requirements, AMPAS filed a Notice of Related Case in all three cases that were filed while General Order 07-02 was in effect, incredibly claiming that each matter related back to the 1999 *Harwood* case.  As a result, each of these three cases was subsequently reassigned to Judge Collins.

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

12

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

33.     AMPAS filed this action in May 2010.  At that time, the Court had adopted General Order 08-05, which superseded General Order 07-02 and its successor, General Order 08-01.  Regardless, Paragraph 5.1.1 of General Order 08-05 maintains the same requirements for relating a case as General Order 07-02:  (a) the matter must arise from the same or similar transaction as the prior case, (b) the matter must call for a determination of the same or substantially similar questions of law *and* fact as the prior case, or (c) for other reasons, the matter would entail substantial duplication of labor if heard by different judges.  The fact that the cases involve the same trademark(s) is insufficient to relate the cases or to reassign the matter to the prior judge absent one of the other criteria being met.  Again, despite not meeting any of the requisite criteria, AMPAS filed a Notice of Related Case claiming that this case related to sixteen cases previously filed between 1999 and 2007, all of which were allegedly related to the *Harwood* case.  As with the other twenty-six (26) cases, Judge Collins improperly accepted this case for reassignment.

34.     David Quinto and Quinn Emanuel were the attorneys of record (or at least one of the attorneys of record) in all but two of the AMPAS-Collins cases.  One of the two exceptions is this action, where Quinn Emanuel is not the attorney of record due a conflict of interest with regard to Quinn Emanuel's ongoing representation of Google.  Nonetheless, Quinn Emanuel, and in particular, Mr. Quinto, has been extensively involved in the case.

35.     In addition to the discovery of Judge Collins' pattern of favorable decisions for AMPAS, we also discovered that Judge Collins' daughter is an actress who appears on several pages of AMPAS' website.  True and correct copies of screenshots from AMPAS' website referencing Judge Collins' daughter are attached hereto as **Exhibit G**.

36.     On December 12, 2013, AMPAS' counsel notified counsel for GoDaddy that they believe Judge Collins, not a jury, will serve as the fact-finder

13

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

1  with regard to whether GoDaddy acted in bad faith. A true and correct copy of the

2  email containing this statement is attached hereto as **Exhibit H**. AMPAS' counsel

3  previously advised counsel for GoDaddy that they believe Judge Collins is also the

4  one who will determine the amount of statutory damages in the event GoDaddy is

5  found liable under the ACPA.

6      37.    GoDaddy does not take the filing of this Motion lightly. GoDaddy has

7  never previously filed a motion to recuse a federal judge. While I anticipate that

8  AMPAS will claim that this motion is being filed for strategic purposes, I can assure

9  the Court that it is not.    This Motion is made because the totality of the

10 circumstances demonstrates a bias, or at least an appearance of bias, by Judge

11 Collins in favor of AMPAS such that a reasonable person with knowledge of all the

12 facts would believe that her impartiality might be questioned.

13      I declare under penalty of perjury under the laws of the United States of

14 America that the facts set forth above are true and correct. Executed this 31st day of

15 December, 2013, at Scottsdale, Arizona.

16

17

18                                  Nima Kelly

19

20 State of Arizona          )

21 County of Maricopa        )

22 The foregoing instrument was acknowledged, subscribed and sworn before me this

23 31 of December , 2013 by  Nima J. Kelly            .

24

25      NOTARY SEAL                           _____
                                              **NOTARY PUBLIC**
26



Ashley Noelle Hammons
Notary Public
Maricopa County
State of Arizona
My Comm. Exp. 9-30-2017

27

28

14

# EXHIBIT A

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-3738 ABC (CWx) | Date | June 21, 2013 |
|---|---|---|---|
| Title | Academy of Motion Picture Arts & Sciences v. GoDaddy.com, Inc., et al. | | |

| Present: The Honorable | Audrey B. Collins | |
|---|---|---|
| Angela Bridges | None Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings:**     ORDER RE: HEARING SET FOR MONDAY JUNE 24, 2013
(In Chambers)

Concurrent with this minute order, the Court is issuing Orders resolving the parties' cross-motions for summary judgment/adjudication, and their motions to exclude. As such, the Court will not hear oral argument on these motions on June 24, 2013.

However, the Court is keeping the hearing on calendar to discuss several issues arising out of the Motions, and about moving the case forward. These issues include the following:

- scheduling discovery as to Joe Presbrey and the timing of any follow-up motions;
- the parties' submission of a unified list of domain names that they wish the Court to rule upon;
- how the parties intend to handle the domain names that the Academy disclosed after September 14, 2011;
- the timing of settlement procedure; and
- setting pretrial and jury trial dates.

To the extent it is feasible and convenient for the parties to meet and confer on any of these issues prior to the hearing, that would be helpful.

**IT IS SO ORDERED.**

                                                                                        _____ : _____
                                                        Initials of Preparer     AB

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-3738 ABC (CWx) | Date | July 12, 2013 |
|---|---|---|---|
| Title | Academy of Motion Picture Arts & Sciences v. GoDaddy.com, Inc., et al. | | |

Present: The Honorable    Audrey B. Collins

| Angela Bridges | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiff:          Attorneys Present for Defendant:

None Present                               None Present

**Proceedings:**        ORDER RE:
(1) MOTION FOR ORDER CLARIFYING JUNE 21 and 24, 2013 ORDERS, and
(2) RESETTING DATES   (In Chambers)

Pending before the Court is GoDaddy's Motion for an Order Clarifying June 21 and 24, 2013 Orders (docket no. 500) and the parties' Report (docket no. 501) proposing new pretrial and trial dates.

In response to the Motion, the Court hereby clarifies that Mr. Presbrey may testify as a fact witness only, not as an expert witness.

The Court also hereby **SETS** the following dates:

1. All Pre-Trial deadlines are continued as follows:

   a. Limited Fact Discovery Cut-Off, deriving from or relating to Joe Presbrey, is set for December 31, 2013.

   b. Expert Report(s) on behalf of Go Daddy, deriving from or relating to Joe Presbrey fact discovery, are due February 4, 2014.

   c. Rebuttal Expert Reports on behalf of AMPAS, deriving from or relating to Joe Presbrey fact discovery, are due March 4, 2014.

   d. Expert Discovery Cut-Off is set for March 25, 2014.

   e. Dispositive Motion Cut-Off is set for April 15, 2014.

   f. Dispositive Motion Hearing Date, previously set for November 28, 2011, now is set for May 20, 2014.

2. The Final Pre-Trial Conference is set for July 14, 2014, at 10:00 a.m.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-3738 ABC (CWx) | Date | July 12, 2013 |
|---|---|---|---|
| Title | Academy of Motion Picture Arts & Sciences v. GoDaddy.com, Inc., et al. | | |

3. Trial is set for July 28, 2014.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer    AB

# EXHIBIT B

1                    UNITED STATES DISTRICT COURT

2                   CENTRAL DISTRICT OF CALIFORNIA

3                        WESTERN DIVISION

4                             ---

5           HONORABLE AUDREY B. COLLINS, JUDGE PRESIDING

6                             ---

7

8    ACADEMY OF MOTION PICTURES )
     ARTS AND SCIENCES,          )
9                                )
                   Plaintiff,    )
10                               )
                                 )
11        vs.                    ) NO:  CV 10-3738-ABC
                                 )
12                               )
     GODADDY.COM, INC., et al.,  )
13                               )
                   Defendants.   )
14   _____  )

15

16

17            REPORTER'S TRANSCRIPT OF PROCEEDINGS

18                 Los Angeles, California

19                 Monday, June 24, 2013

20

21

22                      KATHERINE M. STRIDE, RPR, CSR
                        Official Court Reporter
23                      Roybal Federal Building
                        255 E. Temple Street, Rm. 181-B
24                      Los Angeles, California  90012

25                      (213)894-2187

1

2    **APPEARANCES:**

3

4    In behalf of the Plaintiff:

5                    BOIES SCHILLER & FLEXNER LLP
                    BY:  DAVID MICHAELS
6                    401 Wilshire Boulevard, Suite 850
                    Santa Monica, CA  90401
7                    (310)752-2400

8
                    BOIES SCHILLER & FLEXNER LLP
9                    BY:  STUART H. SINGER
                    401 East Las Olas Boulevard, Suite 1200
10                   Fort Lauderdale, FL  33301
                    (954)356-0011
11

12                   LEE TRAN & LIANG
                    BY:  ENOCH H. LIANG
13                   601 South Figueroa Street, Suite 4025
                    Los Angeles, CA 90017
14                   (213)612-3737

15

16

17

18   In behalf of the Defendants:

19                   WRENN BENDER MCKOWN & RING LLLP
                    BY:  PAULA L. ZECCHINI
20                       AARON M. MCKOWN
                    2 Park Plaza, Suite 550
21                   Irvine, CA  92614
                    (949)202-5818

22

23

24

25

1          LOS ANGELES, CALIFORNIA; MONDAY, JUNE 24, 2013;

2                              10:53 A.M.

3

4          THE CLERK:  Calling Item No. 1 on the Court's

5     Calendar, CV 10-3738, Academy of Motion Pictures Arts

6     and Sciences versus GoDaddy.com, Inc., et al.

7          Counsel, please state your appearances for the

8     record.

9          MR. SINGER:  Good morning, Your Honor.  Stuart

10    Singer from Boies Schiller & Flexner on behalf of

11    Academy of Motion Picture Arts and Sciences.  With me is

12    David Michael's of our firm and Enoch Liang.

13         MR. MCKOWN:  Good morning, Your Honor.  Aaron

14    McKown on behalf of Defendant GoDaddy.com.

15         MS. ZECCHINI:  Good morning, Your Honor.  Paula

16    Zecchini on behalf of Defendant GoDaddy.com.

17         THE COURT:  All right.  Good morning, Counsel.

18    As you know, the Court has already sent out two orders,

19    one is the order on Plaintiff's motion and Defendants'

20    motions for Summary Judgment, the other order was on

21    Plaintiff's motion to exclude the testimony of two

22    experts.  That motion was granted, and then Defendant's

23    motion to exclude the testimony of Presbrey was denied,

24    but the Court is allowing re-opening discovery, and I

25    also sent out a minute order in which I asked you to be

4

1    prepared to discuss certain matters this morning

2    including scheduling those issues.  Because we don't

3    have a court trial -- a court trial date -- and I know

4    it's a jury trial -- but we don't have a date, there

5    will be time to deal with these issues including

6    scheduling discovery as to Mr. Presbrey, follow-up

7    motions, a unified list of domain names because I could

8    not make sense out of the varying lists that you

9    submitted, and as you know, the Court is not required to

10   hunt through all of this.  It's up to you to make things

11   clear, how you want to handle the late disclosed names,

12   timing of settlements and setting future dates including

13   as I said the discovery cut-off, follow-up motions,

14   pretrial, and jury trial dates, and I put settlement in

15   there because it does seem to me that somewhere around

16   here it might be good now that you kind out how things

17   are going to discuss settlement or to have your

18   settlement conference whether you do that now or after

19   discovery of Mr. Presbrey, whatever.  But it's,

20   certainly, time to start thinking about that because I

21   think you can see the outlines of the way it's going.

22          So who would like to start?

23          MR. SINGER:  Your Honor, Stuart Singer on

24   behalf of the Plaintiff.  First of all, with respect to

25   settlement, we have had a mediation that was conducted

1   earlier this year in front of former Judge Haperfelt

2   (Phonetic).  That did not resolve the case, but we

3   think, in light of the Court's ruling on Summary

4   Judgment, that it makes sense to renew that process --

5   certainly, the Academy is willing to do so -- and to see

6   if resolution of these issues is now possible, and so we

7   would propose to do that within the next few weeks or

8   even couple months.  We haven't had a chance to talk

9   about scheduling that, but we are, certainly, prepared

10  to see if -- if that's now more productive.

11         Would the Court like me to address the other

12  issues set forth in the Court's minute order?

13         THE COURT:  Sure why don't you just go ahead

14  with all of them.

15         MR. SINGER:  Yes, Your Honor.  With respect to

16  Mr. Presbrey's deposition, we have learned that he's

17  available with the exception of the week of July 19th

18  and the 26th.  We'll bring him to Los Angeles to be

19  deposed at a date which is convenient for the Defendant.

20  Once that deposition is taken, we think the unified list

21  that the Court has asked for could be prepared.  We

22  would seek to do that with the Defendants to indicate

23  clearly which names are subject to the Summary Judgment

24  motion.  We think fourteen days after that deposition

25  would, in our view, allow sufficient time to prepare

6

1    that and submit it to the Court.

2           With respect to the names that are not

3    disclosed by September 14th, 2011 -- and let me note

4    that there are 250 names, which were disclosed by that

5    date, a few of those we have dropped along the way for

6    various reasons.  There were 77 names that were added

7    between September, 2011, and June, 2012, and there's

8    additional names which arise constantly in this

9    situation.  Of the 115 names where we moved for Summary

10   Judgment, asking the Court to make as a matter of law a

11   determination of confusing similarity, 72 of them are

12   included in the September 14th, 2011, disclosure or

13   earlier disclosures.  43 of them occurred after that

14   date.  So for the 72, they would be clearly on the list,

15   which would indicate that they're now ready for ruling.

16   And with respect to the others and for whatever

17   additional names arise after September, 2011, we would

18   first seek to resolve this case by settlement, and only

19   if that is not possible, then looking at filing an

20   additional case, which may be stayed or which may be

21   consolidated.  We, certainly, don't want to delay this

22   trial any further, but we aren't prepared to have those

23   names just go by the wayside.  So we would file

24   something if the case couldn't be resolved that

25   presumably would be transferred to this division and

7

1  could be held pending the result of the case or

2  consolidated in whatever way makes the most sense.

3          With respect to the setting of pretrial and

4  jury trial dates, we saw the Court's reference to the

5  first available date being late spring of 2014.

6          THE COURT:  And that's -- that's as of right

7  now.  I mean right now I'll tell you I have a criminal

8  matter that's set for about three and a half months in

9  January, and I don't know yet what's going to happen to

10  it.  I will know later so.  I don't have an objection to

11  setting civil jury trials during that period as long as

12  everybody understands that, if that criminal case goes,

13  it basically wipes me out from January through March.

14          MR. SINGER:  We understand.

15          THE COURT:  I don't have an objection to

16  setting it, but you need back-up dates because everybody

17  needs to understand what the situation is.

18          MR. SINGER:  Our only request in connection

19  with that scheduling is that, in that time period, it

20  will be set after the Academy Awards night the first

21  week of March of 2014 and that pretrial conference be

22  set in an promoting of time in advance of the trial

23  setting.

24          THE COURT:  All right.  Well, again, I will

25  leave it to you.  I mean you can suggest pretrial and

1    jury trial dates, and you're free to suggest a date that

2    falls in that time period, January through March,

3    avoiding the dates that are bad for you, and maybe -- I

4    don't know.  Maybe everything's bad.  Maybe you don't

5    like to do things between January and March at all

6    anyway, but as long as everybody understands that, if

7    that case goes, you know, I'm basically wiped out.

8         Okay.  Well, let me hear from Defendants your

9    responses.

10        MR. MCKOWN:  I'll start by saying we agree that

11   the untimely disclosed domain names should be part of a

12   separate action and shouldn't be part of this lawsuit.

13   So we would agree with the Academy on that point.

14        With respect --

15        THE COURT:  But, of course, it is true I will

16   get the case under the local rules and presuming -- as

17   I'm sure I can safely presume that this case is not

18   going to trial, it will be consolidated.

19        MR. MCKOWN:  Understood.  The other -- with

20   respect to the issue of settlement, we did -- as counsel

21   indicated, we had a series of informal settlement

22   attempts.  We also had settlement formally with a

23   mediator.  The parties weren't close in my senses.  With

24   respect to our client, we're probably going to be

25   farther apart as a result of these, and as a result of

1    the rulings, my client may not be in a position to

2    consider settlement.  So we, certainly, will discuss

3    that with our client and -- and communicate that with

4    counsel if they still feel it's -- if they want to make

5    an effort, our client's always interested in talking so,

6    perhaps, we could get closer.  So I think we'll leave

7    that open.

8        THE COURT:  And you will -- and you can make it

9    clear to your client that you're going to go to another

10   settlement conference before I would let this case go to

11   trial.  I mean I understand you did something early.

12   That's fine; but, obviously, there will be another --

13   there will be another settlement attempt before this

14   case goes to trial.

15       MR. MCKOWN:  With -- with the -- with the --

16   understood, Your Honor.  With respect to scheduling and

17   the -- where we're at as a result of Your Honor's ruling

18   with respect to Mr. Presbrey, I think the issues are

19   much more complicated than simply setting out a

20   deposition.  I'm not -- I know we're not here to argue

21   the motion, and I'm not intending to do that, but I do

22   have to provide some context as to why we think there's

23   a substantial amount of more work performed in light of

24   Your Honor's ruling in order to help mitigate to some

25   extent at least what we view as to be irreparable

1   prejudice to our client as a result of allowing

2   Mr. Presbrey to be -- to proceed in this action.

3   Counsel -- the Academy hired Mr. Presbrey about a year

4   before this case was filed.  They hired him for the sole

5   purpose of identifying, locating, and creating these

6   purported screen shots to support their claims.  Their

7   entire original Complaint in every -- every amendment of

8   that Complaint has been based entirely on the -- the

9   work performed by Mr. Presbrey.  They -- they even admit

10  as much in their opposition to our Rule 37 that they

11  acknowledge he's been a fact witness and they've known

12  this for the last four years.  They made repeated

13  efforts to, first, conceal his existence for the first

14  year and a half of this case.

15          THE COURT:  Counsel, I've already ruled.

16          MR. MCKOWN:  But the point being is that it

17  impacted every aspect of the litigation strategy that

18  was employed by GoDaddy.  They made the conscious

19  decision, despite their obligation to disclose him, you

20  know, at the outset of this case and despite being

21  warned by Judge Woehrle that they were not going to be

22  able to authenticate their screen shots without somebody

23  stepping up and presenting Mr. Presbrey.  They waited

24  until -- until after Summary Judgments were filed and

25  waited until they were opposing Summary Judgment to do

1    that, and that has a rippling effect through the entire

2    litigation strategy that GoDaddy's spent the last three

3    years employing, spent millions of dollars persuing,

4    spent thousands of man hours internally trying to help

5    implement, and as a result, it affects every aspect --

6    in fact, we don't have a single document from him other

7    than these -- these purported screen shots.  We've never

8    been -- they've -- they've shielded the software program

9    and all data and metadata, et cetera, relating to it.

10   They've shielded all communications from Mr. Presbrey

11   under claims of privilege.  We haven't -- as a result of

12   that, we -- we don't know -- we haven't been able to

13   retain an expert to examine this software program to

14   understand how it works, to understand whether

15   Mr. Presbrey, actually, located any of these domain

16   names.  We would have had he been timely disclosed.  We,

17   certainly, would have retained at least a consultant to

18   understand the software program at issue and would have

19   likely designated an expert to refute any aspects or

20   challenge any aspects of that software program.  It also

21   affected the way the issues we raised on dispositive

22   motions.  As Your Honor may remember, we requested an

23   extension to go beyond the 25-page limit.  That request

24   was denied.  We had to pick, based on the evidence or

25   lack thereof that was in this case as of that time, what

```
 1    issues to present foregoing a variety of issues.

 2            THE COURT:  Okay.  Counsel, would you get to

 3    the bottom line because you're not arguing motion.

 4            MR. MCKOWN:  Well, but what I'm trying to argue

 5    is that, in order to -- to help ameliorate the prejudice

 6    that GoDaddy is going to suffer is I think we need a lot

 7    more than simply a deposition.  I think we need

 8    documents, including a copy of the -- of the software

 9    program at issue.  Those documents should include

10    metadata, data, as well as e-mail communications.  What

11    I can see happening is that the Academy is going to

12    re-assert privilege as to a lot of these issues all

13    over, again, and I think we're going to continue to get

14    into discovery disputes about that.  I would prefer,

15    given the representation by Academy's counsel that

16    there's no data that would result from the use of the

17    software program, which I just can't wrap my head

18    around, that being true, that we, actually, be permitted

19    to have a forensic IT consultant go in and -- and make

20    an image of the computer software program and capture

21    these screen shots.

22            I think with respect to the deposition itself,

23    I appreciate that counsel's willing to produce him here

24    in Los Angeles.  I would request, since he is the only

25    witness from the Academy that has any knowledge
```

1    regarding when and how these domain names were

2    discovered and the screen shots at issue, that we be

3    given two days to take his deposition.  I think we

4    should be permitted an opportunity to disclose an expert

5    that would relate to the software program that was

6    allegedly used with respect to the -- the screen shots.

7            I think this issue, the issue of privilege,

8    maybe we need to bring it up in front of Judge Woehrle,

9    but I think they're now put -- based on the Declaration

10   they submitted of Presbrey, they put all of his

11   communications with counsel, the software program, and

12   every other bit of work product that they claim was work

13   product -- all those privileges should be waived.

14           I think that -- that the Academy will be under

15   now a further obligation to supplement its discovery

16   responses.  We've been told since the first date of this

17   case that all the way through the 30(b)(6) depositions

18   by the Academy, that they had nobody with knowledge

19   about how or when these domain names were discovered.

20   That clearly wasn't true, but they were shielding

21   Mr. Presbrey under a claim of privilege.  Now, that he's

22   no longer privileged, I think they have an obligation to

23   disclose.

24           Now, one of the other strategies that we did

25   not pursue in this case because the Academy's claim is

1    that they don't object to the domain names themselves,

2    but it's the contextualize ads that -- that appear on

3    these Parked Pages that are provided by Google.  Without

4    them being able to prove that that, actually, occurred,

5    we did not pursue our right under Rule 14 to implead

6    Google into this case.  We would like that -- that was

7    something we would forego as a result of their failure

8    to disclose anybody with knowledge regarding the content

9    of these -- these part pages.  I think we'd like to have

10   the right to -- to be able implead Google if that's a

11   course of action that my client wants to take.  You

12   know, it doesn't get to the fact that clearly we were --

13   we were correct in our Motion to Compel disclosure of

14   Presbrey and his documents in the first place, and I

15   think it would be fair to -- to -- to have compensation

16   to GoDaddy for recovery of at least some of the cost it

17   expended as a result of the -- of the Academy's failure

18   to meet its obligations under -- under Rule 26.

19         THE COURT:  Well, you can take many of these

20   issues back to Magistrate Judge Woehrle.  What I ordered

21   was the deposition.  That's the first thing that should

22   happen, and then, if you want to raise -- most of those

23   issues are for continuing discovery disputes.

24   Obviously, if they are motions that deal with trying to

25   bring other parties in, that comes to me.  For right

 1    now, I've got to move on my calendar this morning.  So I

 2    believe you have identified the first thing that's going

 3    to happen, is the deposition.  I -- I you'll be able to

 4    agree on the date for that when he comes in, and many of

 5    these other issues happened after that.  It looks like

 6    you're going to ask to re-open discovery.  As I said and

 7    it doesn't sound to me like you're ready to talk

 8    settlement.  So I'm not going to force that.  I'm

 9    telling you you will go to settlement before this case

10    ever goes to trial.  That's for sure, you'll go back.  I

11    appreciate that you did one, but that was way too early

12    in the case to count as far as I'm concerned as

13    satisfying your obligation.

14            In terms of setting pretrial and jury trial

15    dates, I don't want to waste time if you -- I think I

16    need some out there.  It sounds like you're asking to

17    re-open discovery and you want to do all kinds of things

18    before that.  That's fine, but I'm ordering you to meet

19    and confer, and you will submit three proposed pretrial

20    and jury trial dates.  They can, certainly, be as late

21    as next year.  In fact, they should be, and that should

22    allow time for some of these other things to happen that

23    you are seeking to do.  So I will let you do that and

24    submit those, say, within a week.

25            MR. MCKOWN:  Your Honor, real quick.  The one

1    issue I didn't address that's on your list that you

2    asked us to address is the unified list of domain names.

3    I believe -- and -- and maybe I'm asking for

4    clarification -- I believe there were two lists that

5    Your Honor was requesting of us, one was a list what I

6    would call the OscarRamirez.com list of domain names

7    that contain personal names or nongeneric modifying

8    terms.  I think that is one that can be done fairly

9    quickly.  We can meet and confer with counsel and do

10   that.  The other list, I think, is the list that would

11   be deferred to ruling on whether they were, quote,

12   unquote, "in the Parked Page program."  I think a lot of

13   that is going to depend on the discovery that occurs

14   with respect to Mr. Presbrey.

15            THE COURT:  All right.  So you're feeling

16   you're unable to submit that list --

17            MR. MCKOWN:  Correct.

18            THE COURT:  -- until after -- all right.  Well,

19   of course, I can't rule until I have those lists.  You

20   are correct as to one list.  I mean it was confusing to

21   me, but you had lists that were called Appendices 4, 5,

22   and 6.  As to the names listed in 4 and 5, you relied on

23   your experts.  So those lists are not going to be before

24   me because I excluded them.  I think you're referring to

25   Appendix 6, that those are the names, I guess.  So I

1    can, certainly, rule on those if you agree on

2    Appendix 6.  If you both agree that I should go ahead

3    and rule on those, you can submit those within --

4    what? -- the next 30 days?

5           MR. MCKOWN:  Yes, Your Honor.  I guess I would

6    say that Your Honor has the ability, despite the fact if

7    we're excluding the experts, that, if there are other

8    domain names that we submitted for Your Honor to

9    consider, you have the ability under 56(f) to, on your

10   own, consider whether any -- whether a reasonable jury

11   would --

12          THE COURT:  Well, again, I'm not going back

13   through lists.  That is not what I do.  I don't have to

14   hunt for things.  You know, there's that quote about

15   judges not being like pigs that have to hunt for

16   truffles, or whatever it is.  So I'm not doing anything

17   until I get unified lists that you agree on, and if

18   that's a subset that you can agree on, I'll be happy to

19   rule on it.

20          MR. MCKOWN:  Thank you, Your Honor.

21          MR. SINGER:  Thank you, Your Honor.

22          THE COURT:  All right.  Thank you.  So if you

23   can agree on whatever lists should be before me that

24   don't involve Mr. Presbrey and submit those within

25   30 days, that is fine, and I've also ordered you to meet

 1    and confer and come up with three sets of pretrial and

 2    jury trial dates, presumably all in 2014 and that --

 3    that you should be able to do within two weeks.

 4              MR. SINGER:  Yes, Your Honor.

 5              THE COURT:  Specifically, that would be by

 6    July 8th, and then any domain names that you can agree

 7    upon and you want the Court to rule on, let's say,

 8    July -- by July 26th.  That's a little bit over 30 days,

 9    and then you should meet and agree on the date to depose

10    Mr. Presbrey here in Los Angeles, and after that, of

11    course, things that you need to take back to Magistrate

12    Judge Woehrle, fine, or you can bring it back to me.  As

13    of now, discovery, of course, was cut off.  I expended

14    it only for this.  I assume that essentially GoDaddy is

15    asking me to extend the discovery period beyond that so

16    that you can do some of these others things.

17              MR. MCKOWN:  Just as it relates to

18    Mr. Presbrey --

19              THE COURT:  But limited to -- right.  Limited

20    to, perhaps, counter-designation of an expert, and then

21    that would have to go through -- that discovery or to

22    any other motions that you might bring to compel before

23    the magistrate judge.  I mean do you have any idea how

24    long that would take in terms of a discovery cut-off

25    that you would be asking for?

1           MR. MCKOWN:  Well, I think if we're looking at

2    trial dates, sometime in either the spring or summer of

3    next year, I think we could, certainly, finish the

4    discovery and the issues I raised today by the end of

5    the year.

6           THE COURT:  All right.  Does Plaintiff have any

7    objection of the Court setting a new discovery cut-off

8    toward the end of the year?

9           MR. SINGER:  Your Honor, I think that would be

10   appropriate as long as we could at the same time reserve

11   our rights, if necessary, to go before Judge Woehrle on

12   any of the discovery issues.

13          THE COURT:  But, again, of course, this is

14   limited to anything that -- or sort of derives from

15   Mr. Presbrey's information and his deposition.

16          MR. SINGER:  Yes, Your Honor.

17          THE COURT:  Okay.  All right.  December 31st

18   for the new discovery cut-off -- of 2013, obviously.

19   December 31st.

20          Okay.  Thank you.

21          MR. MCKOWN:  Thank you, Your Honor.

22          MR. SINGER:  Thank you, Your Honor.

23              (Proceedings concluded at 11:15 P.M.)

24

25                  --oOo--

1                    **C E R T I F I C A T E**

2

3          I hereby certify that, pursuant to Title 28,

4    Section 753, United States Code, the foregoing is a true

5    and correct transcript of the stenographically reported

6    proceedings held in the above-entitled matter and that

7    the transcript page format is in conformance with the

8    regulations of the Judicial Conference of the

9    United States.

10          Certified on July 5, 2013.

11

12

13

14                              /s/ Katherine M. Stride
                                _____
15                              KATHERINE M. STRIDE, CSR, RPR
                                Official Court Reporter
16                              License No. 11773

17

18

19

20

21

22

23

24

25

## /

/s [1] - 20:14

## 1

1 [1] - 3:4
10-3738 [1] - 3:5
10-3738-ABC [1] - 1:11
10:53 [1] - 3:2
115 [1] - 6:9
11773 [1] - 20:15
11:15 [1] - 19:23
1200 [1] - 2:9
14 [1] - 14:5
14th [2] - 6:3, 6:12
181-B [1] - 1:23
19th [1] - 5:17

## 2

2 [1] - 2:20
2011 [4] - 6:3, 6:7, 6:12, 6:17
2012 [1] - 6:7
2013 [4] - 1:19, 3:1, 19:18, 20:10
2014 [3] - 7:5, 7:21, 18:2
213)612-3737 [1] - 2:14
213)894-2187 [1] - 1:25
24 [2] - 1:19, 3:1
25-page [1] - 11:23
250 [1] - 6:4
255 [1] - 1:23
26 [1] - 14:18
26th [2] - 5:18, 18:8
28 [1] - 20:3

## 3

30 [3] - 17:4, 17:25, 18:8
30(b)(6 [1] - 13:17
310)752-2400 [1] - 2:7
31st [2] - 19:17, 19:19
33301 [1] - 2:10
37 [1] - 10:10

## 4

4 [2] - 16:21, 16:22
401 [2] - 2:6, 2:9
4025 [1] - 2:13
43 [1] - 6:13

## 5

5 [3] - 16:21, 16:22, 20:10
550 [1] - 2:20
56(f [1] - 17:9

## 6

6 [3] - 16:22, 16:25, 17:2
601 [1] - 2:13

## 7

72 [2] - 6:11, 6:14
753 [1] - 20:4
77 [1] - 6:6

## 8

850 [1] - 2:6
8th [1] - 18:6

## 9

90012 [1] - 1:24
90017 [1] - 2:13
90401 [1] - 2:6
92614 [1] - 2:21
949)202-5818 [1] - 2:21
954)356-0011 [1] - 2:10

## A

A.M [1] - 3:2
Aaron [1] - 3:13
AARON [1] - 2:20
ability [2] - 17:6, 17:9
able [6] - 10:22, 11:12, 14:4, 14:10, 15:3, 18:3
above-entitled [1] - 20:6
Academy [10] - 3:5, 3:11, 5:5, 7:20, 8:13, 10:3, 12:11, 12:25, 13:14, 13:18
ACADEMY [1] - 1:8
Academy's [3] - 12:15, 13:25, 14:17
acknowledge [1] - 10:11
action [3] - 8:12, 10:2, 14:11
added [1] - 6:6
additional [3] - 6:8, 6:17, 6:20
address [3] - 5:11, 16:1, 16:2
admit [1] - 10:9
ads [1] - 14:2
advance [1] - 7:22
affected [1] - 11:21
affects [1] - 11:5
agree [10] - 8:10, 8:13, 15:4, 17:1, 17:2, 17:17, 17:18, 17:23, 18:6, 18:9
ahead [2] - 5:13, 17:2
al [2] - 1:12, 3:6
allegedly [1] - 13:6
allow [2] - 5:25, 15:22
allowing [2] - 3:24, 10:1
ameliorate [1] - 12:5
amendment [1] - 10:7
amount [1] - 9:23
AND [1] - 1:8
ANGELES [1] - 3:1
Angeles [6] - 1:18, 1:24, 2:13, 5:18, 12:24, 18:10
anyway [1] - 8:6
apart [1] - 8:25
appear [1] - 14:2
APPEARANCES [1] - 2:2

appearances [1] - 3:7
Appendices [1] - 16:21
Appendix [2] - 16:25, 17:2
appreciate [2] - 12:23, 15:11
appropriate [1] - 19:10
argue [2] - 9:20, 12:4
arguing [1] - 12:3
arise [2] - 6:8, 6:17
Arts [2] - 3:5, 3:11
ARTS [1] - 1:8
aspect [2] - 10:17, 11:5
aspects [2] - 11:19, 11:20
assert [1] - 12:12
assume [1] - 18:14
attempt [1] - 9:13
attempts [1] - 8:22
AUDREY [1] - 1:5
authenticate [1] - 10:22
available [2] - 5:17, 7:5
avoiding [1] - 8:3
Awards [1] - 7:20

## B

back-up [1] - 7:16
bad [2] - 8:3, 8:4
based [3] - 10:8, 11:24, 13:9
behalf [6] - 2:4, 2:18, 3:10, 3:14, 3:16, 4:24
BENDER [1] - 2:19
between [2] - 6:7, 8:5
beyond [2] - 11:23, 18:15
bit [2] - 13:12, 18:8
BOIES [2] - 2:5, 2:8
Boies [1] - 3:10
bottom [1] - 12:3
Boulevard [2] - 2:6, 2:9
bring [5] - 5:18, 13:8, 14:25, 18:12, 18:22
Building [1] - 1:23
BY [4] - 2:5, 2:9, 2:12, 2:19

## C

CA [3] - 2:6, 2:13, 2:21
calendar [1] - 15:1
Calendar [1] - 3:5
CALIFORNIA [2] - 1:2, 3:1
California [2] - 1:18, 1:24
capture [1] - 12:20
case [20] - 5:2, 6:18, 6:20, 6:24, 7:1, 7:12, 8:7, 8:16, 8:17, 9:10, 9:14, 10:4, 10:14, 10:20, 11:25, 13:17, 13:25, 14:6, 15:9, 15:12
CENTRAL [1] - 1:2
certain [1] - 4:1
certainly [9] - 4:20, 5:5, 5:9, 6:21, 9:2, 11:17, 15:20, 17:1, 19:3
Certified [1] - 20:10
certify [1] - 20:3

cetera [1] - 11:9
challenge [1] - 11:20
chance [1] - 5:8
civil [1] - 7:11
claim [3] - 13:12, 13:21, 13:25
claims [2] - 10:6, 11:11
clarification [1] - 16:4
clear [2] - 4:11, 9:9
clearly [4] - 5:23, 6:14, 13:20, 14:12
CLERK [1] - 3:4
client [6] - 8:24, 9:1, 9:3, 9:9, 10:1, 14:11
client's [1] - 9:5
close [1] - 8:23
closer [1] - 9:6
Code [1] - 20:4
COLLINS [1] - 1:5
communicate [1] - 9:3
communications [3] - 11:10, 12:10, 13:11
Compel [1] - 14:13
compel [1] - 18:22
compensation [1] - 14:15
Complaint [2] - 10:7, 10:8
complicated [1] - 9:19
computer [1] - 12:20
conceal [1] - 10:13
concerned [1] - 15:12
concluded [1] - 19:23
conducted [1] - 4:25
confer [3] - 15:19, 16:9, 18:1
Conference [1] - 20:8
conference [3] - 4:18, 7:21, 9:10
conformance [1] - 20:7
confusing [2] - 6:11, 16:20
connection [1] - 7:18
conscious [1] - 10:18
consider [3] - 9:2, 17:9, 17:10
consolidated [3] - 6:21, 7:2, 8:18
constantly [1] - 6:8
consultant [2] - 11:17, 12:19
contain [1] - 16:7
content [1] - 14:8
context [1] - 9:22
contextualize [1] - 14:2
continue [1] - 12:13
continuing [1] - 14:23
convenient [1] - 5:19
copy [1] - 12:8
correct [4] - 14:13, 16:17, 16:20, 20:5
cost [1] - 14:16
counsel [9] - 3:7, 8:20, 9:4, 10:3, 10:15, 12:2, 12:15, 13:11, 16:9
Counsel [1] - 3:17
counsel's [1] - 12:23
count [1] - 15:12
counter [1] - 18:20
counter-designation [1] - 18:20
couple [1] - 5:8

course [6] - 8:15, 14:11, 16:19, 18:11, 18:13, 19:13
COURT [20] - 1:1, 3:17, 5:13, 7:6, 7:15, 7:24, 8:15, 9:8, 10:15, 12:2, 14:19, 16:15, 16:18, 17:12, 17:22, 18:5, 18:19, 19:6, 19:13, 19:17
court [2] - 4:3
Court [11] - 1:22, 3:18, 3:24, 4:9, 5:11, 5:21, 6:1, 6:10, 18:7, 19:7, 20:15
Court's [4] - 3:4, 5:3, 5:12, 7:4
creating [1] - 10:5
criminal [2] - 7:7, 7:12
CSR [2] - 1:22, 20:14
cut [5] - 4:13, 18:13, 18:24, 19:7, 19:18
cut-off [4] - 4:13, 18:24, 19:7, 19:18
CV [2] - 1:11, 3:5

## D

data [3] - 11:9, 12:10, 12:16
date [10] - 4:3, 4:4, 5:19, 6:5, 6:14, 7:5, 8:1, 13:16, 15:4, 18:9
dates [10] - 4:12, 4:14, 7:4, 7:16, 8:1, 8:3, 15:15, 15:20, 18:2, 19:2
DAVID [1] - 2:5
David [1] - 3:12
days [5] - 5:24, 13:3, 17:4, 17:25, 18:8
deal [2] - 4:5, 14:24
December [2] - 19:17, 19:19
decision [1] - 10:19
Declaration [1] - 13:9
Defendant [3] - 3:14, 3:16, 5:19
Defendant's [1] - 3:22
Defendants [4] - 1:13, 2:18, 5:22, 8:8
Defendants' [1] - 3:19
deferred [1] - 16:11
delay [1] - 6:21
denied [2] - 3:23, 11:24
depose [1] - 18:9
deposed [1] - 5:19
deposition [10] - 5:16, 5:20, 5:24, 9:20, 12:7, 12:22, 13:3, 14:21, 15:3, 19:15
depositions [1] - 13:17
derives [1] - 19:14
designated [1] - 11:19
designation [1] - 18:20
despite [3] - 10:19, 10:20, 17:6
determination [1] - 6:11
disclose [4] - 10:19, 13:4, 13:23, 14:8
disclosed [5] - 4:11, 6:3, 6:4, 8:11, 11:16
disclosure [2] - 6:12, 14:13
disclosures [1] - 6:13
discovered [2] - 13:2, 13:19
discovery [18] - 3:24, 4:6, 4:13, 4:19, 12:14, 13:15, 14:23, 15:6, 15:17, 16:13, 18:13, 18:15, 18:21, 18:24, 19:4, 19:7, 19:12, 19:18
discuss [3] - 4:1, 4:17, 9:2
dispositive [1] - 11:21

disputes [2] - 12:14, 14:23
DISTRICT [2] - 1:1, 1:2
division [1] - 6:25
DIVISION [1] - 1:3
document [1] - 11:6
documents [3] - 12:8, 12:9, 14:14
dollars [1] - 11:3
domain [10] - 4:7, 8:11, 11:15, 13:1, 13:19, 14:1, 16:2, 16:6, 17:8, 18:6
done [1] - 16:8
dropped [1] - 6:5
during [1] - 7:11

## E

e-mail [1] - 12:10
early [2] - 9:11, 15:11
East [1] - 2:9
effect [1] - 11:1
effort [1] - 9:5
efforts [1] - 10:13
either [1] - 19:2
employed [1] - 10:18
employing [1] - 11:3
end [2] - 19:4, 19:8
Enoch [1] - 3:12
ENOCH [1] - 2:12
entire [2] - 10:7, 11:1
entirely [1] - 10:8
entitled [1] - 20:6
essentially [1] - 18:14
et [3] - 1:12, 3:6, 11:9
evidence [1] - 11:24
examine [1] - 11:13
exception [1] - 5:17
exclude [2] - 3:21, 3:23
excluded [1] - 16:24
excluding [1] - 17:7
existence [1] - 10:13
expended [2] - 14:17, 18:13
expert [4] - 11:13, 11:19, 13:4, 18:20
experts [3] - 3:22, 16:23, 17:7
extend [1] - 18:15
extension [1] - 11:23
extent [1] - 9:25

## F

fact [5] - 10:11, 11:6, 14:12, 15:21, 17:6
failure [2] - 14:7, 14:17
fair [1] - 14:15
fairly [1] - 16:8
falls [1] - 8:2
far [1] - 15:12
Federal [1] - 1:23
few [2] - 5:7, 6:5
Figueroa [1] - 2:13
file [1] - 6:23
filed [2] - 10:4, 10:24
filing [1] - 6:19

**fine** [4] - 9:12, 15:18, 17:25, 18:12
**finish** [1] - 19:3
**firm** [1] - 3:12
**first** [10] - 4:24, 6:18, 7:5, 7:20, 10:13, 13:16, 14:14, 14:21, 15:2
**FL** [1] - 2:10
**Flexner** [1] - 3:10
**FLEXNER** [2] - 2:5, 2:8
**follow** [2] - 4:6, 4:13
**follow-up** [2] - 4:6, 4:13
**force** [1] - 15:8
**forego** [1] - 14:7
**foregoing** [2] - 12:1, 20:4
**forensic** [1] - 12:19
**formally** [1] - 8:22
**format** [1] - 20:7
**former** [1] - 5:1
**Fort** [1] - 2:10
**forth** [1] - 5:12
**four** [1] - 10:12
**fourteen** [1] - 5:24
**free** [1] - 8:1
**front** [2] - 5:1, 13:8
**future** [1] - 4:12

**G**

**given** [2] - 12:15, 13:3
**GoDaddy** [4] - 10:18, 12:6, 14:16, 18:14
**GoDaddy's** [1] - 11:2
**GoDaddy.com** [3] - 3:6, 3:14, 3:16
**GODADDY.COM** [1] - 1:12
**Google** [3] - 14:3, 14:6, 14:10
**granted** [1] - 3:22
**guess** [2] - 16:25, 17:5

**H**

**half** [2] - 7:8, 10:14
**handle** [1] - 4:11
**Haperfelt** [1] - 5:1
**happy** [1] - 17:18
**head** [1] - 12:17
**hear** [1] - 8:8
**held** [2] - 7:1, 20:6
**help** [3] - 9:24, 11:4, 12:5
**hereby** [1] - 20:3
**hired** [2] - 10:3, 10:4
**Honor** [19] - 3:9, 3:13, 3:15, 4:23, 5:15, 9:16, 11:22, 15:25, 16:5, 17:5, 17:6, 17:8, 17:20, 17:21, 18:4, 19:9, 19:16, 19:21, 19:22
**Honor's** [2] - 9:17, 9:24
**HONORABLE** [1] - 1:5
**hours** [1] - 11:4
**hunt** [3] - 4:10, 17:14, 17:15

**I**

**idea** [1] - 18:23
**identified** [1] - 15:2

**identifying** [1] - 10:5
**image** [1] - 12:20
**impacted** [1] - 10:17
**implead** [2] - 14:5, 14:10
**implement** [1] - 11:5
**INC** [1] - 1:12
**Inc** [1] - 3:6
**include** [1] - 12:9
**included** [1] - 6:12
**including** [4] - 4:2, 4:5, 4:12, 12:8
**indicate** [2] - 5:22, 6:15
**indicated** [1] - 8:21
**informal** [1] - 8:21
**information** [1] - 19:15
**intending** [1] - 9:21
**interested** [1] - 9:5
**internally** [1] - 11:4
**involve** [1] - 17:24
**irreparable** [1] - 9:25
**Irvine** [1] - 2:21
**issue** [7] - 8:20, 11:18, 12:9, 13:2, 13:7, 16:1
**issues** [14] - 4:2, 4:5, 5:6, 5:12, 9:18, 11:21, 12:1, 12:12, 14:20, 14:23, 15:5, 19:4, 19:12
**IT** [1] - 12:19
**Item** [1] - 3:4
**itself** [1] - 12:22

**J**

**January** [4] - 7:9, 7:13, 8:2, 8:5
**JUDGE** [1] - 1:5
**judge** [1] - 18:23
**Judge** [6] - 5:1, 10:21, 13:8, 14:20, 18:12, 19:11
**judges** [1] - 17:15
**Judgment** [5] - 3:20, 5:4, 5:23, 6:10, 10:25
**Judgments** [1] - 10:24
**Judicial** [1] - 20:8
**July** [5] - 5:17, 18:6, 18:8, 20:10
**June** [2] - 1:19, 6:7
**JUNE** [1] - 3:1
**jury** [9] - 4:4, 4:14, 7:4, 7:11, 8:1, 15:14, 15:20, 17:10, 18:2

**K**

**Katherine** [1] - 20:14
**KATHERINE** [2] - 1:22, 20:14
**kind** [1] - 4:16
**kinds** [1] - 15:17
**knowledge** [3] - 12:25, 13:18, 14:8
**known** [1] - 10:11

**L**

**lack** [1] - 11:25
**Las** [1] - 2:9
**last** [2] - 10:12, 11:2

**late** [3] - 4:11, 7:5, 15:20
**Lauderdale** [1] - 2:10
**law** [1] - 6:10
**lawsuit** [1] - 8:12
**learned** [1] - 5:16
**least** [3] - 9:25, 11:17, 14:16
**leave** [2] - 7:25, 9:6
**LEE** [1] - 2:12
**Liang** [1] - 3:12
**LIANG** [2] - 2:12, 2:12
**License** [1] - 20:15
**light** [2] - 5:3, 9:23
**likely** [1] - 11:19
**limit** [1] - 11:23
**limited** [2] - 18:19, 19:14
**line** [1] - 12:3
**list** [11] - 4:7, 5:20, 6:14, 16:1, 16:2, 16:5, 16:6, 16:10, 16:16, 16:20
**listed** [1] - 16:22
**lists** [8] - 4:8, 16:4, 16:19, 16:21, 16:23, 17:13, 17:17, 17:23
**litigation** [2] - 10:17, 11:2
**LLLP** [1] - 2:19
**LLP** [2] - 2:5, 2:8
**local** [1] - 8:16
**located** [1] - 11:15
**locating** [1] - 10:5
**looking** [2] - 6:19, 19:1
**looks** [1] - 15:5
**Los** [6] - 1:18, 1:24, 2:13, 5:18, 12:24, 18:10
**LOS** [1] - 3:1

**M**

**Magistrate** [2] - 14:20, 18:11
**magistrate** [1] - 18:23
**mail** [1] - 12:10
**man** [1] - 11:4
**March** [4] - 7:13, 7:21, 8:2, 8:5
**matter** [3] - 6:10, 7:8, 20:6
**matters** [1] - 4:1
**MCKOWN** [15] - 2:19, 2:20, 3:13, 8:10, 8:19, 9:15, 10:16, 12:4, 15:25, 16:17, 17:5, 17:20, 18:17, 19:1, 19:21
**McKown** [1] - 3:14
**mean** [5] - 7:7, 7:25, 9:11, 16:20, 18:23
**mediation** [1] - 4:25
**mediator** [1] - 8:23
**meet** [5] - 14:18, 15:18, 16:9, 17:25, 18:9
**metadata** [1] - 11:9, 12:10
**Michael's** [1] - 3:12
**MICHAELS** [1] - 2:5
**might** [2] - 4:16, 18:22
**millions** [1] - 11:3
**minute** [2] - 3:25, 5:12
**mitigate** [1] - 9:24
**modifying** [1] - 16:7
**monday** [1] - 1:19

**MONDAY** [1] - 3:1
**Monica** [1] - 2:6
**months** [2] - 5:8, 7:8
**morning** [6] - 3:9, 3:13, 3:15, 3:17, 4:1, 15:1
**most** [2] - 7:2, 14:22
**MOTION** [1] - 1:8
**Motion** [3] - 3:5, 3:11, 14:13
**motion** [7] - 3:19, 3:21, 3:22, 3:23, 5:24, 9:21, 12:3
**motions** [6] - 3:20, 4:7, 4:13, 11:22, 14:24, 18:22
**move** [1] - 15:1
**moved** [1] - 6:9
**MR** [23] - 3:9, 3:13, 4:23, 5:15, 7:14, 7:18, 8:10, 8:19, 9:15, 10:16, 12:4, 15:25, 16:17, 17:5, 17:20, 17:21, 18:4, 18:17, 19:1, 19:9, 19:16, 19:21, 19:22
**MS** [1] - 3:15

### N

**names** [22] - 4:7, 4:11, 5:23, 6:2, 6:4, 6:6, 6:8, 6:9, 6:17, 6:23, 8:11, 11:16, 13:1, 13:19, 14:1, 16:2, 16:6, 16:7, 16:22, 16:25, 17:8, 18:6
**necessary** [1] - 19:11
**need** [6] - 7:16, 12:6, 12:7, 13:8, 15:16, 18:11
**needs** [1] - 7:17
**never** [1] - 11:7
**new** [2] - 19:7, 19:18
**next** [4] - 5:7, 15:21, 17:4, 19:3
**night** [1] - 7:20
**NO** [1] - 1:11
**nobody** [1] - 13:18
**nongeneric** [1] - 16:7
**note** [1] - 6:3

### O

**object** [1] - 14:1
**objection** [3] - 7:10, 7:15, 19:7
**obligation** [4] - 10:19, 13:15, 13:22, 15:13
**obligations** [1] - 14:18
**obviously** [3] - 9:12, 14:24, 19:18
**occurred** [2] - 6:13, 14:4
**occurs** [1] - 16:13
**OF** [3] - 1:2, 1:8, 1:17
**Official** [2] - 1:22, 20:15
**Olas** [1] - 2:9
**once** [1] - 5:20
**one** [7] - 3:19, 13:24, 15:11, 15:25, 16:5, 16:8, 16:20
**oOo** [1] - 19:25
**open** [3] - 9:7, 15:6, 15:17
**opening** [1] - 3:24
**opportunity** [1] - 13:4
**opposing** [1] - 10:25

**opposition** [1] - 10:10
**order** [6] - 3:19, 3:20, 3:25, 5:12, 9:24, 12:5
**ordered** [2] - 14:20, 17:25
**ordering** [1] - 15:18
**orders** [1] - 3:18
**original** [1] - 10:7
**OscarRamirez.com** [1] - 16:6
**outlines** [1] - 4:21
**outset** [1] - 10:20
**own** [1] - 17:10

### P

**P.M** [1] - 19:23
**Page** [1] - 16:12
**page** [1] - 20:7
**Pages** [1] - 14:3
**pages** [1] - 14:9
**Park** [1] - 2:20
**Parked** [2] - 14:3, 16:12
**part** [3] - 8:11, 8:12, 14:9
**parties** [2] - 8:23, 14:25
**Paula** [1] - 3:15
**PAULA** [1] - 2:19
**pending** [1] - 7:1
**performed** [2] - 9:23, 10:9
**perhaps** [2] - 9:6, 18:20
**period** [4] - 7:11, 7:19, 8:2, 18:15
**permitted** [2] - 12:18, 13:4
**personal** [1] - 16:7
**persuing** [1] - 11:3
**Phontetic** [1] - 5:2
**pick** [1] - 11:24
**Picture** [1] - 3:11
**Pictures** [1] - 3:5
**PICTURES** [1] - 1:8
**pigs** [1] - 17:15
**place** [1] - 14:14
**Plaintiff** [4] - 1:9, 2:4, 4:24, 19:6
**Plaintiff's** [2] - 3:19, 3:21
**Plaza** [1] - 2:20
**point** [2] - 8:13, 10:16
**position** [1] - 9:1
**possible** [2] - 5:6, 6:19
**prefer** [1] - 12:14
**prejudice** [2] - 10:1, 12:5
**prepare** [1] - 5:25
**prepared** [4] - 4:1, 5:9, 5:21, 6:22
**Presbrey** [17] - 3:23, 4:6, 4:19, 9:18, 10:2, 10:3, 10:9, 10:23, 11:10, 11:15, 13:10, 13:21, 14:14, 16:14, 17:24, 18:10, 18:18
**Presbrey's** [2] - 5:16, 19:15
**present** [1] - 12:1
**presenting** [1] - 10:23
**PRESIDING** [1] - 1:5
**presumably** [2] - 6:25, 18:2
**presume** [1] - 8:17
**presuming** [1] - 8:16

**pretrial** [7] - 4:14, 7:3, 7:21, 7:25, 15:14, 15:19, 18:1
**privilege** [4] - 11:11, 12:12, 13:7, 13:21
**privileged** [1] - 13:22
**privileges** [1] - 13:13
**proceed** [1] - 10:2
**Proceedings** [1] - 19:23
**PROCEEDINGS** [1] - 1:17
**proceedings** [1] - 20:6
**process** [1] - 5:4
**produce** [1] - 12:23
**product** [2] - 13:12, 13:13
**productive** [1] - 5:10
**program** [10] - 11:8, 11:13, 11:18, 11:20, 12:9, 12:17, 12:20, 13:5, 13:11, 16:12
**promoting** [1] - 7:22
**propose** [1] - 5:7
**proposed** [1] - 15:19
**prove** [1] - 14:4
**provide** [1] - 9:22
**provided** [1] - 14:3
**purported** [2] - 10:6, 11:7
**purpose** [1] - 10:5
**pursuant** [1] - 20:3
**pursue** [2] - 13:25, 14:5
**put** [3] - 4:14, 13:9, 13:10

### Q

**quick** [1] - 15:25
**quickly** [1] - 16:9
**quote** [2] - 16:11, 17:14

### R

**raise** [1] - 14:22
**raised** [2] - 11:21, 19:4
**re** [4] - 3:24, 12:12, 15:6, 15:17
**re-assert** [1] - 12:12
**re-open** [2] - 15:6, 15:17
**re-opening** [1] - 3:24
**ready** [2] - 6:15, 15:7
**real** [1] - 15:25
**reasonable** [1] - 17:10
**reasons** [1] - 6:6
**record** [1] - 3:8
**recovery** [1] - 14:16
**reference** [1] - 7:4
**referring** [1] - 16:24
**refute** [1] - 11:19
**regarding** [2] - 13:1, 14:8
**regulations** [1] - 20:8
**relate** [1] - 13:5
**relates** [1] - 18:17
**relating** [1] - 11:9
**relied** [1] - 16:22
**remember** [1] - 11:22
**renew** [1] - 5:4
**repeated** [1] - 10:12

**reported** [1] - 20:5
**Reporter** [2] - 1:22, 20:15
**REPORTER'S** [1] - 1:17
**representation** [1] - 12:15
**request** [3] - 7:18, 11:23, 12:24
**requested** [1] - 11:22
**requesting** [1] - 16:5
**required** [1] - 4:9
**reserve** [1] - 19:10
**resolution** [1] - 5:6
**resolve** [2] - 5:2, 6:18
**resolved** [1] - 6:24
**respect** [13] - 4:24, 5:15, 6:2, 6:16, 7:3, 8:14, 8:20, 8:24, 9:16, 9:18, 12:22, 13:6, 16:14
**responses** [2] - 8:9, 13:16
**result** [10] - 7:1, 8:25, 9:17, 10:1, 11:5, 11:11, 12:16, 14:7, 14:17
**retain** [1] - 11:13
**retained** [1] - 11:17
**rights** [1] - 19:11
**RING** [1] - 2:19
**rippling** [1] - 11:1
**Rm** [1] - 1:23
**Roybal** [1] - 1:23
**RPR** [2] - 1:22, 20:14
**Rule** [3] - 10:10, 14:5, 14:18
**rule** [5] - 16:19, 17:1, 17:3, 17:19, 18:7
**ruled** [1] - 10:15
**rules** [1] - 8:16
**ruling** [5] - 5:3, 6:15, 9:17, 9:24, 16:11
**rulings** [1] - 9:1

S

**safely** [1] - 8:17
**Santa** [1] - 2:6
**satisfying** [1] - 15:13
**saw** [1] - 7:4
**scheduling** [5] - 4:2, 4:6, 5:9, 7:19, 9:16
**SCHILLER** [2] - 2:5, 2:8
**Schiller** [1] - 3:10
**SCIENCES** [1] - 1:8
**Sciences** [2] - 3:6, 3:11
**screen** [6] - 10:6, 10:22, 11:7, 12:21, 13:2, 13:6
**Section** [1] - 20:4
**see** [4] - 4:21, 5:5, 5:10, 12:11
**seek** [2] - 5:22, 6:18
**seeking** [1] - 15:23
**seem** [1] - 4:15
**sense** [3] - 4:8, 5:4, 7:2
**senses** [1] - 8:23
**sent** [2] - 3:18, 3:25
**separate** [1] - 8:12
**September** [4] - 6:3, 6:7, 6:12, 6:17
**series** [1] - 8:21
**set** [4] - 5:12, 7:8, 7:20, 7:22
**sets** [1] - 18:1
**setting** [8] - 4:12, 7:3, 7:11, 7:16, 7:23,

9:19, 15:14, 19:7
**settlement** [13] - 4:14, 4:17, 4:18, 4:25, 6:18, 8:20, 8:21, 8:22, 9:2, 9:10, 9:13, 15:8, 15:9
**settlements** [1] - 4:12
**shielded** [2] - 11:8, 11:10
**shielding** [1] - 13:20
**shots** [6] - 10:6, 10:22, 11:7, 12:21, 13:2, 13:6
**similarity** [1] - 6:11
**simply** [2] - 9:19, 12:7
**SINGER** [11] - 2:9, 3:9, 4:23, 5:15, 7:14, 7:18, 17:21, 18:4, 19:9, 19:16, 19:22
**Singer** [2] - 3:10, 4:23
**single** [1] - 11:6
**situation** [2] - 6:9, 7:17
**software** [9] - 11:8, 11:13, 11:18, 11:20, 12:8, 12:17, 12:20, 13:5, 13:11
**sole** [1] - 10:4
**sometime** [1] - 19:2
**somewhere** [1] - 4:15
**sort** [1] - 19:14
**sound** [1] - 15:7
**sounds** [1] - 15:16
**South** [1] - 2:13
**specifically** [1] - 18:5
**spent** [3] - 11:2, 11:3, 11:4
**spring** [2] - 7:5, 19:2
**start** [3] - 4:20, 4:22, 8:10
**state** [1] - 3:7
**STATES** [1] - 1:1
**States** [2] - 20:4, 20:9
**stayed** [1] - 6:20
**stenographically** [1] - 20:5
**stepping** [1] - 10:23
**still** [1] - 9:4
**strategies** [1] - 13:24
**strategy** [2] - 10:17, 11:2
**Street** [2] - 1:23, 2:13
**Stride** [1] - 20:14
**STRIDE** [2] - 1:22, 20:14
**STUART** [1] - 2:9
**Stuart** [2] - 3:9, 4:23
**subject** [1] - 5:23
**submit** [6] - 6:1, 15:19, 15:24, 16:16, 17:3, 17:24
**submitted** [4] - 4:9, 13:10, 17:8
**subset** [1] - 17:18
**substantial** [1] - 9:23
**suffer** [1] - 12:6
**sufficient** [1] - 5:25
**suggest** [2] - 7:25, 8:1
**Suite** [4] - 2:6, 2:9, 2:13, 2:20
**Summary** [6] - 3:20, 5:3, 5:23, 6:9, 10:24, 10:25
**summer** [1] - 19:2
**supplement** [1] - 13:15
**support** [1] - 10:6

T

**Temple** [1] - 1:23
**terms** [3] - 15:14, 16:8, 18:24
**testimony** [2] - 3:21, 3:23
**THE** [20] - 3:4, 3:17, 5:13, 7:6, 7:15, 7:24, 8:15, 9:8, 10:15, 12:2, 14:19, 16:15, 16:18, 17:12, 17:22, 18:5, 18:19, 19:6, 19:13, 19:17
**themselves** [1] - 14:1
**thereof** [1] - 11:25
**they've** [4] - 10:11, 11:8, 11:10
**thinking** [1] - 4:20
**thousands** [1] - 11:4
**three** [4] - 7:8, 11:2, 15:19, 18:1
**timely** [1] - 11:16
**timing** [1] - 4:12
**Title** [1] - 20:3
**today** [1] - 19:4
**toward** [1] - 19:8
**TRAN** [1] - 2:12
**transcript** [2] - 20:5, 20:7
**TRANSCRIPT** [1] - 1:17
**transferred** [1] - 6:25
**trial** [16] - 4:3, 4:4, 4:14, 6:22, 7:4, 7:22, 8:1, 8:18, 9:11, 9:14, 15:10, 15:14, 15:20, 18:2, 19:2
**trials** [1] - 7:11
**true** [4] - 8:15, 12:18, 13:20, 20:4
**truffles** [1] - 17:16
**trying** [3] - 11:4, 12:4, 14:24
**two** [5] - 3:18, 3:21, 13:3, 16:4, 18:3

U

**unable** [1] - 16:16
**under** [8] - 8:16, 11:11, 13:14, 13:21, 14:5, 14:18, 17:9
**understood** [2] - 8:19, 9:16
**unified** [4] - 4:7, 5:20, 16:2, 17:17
**United** [2] - 20:4, 20:9
**UNITED** [1] - 1:1
**unquote** [1] - 16:12
**untimely** [1] - 8:11
**up** [7] - 4:6, 4:10, 4:13, 7:16, 10:23, 13:8, 18:1

V

**variety** [1] - 12:1
**various** [1] - 6:6
**varying** [1] - 4:8
**versus** [1] - 3:6
**view** [2] - 5:25, 9:25
**vs** [1] - 1:11

W

**waited** [2] - 10:23, 10:25
**waived** [1] - 13:13
**wants** [1] - 14:11

**warned** [1] - 10:21
**waste** [1] - 15:15
**wayside** [1] - 6:23
**week** [3] - 5:17, 7:21, 15:24
**weeks** [2] - 5:7, 18:3
**WESTERN** [1] - 1:3
**willing** [2] - 5:5, 12:23
**Wilshire** [1] - 2:6
**wiped** [1] - 8:7
**wipes** [1] - 7:13
**witness** [2] - 10:11, 12:25
**Woehrle** [5] - 10:21, 13:8, 14:20, 18:12, 19:11
**works** [1] - 11:14
**wrap** [1] - 12:17
**WRENN** [1] - 2:19

## Y

**year** [7] - 5:1, 10:3, 10:14, 15:21, 19:3, 19:5, 19:8
**years** [2] - 10:12, 11:3

## Z

**Zecchini** [1] - 3:16
**ZECCHINI** [2] - 2:19, 3:15

# EXHIBIT C

# BOIES, SCHILLER & FLEXNER LLP

401 EAST LAS OLAS BOULEVARD • SUITE 1200 • FORT LAUDERDALE, FL 33301-2211 • PH: 954.356.0011 • FAX 954.356.0022

Direct: 954-356-0011
E-mail: ssinger@bsfllp.com

July 19, 2013

**VIA EMAIL & US MAIL**

Aaron M. McKown, Esq.
Wrenn Bender McKown Ring LLP
2 Park Plaza, Suite 550
Irvine, CA  92614
AMcKown@wrennbender.com

   Re: **Academy of Motion Picture Arts & Sciences v. GoDaddy**
     **Rule 408 Confidential Settlement Communication**

Dear Aaron,

  At the hearing on June 24th before Judge Collins, I said that we would make additional efforts to settle this case in light of the partial summary judgment and expert rulings, and this letter is part of that effort.

  Judge Collins' partial summary judgment rulings make clear that we will establish liability under the Anti-cybersquatting Consumer Protection Act ("ACPA") at trial.  Judge Collins found "use" and "trafficking" as a matter of law and also held that GoDaddy is not entitled to the safe harbor for registrar activity.  While she has not yet ruled on the confusing similarity issue as to the names in our motion, it is clear from her opinion that she will find many names to be confusingly similar to the Academy's marks, and for those she does not find confusingly similar as a matter of law, we will be able to establish confusing similarity at trial.  In addition, it will not even be necessary for us to establish confusing similarity given Judge Collins' ruling that it is sufficient to establish that a domain name is "dilutive" of a famous mark.  We will not have any difficulty convincing a jury that the Academy's marks are famous.  The remaining issue of bad faith will be equally easy to establish given that GoDaddy's "parked pages" are a commercial program undertaken and continued by a major company with full knowledge of the law and after being put on notice.

  We believe these are the reasons why Judge Collins stated that the parties could now see "the outlines of the way it's going" and should discuss settlement.[1]  While Judge Collins indicated she would not force GoDaddy to another round of mediation immediately, she made clear that there would be another settlement process in this case before trial.  If GoDaddy insists

---

[1] "I put settlement in there because it does seem to me that somewhere around here it might be good now that you find out how things are going to discuss settlement or to have your settlement conference whether you do that now or after discovery of Mr. Presbrey, whatever.  But it's certainly, time to start thinking about that because I think you can see the outlines of the way it's going."  Transcript of Judge Collins' statement, June 24 hearing, at 4.

KELLY DEC - 49

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

Aaron M. McKown, Esq.
July 19, 2013
Page 2 of 2

on delaying resolution of this case until yet more discovery and expense is incurred by all parties, our settlement position will increase, in light of the favorable judicial developments, from where it was at the mediation before Judge Haberfeld.  We will also, as I indicated at the June 24th hearing, proceed with the filing of a second complaint based on the domain names disclosed after September 2011 up to the present, with names placed in Parked Pages such as www.ACADEMYAWARDS2013.com and WWW.onAcademyAwards.com.  This second case will be transferred to Judge Collins and whether consolidated for trial with the first case or stayed pending the first trial, will ultimately result in yet additional liability for GoDaddy.

We trust in sharing this communication with your client, you will emphasize that there is a short window of opportunity at present where the Academy will remain willing to settle within the monetary demands we presented at the prior mediation, together with contractual obligations (as opposed to a public injunctive relief order) by GoDaddy to make reforms it was prepared to implement so as to protect the Academy in the future. We are willing for such settlement discussions to proceed directly (either through outside or inside counsel) or with the assistance of a mediator.

Sincerely,

Stuart H. Singer

SHS/aa

KELLY DEC - 50

# EXHIBIT D

| | |
|---|---|
| **From:** | Aaron McKown |
| **Sent:** | Friday, September 06, 2013 9:57 AM |
| **To:** | Stuart Singer (ssinger@BSFLLP.com) |
| **Cc:** | acpa@ltlcounsel.com; Paula Zecchini |
| **Subject:** | Update |

Stuart,

I wanted to provide a further update regarding the status of Go Daddy's response to your July 19, 2013 letter.  I traveled to Arizona to meet with Go Daddy on August 22, 2013.  As a result of that meeting, Go Daddy has requested additional information.  We are in the process of preparing that information in advance of the Board's next regularly scheduled meeting at the end of the month.  We anticipate that the Board will then vote on the matter at that meeting.  I will advise you of the decision, if made, shortly thereafter.

Regards,
Aaron

**Aaron M. McKown**
**Wrenn Bender LLLP**
2 Park Plaza, Suite 550
Irvine, CA 92612
Direct: 949.202.5818
Cell: 949.878.6878
Facsimile: 949.679.7939
amckown@wrennbender.com

This electronic message contains information that may be Confidential and Privileged.  The Information is intended only for the use of the individual(s) or entity named above.  If you are not the intended recipient, you are notified that any disclosure, copying, distribution or taking of any action based on the contents of this electronic information is unauthorized.  If you received this electronic information in error, please delete the message and any attachment and notify us immediately.  Thank you.

🖑 **Please consider the environment before printing this e-mail.**

KELLY DEC - 52

# EXHIBIT E

REDACTED

REDACTED

**From**: Steve Madison [mailto:stevemadison@quinnemanuel.com]
**Sent**: Tuesday, September 17, 2013 11:34 AM
**To**: Bill Sonneborn
**Subject**: GoDaddy

Bill I hope you are well.  I'm writing to you about a court case involving GoDaddy, which I understand KKR acquired.  We are longtime counsel for The Academy of Motion Picture Arts and Sciences (the Oscars), but we are **not** counsel for any party in this case.

The Academy sued GoDaddy a few years ago in federal court in LA.  When GoDaddy registers new domain names, it apparently uses the new sites to host advertising until the registrant constructs its own home page.   As a world renowned icon The Academy is subject to nearly ceaseless illegal

KELLY DEC - 54

infringement of it trademarks, including in many new domain names.   The advertising overlay compounds the misuse of the Academy's marks.

Over the years the Academy sent dozens of letters to GoDaddy asking that it stop using sites with domain names having various permutations of the Academy's trademarks for advertising purposes, but the letters were ignored.   Notably GoDaddy has a pending patent application that actually describes the very harm its advertising practices cause trademark owners, and claims to have invented a method to prevent it!  (That's what we trial lawyers call a smoking gun.)

The case was assigned to US District Judge Audrey B. Collins.  Judge Collins is a very well respected, careful judge who has handled all the Academy's federal litigation for more than 15 years.  She ruled in The Academy's favor on most issues but damages and fees have yet to be determined. The case is ripe for resolution.  We've been told that although GoDaddy has proposed to give the Academy the non-economic relief it seeks going forward (i.e., agree to stop the practice of poaching on the Academy's trademarks to sell advertising), but inexplicably has offered to pay only a small fraction of the attorneys' fees the Academy has incurred.  (As noted the Academy is being represented by another firm and we have no economic interest in this case.)

It would really be in everyone's best interest to resolve the matter as I understand, including KKR's and GoDaddy's.  If the case is not resolved the Academy will almost certainly be awarded substantial damages and could also recover punitive damages and fees.  Also, if as we expect the Academy prevails, similarly situated trademark owners will have a blueprint for successfully suing GoDaddy.

If this is helpful I would ask you to look into it from KKR's/GoDaddy's perspective.  If not I apologize for taking your time (I did try to distill this down to its essence).  Again thanks and hope you  are doing well.


Steven G. Madison
Quinn Emanuel Urquhart & Sullivan, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3150
Main Phone: (213) 443-3000
Cell Phone:  (213) 880-1131
Fax:   (213) 443-3096
E-mail:   stevemadison @quinnemanuel.com
Web:   www.quinnemanuel.com

"I must study politics and war, that my sons may have the liberty to study mathematics and philosophy, geography, natural history and naval architecture, in order to give their children a right to study painting, poetry, music, architecture, statuary, tapestry and porcelain." *John Adams, In a Letter to His Wife, Abigail, 1780*

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.   This message may be an attorney-client communication and/or work product and as such is privileged and confidential.   If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.   If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.


========================================================================== ==
Please refer to http://www.kkr.com/legal/email_disclaimer.php

KELLY DEC - 55

for important disclosures regarding this electronic communication.
============================================================================
==

KELLY DEC - 56

# EXHIBIT F

| Case Name | Case Number | Date Filed | Date Closed | Attorney for AMPAS | Noteworthy Rulings/Notes |
|---|---|---|---|---|---|
| **AMPAS v. GoDaddy** | 2:10-CV-03738 | 5/18/2010 | | Boies Schiller and Flexner | Case initially assigned to Judge Fischer (Dkt. 1) |
| | | | | | Eight days later, case transferred to Judge Collins and magistrate Judge Woehrle (Dkt. 19) |
| | | | | | AMPAS claims case relates to CV-07-6008; CV-05-7918; CV-05-6175; CV-05-5018 - all cases in front of Judge Collins (Dkt. 5) |
| **AMPAS v. Avon Products Inc** | 2:07-CV-06008 | 9/17/2007 | 11/2/2007 | David Quinto/Quinn Emanuel | AMPAS TRO Granted (Dkt. 45) |
| | | | | | Case initially assigned to Judge Matz (Dkt. 8). Judge Matz's magistrate (Judge Jennifer Lum) recused herself, and the case was returned to the clerk for random reassignment; reassigned to Judge Jeffrey Johnson (Dkt. 19) |
| | | | | | One day later, case reassigned to Judge Collins (and magistrate Judge Woehrle) (Dkt. 22) |
| | | | | | AMPAS claims case relates to CV-99-4796, which was a case in front of Judge Collins (Dkt. 22) |
| **AMPAS v. Frank Farden** | 5:07-CV-01176 | 9/14/2007 | 12/3/2007 | David Quinto/Quinn Emanuel | AMPAS Motion for Default Judgment Granted (Dkt. 20, 22) |
| | | | | | Case was transferred from Judge Parada to Judge Collins (and magistrate Judge Woehrle) (Dkt. 6) |
| | | | | | AMPAS claims case relates to CV-99-4796, as well as several other earlier cases in front of Judge Collins (Dkt. 4) |
| **AMPAS v. Sasha Stone** | 2:07-CV-02846 | 5/1/2007 | 6/12/2007 | David Quinto/Quinn Emanuel | Case was transferred from Judge Klausner to Judge Collins (and magistrate Judge Woehrle) (Dkt. 7) **Note: from this point forward, unless otherwise noted, Judge Woehrle was also the magistrate once the case was assigned to Judge Collins. |
| | | | | | Case voluntarily dismissed four days after being transferred to Judge Collins (Dkt. 9) |
| | | | | | AMPAS claims case relates to CV-99-4796, which was a case in front of Judge Collins (Dkt. 4) |
| **AMPAS v. Universal Spheres Inc.** | 2:07-CV-01006 | 2/12/2007 | 6/7/2007 | David Quinto/Quinn Emanuel | Note of Related Cases filed by AMPAS (Dkt. 5) |
| | | | | | AMPAS ordered to show cause why action should not be dismissed for lack of prosecution (Dkt. 7) |
| | | | | | Case voluntarily dismissed by AMPAS (Dkt. 8) |
| | | | | | Case transferred from Judge Florence-Marie Cooper Judge Collins (Dkt. 6) |
| | | | | | AMPAS claims case relates to CV-99-4796, which was a case in front of Judge Collins (Dkt. 6) |
| **AMPAS v. NCL Corp, Ltd.** | 2:06-CV-5813 | 9/14/2006 | n/a | David Quinto/Quinn Emanuel | Transfer Order Denied By Judge Collins Because Financial Interest In Defendant (Dkt. 4) |
| **AMPAS v. Associazione Italiana Sommelier Roma** | 2:05-CV-07918 | 11/4/2005 | 7/22/2008 | David Quinto/Quinn Emanuel | Case settled (Dkt. 347) |
| | | | | | Settlement conference held before Judge Collins (Dkt. 342) |
| | | | | | AMPAS Motion to Amend Complaint Granted in part and denied in part (Dkt. 288) |
| | | | | | Order dismissing certain defendants with prejudice (Dkt. 278) |

| Case | Number | Filed | Ended | Attorney | Docket Description |
|---|---|---|---|---|---|
| | | | | | Order denying request for oral argument and denying AMPAS motion for partial summary judgment (Dkt. 242) |
| | | | | | AMPAS Motion for Default Judgment as to certain defendants granted (Dkt. 212) |
| | | | | | AMPAS motion to compel mediation denied (Dkt. 193) |
| | | | | | Order denying defendant motion to dismiss case (Dkt. 121) |
| | | | | | Order granting AMPAS motion to amend complaint (Dkt. 30) |
| | | | | | Case was initially assigned to Judge Kenton, but was returned to the clerk for random reassignment, and was then reassigned to Judge Fischer (Dkt. 4). The case was then transferred to Judge Collins Woehrle six days later (Dkt. 6). |
| | | | | | AMPAS claims case relates to CV-99-4796, which was a case in front of Judge Collins (Dkt. 5) |
| AMPAS v. Escovar | 2:05-CV-06175 | 8/23/2005 | 10/17/2005 | David Quinto/Quinn Emanuel | Case transferred from Judge Kenton to Judge Collins (Dkt. 6) |
| | | | | | Consent judgments entered ending the case (Dkt. 7 and 8) |
| | | | | | AMPAS claims case relates to CV-99-4796, which was a case in front of Judge Collins (Dkt. 3) |
| AMPAS v. Rhonda Morkes | 2:05-CV-05018 | 7/8/2005 | 8/23/2006 | David Quinto/Quinn Emanuel | Case settled (Dkt. 95) |
| | | | | | AMPAS motion for TRO denied (Dkt. 91) - Court believes parties should be able to stipulate to a preliminary injunction without any further court intervention (Dkt. 82) |
| | | | | | Case transferred from Judge King to Judge Collins (Dkt. 4) |
| | | | | | AMPAS claims case relates to CV-99-4796, which was a case in front of Judge Collins (Dkt. 3) |
| AMPAS v. Michel Verker | 2:03-CV-03649 | 5/16/2005 | n/a | David Quinto/Quinn Emanuel | Notice of Related Case Filed (Dkt. 6). No ruling made. |
| | | | | | Notice of Dismissal by AMPAS 7 days after NORC (Dkt. 4) |
| AMPAS v. Joseph Talles | 2:04-CV-01445 | 8/3/2004 | 11/8/2004 | David Quinto/Quinn Emanuel | finding by Judge Collins that defendants are in contempt of earlier court order (Dkt. 18) |
| | | | | | Case was transferred from Judge Kenton to Judge Collins (Dkt. 10) |
| | | | | | AMPAS claims case relates to CV-99-4796, which was a case in front of Judge Collins (Dkt. 10) |
| AMPAS v. Partypop.com | 2:03-CV-7619 | 10/23/2003 | n/a | David Quinto/Quinn Emanuel | Transfer Order Denied By Judge Otero Because Case Did Not Meet Criteria For Relating Under General Order (Dkt. 5) |
| AMPAS v. NBC | 2:03-CV-04229 | 6/13/2003 | 9/24/2003 | David Quinto/Quinn Emanuel | Case dismissed by AMPAS with prejudice (Dkt. 16) |
| | | | | | Case was transferred from Judge Walter to Judge Collins (Dkt. 5) |
| | | | | | AMPAS claims case relates to CV-99-4796, which was a case in front of Judge Collins (Dkt. 4) |
| AMPAS v. Albertsons Inc. | 2:03-CV-01386 | 2/27/2003 | 6/22/2004 | Gregg Rapoport | Case dismissed and consent judgment entered along with permanent injunction (Dkt. 97, 98) |
| | | | | | Settlement conference held before Judge Woehrle (Dkt. 95) |
| | | | | | Order granting AMPAS motion to amend complaint (Dkt. 33) |
| | | | | | Case was transferred from Judge Real to Judge Collins 16 days after first being assigned to Judge Real (Dkt. 8). |
| | | | | | Case reassigned because it related to CV-99-4796, a case in front of Judge Collins (Dkt. 8). |

| *AMPAS v. Time, Inc. Home Entertainment* | 2:03-CV-306 | 1/13/2003 | n/a | O'Melvany due to conflict | Transfer Order Denied By Judge Collins Because Family Member Employed by Defendant (Dkt. 5) |
|---|---|---|---|---|---|
| *AMPAS v. BTB Events Inc.* | 2:03-CV-00937 | 1/17/2003 | 3/24/2003 | David Quinto/Quinn Emanuel | Order rendering permanent injunction against defendants and terminating case (Dkt. 11) |
| | | | | | Case was transferred from Judge Taylor to Judge Collins (Dkt. 5) |
| | | | | | Case reassigned because it related to CV-99-4796, a case in front of Judge Collins (Dkt. 5). |
| *AMPAS v. Black Dog* | 2:02-CV-09741 | 12/20/2002 | 11/12/2003 | David Quinto/Quinn Emanuel | Case dismissed on consent judgment in favor of AMPAS and rendering permanent injunction against defendants (Dkt. 24) |
| | | | | | Case initially assigned to Judge Wilson (Dkt. 3), and then 29 days later transferred to Judge Collins (Dkt. 7). |
| | | | | | AMPAS claims case relates to CV-99-4796, which was a case in front of Judge Collins (Dkt. 4) |
| *AMPAS v. DCI Productions Inc.* | 2:02-CV-09626 | 12/18/2002 | 10/2/2003 | David Quinto/Quinn Emanuel | Permanent injunction entered against defendants (Dkt. 33) |
| | | | | | Settlement conference held by Judge Woehrle, agreement reached and consent decree to be lodged with Court (Dkt. 31) |
| | | | | | Case originally assigned to Judge Manella, but transferred to Judge Collins 26 days later (Dkt. 7) |
| | | | | | AMPAS claims case relates to CV-99-4796, which was a case in front of Judge Collins (Dkt. 5) |
| *AMPAS v. Carla Bates* | 2:02-CV-06332 | 8/13/2002 | 1/19/2003 | David Quinto/Quinn Emanuel | Consent judgments and permanent injunctions entered against all defendants (Dkt. 10, 12) |
| | | | | | Case initially assigned to Judge Pfaelzer and returned to clerk for random reassignment; next assigned to Judge Feess (Dkt. 3) |
| | | | | | Three days later, Judge Feess recuses himself, and case is reassigned to Judge Anderson (Dkt. 5) |
| | | | | | Four days after assignment to Judge Anderson, case is reassigned to Judge Collins (Dkt. 6). |
| | | | | | AMPAS claims case relates to CV-99-4796, which was a case in front of Judge Collins (Dkt. 4) |
| *AMPAS v. Plastic Dress-Up Co.* | 2:02-CV-05635 | 7/17/2002 | 4/29/2004 | David Quinto/Quinn Emanuel | Case settled (Dkt. 41) |
| | | | | | Settlement conference held by Judge Woehrle (Dkt. 23) |
| | | | | | Case initially assigned to Judge Hatter, but transferred to Judge Collins (Dkt. 3). |
| | | | | | Case reassigned because it related to CV-99-4796, a case in front of Judge Collins (Dkt. 3). |
| *AMPAS v. Richard Eddy* | 2:02-CV-04527 | 6/10/2002 | 1/14/2003 | David Quinto/Quinn Emanuel | AMPAS filed a motion for default (Dkt. 9). |
| | | | | | Court appears to have issued a show cause order for AMPAS to show why the action should not be dismissed for lack of prosecution. That is not on the docket, but Dkt. 11 is a response to the Court's show cause order. |
| | | | | | Court granted defendant extension of time to answer complaint, and AMPAS withdrew request for entry of default without prejudice to it being filed later (Dkt. 12). |

| Case | Number | | | Counsel | Notes |
|---|---|---|---|---|---|
| | | | | | Eleven days later, the case was dismissed by AMPAS - unclear if it settled (Dkt. 13). |
| | | | | | Case was initially assigned to Judge Rafeedie, but transferred to Judge Collins (Dkt. 4). |
| | | | | | Case reassigned because it related to CV-99-4796, a case in front of Judge Collins (Dkt. 4). |
| *AMPAS v. John Does* | 2:02-CV-01729 | 2/27/2002 | 8/6/2002 | David Quinto/Quinn Emanuel | Default judgment entered in favor of AMPAS; defendants permanently enjoined (Dkt. 39, 40, 20, 21). |
| | | | | | AMPAS Motion for TRO granted (Dkt. 10) |
| | | | | | Notice by AMPAS of related cases (Dkt. 4) |
| | | | | | Case was initially assigned to Judge Snyder, but transferred to Judge Collins (Dkt. 5). |
| | | | | | AMPAS claims case relates to CV-99-4796, which was a case in front of Judge Collins (Dkt. 4) |
| *AMPAS v. Billy Allen* | 2:02-CV-01220 | 2/8/2002 | 5/10/2002 | David Quinto/Quinn Emanuel | Case dismissed by AMPAS pursuant to FRCP 41(a) (Dkt. 10, 11, 12). |
| | | | | | Notice by AMPAS of related cases (Dkt. 4) |
| | | | | | Case was initially assigned to Judge Rafeedie, but transferred to Judge Collins (Dkt. 6). |
| | | | | | AMPAS claims case relates to CV-99-4796, which was a case in front of Judge Collins (Dkt. 4) |
| *AMPAS v. Pipedream Products* | 2:02-CV-01093 | 2/5/2002 | 4/8/2002 | David Quinto/Quinn Emanuel | Case dismissed pursuant to FRCP 41(a) (Dkt. 7) |
| | | | | | Case was initially assigned to Judge Lourdes, but transferred to Judge Collins (Dkt. 5). |
| | | | | | AMPAS claims case relates to CV-99-4796, which was a case in front of Judge Collins (Dkt. 4) |
| *AMPAS v. Karol Western Corp* | 2:02-CV-00321 | 1/11/2002 | 5/10/2002 | David Quinto/Quinn Emanuel | Consent judgment and permanent injunction entered against defendants (Dkt. 45) |
| | | | | | Order granting AMPAS motion for TRO (Dkt. 30) |
| | | | | | Finding by Judge Collins that defendants are in contempt of earlier court order (Dkt. 18) |
| | | | | | Case was initially assigned to Judge Real, but transferred to Judge Collins (Dkt. 15) |
| | | | | | AMPAS claims case relates to CV-99-4796, which was a case in front of Judge Collins (Dkt. 10) |
| *AMPAS v. Michael Luft* | 2:01-CV-09003 | 10/17/2001 | 10/10/2002 | David Quinto/Quinn Emanuel | Judgment and Order: Ordered that defendant violated certain federal statutes; court permanently enjoins defendant and awards AMPAS statutory damages, as well as attorneys' fees and costs (Dkt. 57). |
| | | | | | Permanent injunction in connection with order granting AMPAS motion for summary judgment (Dkt. 46). |
| | | | | | Grant of AMPAS MSJ and preliminary injunction (Dkt. 40, 41). |
| | | | | | Judgment and Order: Ordered that defendant violated certain different federal statutes from the ones above; court permanently enjoins defendant and awards AMPAS statutory damages, as well as attorneys' fees and costs (Dkt. 21). |

| | | | | | Case was initially assigned to Judge Morrow, but was transferred to Judge Collins (Dkt. 3) |
|---|---|---|---|---|---|
| | | | | | Case reassigned because it related to CV-99-4796, a case in front of Judge Collins (Dkt. 3) |
| *AMPAS v. David Schifter* | 2:01-CV-07618 | 8/31/2001 | 10/29/2001 | David Quinto/Quinn Emanuel | Consent judgment and permanent injunction entered against defendants (Dkt. 7) |
| | | | | | Case was initially assigned to Judge Manella, but was transferred to Judge Collins (Dkt. 5). |
| | | | | | Case reassigned because it related to CV-99-4796, a case in front of Judge Collins (Dkt. 5) |
| *AMPAS v. Butterfields Auction* | 2:01-CV-07420 | 8/27/2001 | 10/4/2001 | David Quinto/Quinn Emanuel | Notice of Dismissal of case with prejudice by AMPAS (Dkt. 5) |
| | | | | | Case assigned to Judge Feess, who recused himself, and case subsequently assigned to Judge Matz (Dkt. 3). |
| | | | | | Case then transferred from Judge Matz to Judge Collins (Dkt. 4). |
| | | | | | Case reassigned because it related to CV-99-4796, a case in front of Judge Collins (Dkt. 4) |
| *AMPAS v. Harwood Associates* | 2:99-CV-04796 | 5/4/1999 | 11/30/1999 | David Quinto/Quinn Emanuel | Stipulated judgment: ordered that defendants are permanently enjoined (Dkt. 16). |
| | | | | | Default judgment entered against defendants (Dkt. 7). |
| | | | | | Order returning case for reassignment by Judge Pfaelzer, ordering case returned to clerk for random reassignment. Case assigned to Judge Collins (Dkt. 2). |

# EXHIBIT G

ACADEMY OF MOTION PICTURE ARTS AND SCIENCES

HOME | ACADEMY AWARDS® | EVENTS | PRESS | SITE MAP / SEARCH      Directory

Index to Motion Picture Credits

- Advanced Search
- Film Details
- Crew
- Cast
- All Names
- Category
- Title
- Year
- Help

*Index to Motion Picture Credits*          Help

**DECEPTION**

| | |
|---|---|
| PRODUCTION COMPANY: | A R///E Production. |
| RELEASING COMPANY: | Twentieth Century Fox. |
| COMPLETED: | 01/10/08. |
| MPAA RATING: | R. |
| RUNNING TIME: | 108 Minutes. |
| LOS ANGELES RELEASE: | 04/25/08. |
| COLOR: | Color. |
| PRODUCER(S): | Arnold Rifkin. John Palermo. Hugh Jackman. Robbie Brenner. David Bushell. Christopher Eberts. Denise O'Dell (Madrid). Mark Albela (Madrid). Denis Pedregosa (Madrid). |
| EXECUTIVE PRODUCER(S): | Marjorie Shik. |
| ASSOCIATE PRODUCER(S): | Amanda Schweitzer. Philip Eisen. |
| DIRECTOR(S): | Marcel Langenegger. |
| ASSISTANT DIRECTOR(S): | Todd Pfeiffer. Charlie Lazaro (Madrid). |
| UNIT PRODUCTION MANAGER(S): | David Bushell. |
| PRODUCTION MANAGER(S): | Cristina Ecija (Madrid). |
| PRODUCTION SUPERVISOR (S): | David Bausch. |
| PRODUCTION DESIGNER (S): | Patrizia von Brandenstein. |
| ART DIRECTOR(S): | John Kasarda. Sonia Aranzabal (Madrid). |
| SET DECORATOR(S): | Diane Lederman. |
| DIRECTOR(S) OF PHOTOGRAPHY: | Dante Spinotti. |
| COSTUME DESIGNER(S): | Sue Gandy. |
| COSTUME SUPERVISOR(S): | Deirdre Williams. Stev Taylor (Co-Costume Supervisor). Cristina Sopena. |
| FILM EDITOR(S): | Christian Wagner. Douglas Crise. |
| ADDITIONAL FILM EDITOR (S): | Hal Honigsberg. |
| FILM EDITOR(S): | Christian Wagner. Douglas Crise. |
| ADDITIONAL FILM EDITOR (S): | Hal Honigsberg (Additional Editing). |
| PRODUCTION SOUND MIXER(S): | Allan Byer. Antonio Bloch (Madrid). |
| RERECORDING MIXER(S): | Aaron Glascock. Curt Shulkey. Gregory H. Watkins. Timothy O. LeBlanc. |
| SUPERVISING SOUND EDITOR(S): | Aaron Glascock. Curt Shulkey. |
| SOUND EFFECTS EDITOR (S): | John Joseph Thomas. |
| DIALOGUE EDITOR(S): | Kira Roessler. |
| MUSIC EDITOR(S): | David Klotz. |
| MAKEUP: | Allen Weisinger (Department Head). Linda Grimes (Key). Susana Sanchez (Madrid). |
| HAIRSTYLIST(S): | Donna Marie Fischetto (Department Head). Anita Lausevic (2nd). |
| MUSIC BY: | Ramin Djawadi. |
| WRITTEN BY: | Mark Bomback. |
| CASTING: | Bonnie Timmermann. |
| STUNT COORDINATOR(S): | Miguel Pedregosa (Madrid). |
| CAST: | Hugh Jackman (Wyatt Bose). Ewan McGregor (Jonathan McQuarry). Michelle Williams (S). Lisa Gay Hamilton (Detective Russo). Maggie Q (Tina at the Rhiga Royal). Natasha Henstridge (Wall Street Analyst). Lynn Cohen (Woman). Danny Burstein (Cute Controller). Malcolm Goodwin |

Academy of Motion
Picture
Arts and Sciences
Academy Foundation
8949 Wilshire Boulevard
Beverly Hills, California
90211
Phone: 310-247-3000
Fax: 310-859-9351
E-mail:
ampas@oscars.org
Legal Notices

(Cabbie). Charlotte Rampling (Wall Street Belle). Bruce Altman (Lawyer). Andrew Ginsburg (Lawyer). Stephanie Roth Haberle (Assistant Controller). Christine Kan (Tennis Player). Dante Spinotti (Herr Kleiner/Mr. Moretti). Karolina Muller (Waitress). Agnete Oernsholt (Woman at Waldorf Astoria). Melissa Rae Mahon (Velvet Rope Dancer). Rachel Montez Collins (Velvet Rope Dancer). Holly Cruikshank (Velvet Rope Dancer). Deborah Yates (Tango Dancer). Bill Camp (Clancey Controller). Zoe Perry (Secretary). Aya Cash (Secretary). Frank Girardeau (Mr. Lewman). Paz De La Huerta (List Member). Daisy Bates (List Member). Shannan Click (List Member). Jordan Tesfay (List Member). Rachael Taylor (Woman in Hallway). Sally Leung Bayer (Old Woman). Kenneth G. Yong (Lotus Hotel Clerk). Paul Sparks (Detective Burke). Kenneth Lee (Waiter). James Mazzola (Locksmith). Lisa Kron (Receptionist). Margaret Colin (Ms. Pomerantz). Peter Scanavino (Rhiga Desk Clerk). Frank Deal (Police Officer). Florencia Lozano (Clancey Receptionist). Emilie Jeffries (Medical Examiner). Gene Harrison (Mr. Lewman Stunt Double). Chandler Parker (Uniform Cop). Peter Jay Fernandez (Businessman on Airplane). Mercedes Herrero (Bank Greeter). Daniel Lugo (Mr. Ruiz). Javier Godino (Bank Manager). Brian Slaten (Younger Officer). Tim Buchanan (Stunts). Donald J. Hewitt (Stunts).

KELLY DEC - 65

Case 2:10-cv-03738-ABC-CW    Document 514-1    Filed 12/31/13    Page 64 of 68    Page ID
#:20424



# ACADEMY OF MOTION PICTURE ARTS AND SCIENCES

HOME  |  ACADEMY AWARDS®  |  EVENTS  |  PRESS  |  SITE MAP / SEARCH    Directory

**Index to Motion Picture Credits**

- Advanced Search
- Film Details
- Crew
- Cast
- All Names
- Category
- Title
- Year
- Help

*Index to Motion Picture Credits*                    **Help**

**COLLINS, RACHEL MONTEZ**

DECEPTION — 2008  [CAST] [Velvet Rope Dancer]

Academy of Motion
Picture Arts and
Sciences
Academy Foundation
8949 Wilshire Boulevard
Beverly Hills, California
90211-1972
Phone: 310-247-3000
Fax: 310-859-9351 or
310-859-9619
E-mail:
ampas@oscars.org
Legal Notices

© Academy of Motion Picture Arts and Sciences

# EXHIBIT H

**From:** Matthew J.Herman [mailto:mjh@fmcolaw.com]
**Sent:** Thursday, December 12, 2013 1:42 PM
**To:** Paula Zecchini; Stuart Singer; Enoch Liang (Enoch.Liang@ltlw.com); David Michaels
**Cc:** Aaron McKown
**Subject:** RE: AMPAS I/II: Meet and Confer on Contributory Cybersquatting Claim

Counsel:

With respect to AMPAS II, we are filing a First Amended Complaint and will remove the contributory cybersquatting claim.

Regarding AMPAS I, we agree the Ninth Circuit decision forecloses a contributory cybersquatting claim and will file a notice of dismissal of that claim.

Finally, in light of the case law you have provided please consider this notice that we no longer agree that there is a right to a jury trial on an ACPA claim.

Matt

---

**From:** Paula Zecchini [mailto:PZecchini@wrennbender.com]
**Sent:** Wednesday, December 11, 2013 6:18 PM
**To:** Stuart Singer; Enoch Liang (Enoch.Liang@ltlw.com); Matthew J.Herman; David Michaels
**Cc:** Aaron McKown
**Subject:** AMPAS I/II: Meet and Confer on Contributory Cybersquatting Claim

Counsel,

The purpose of this email is to initiate the meet and confer process pursuant to L.R. 7-3 with respect to both the original AMPAS case (AMPAS I) and the recently-filed AMPAS (II).

As you may be aware, on December 4, 2013, the Ninth Circuit issued an opinion in *Petroliam Nasional Berhad v. GoDaddy.com, Inc.* in which it held "that the ACPA does not include a cause of action for contributory cybersquatting." Attached for your convenience is a copy of the Court's opinion. In light of the Ninth Circuit's ruling, we intend to file a motion for judgment on the pleadings in AMPAS I and a motion to dismiss pursuant to FRCP 12(b)(6) in AMPAS II.

Please advise if you are willing to immediately the contributory cybersquatting claims from both AMPAS I and AMPAS II.

Best,
Paula

**Paula L. Zecchini**

1

**Wrenn Bender LLLP**
2 Park Plaza, Suite 550
Irvine, CA 92612
Direct Line: 949.202.5815
Facsimile: 949.679.7939
pzecchini@wrennbender.com

🖨 **Please consider the environment before printing this e-mail.**

This electronic message contains information that may be Confidential and Privileged.  The Information is intended only for the use of the individual(s) or entity named above.  If you are not the intended recipient, you are notified that any disclosure, copying, distribution or taking of any action based on the contents of this electronic information is unauthorized.  If you received this electronic information in error, please delete the message and any attachment and notify us immediately.  Thank you.

KELLY DEC - 69

**CERTIFICATE OF SERVICE**

Pursuant to L.R. 5–3, I hereby certify that on December 31, 2013, I electronically filed the foregoing document, **AFFIDAVIT OF NIMA KELLY IN SUPPORT OF MOTION TO RECUSE THE HON. AUDREY B. COLLINS**, with the Clerk of the Court by using the CM/ECF system and that the foregoing document is being served on all counsel of record identified below via transmission of Notice of Electronic Filing generated by CM/ECF:

| | |
|---|---|
| Enoch H. Liang<br>James M. Lee<br>**Lee Tran & Liang APLC**<br>601 South Figueroa Street, Suite 4025<br>Los Angeles, CA 90017 | Attorneys for Plaintiff Academy of Motion Picture Arts and Sciences<br>Phone: 213-612-3737<br>Fax: 213-612-3773<br>E-mail: jml@ltlcounsel.com;<br>ehl@ltlcounsel.com |
| Stuart Singer<br>David Nelson<br>**Boies, Schiller & Flexner LLP**<br>401 East Las Olas Blvd., Suite 1200<br>Fort Lauderdale, FL 33301 | Attorneys for Plaintiff Academy of Motion Picture Arts and Sciences<br>Phone: 954-356-0011<br>Fax: 954-356-0022<br>E-mail: ssinger@bsfllp.com;<br>dnelson@bsfllp.com |
| David Michels, Esq.<br>David L. Zifkin, Esq.<br>**Boies, Schiller & Flexner LLP**<br>401 Wilshire Blvd., Suite 850<br>Santa Monica, CA 90401 | Attorneys for Plaintiff Academy of Motion Picture Arts and Sciences<br>Phone: 310-752-2400<br>Fax: 310-752-2490<br>Email: dzifkin@bsfllp.com;<br>dmichaels@bsfllp.com |
| Robert M. Foote<br>Kathleen Chavez<br>Matthew Herman<br>**Foote, Mielke, Chavez & O'Neil LLC**<br>10 West State Street, Suite 200<br>Geneva, IL 60134 | Attorneys for Plaintiff Academy of Motion Picture Arts and Sciences<br>Phone: 630-232-6333<br>Fax: 630-845-8982<br>E-mail: rmf@fmcolaw.com;<br>kchavez@fmcolaw.com; and<br>mherman@fmcolaw.com |

*Carlie Peisley*

CARLIE PEISLEY

WRENN BENDER LLLP<br>2 Park Plaza, Suite 550<br>Irvine, California 92614

1

CERTIFICATE OF SERVICE