**WRENN BENDER LLLP**
Aaron M. McKown, California Bar No. 208781
Paula L. Zecchini, California Bar No. 238731

2 Park Plaza, Suite 550
Irvine, California  92614
Telephone: (949) 202-5810
Facsimile:  (949) 679-7939
E-Mail:      amckown@wrennbender.com
             pzecchini@wrennbender.com

Attorneys for Defendant
GODADDY.COM, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACADEMY OF MOTION PICTURE ARTS AND SCIENCES, a California nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>GODADDY.COM, INC., a Delaware corporation; THE GODADDY GROUP INC., a Delaware corporation; DOMAINS BY PROXY, INC., a Delaware Corporation; GREENDOMAINMARKET.COM, an unknown entity; BDS, an unknown entity; and XPDREAMTEAM LLC, a California limited liability corporation,<br><br>Defendants. | Case No. CV10-3738-ABC (CW)<br><br>Assigned to Hon. Audrey B. Collins Courtroom 680<br><br>**DEFENDANT GODADDY.COM, INC.'S REPLY IN SUPPORT OF MOTION TO RECUSE THE HON. AUDREY B. COLLINS**<br><br>Complaint Filed:  May 18, 2010<br>Trial Date:           July 28, 2014<br><br>Date:   February 3, 2014<br>Time:  1:30 p.m.<br>Dept.:  740<br>Judge: Hon. Dale Fischer |

REPLY IN SUPPORT OF MOTION TO RECUSE HON. AUDREY B. COLLINS


## I. INTRODUCTION

AMPAS' opposition is premised on a series of fundamentally flawed arguments, none of which change the fact that an appearance of bias by Judge Collins clearly exists in favor of AMPAS. As such, Judge Collins should either recuse herself from this action or GoDaddy's motion should be granted.

AMPAS' lead argument is that it was the other judges in the Central District, not Judge Collins, who approved the repeated reassignment of virtually every AMPAS-filed case to Judge Collins over the past fifteen years. The argument is belied by the actual procedure set forth in the Court's General Order. Specifically, Paragraphs 5.2 and 5.3 of the applicable General Orders expressly require the transferee judge (*i.e.*, Judge Collins) to make the initial determination regarding whether a case meets the Court's criteria for reassignment. The fact that all but one of the transferor judges accepted Judge Collins' decision does not change the fact that none of the cases met the Court's criteria. Nor does it change the fact that Judge Collins was the one who initially made the determination to reassign the cases.

Contrary to AMPAS' contention, none of the cases involved the same law *and* facts nor did they arise from the same occurrence as the original *Harwood* case. In fact, this case did not even involve any of the same claims or issues as the sixteen cases AMPAS claimed it related to. It is the repeated and consistent improper reassignment of AMPAS cases to Judge Collins, and her consistent acceptance of those cases, over the past fifteen years that creates the greatest appearance of bias – a fact GoDaddy did not discover until after it completed its investigation in late November 2013.

AMPAS' other arguments are similarly flawed. In opposing GoDaddy's motion, AMPAS (1) misstates the standard for recusal under § 455(b)(1); (2) ignores the facts mandating recusal; and (3) surmises that GoDaddy's basis for making this motion must be its dissatisfaction with adverse rulings made by Judge

Collins, a notion that is contradicted by the record.  AMPAS also presents a host of irrelevant evidence intended to contradict the sworn testimony of GoDaddy's general counsel despite the fact that this Court must take as true all statements set forth in her affidavit.  AMPAS does not, however, present this Court with any evidence that diminishes the clear appearance of bias arising from the facts presented by GoDaddy.

The inquiry for purposes of this motion is whether an objectively reasonable, neutral observer would view all of the facts and circumstances presented in the moving papers, which span fifteen years and nearly thirty cases, and still maintain complete confidence that Judge Collins does not harbor personal bias in favor of AMPAS.  If it is even a "close call," this motion must be granted.  Although AMPAS believes Judge Collins remains capable of deciding this matter impartially, section 455 "deals exclusively with appearances."  GoDaddy has presented this Court with a reasonable factual basis for doubting Judge Collins' partiality that mandates her recusal.

## II. THE FACTS AND CIRCUMSTANCES PRESENTED SHOW AN APPEARANCE OF BIAS THAT WARRANTS RECUSAL

As discussed at length in GoDaddy's moving brief, Judge Collins' (a) wholesale acceptance for transfer of unrelated cases filed by AMPAS in contradiction to the Court's General Orders, (b) her extrajudicial statements made at the June 24, 2013 Status Conference, (c) her salvaging of AMPAS' case by allowing the late disclosure of a fact witness known to AMPAS for over four years without sanction, and (d) the fact that AMPAS routinely refers to Judge Collins as "the Academy's Judge" and the judge "who has handled all of the Academy's federal litigation for the past 15 years" when attempting to coerce settlement, at the very least, establishes that there is an "appearance of bias"—if not bias in fact—such that Judge Collins lacks the ability to be impartial in proceedings involving AMPAS.

*See In re Kensington Int'l Ltd.*, 368 F.3d 289, 301-02 (3d Cir. 2004) (Fuentes, J., dissenting) (an appearance of bias is adequate grounds for recusal); *In re Prudential Ins. Co.*, 148 F.3d 283, 343 (3d Cir. 1998) ( "A party seeking recusal need not show actual bias on the part of the court, only the possibility of bias").

Where, as here, the facts, when viewed objectively, would cause a reasonable person to question the judge's impartiality, the judge should be recused. *In re Kensington*, 368 F.3d at 302-03.

### A.  Statements Made By Judge Collins on June 24, 2013 Demonstrate a Pre-Determined Outcome for the Case

AMPAS attempts to excuse the statements made by Judge Collins on June 24, 2013 as "routine trial administration and ordinary admonishments to counsel." Plaintiffs' Opposition to Motion to Recuse (hereinafter, "Opp.") at 8-13. In doing so, AMPAS proffers an interpretation of her statements beyond logical reason and downplays the inexplicably adamant nature of her demands.

GoDaddy agrees with AMPAS that "it is perfectly normal for a Court to encourage the parties to mediate again after summary judgment rulings and before trial." Opp. at 19:14-17. That scenario, however, is not the one that occurred in the instant action.

In attempting to bring the facts in this case into conformity with what the parties agree would be normal conduct by a Court, AMPAS takes the absurd position that the phrase, "I think you can see the outlines of the way it's going," which was directed expressly at counsel for GoDaddy, was not a prediction of future rulings. Opp. at 7:18-22. Even an objective observer, however, would view such a statement as an indicator of a predetermined outcome in the mind of Judge Collins, and at least a warning of the rulings to come. The fact that this statement by Judge Collins was then coupled with repeated, adamant statements to counsel for GoDaddy that it would be forced back to mediation before the case went to trial is

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

more than sufficient to establish an appearance of bias in favor of AMPAS. This is especially true given that the Local Rules of the Central District require only a single mediation in each case. *See* Local Rule 16-15.1.

Indeed, the fact that Judge Collins ordered the parties to meet and confer on "how the parties intend to handle" domain names which she previously ruled were excluded from the pending litigation demonstrates a clear bias in favor AMPAS. Opp. at 4-7. Given the Court's ruling that those domain names were dismissed—a ruling necessitated by the clear language of her own scheduling order—GoDaddy had absolutely no obligation to then meet and confer on how those domain names should be "handled." Indeed, because those domain names had been dismissed from the action, Judge Collins was without jurisdiction to issue such a mandate. Given the efforts GoDaddy went through to keep those domain names out of the litigation, the only party to possibly benefit from such an order was AMPAS.

And AMPAS did benefit. The parties were ordered to meet and confer and AMPAS was given the opportunity in open court to (1) suggest how it believed the domain names should be handled and (2) to receive confirmation that such a lawsuit would be favorably received by Judge Collins. Even more egregious is that, after confirming that she would preside over any case filed in the future, Judge Collins also stated that she "safely presumed" that neither case would be going to trial.[1] GoDaddy is unaware as to how or why this would be a safe presumption but it is clear that the presumption is informing Judge Collins' rulings and orders in favor of AMPAS, as well as providing clear encouragement and direction to its counsel.

---

[1] AMPAS attempts to claim that GoDaddy "agreed" it should file a second lawsuit and that such a procedure was an "agreed course of conduct between the Academy and GoDaddy." Opp. at 2:2-3. AMPAS provides no evidence to support such a contention. As AMPAS' own citation to the record makes clear, GoDaddy only agreed that the domain names that Judge Collins dismissed should not be part of this lawsuit. Opp. at 6:16-20.

Arguments advanced by AMPAS in their opposition raise a further basis for recusal. AMPAS admits that by virtue of Judge Collins' near-exclusive handling of AMPAS' litigation over the past 15 years, Judge Collins is "familiar with the Academy's business and trademarks, as well as governing law, *as reflected in her denial* of GoDaddy's motions to dismiss and for summary judgment; *i.e.*, she has extrajudicial knowledge of "disputed evidentiary facts concerning the proceeding." Opp. at 10:25-28. This knowledge alone suffices and, indeed, requires recusal. *See* 28 U.S.C. § 455(b)(1); *see also In re Kensington*, 368 F.3d at 325 (noting agreement amongst the circuit courts that recusal is appropriate under § 455(b)(1) when a judge has extrajudicial knowledge "pertinent to a specific disputed fact at issue in the case").

### B. Judge Collins Approved the Transfer of 27 Improperly Related AMPAS Cases, None of Which Involved the Same Law, Facts, or Parties

In opposing GoDaddy's motion, AMPAS (1) points to a claimed "lack of analysis" to support GoDaddy's position that the cases transferred do not involve the same or substantially similar questions of laws and facts and (2) makes a misguided endeavor to poison this Court, and indeed, every judge in the Central District, against GoDaddy. Neither effort succeeds.

AMPAS attempts to lessen the appearance of bias caused by the transfer of its cases to Judge Collins by arguing that Judge Collins' approval for transfer of 27 AMPAS-filed cases since 1999 was proper because the issues presented in every one of those cases, including the present action, "substantially overlap those in previous AMPAS cases for trademark infringement and dilution" and call for the resolution of "such common factual and legal issues" as the "fame of its trademarks, likelihood of confusion/confusing similarity, and dilution." Opp. at 4:8-21 and 16:8-12.

Although AMPAS now claims, as it apparently did in May 2010, that this cybersquatting action involves the same questions of law on the issues of confusing similarity, fame, and dilution as those presented in its trademark infringement actions, they have repeatedly taken the opposite position during the course of this litigation. **Indeed, at every turn, AMPAS has argued—and the Court has agreed—that the standards applicable to determination of the very issues it highlighted in its opposition—confusing similarity and dilution—in the trademark infringement context are not applicable to a determination of those same concepts in the cybersquatting context.** *See e.g.*, Order on Cross-Motions for Partial Summary Judgment [Dkt. 491] at 18:13-17 (confusing similarity) and 25:2-26:16 (dilution). In fact, on nearly every occasion that GoDaddy or its experts sought to rely on analogous law from trademark infringement cases in defending the claims against them on the issues of confusing similarity or dilution, AMPAS opposed such reliance by claiming, for example, that:

- The analysis of confusing similarity under the Anti-Cybersquatting Protection Act ("ACPA") is wholly unrelated to the likelihood of confusion standard used in the trademark infringement context. *See e.g.*, AMPAS' Opposition to GoDaddy's Motion for Summary Judgment [Dkt. 373] at 2:3-10, 17:4-11, 17:23-28, 18:4-14; AMPAS' Motion to Exclude GoDaddy Expert Geoffrey Nunberg [Dkt. 445] at 1:18-26, 3:16-18, 7:13-15, and 8:5-7; AMPAS' Motion to Exclude GoDaddy Expert Carol Scott [Dkt. 447] at 7:19-20 and 10:1-4; and AMPAS' Reply in Support of Motion for Summary Judgment [Dkt. 410] at 2:1-5, 9:11-14, 12:2-5, 12:13-21
- An analysis of dilution under the ACPA does not use the "actual dilution" test set forth in the Lanham Act and is wholly distinct from such an examination. *See e.g.*, AMPAS' Opposition to GoDaddy's Motion for Summary Judgment [Dkt. 373] at 20:16-21:11.

The above citations do not constitute an exhaustive list of the occasions on which AMPAS has taken the position that the claims asserted in its pleadings involve entirely different legal concepts from those presented in its previous trademark infringement actions.

Likewise, AMPAS' effort to construe GoDaddy's motion as a slight against every one of the District Court judges, including this Court, who had an AMPAS case removed from his or her docket and transferred to Judge Collins in the past 15 years is without merit—not only due to its improper attempt to appeal to the ego of the Court but, more importantly, because AMPAS' unsubstantiated recitation of the manner in which transfer orders are processed is just plain wrong.

As set forth in Paragraph 5.2 of General Order 08-05 for the United States District Court of the Central District of California:

> Whenever a party files a Notice of Related Cases indicating that any one or more of the above circumstances set forth in Section 5.1 exist, the Clerk shall prepare a proposed transfer order to be reviewed by the judge to whom the case first filed was assigned (the transferee judge). The Clerk shall also simultaneously provide an **informational copy** of the proposed transfer order to the judge randomly assigned to the case later filed (the transferor judge).
>
> If the transferee judge approves the transfer, the case shall be transferred to the calendar of the transferee judge. If the transferee judge declines the related case transfer, the case shall proceed as originally assigned on the calendar of the transferor judge.
>
> If the transferor judge disagrees with the decision of the transferee judge, the transferor judge may appeal the decision to the Committee. The Committee shall determine whether the cases are related.

*Id.* (Emphasis added).

Contrary to AMPAS' repeated contention, as a matter of procedure, it is Judge Collins who, in the first instance, approved the transfer of the cases identified as related by AMPAS. *Id.* As best GoDaddy can surmise, the transferor judges of all but one of the AMPAS cases simply trusted the determination made by Judge

7

1  Collins that each of the cases reviewed for transfer were properly related and did not
2  appeal the decision.
3       Regardless of the mechanics of the transfer or any determinations made by
4  the transferor judges, the fact remains that on every occasion but two, Judge Collins
5  approved the transfer of every AMPAS-filed in the Central District in the last 15
6  years to her courtroom, despite the fact that, as the handwriting of Judge Otero
7  succinctly stated on the only transfer order declined: "No duplication of labor or
8  work will occur. No prior determinations or rulings were made by Judge Collins."
9  RJN at Exh. F.

### C. Statements Made By AMPAS and its Counsel Demonstrate an Appearance of Partiality When Viewed in the Totality of the Circumstances

13       In attempting to distract from the statements made by its counsel, AMPAS
14  argues that GoDaddy improperly disclosed "settlement- and mediation-privileged
15  discussions in its motion." Opposition at 10:17-19. AMPAS also claims that the
16  statements were (1) inaccurately recalled by GoDaddy and (2) are irrelevant in a
17  motion establishing judicial bias. None of the positions or arguments advanced by
18  AMPAS bears on the propriety or merit of GoDaddy's motion.
19       As an initial matter, GoDaddy was well within its rights to disclose the
20  statements made by AMPAS' counsel throughout the course of this litigation, as
21  well as attorneys employed by Quinn Emanuel, who admit that they represent no
22  parties, and have no interest, in this litigation. *See* Declaration of David Quinto, ¶6;
23  RJN, Exh. E. With regard to those statements made during the informal settlement
24  discussion in August 2012 and outside the confines of the parties' mediation, they
25  are protected, at most, by Federal Rule of Evidence 408, which only prohibits
26  parties from using certain compromises or "statements made in compromise
27  negotiations" for the purposes of proving liability, invalidity of a claim, damages, or

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

for impeachment of a witness. *See* Fed. R. Evid. 408. As made clear in the moving papers, GoDaddy is not presenting any of the statements at issues here for the purposes prohibited by FRE 408.

As to the statements made during the mediation between the parties, AMPAS fails to appreciate that a federal mediation privilege affording protections beyond those proscribed by Federal Rule of Evidence 408 does not exist. *See Molina v. Lexmark International, Inc.*, 2008 U.S. Dist. Lexis 83014 at *30 (noting that no circuit court has ever adopted or applied such a privilege: "indeed both the Ninth and Fourth Circuits have expressly declined to consider whether such a privilege exists."). In deciding *Folb v. Motion Picture Indus. Pension & Health Plans*, 16 F. Supp. 2d 1164 (C.D. Cal. 1998), the sole case cited by AMPAS in support of its proposition, the trial court stressed that the recognition of a federal mediation privilege was limited to the factual context presented in that case, namely, a situation in which a third party who *did* not participate in the mediation was seeking discovery of mediation-related communications of the parties who did participate. Contrary to AMPAS' citation, the *Folb* case is neither controlling nor Ninth Circuit precedent.

On a more substantive level, the efforts made by AMPAS to either disavow or dispute the facts as presented by GoDaddy are irrelevant. As the Supreme Court and other federal precedent makes clear, in deciding the merits of a recusal motion under Section 144, a judge must assume the truth of the factual allegations of the affidavit. *See*, *e.g.*, *Berger v. United States*, 255 U.S. 22, 35, 41 S.Ct. 230, 65 L.Ed. 481 (1921) (holding that the court must assume truth of allegations in the affidavit); *Phillips v. Joint Legislative Committee on Performance and Expenditure Review*, 637 F.2d 1014, 1019 (5th Cir.1981) (holding that the court must assume truth of allegations), cert. denied, 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 483 (1982). The facts set forth in the Affidavit of Nima Kelly are therefore assumed true for the

REPLY IN SUPPORT OF MOTION TO RECUSE HON. AUDREY B. COLLINS

purposes of GoDaddy's motion; AMPAS' efforts to dispute those facts must be disregarded.

### D. Judge Collins' Refusal to Sanction AMPAS Under Rule 37 in Relation to the Presbrey Ruling Supports a Finding of the Appearance of Bias

AMPAS attempts to downplay the Presbrey Ruling by (1) claiming that Presbrey is simply a "document authentication witness," (2) placing the burden of proving AMPAS' affirmative claims in this litigation on GoDaddy, and (3) arguing that Collins' decision was not only discretionary but unable to support a claim of bias. AMPAS' position is belied by both the facts adduced in this action and the law governing recusal motions.

While adverse decisions may not ordinarily be evidence of a judge's bias, rulings can be an indicator of bias if the judge was operating under a preconceived, extrajudicial bias. *See, e.g.*, *Bell v. Chandler*, 569 F.2d 556, 560 (10th Cir. 1978) (disqualifying judge where it "appears inevitable that the several cases will be decided against the government because the tendency to favor these particular plaintiffs has become manifest"). The circumstances surrounding Judge Collins ruling on the parties' motions for summary judgment, AMPAS' motion to exclude GoDaddy's expert witnesses, and GoDaddy's Rule 37 motion for sanctions present ample evidence of Judge Collins tendency to favor AMPAS in matters allowing for the exercise of judicial discretion, as well as those that do not.

In an effort to establish that the Presbrey Ruling was not made as a result of bias in favor of AMPAS, but merely an exercise of judicial discretion, AMPAS tries to redirect the Court's attention by focusing on *dicta* from Judge Collins' ruling on the Presbrey motion. This *dicta* relates to the alleged failures of GoDaddy during the discovery process and AMPAS even goes so far as to attribute the same statements to Magistrate Judge Woerhle. Opp. at 9:17-21. Contrary to AMPAS'

blatantly false assertion, however, *at no point* did Magistrate Judge Woerhle "find GoDaddy partially responsible for the Academy's late designation" of Presbrey. The issue of Presbrey's late designation was raised solely before Judge Collins on GoDaddy's Rule 37 Motion for Sanctions. *See generally*, Dkt. 414. The parties did not appear before Judge Woerhle at any time between AMPAS' belated disclosure of Presbrey—which occurred after the close of both fact and expert discovery—and Judge Collins' ruling on GoDaddy's Rule 37 motion.

AMPAS' efforts at deflection aside, the fact remains that although AMPAS was aware that Presbrey was a fact witness since October 2009, it adamantly refused to identify or produce him during either fact or expert discovery, identifying him only when it became apparent—months after the close of discovery and just over a month from trial—that AMPAS' case would be dismissed without his testimony.

Judge Collins acknowledged that AMPAS' failure to disclose Presbrey was not substantially justified. Yet in the face of evidence that the failure to disclose was harmful, and contrary to her prior rulings in similar cases presenting less egregious circumstances, Judge Collins not only denied GoDaddy's Rule 37 motion but also reopened discovery to allow Presbrey's disclosure. Again, the only party benefitted by this process was AMPAS, whose case was saved from wholesale dismissal by Judge Collins' "discretion". GoDaddy continues to suffer harm from the late disclosure, including a year-long delay in trial necessitated by the late disclosure, the cost of hiring a consultant and expert to examine the software and data at issue, and substantial attorneys' fees. *See Hoffman v. Construction Protective Services, Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008)(where untimely disclosure would require modification of the briefing schedule and possibly require reopening of discovery, [s]uch modifications to the court's and the parties' schedules supports a finding that the failure to disclose was not harmless."); *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2005).

11

REPLY IN SUPPORT OF MOTION TO RECUSE HON. AUDREY B. COLLINS

The decisions cited above showcase why the defining principles to be utilized in assessing the appearance of bias, as set forth in *Bell*, require recusal: it "appears inevitable that [the AMPAS] cases [before Judge Collins] will be decided against [GoDaddy] because the tendency to favor these particular plaintiffs has become manifest." *Bell,* 569 F.2d at 560.

### E.  Appearance of Judge Collins' Daughter on AMPAS' Website Reasonably Creates Doubt as to Her Impartiality

AMPAS claims GoDaddy's suggestion that Collins' daughter's profession as an actress and limited role on the AMPAS website as a basis for bias is "laughable" based on the fact that (1) 370,000 people have credits on the AMPAS website; (2) GoDaddy presents no evidence that Judge Collins is aware of the database; and (3) Judge Collins' daughter is not a member of AMPAS.  Laughable or not, the issue alone is whether the fact that Judge Collins' daughter is an actress appearing on the AMPAS website and who has yet to reach the apparent level of fame necessary to become a member of AMPAS creates, or contributes to, an appearance of bias on the part of Judge Collins by a reasonable observer.  When viewed in the totality of the circumstances presented in GoDaddy's motion, this fact undoubtedly provides another factor that creates an appearance of bias on the part of Judge Collins.

## III.   GODADDY'S MOTION IS TIMELY

### A.   No Timing Requirement Under Section 455a

The self-recusal obligations under Section 455a do not impose a timeliness requirement.  As a result, Judge Collins has a continuing obligation to recuse herself whenever an appearance of bias arises regardless of when or even whether GoDaddy filed this motion.  Here, GoDaddy has presented more than sufficient evidence demonstrating an appearance of bias such that Judge Collins should recuse herself.

### B. The Filing of an Unserved Notice of Related Case Did Not Trigger the Timing Requirement under Section 144

AMPAS contends that GoDaddy's motion is untimely because GoDaddy should have "read the publicly available Notice of Related Case filed" in May 2010 and thus, should have been on notice of AMPAS' history with Judge Collins. *See* Opposition 23:10-15. This statement is remarkable for three reasons: (1) it impermissibly attempts to impose a constructive notice requirement on GoDaddy in direct contravention of the case law interpreting Section 144; (2) it ignores the well-established rule that a party has no obligation to investigate the impartiality of a judge at the outset of a case; and (3) it implicitly admits that AMPAS failed to serve GoDaddy with the Notice of Related Case as required by the Court's Local Rules.

Without citation to a single authority, AMPAS claims that because Judge Collins' history in presiding over AMPAS' litigation is a matter of public record, GoDaddy should have discovered the circumstances leading to the present motion "the day this litigation was filed." *See* Opposition 23:10. The case law makes clear, however, that determining whether a motion to recuse has been filed timely depends on when the moving party had actual notice of the circumstances sufficient to evidence the appearance of bias. *See In re Kensington*, 368 F.3d at 294 ("The evil that a timeliness requirement is intended to prevent—namely, holding in reserve a recusal demand until such time that a party perceives a strategic advantage—**is served by requiring actual knowledge**." (emphasis added)).

AMPAS' position ignores the well-established rules that a party's duty to investigate facts does not include an obligation to investigate the impartiality of a judge, and that a party may generally presume that judges are impartial. *See Bank of America, N.A. v. Murphy, Weir & Butler*, 210 F.3d 983, 988 (9th Cir. 2000); *American Textile Mfrs. Institute, Inc. v. The Limited, Inc.*, 190 F.3d 729, 742 (6th Cir. 1999). Only after the occurrence of a specific event or series of events will the

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

timeliness obligation under Section 455a be triggered. Here, there was no event at the outset of the case as suggested by AMPAS that put GoDaddy on actual notice of the historical relationship between AMPAS and Judge Collins or Judge Collins' repeated acceptance of virtually every AMPAS case despite the fact that none of them met the Court's General Orders for reassignment.

Even more fatal to AMPAS' argument regarding the Notice of Related Case filed in this action is the undisputed fact that GoDaddy was never served with such Notice. As such, the Notice of Related Case cannot form the basis for triggering any obligation by GoDaddy to bring this motion. Indeed, under the Court's Local Rules, the time for GoDaddy to challenge the Notice of Related Case has yet to begin:

> The Notice of Related Case also shall be served concurrently with service of the complaint.
>
> \*\*\*
>
> Any party opposing a related case transfer may, **within five (5) days of the service of a Notice of Related Case(s) on him** . . . .

Civil Local Rules of the Central District of California, LR 83-1.3 and LR83-5.3 (emphasis added). As a result, the Notice of Related Case filed but not served by AMPAS in this case is irrelevant to the issue of whether GoDaddy's motion is timely.

### C. AMPAS Fails to Explain How the Other Dates It Suggests Should Have Triggered the Timing Requirement under Section 144

AMPAS' opposition next suggests three other alternative dates that it claims render GoDaddy's motion untimely – August 2012 when Mr. Quinto first informed GoDaddy that Judge Collins was "the Academy's judge", the March 2013 mediation in which AMPAS' counsel reiterated its cozy relationship with the judge, and the June 24, 2013 Status Conference in which Judge Collins made certain extrajudicial

statements. *See* Opposition 23:16-25.  AMPAS, however, provides neither an explanation for why any of these dates should trigger the timing obligations to bring this motion, nor any authorities to support such a position.  The reason is that none of these events in isolation were sufficient to trigger the timing requirement.

While the statements by AMPAS that Judge Collins was "the Academy's judge" were disturbing at the time they were made, GoDaddy had no reason to believe that the statements were as true as they would turn out to be.  The statements themselves did not unequivocally admit an improper relationship between AMPAS and Judge Collins.   Moreover, AMPAS has not identified, nor has GoDaddy discovered, any authority that would suggest that the timing obligation under Section 455a is triggered by the mere inference that a judge may be partial to a particular party.

The same is true with respect to the extrajudicial statements made by Judge Collins.  While her insistence that the parties proceed with further mediation against their will and her encouragement of a second lawsuit were disturbing, it was only when these statements were put in context with the 15-year history of improperly accepting reassignment of AMPAS' cases despite not meeting the Court's own requirements did the appearance of bias by Judge Collins in favor of AMPAS become apparent.

GoDaddy had no reason to investigate the history between AMPAS and Judge Collins until Quinn Emanuel sent an email[2] on September 17, 2013 notifying Mr.

---

[2]    In an attempt to minimize the clear ethical violations committed by Quinn Emanuel, Quinto, who admits that neither he nor Quinn Emanuel is  handling this litigation due to a conflict of interest, claims that the email was only sent due to a belief that Mr. Sonneborn was no longer with KKR.  This statement is based in either willful ignorance or blatant falsehood—Mr. Madison emailed Mr. Sonneborn via his KKR email address and statements contained in the email assume that Mr. Sonneborn is in a position to influence KKR and, by extension, GoDaddy.  The article attached to the Quinto declaration provides the real reason for Mr. Madison's
Continued on Next Page

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

Sonneborn at KKR, and as a result, GoDaddy, that Judge Collins had handled all of AMPAS' litigation for the past 15 years. Upon receiving that notice, GoDaddy conducted an investigation into the relationship between AMPAS and Judge Collins, which it concluded in late November 2013. Less than two weeks later, GoDaddy approved the filing of this motion, which it filed on December 31, 2013. GoDaddy was proactive in filing its motion "at the earliest possible moment after learning of the facts giving rise to a belief of a demonstration of bias or prejudice indicating disqualification" and before any substantive rulings by the Court. *Apple v. Jewish Hosp. and Med. Ctr.,* 829 F.2d 326, 333 (2d Cir.1987); *see also United States v. Furst*, 886 F.2d 558, 581 (3rd Cir. 1989) (recusal motion timely when filed before the trial court was called upon to issue any new rulings).

### D. The Appearance of Bias Demonstrated By GoDaddy Demonstrates That This Motion Was Not Filed For Some Strategic Purpose

The purpose of a timeliness requirement for recusal motions under Section 144 is to insure that such motions are not used for strategic purposes, but are filed with reasonable promptness after the ground for recusal is ascertained. *See Preston v. United States*, 923 F.2d 731, 733 (9th Cir. 1991) (affirming disqualification even though motion to disqualify was filed 18 months after the basis for disqualification came to light). Here, GoDaddy has submitted credible and substantial evidence that would lead a reasonable observer with knowledge of all facts to conclude that Judge Collins' impartiality might be questioned. As a result, the purpose of the timing requirement is satisfied and thus, the Court should not deny GoDaddy's motion on the grounds that it is somehow untimely.

---

email: in October 2013, Mr. Sonneborn assumed the role of Senior Advisor to KKR. It defies credulity to believe that Quinto requested Mr. Madison to contact Mr. Sonneborn only *after* his departure from KKR, at a time when he would have no interest, influence or reason to "look into it from KKR's/GoDaddy's perspective." Kelly Declaration, Exh. E.

WRENN BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

## IV. **CONCLUSION**

For the foregoing reasons, as well as those contained in the moving papers, GoDaddy respectfully requests that the Court grant its Motion to Recuse the Hon. Audrey B. Collins.

Dated: January 20, 2014

**WRENN BENDER LLLP**
Aaron M. McKown
Paula L. Zecchini

By: _/s Aaron M. McKown_

Attorneys for Defendant
GODADDY.COM, INC.