RING BENDER LLLP
Aaron M. McKown (CA Bar No. 208781)
amckown@ringbender.com
Paula Zecchini (CA Bar No. 238731)
pzecchini@ringbender.com
2 Park Plaza, Suite 550
Irvine, CA 92612
Tel: 949.202.5818
Fax: 949.679.7939
*Attorneys for Defendant GoDaddy.com, LLC*

BOIES, SCHILLER & FLEXNER, LLP
Stuart Singer (*pro hac vice*)
ssinger@bsfllp.com
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Tel: (954) 356-0011
Fax: (954) 356-0022
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ACADEMY OF MOTION PICTURE ARTS AND SCIENCES, a California nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>GODADDY.COM, INC., a Delaware corporation,<br><br>Defendant. | Case No. CV10 3738 AB (CWx)<br><br>**JOINT STIPULATION RE: DEFENDANT'S MOTION TO COMPEL DEPOSITION OF PLAINTIFF, TO COMPEL PRODUCTION OF DOCUMENTS, AND FOR SANCTIONS**<br><br>HRG DATE:  October 28, 2014<br>TIME:          10:00 a.m.<br><br>Date Action Filed:     May 18, 2010<br>Trial Date:          June 2, 2015<br><br>[DISCOVERY MATTER] |

1
2
3

# <u>TABLE OF CONTENTS</u>

**STATEMENT OF ISSUE PRESENTED** ................................................................. 1

*I.   GODADDY'S POSITION* ......................................................................... *1*

  A.   Introduction .................................................................................. 1

  B.   Background ................................................................................... 2

  C.   AMPAS Should Be Compelled To Produce a 30(b)(6) Witness and
       Provide All Responsive Documents ........................................... 7

    1.   Discovery Sought Is Relevant ............................................. 7

    2.   GoDaddy Did Not Waive Its Right to Conduct Discovery of AMPAS II
         Domain Names .................................................................... 7

    3.   Information Sought Is Not Duplicative Of Prior Discovery ................... 9

    4.   AMPAS Has Not Responded To AMPAS II Discovery ......................... 9

    5.   Sanctions Against AMPAS and Its Counsel Are Warranted ................ 10

      a.   Sanctions Are Appropriate under Rule 37 ........................................... 10

      b.   Rule 26 Independently Justifies Sanctions ......................................... 12

      c.   AMPAS' Refusal to Submit to Deposition Is Also Sanctionable Under
          Rule 30 ............................................................................ 14

      d.   The Court Has The Inherent Authority to Sanction AMPAS ............. 14

      e.   The Court Should Consider Imposing Issue Sanctions ...................... 15

  D.   Conclusion ................................................................................... 17

*II.   THE ACADEMY'S POSITION* ................................................................... *1*

  A.   The Academy's Introduction ....................................................... 1

  B.   The Academy's Argument ........................................................... 3

    1.   Factual and Procedural Background. ..................................... 3

      a.   The AMPAS I and AMPAS II Cases ..................................... 3

b.  The Court's Summary Judgment Orders Resolved Issues Regarding the AMPAS II Domain Names in the Academy's Favor. ....................5

c.  Discovery Regarding the AMPAS II Domain Names in the AMPAS I Case. ......................................................................................................5

d.  After Requesting An Additional Six Months for Fact Discovery, GoDaddy Waited Until the End of that Period to Serve Duplicative and Cumulative Discovery..................................................................6

2.  GoDaddy's Motion to Compel Should Be Denied Because GoDaddy Failed to Comply with Local Rule 37-1..................................................7

3.  GoDaddy's Motion Should Be Denied Because It Is Premised on Misstatements and Inaccuracies. ...............................................................8

a.  The Academy Identified All of the AMPAS II Domain Names Before It Filed the AMPAS II Case..................................................................9

b.  GoDaddy Sought and Obtained Discovery Regarding the AMPAS II Domain Names in the AMPAS I Case...............................................10

i.  GoDaddy's Document Requests in the AMPAS I Case Encompass the AMPAS II Domain Names, and the Academy Produced Such Documents. ...................................................................................10

ii.  GoDaddy Already Served 30(b)(6) Deposition Notices Regarding the AMPAS II Domain Names and Then Took Those Depositions. ........................................................................................................12

4.  GoDaddy's Motion to Compel Should Be Denied Because It Seeks to Compel Cumulative and Duplicative Discovery...................................14

a.  GoDaddy's Third Set of RFP is Cumulative and Duplicative of its First and Second Sets of RFP..........................................................15

b.   GoDaddy's New 30(b)(6) Deposition Notice is Duplicative of Its Earlier 30(b)(6) Deposition Notice, About Which GoDaddy Has Already Taken Three Depositions. ....................................................16

5.   GoDaddy's Motion to Compel Should Be Denied Because It Seeks Discovery That Would Be Unduly Burdensome, In Light of the Court's Summary Judgment Orders and GoDaddy's Admissions......................18

a.   Additional Discovery on the AMPAS II Domain Names Regarding "Instances of Actual Confusion" and "Dilution of AMPAS' Trademarks" Would Be Unduly Burdensome, In Light of the Court's Summary Judgment Orders..................................................19

b.   Additional Discovery on the AMPAS II Domain Names Regarding Lost Revenues Would Be Unduly Burdensome Because the Academy is Only Seeking Statutory Damages. .................................................20

c.   Additional Discovery Regarding "How, When, And Who Discovered" the AMPAS II Domain Names Would Be Unduly Burdensome Because GoDaddy Admits It Has This Information............................21

6.   The Court Should Deny GoDaddy's Specious Request for Sanctions, and Should Sanction GoDaddy for Failing to Comply with L.R. 37-1 and Other Discovery Abuses................................................21

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Carrera v. First Am. Home Buyers Prot. Co.*,
   13CV1585-BAS JLB, 2014 WL 3695403 (S.D. Cal. July 23, 2014) ................. 18

*Chambers v. Nasco, Inc.*,
   501 U.S. 32 (1991) ........................................................................................ 14

*Fjelstad v. American Honda Motors Co., Inc.*,
   762 F.2d 1334 (1985) .................................................................................... 15

*Gonzales v. Google, Inc.*,
   234 F.R.D. 674 (N.D. Cal. 2006) .................................................................. 15

*Gusman v. Comcast Corp.*,
   298 F.R.D. 592 (S.D. Cal. 2014) .................................................................. 15

*Hammond Packing Co. v. Arkansas*,
   212 U.S. 322 (1909) ...................................................................................... 15

*In re Katrina Canal Breaches Consol. Litig.*,
   CIV.A. 05-4182, 2008 WL 4882392 (E.D. La. Nov. 4, 2008) ........................... 18

*Jennifer A. v. United Healthcare Ins. Co.*,
   CV 11-1813-DSF PLAX, 2012 WL 748569 (C.D. Cal. Jan. 31, 2012) .............. 18

*Lew v. Kona Hospital*,
   754 F.2d1420 (9th Cir. 1985) ....................................................................... 11

*Miller v. Pancucci*,
   141 F.R.D. 292 (C.D. Cal. 1992) ................................................................... 7

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978) ........................................................................................ 7

*Tennison v. Henry*,
   203 F.R.D. 435 (N.D. Cal. 2001) .................................................................. 17

*U.S. E.E.O.C. v. Pinal Cnty.*,

   714 F. Supp. 2d 1073 (S.D. Cal. 2010) ................................................17

*Web-adviso v. Trump*,

   927 F. Supp. 2d 32 (E.D.N.Y. 2013) ................................................21

<u>Statutes</u>

15 U.S.C. § 1117(d) ................................................................................20

15 U.S.C. § 1125(d)(1)(A)(i) ..................................................................19

15 U.S.C. § 1125(d)(1)(A)(ii) .................................................................19

28 U.S.C. § 1927 ....................................................................................14

<u>Rules</u>

Fed. R. Civ. P. 26(b)(1) ...........................................................................7

Fed. R. Civ. P. 26(b)(2)(C)(i) .................................................................15

Fed. R. Civ. P. 26(g)(1)(B)(i) .................................................................12

Fed. R. Civ. P. 26(g)(1)(B)(ii) ................................................................12

Fed. R. Civ. P. 26(g)(3) ..........................................................................13

Fed. R. Civ. P. 30(d)(2) ..........................................................................14

Fed. R. Civ. P. 37(a)(3)(A)(ii) ................................................................10

Fed. R. Civ. P. 37(a)(3)(A)(iv) ...............................................................10

Fed. R. Civ. P. 37(a)(4) ...........................................................................10

Fed. R. Civ. P. 37(a)(5)(A) ..............................................................11, 12

Fed. R. Civ. P. 37(a)(5)(B)(i) ...........................................................11, 12

Fed. R. Civ. P. 37(a)(5)(B)(ii) ..........................................................11, 12

Fed. R. Civ. P. 37(a)(5)(B)(iii) .........................................................11, 12

L.R. 37-1 ...................................................................................................8

L.R. 37-4 ...................................................................................................8

**STATEMENT OF ISSUE PRESENTED**

Defendant GoDaddy.com, LLC ("GoDaddy") requests that the Court order Plaintiff Academy of Motion Pictures Arts and Sciences ("AMPAS") to appear for deposition and to produce documents related to domain names identified in a second lawsuit filed by AMPAS on November 15, 2013 and consolidated into the above-captioned action on March 27, 2014.  Plaintiff opposes this motion.

## I.  GODADDY'S POSITION

### A.  Introduction

AMPAS has made a concerted and continual effort over the past four years to thwart GoDaddy's efforts to conduct basic discovery into not only the facts supporting AMPAS' claims but also the facts that may give rise to GoDaddy's potential defenses.  This repeated pattern of discovery abuse has resulted in multiple trial continuances, substantial delays, and an exponential increase in litigation costs.  Nonetheless, AMPAS continues to engage in such impermissible tactics thereby causing further delay and unnecessary expense.

AMPAS' latest gamesmanship relates to its refusal (1) to produce a Rule 30(b)(6) witness to testify about the allegations asserted in a second lawsuit filed on November 15, 2013 and facts relating to GoDaddy's defenses thereto and (2) to produce any documents, including internal communications, relating to the 92 domain names included in the second lawsuit.  Specifically, AMPAS takes the position that because some of these domain names were untimely disclosed in the first lawsuit, GoDaddy should have somehow conducted discovery into all 92 domain names, including those not disclosed.  AMPAS further argues that GoDaddy's failure to conduct such discovery bars its current discovery efforts into the domain names and issues raised in the second lawsuit.

AMPAS' position is without justification.  Indeed, it is entirely incongruous with Judge Collins' order finding that none of the 92 domain names were at issue in the first lawsuit or with her order continuing fact discovery of the two

consolidated dates to September 26, 2014 without restriction.   Accordingly, GoDaddy respectfully requests that the Court compel AMPAS to produce a corporate witness for deposition on the domain names and issues raised in the second lawsuit and to produce all responsive documents related thereto.  GoDaddy also respectfully requests that the Court impose monetary sanctions in the amount of $8,787.50 against AMPAS and its counsel for their unjustified conduct, especially given AMPAS' insistence that GoDaddy produce documents and witnesses related to the very issues and domains names to which AMPAS refuses to respond.

**B.    Background**

AMPAS filed the first of two lawsuits against GoDaddy on May 18, 2010 ("AMPAS I").  Pursuant to the Court's original Scheduling Order, fact discovery was set to conclude on June 13, 2011; the deadline to disclose additional infringing domain names was set for April 14, 2011.  *See* Scheduling Order [Dkt. 55].  The parties subsequently stipulated to the extension of all deadlines, including the extension of the Court-established deadline to disclose additional infringing domain names, to September 14, 2011.  The Court adopted the parties' stipulation as its order.  *See* Dkt. 95.

On September 14, 2011, AMPAS approached GoDaddy regarding a further continuance of the existing deadlines.  *See* McKown Decl. ¶ 2.  On September 15, 2011, GoDaddy informed AMPAS that it was agreeable to a further 90-day continuance with one exception – the deadline to disclose additional infringing domains, which expired without extension the day prior.  *See id.*  After a series of negotiations, the parties entered into the requested stipulation and specifically excluded a continuance of the Court-established deadline for AMPAS to identify additional infringing domain names.  *See id.*; *see also* Dkt. 150.  Although AMPAS agreed to the stipulation as filed, it "reserved its right" to seek relief from the Court to disclose additional infringing domain names beyond the expired deadline

1    ordered by the Court.  *See* McKown Decl. ¶ 3.  AMPAS, however, never sought

2    relief to extend the Court-established deadline.  *See id*.

3         Nonetheless, AMPAS untimely disclosed numerous domain names in

4    AMPAS I.  *See id.* at ¶ 4.  Because AMPAS failed to comply with the Court-

5    ordered deadline regarding the untimely disclosed domain names, GoDaddy did

6    not produce any discovery nor did it conduct any discovery related to these

7    untimely disclosed domain names.  *See id.*  Instead, GoDaddy raised the issue of

8    their untimely disclosure in opposition to AMPAS' motion for partial summary

9    judgment.  *See id.*  On June 21, 2013, the Court confirmed GoDaddy's position

10   that none of the domain names identified by AMPAS after September 14, 2011

11   were at issue in AMPAS I:

12

13        If the stipulation as submitted [by the parties] did not accurately
          reflect the parties' agreement, the Academy could have promptly
14        sought relief from the Court.  Similarly, if the parties could not agree
          about this deadline, the Academy could have filed a motion asking the
15        Court to extend it.  But the Academy did not seek relief from the order
          that was entered, and the Court will not grant relief from that order at
16        summary judgment.  Thus, the operative deadline [to identify domain
          names in AMPAS I] was September 14, 2011.  **Accordingly, domain**
17        **names that the Academy disclosed after September 14, 2011 were**
18        **not timely disclosed so they are not at issue.**

19

20   Dkt. 491 (emphasis added).

21         AMPAS filed a second lawsuit against GoDaddy on November 15, 2013

22   ("AMPAS II").  *See* AMPAS II Dkt. 1.  Before an answer was due, AMPAS filed a

23   First Amended Complaint on December 17, 2013.  *See* AMPAS II Dkt. 20.  The

24   First Amended Complaint identified 94 additional domain names, two of which

25   were dismissed by Judge Collins as not confusingly similar as a matter of law.  *See*

26   AMPAS II Dkt. 40.  Of the 92 remaining domain names identified in AMPAS II,

27   31 of those were never identified in AMPAS I.  *Compare* McKown Decl. at ¶ 5,

28

1  Exhs. A-B *with* AMPAS II Dkt. 20; *see also* McKown Decl. at ¶ 6, Exh. C (list of

2  domain names not previously identified in AMPAS I).

3        AMPAS II was subsequently consolidated for all purposes with AMPAS I

4  on March 27, 2014.  *See* Dkt. 548.  Pursuant to the Court's further Scheduling

5  Order of April 22, 2014, fact discovery of the consolidated matter was continued to

6  September 26, 2014.  *See* Scheduling Order [Dkt. 559].  No limitations were

7  placed on the scope of discovery although it was clearly contemplated that

8  discovery would include issues related to the 92 newly identified domain names.

9  *See id.*  Indeed, AMPAS propounded interrogatories, document requests, and

10 requests for admissions on GoDaddy related to AMPAS II domain names.  *See*

11 McKown Decl. at ¶ 7.

12       In an effort to conduct its own discovery into the newly identified domain

13 names, GoDaddy propounded document requests and served a Rule 30(b)(6)

14 deposition notice on AMPAS on August 1, 2014.  *See id.* at ¶ 8, Exhs. D-E.  Both

15 the document requests and the topics identified in the Rule 30(b)(6) deposition

16 notice were directed at obtaining information from AMPAS about the newly-added

17 domain names, such as whether AMPAS has any personal knowledge regarding

18 any confusion by any person related to the domain names, what financial impact, if

19 any, these domain names had on AMPAS, including whether and to what extent

20 the domain names may have diluted AMPAS' marks as it alleges, the timing of the

21 discovery of the domain names and whether there have been any internal

22 discussions, including any statements about the concern these domain names may

23 have on AMPAS' business, as well as issues relating to the purported fame of

24 AMPAS' marks and any lost profits claimed by AMPAS.  *See id.*  AMPAS'

25 responses to GoDaddy's document demand were due on September 2, 2014.

26 AMPAS' deposition was scheduled for September 4, 2014.

27 / / /

28 / / /

Prior to receiving AMPAS' objections to GoDaddy's 30(b)(6) notice, GoDaddy's counsel sent counsel for AMPAS an email on August 25, 2014 requesting confirmation that AMPAS would produce a witness for deposition on the date noticed.  *See id.* at ¶ 9, Exh. F.  In response, AMPAS explained that it would not "be producing a 30b6 witness for AMPAS on the AMPAS II Domain Names." *Id.*  The reason provided was that "GoDaddy has already taken numerous days of deposition of AMPAS and knew about the AMPAS II domain names at the time of those previous 30b6 depositions of AMPAS" in AMPAS I.  *Id.*

AMPAS' counsel subsequently took the illogical position that because a subset of the AMPAS II domain names were untimely identified in AMPAS I, GoDaddy had previously been given the opportunity to conduct discovery of all AMPAS II domain names and thus, GoDaddy's failure to conduct discovery of the AMPAS II domain names in AMPAS I constituted a waiver of its right to do so now.  *See id.* at ¶ 10, Exh. G.  After additional meet and confer efforts, AMPAS confirmed that no witness would be presented and no documents would be produced related to any domain names identified in AMPAS I.  *See id.* at Exh. H.

On August 28, 2014, AMPAS provided objections to the 30(b)(6) deposition notice.  *See id.* at ¶ 11, Exh. I.  On September 2, 2014, AMPAS provided objections to the deposition notice.  *See id.* at Exh. J.  With respect to both sets of objections, AMPS claimed that such discovery was somehow duplicative of prior discovery, that it would not produce any such documents (or even conduct an investigation to determine if responsive documents existed), and that it would not produce any witness to provide testimony on any subject.  *See id.*  Notably, AMPAS served its objections after GoDaddy had already complied with its own obligations in responding to discovery served by AMPAS on the very same issues and topics.  *See id.* at ¶ 12.

Hypocritically, up to the date of filing of the instant motion, AMPAS continues to demand additional discovery from GoDaddy related to AMPAS II

domain names even though, by AMPAS' own reasoning, it waived its right to conduct such discovery by failing to conduct that discovery in AMPAS I. *See id.* at ¶ 13.

In a final effort to reach a resolution regarding the production of a 30(b)(6) witness and responsive documents, GoDaddy requested a telephonic conference with AMPAS. *See id.* at ¶ 14, Exh. K. The parties conducted that conference on September 16, 2014. *See id.* at ¶ 15. During the call, AMPAS confirmed its outright refusal to produce a witness for deposition. *See id.* AMPAS also repeated its prior contention that there were no documents to produce because all of the AMPAS II domain names were identified in AMPAS I and that despite not being at issue, they produced all documents in AMPAS I. *See id.* When GoDaddy pointed out that there were at least 31 domain names that were not identified in AMPAS I that are now at issue, AMPAS initially denied that fact to be true and then demanded that GoDaddy identify those 31 domain names before it would consider whether to conduct a search for any additional documents. *See id.* When AMPAS was reminded of its Rule 11 obligations in responding to discovery, AMPAS outright refused to discuss the subject further. *See id.*

Shortly after that conference, AMPAS appeared to concede that it had not conducted a diligent search for documents. Yet, rather than representing that it would conduct such an inquiry, AMPAS instead notified GoDaddy that it would identify which "answer[s] can be changed to "No responsive documents exist after a good faith and diligent investigation.'" *Id.* at ¶ 16, Exh. L. How can AMPAS already be in a position to state that no responsive documents exist when AMPAS admittedly has yet to make the diligent inquiry into whether they actually do?

/ / /

/ / /

/ / /

/ / /

### C.     AMPAS Should Be Compelled To Produce a 30(b)(6) Witness and Provide All Responsive Documents

#### 1.     Discovery Sought Is Relevant

Parties are permitted to discover any non-privileged matter that is relevant to a party's claim or defense.  *See* Fed. R. Civ. Pro. 26(b)(1).  Courts construe this rule broadly, encompassing "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  Discovery is not limited to the issues raised only in the pleadings, but rather the pleadings are designed to help define and clarify the issues on which discovery may occur.  *See id.*  "This is true not only of depositions but of other discovery devices permitted by the rules." *Miller v. Pancucci*, 141 F.R.D. 292, 296 (C.D. Cal. 1992).  As this Court has explained, "[t]he requirement of relevancy should be construed liberally and with common sense, rather than in terms of narrow legalisms." *Id.*

Here, AMPAS objects to every document demand as well as to the production of a 30(b)(6) witness on the grounds of relevancy.  The information sought by GoDaddy, however, is directly related to the newly identified domain names and, as such, satisfies the liberal relevancy standard for discovery.  Indeed, the discovery is directed at the very allegations asserted by AMPAS in AMPAS II, including the 92 new domain names that Judge Collins recognized were not at issue in AMPAS I.  Thus, the discovery sought is directly relevant to the claims and defenses raised by the filing of AMPAS II and its consolidation with this case. AMPAS' objection that the discovery seeks irrelevant information is without merit.

#### 2.     GoDaddy Did Not Waive Its Right to Conduct Discovery of AMPAS II Domain Names

AMPAS' primary argument in refusing to produce documents or a Rule 30(b)(6) witness is its illogical contention that because GoDaddy did not conduct discovery of some of the AMPAS II domain names AMPAS untimely disclosed in

AMPAS I, GoDaddy waived its right to conduct discovery of all of the AMPAS II domain names now.  *See* McKown Decl. at ¶¶ 9-11, Exhs. F-H.  Not only does this argument lack reason, it warrants the imposition of sanctions against AMPAS and its counsel.

Not a single federal court has held that a party will be deemed to have waived its right to conduct discovery within the fact discovery period ordered by the court simply because that party did not conduct discovery in another lawsuit related to matters not then at issue.  Yet, that is precisely what AMPAS asks this Court to do.  As Judge Collins made clear in her June 24, 2013 ruling, AMPAS failed to timely disclose various domain names, or to seek relief from the Court to add those domain names, to AMPAS I.  *See* Dkt. 491.  As a result, none of those domain names were at issue in AMPAS I.  *See id.*  Because none of those domain names were at issue, GoDaddy had no obligation to conduct discovery related to any of those domain names.  AMPAS admits as much by way of the significant amount of discovery that it has requested of GoDaddy in relation to the AMPAS II domain names in the recent months.  *See* McKown Decl. at ¶ 13.  Absent such an obligation, there can be no grounds to support AMPAS' contention that GoDaddy waived its right to conduct discovery into any of the AMPAS II domain names.

Moreover, AMPAS' position ignores the fact that not all of the domain names that it untimely disclosed in AMPAS I were identified in AMPAS II.  Specifically, 31 of the 92 domain names identified in AMPAS II were never disclosed in AMPAS I.  *Compare* McKown Decl. at ¶ 5, Exhs. A-B *with* AMPAS II Dkt. 20; *see also* McKown Decl. at ¶ 6, Exh. C (list of domain names not previously identified in AMPAS I).  Thus, even assuming *arguendo* that AMPAS' argument had a modicum of merit, which it does not, the proffered argument is inapplicable to GoDaddy's attempt to discover information related to the 31 domain names that AMPAS never identified in AMPAS I.

/ / /

Regardless, AMPAS' claim that GoDaddy somehow waived its right to conduct discovery of any AMPAS II domain name lacks merit. GoDaddy respectfully requests that the Court not only reject this argument, but that it impose monetary sanctions against AMPAS and its counsel as discussed below.

### 3.  Information Sought Is Not Duplicative Of Prior Discovery

AMPAS contends that the discovery GoDaddy seeks related to the 92 domain names identified in AMPAS II is somehow duplicative of the discovery GoDaddy conducted of the unrelated domain names in AMPAS I. *See* McKown Decl. at ¶ 11, Exhs. I-J. Yet, AMPAS admits that GoDaddy did not conduct discovery of AMPAS II domain name in AMPAS I, which is the basis of its waiver argument. *See id.* at ¶¶ 9-11, Exhs. F-H. If GoDaddy did not conduct discovery of AMPAS II domain names in AMPAS I, it stands to reason that the discovery GoDaddy now seeks related to AMPAS II domain names is not duplicative.

While there may indeed by overlap relating to the discovery topics pursued by GoDaddy in AMPAS I—actual confusion by members of the public, dilution of AMPAS' trademarks, lost revenues AMPAS alleges were diverted to GoDaddy, how, when, and who discovered the domain names at issue, etc.—there cannot be duplication because the inquiry relates to an entirely new subset of domain names for which no prior discovery was conducted. The ACPA is a domain name specific statute that allows for the recovery of damages (in this case statutory damages as elected by AMPAS) for each domain name. Thus, discovery as to each individual domain name is directly relevant to the claims, defenses, and issues in this action. AMPAS' refusal to produce documents or a Rule 30(b)(6) witness for deposition on the newly identified AMPAS II domain names lacks merit.

### 4.  AMPAS Has Not Responded To AMPAS II Discovery

In an effort to avoid searching for or producing any additional documents or preparing a witness for deposition, AMPAS claims that it produced all responsive documents and it provided prior testimony about all of the domain names at issue,

including the untimely disclosed AMPAS II domain names, and thus it has nothing else to produce.  *See* McKown Decl. at ¶ 11, Exhs. I-J.  Again, this contention is based on AMPAS' failure to recognize that at least 31 domain names (for which AMPAS seeks statutory damages in the amount of $3.1 million), were never identified in AMPAS I and thus, AMPAS did not, nor could it, have testified about these domain names or produced documents related thereto.  Moreover, as Judge Collins made clear, none of the domain names untimely disclosed in AMPAS I was previously at issue.  *See* Dkt. 491.  As such, GoDaddy did not, nor did it have an obligation to, conduct discovery of those domain names previously.

Moreover, AMPAS' position ignores the fact that AMPAS has not been deposed since November 2012 – almost two years ago.  It is possible that facts have developed during those two years, including instances of actual confusion by the public, which would require AMPAS to supplement its prior testimony as to all domain names.  Regardless, at the very least, GoDaddy should be entitled to discover what AMPAS knows with respect to the 92 newly added domain name, including any instances of actual confusion by members of the public, the dilution of AMPAS' trademarks, the lost revenues AMPAS alleges were diverted to GoDaddy, and how, when, and who discovered the domain names at issue.

### 5.   Sanctions Against AMPAS and Its Counsel Are Warranted

#### a.   Sanctions Are Appropriate under Rule 37

Rule 37 allows "[a] party seeking discovery [to] move for an order compelling an answer, designation, production, or inspection" for various discovery abuses, including "a corporation or other entity [that] fails to make a designation under Rule 30(b)(6)" and "a party [that] fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. Pro. Rule 37(a)(3)(A)(ii), (iv).   Under Rule 37, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. Pro. Rule 37(a)(4).  "If the motion is granted—

or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless the responding party can show that the moving party did not attempt in good faith to obtain the disclosure without involving the Court, the non-disclosure, answer, or response was substantially justified, or it would otherwise be unjust to impose sanctions under the circumstances. Fed. R. Civ. Pro. Rule 37(a)(5)(A), (B)(i)-(iii).  Sanctions may be imposed even for negligent failure to provide discovery. *See Lew v. Kona Hospital*, 754 F.2d1420, 1427 (9th Cir. 1985).

In this case, AMPAS' refusal to designate a witness under Rule 30(b)(6) to discuss any issues related to the AMPAS II domain names and its refusal to search for, let alone produce, any documents related to AMPAS II domain names warrant the imposition of sanctions.  The most egregious of AMPAS' conduct is its refusal to designate a corporate witness to testify on issues relating to the 92 newly disclosed domain names.  As discussed above, AMPAS has not articulated any justification for refusing to designate a witness, let alone a substantial justification. GoDaddy made several good faith attempts to obtain AMPAS' designation of a witness without involving the Court, but those attempts were repeatedly rebuked by AMPAS and its counsel.  Imposing sanctions against AMPAS and its counsel in for their refusal to designate a witness is both just and justified under the circumstances.  GoDaddy respectfully requests both the imposition of monetary sanctions for bringing this motion as well as for issue sanctions as more fully discussed below. *See* Fed. R. Civ. Pro. Rule 37(a)(5)(A), (B)(I)-(iii); McKown Decl. at ¶¶ 16-17.

The same is true with respect to AMPAS' refusal to search for or produce responsive documents.  AMPAS' refusal to do so is based on its erroneous belief

1   that all of the AMPAS II domain names were identified in AMPAS I and thus, it
2   has nothing else to produce.  This response ignores the fact that AMPAS identified
3   31 new domain names in AMPAS II, which it never previously disclosed.
4   Moreover, even if AMPAS does not have a single document related to AMPAS II
5   domain names, its response confirms that it did not conduct a diligent inquiry for
6   responsive documents before making that statement.  As such, the statement is
7   evasive and/or incomplete and thus, for purposes of Rule 37, is treated as non-
8   responsive.  Again, AMPAS' has not, nor can it, provide any justification for its
9   refusal to search for or produce responsive documents.  GoDaddy provided
10  AMPAS with multiple opportunities to provide complete responses to document
11  requests and to produce responsive documents, which it has refused to do.  As
12  such, GoDaddy should be awarded its reasonable attorneys' fees in having to bring
13  this motion and issues sanctions should be imposed as discussed more fully below.
14  *See* Fed. R. Civ. Pro. Rule 37(a)(5)(A), (B)(I)-(iii); McKown Decl. at ¶¶ 16-17.

### b. Rule 26 Independently Justifies Sanctions

16      By executing AMPAS' responses and objections to GoDaddy's Notice of
17  30(b)(6) deposition and Requests for Production of Documents (Set Three),
18  AMPAS' counsel certified that:  (1) it had conducted a reasonable inquiry; (2) that
19  the responses are consistent with the Federal Rules of Civil Procedure; and (3) that
20  its refusal to produce any responsive documents or witnesses for deposition was
21  not interposed for an improper purpose, such as to cause unnecessary delay or
22  needlessly increasing the cost of litigation.  *See* Fed. R. Civ. Pro. 26(g)(1)(B)(i),
23  (ii).  AMPAS' certification, however, was wholly improper.

24      AMPAS' responses to GoDaddy's document requests make clear that it
25  made no inquiry in to the existence of responsive documents, let alone a reasonable
26  inquiry as required by Rule 26(g).  For example, the entire foundation underlying
27  AMPAS' refusal to produce any documents or a Rule 30(b)(6) witness is based on
28  its erroneous contention that "all of the AMPAS II Domain Names in the AMPAS

II Case were identified by AMPAS' outside counsel and notice was provided to GoDaddy in December 2011 and June 2012, before the discovery cut-off in the AMPAS I case." McKown Decl. at ¶ 11, Exhs. I-J. This statement is patently false. Had AMPAS conducted a reasonable inquiry both at the time it prepared these responses as well as after GoDaddy's counsel advised AMPAS that the statement was false, AMPAS would have discovered that not all of the domain names identified in AMPAS II were actually identified in AMPAS I. *Compare* McKown Decl. at ¶ 5, Exhs. A-B *with* AMPAS II Dkt. 20; *see also* McKown Decl. at ¶ 6, Exh. C (list of domain names not previously identified in AMPAS I).

AMPAS has articulated no justification for its dogmatic refusal to address this false certification. Moreover, its last minute representation that it **may** amend some of the responses to state that "No responsive documents exist after a good faith and diligent investigation'" not only is too late to cure its false certification, but that representation is itself a further example of the lack of reasonable inquiry AMPAS intends to make regarding these requests. *Id.* at ¶ 16, Exh. L.

AMPAS and its counsel's improper certification under Rule 26(g) is not limited, however, to its failure to conduct a reasonable inquiry. Rather, AMPAS' contention that the information sought is irrelevant, that GoDaddy waived its right to discovery of any AMPAS II claims, defenses, or domain names, that the discovery is somehow duplicative with AMPAS I discovery, and that its prior discovery responses and deposition testimony covered all of the domain names identified in AMPAS II all utterly lack merit. This lack of merit demonstrates that AMPAS' responses to the document demand and deposition notice are not consistent with the Federal Rules, but rather, were served for the purpose of causing unnecessary delay and needlessly increasing the cost of litigation. As such, GoDaddy respectfully requests that the Court impose both monetary and issue sanctions against AMPAS and its counsel. *See* Fed. R. Civ. Proc. Rule 26(g)(3); McKown Decl. at ¶¶ 16-17.

1
2

### c.   AMPAS' Refusal to Submit to Deposition Is Also Sanctionable Under Rule 30

3          The Court may also independently impose both monetary and issue
4   sanctions against AMPAS and its counsel under Federal Rule of Civil Procedure
5   Rule 30.  Specifically, "[t]he court may impose an appropriate sanction—including
6   the reasonable expenses and attorney's fees incurred by any party—on a person
7   who impedes, delays, or frustrates the fair examination of the deponent."  Fed. R.
8   Civ. Proc. 30(d)(2).  In this case, AMPAS and its counsel have impeded, delayed,
9   and frustrated GoDaddy's attempt to conduct a fair examination of AMPAS related
10  to domain names that only became at issue when AMPAS filed its second lawsuit.
11  As such, sanctions are independently appropriate under Rule 30.

12
13

### d.   The Court Has The Inherent Authority to Sanction AMPAS

14         Lastly, the Court may impose sanctions against AMPAS under its inherent
15  authority, which GoDaddy respectfully requests the Court to do.  AMPAS has
16  repeatedly denied GoDaddy discovery on the very issues that AMPAS
17  concurrently seeks to obtain discovery from GoDaddy.  Specifically, AMPAS has
18  repeatedly sought information and deposition testimony related to the AMPAS II
19  domain names, while at the same time abjectly refusing to exchange the same
20  information with GoDaddy.  Under these circumstances, the Court should exercise
21  its inherent power to impose sanctions where an attorney "so multiplies the
22  proceedings in any case unreasonably and vexatiously."  28 U.S.C. § 1927;
23  *Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991).  Here, AMPAS' refusal to produce
24  documents and a corporate witness related to the newly identified domain names,
25  while relentlessly insisting on GoDaddy's production of information related to the
26  very same domain names, constitutes the exact type of bad faith conduct that
27  warrants the sanctions requested.

28

### e.      The Court Should Consider Imposing Issue Sanctions

This is not the first time AMPAS has taken an unjustified position in discovery.  As the Court may recall, AMPAS refused to identify Joseph Presbrey as a witness during the entire three years that fact discovery was originally pending in this case even though Mr. Presbrey was the only fact witness with knowledge about how and when AMPAS discovered the domain names at issue, including screenshots that AMPAS relies upon for its claims.  Even though your honor did not compel the disclosure of Mr. Presbrey, your honor did warn AMPAS about its failure to disclose.  Consistent with that warning, Judge Collins subsequently confirmed that Mr. Presbrey was a fact witness and that AMPAS had an obligation to disclose him during discovery.  *See* Dkt. 492.  As a result of AMPAS' failure to do so, the Court ordered fact and expert discovery reopened, causing further delay and expense in this case.

AMPAS now refuses, on the eve of the close of fact discovery, to submit to any discovery related to the claims, allegations, and domain names it asserted in an entirely new lawsuit, including issues related to the fame of its trademarks, the existence of any actual confusion by members of the public related to the newly added 92 domain names, the alleged dilution of its trademarks as a result of GoDaddy's alleged use of the 92 newly added domain names, the lost profits it alleges were diverted intentionally from AMPAS to GoDaddy regarding these 92 domain names, the origins of the 92 domain names themselves, and GoDaddy's alleged bad faith intent to profit from AMPAS' marks through the alleged use of these 92 domain names.  AMPAS' refusal to submit to such discovery creates a presumption that its claims with respect to these 92 domain names are without merit.  *See Fjelstad v. American Honda Motors Co., Inc*., 762 F.2d 1334, 1342 (1985) (citing *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 353-54 (1909) (holding that striking the answer and entering default judgment against a corporate defendant that refused to produce any documents or to permit its officers to be

deposed did not deny the defendant due process because its refusal to produce material evidence created a presumption that its asserted defense was meritless)).

Given AMPAS' prior discovery misconduct, the timing of its refusal to submit to any discovery related to AMPAS II in its entirety, the additional delay and expense that AMPAS' unjustified conduct will necessitate, and an in effort to minimize the prejudice that will be caused by such conduct, GoDaddy respectfully requests that the Court consider imposing issue sanctions against AMPAS in lieu of compelling discovery as follows:

(1) finding that GoDaddy did not use, traffic in, or register any of the 92 domain names identified in AMPAS II;

(2) finding that GoDaddy did not have a bad faith intent to profit from AMPAS' trademarks with respect to any of the 92 domain names identified in AMPAS II;

(3) finding that AMPAS' trademarks were not diluted by any of the 92 domain names identified in AMPAS II;

(4) finding that GoDaddy did not divert any monies from AMPAS related to the 92 domain names identified in AMPAS II;

(5) finding that there was no actual confusion between the 92 domain names identified in AMPAS II and AMPAS' trademarks; and

(6) finding that none of the 92 domain names participated in GoDaddy's Free Parking or Cash Parking programs.

Imposing issue sanctions is not only warranted under the circumstances, but it would further the interest of justice by allowing fact discovery to finally close in this case, by avoiding the expense and effort of conducting the outstanding discovery, and by allowing the parties to focus on the remaining domain names and claims in dispute.

/ / /

/ / /

## D.     Conclusion

In light of the foregoing, GoDaddy respectfully requests that the Court order AMPAS to (1) supplement all of its responses to Request for Production of Documents (Set Three) after a diligent search within ten (10) days of the Court's order; (2) produce all responsive documents to Request for Production of Documents (Set Three) within ten (10) days of the Court's order; (3) produce a 30(b)(6) witness on the topics noticed by GoDaddy within twenty (20) days of the Court's order; and (4) impose sanctions against AMPAS and its counsel in the amount of $8,787.50, which shall be paid within (10) days of the Court's order. Alternatively, GoDaddy respectfully requests that the Court impose issue sanctions against AMPAS and award GoDaddy monetary sanctions in the amount of $8,787.50 for having to bring this motion, which shall be paid within (10) days of the Court's order.

DATED:  September 17, 2014        By  /s/Aaron M. McKown

RING BENDER LLLP
Aaron M. McKown (CA Bar No. 208781)
Paula Zecchini (CA Bar No. 238731)
2 Park Plaza, Suite 550
Irvine, CA 92612
Tel: 949.202.5818; Fax: 949.679.7939
*Attorneys for Defendant*
*GoDaddy.com, LLC*

## II.   THE ACADEMY'S POSITION

The Academy respectfully submits the following opposition to GoDaddy's motion to compel further responses to its Third Set of Requests for Production and yet another 30(b)(6) deposition of the Academy.

### A.   The Academy's Introduction

The present motion is emblematic of GoDaddy's willingness to disregard the truth and to commit discovery abuses in pursuit of its scorched earth litigation tactics.  The Court should put a stop to GoDaddy's conduct.

First, GoDaddy's motion fails for the simple reason that GoDaddy did not comply with Local Rule 37-1, in spite of receiving notice from the Academy's counsel that it had to comply with the rule before serving this joint stipulation.

Second, GoDaddy's motion to compel further responses to its Third Set of Requests for Production (the "Third Set of RFP") and its new 30(b)(6) Deposition Notice (the "New 30(b)(6) Deposition Notice") is premised on misstatements, including (i) that the Academy did not identify all of the AMPAS II domain names prior to filing the AMPAS II case, and (ii) that GoDaddy did not seek and obtain discovery regarding the AMPAS II domain names in the AMPAS I case.  The record evidence establishes that the Academy identified all of the AMPAS II domain names during the AMPAS I case and that GoDaddy was aware of the vast majority of them prior to the close of fact discovery and prior to taking multiple 30(b)(6) depositions in the AMPAS I case.  Significantly, the record evidence also establishes that GoDaddy, in fact, sought and obtained discovery regarding the AMPAS II domain names through written discovery and 30(b)(6) depositions in the AMPAS I case.

Third, the motion to compel should be denied because the discovery at issue is plainly duplicative, cumulative, and unduly burdensome.  As demonstrated below, the Third Set of RFP is almost identical to (and in all material respects is identical to) the document requests GoDaddy served in the AMPAS I case.  By

their plain language, the document requests in the AMPAS I case seek discovery regarding the AMPAS II domain names.  The Academy has conducted a diligent search and has already produced responsive documents regarding the AMPAS II domain names.  As also demonstrated below, the New 30(b)(6) Deposition Notice is almost identical to (and in all material respects is identical to) the 30(b)(6) deposition notice it served in the AMPAS I case.  By its plain terms, the 30(b)(6) notice in the AMPAS I case sought discovery regarding the AMPAS II domain names.  GoDaddy has already conducted three 30(b)(6) depositions based upon that notice (and despite the Academy's warnings that its designated witness was ready to go the full 7 hours at the last 30b6 deposition, GoDaddy voluntarily terminated it early).  To require anything more, would be duplicative, cumulative and unduly burdensome.

Fourth, GoDaddy's motion should be denied because it only seeks additional discovery about topics that are not material to the AMPAS II domain names.  For example, GoDaddy's claim that it needs discovery on dilution and actual confusion is belied by the fact the Court has already ruled on summary judgment that the Academy's marks are distinctive and that the AMPAS II domain names are confusingly similar as a matter of law.[1]  Similarly, GoDaddy's claim that it needs discovery on lost profits is baseless because – as GoDaddy admits – the Academy is only seeking statutory damages.  Likewise, GoDaddy's claim that it needs additional discovery regarding how, when, and who discovered the AMPAS II domain names is contradicted by GoDaddy's counsel's written statements that it already possessed that information and was not interested in it.

Finally, GoDaddy's request for monetary and terminating issue sanctions is – like this motion and the discovery at issue – specious and harassing.  Indeed,

---

[1] The Court granted summary judgment for 88 of the AMPAS II domain names. GoDaddy stipulated that the other 6 AMPAS II domain names are confusingly similar.

GoDaddy – not the Academy – should be sanctioned for its failure to comply with L.R. 37-1 and for engaging in other discovery abuses.   By way of example, GoDaddy's motion makes clear that it knowingly served meritless objections to the Academy's Fourth Set of Interrogatories and Sixth Set of Requests for Production when it claimed that Judge Collins had limited the scope of fact discovery; in this motion and its counsel's supporting declaration, GoDaddy now admits that Judge Collins placed no such limit on the scope of discovery.

**B.     The Academy's Argument**

       **1.     <u>Factual and Procedural Background.</u>**

           **a.     The AMPAS I and AMPAS II Cases.**

The Academy is a nonprofit organization dedicated to advancing the motion picture arts and sciences by promoting cultural, educational, and technological achievements.  *See* Declaration of Enoch H. Liang ['Liang Decl."], at ¶4, Exh. 2 [First Amended Complaint ("FAC"), dated December 17, 2013, Dkt. No. 20], at ¶¶7-8.   The Academy presents an annual televised awards show, known as the "Oscars" or the "Academy Awards."   *Id*.   The Academy owns the trademarks ACADEMY AWARD®, ACADEMY AWARDS®, OSCAR®, OSCARS®, and OSCAR NIGHT®.  *See* Liang Decl., ¶4, Exh. 2 [FAC], at ¶¶9-10.

GoDaddy is the world's leading ICANN-accredited domain name register,[2] with over 40 million domain names under its management.  *See* Liang Decl., ¶4, Exh. 2 [FAC], at ¶15.  GoDaddy operates the Page Parking Program, by which it directs domain names to single-page websites that contain paid advertisements instead of substantive content.  *See* Liang Decl., ¶4, Exh. 2 [FAC], at ¶24.  On hundreds of occasions, GoDaddy has unlawfully parked domain names that contain the Academy's trademarks, including OSCARS and ACADEMY AWARDS.  *See*

---

[2] "ICANN" refers to the Internet Corporation for Assigned Names and Numbers, a nonprofit organization which provides accreditation to qualified domain name registrants.

Liang Decl., ¶4, Exh. 2 [FAC], at ¶¶30-31, 35.  Despite receiving dozens of letters from the Academy requesting that GoDaddy stop using the Academy's trademarks in this fashion, GoDaddy refused to take action to prevent the Academy's trademarks from being parked and monetized.  *See* Liang Decl., ¶4, Exh. 2 [FAC], at ¶35.

As a result, on May 18, 2010, the Academy filed an action against GoDaddy and other defendants, based on their improper use of the Academy's trademarks in hundreds of domain names.  *See* Dkt. No. 1 [AMPAS I Complaint].  The AMPAS I case was extensively litigated in front of Judge Collins, who issued comprehensive summary judgment rulings in June 2013.  *Id.* at ¶3, Exh. 1 [Court's Order re Plaintiff's Motion for Partial Summary Judgment and Defendant's Motion for Summary Judgment, dated June 21, 2013, Dkt. No. 491].  While the Academy largely won this round of briefing, one of Judge Collins's rulings was that the Academy had identified certain domain names past the cut-off date set in the Court's Scheduling Order.  *Id.* at p. 8-9.

After settlement discussions failed, the Academy initiated the AMPAS II case on November 15, 2013, which asserts similar claims regarding an additional 96 domain names.  *See* Liang Decl., ¶4, Exh. 2 [FAC] at ¶¶ 29, 30).[3]  The AMPAS II case is identical to the AMPAS I case in all material respects, except that it related to a different group of domain names.  *Id.* at ¶5.  On February 14, 2014, the Court dismissed two of the domain names from the case, leaving 94 domain names in the AMPAS II Case (the "AMPAS II domain names").  *Id.*

On March 27, 2013, Judge Collins granted the Academy's motion to consolidate the AMPAS I and AMPAS II cases over GoDaddy's objection.  *Id.* at ¶6, Exh. 4 [Court's Order Granting the Academy's Motions to Consolidate, dated March 27, 2014, Dkt. No. 548].

---

[3] Paragraph 29 of the First Amended Complaint lists 94 domain names.  Paragraph 30 identifies another 2 domain names that are not listed in Paragraph 29.

1                **b.**    **The Court's Summary Judgment Orders Resolved**

2                      **Issues Regarding the AMPAS II Domain Names in**

3                      **the Academy's Favor.**

4        In its June 21, 2013 Summary Judgment Order, the Court held, *inter alia*,

5 that:  (a) "[t]he Academy's marks are distinctive"; (b) "GoDaddy 'uses' and

6 'traffics in' domain names in its Parked Pages Programs"; and (c) "GoDaddy is not

7 entitled to 15 U.S.C. § 1114(D)(iii)'s safe harbor."  *See* Liang Decl., ¶ 3, Exh. 1

8 [Dkt. 491] at p. 28.  In its July 24, 2014 Summary Judgment Order, the Court held

9 that 88 of the AMPAS II domain names "<u>are</u> confusingly similar as a matter to the

10 Academy's trademarks."  *Id.* at pp. 2-4 of 5 (emphasis in original); *see also* Liang

11 Decl., ¶7, Exh. 5 [Dkt. No. 568] at p. 2.[4]  In addition, the parties stipulated that

12 another 6 of the AMPAS II domain names are confusingly similar to the

13 Academy's trademarks (*see* Liang Decl. ¶7; *see also* Dkt. No. 563-1 at ¶ 6, Ex. E),

14 meaning that all remaining 94 AMPAS II domain names are confusingly similar as

15 a matter of law.

16                **c.**    **Discovery Regarding the AMPAS II Domain Names**

17                      **in the AMPAS I Case.**

18        As detailed in Section II.B.3.a. below, the Academy identified the AMPAS

19 II domain names for GoDaddy well-before it filed the AMPAS II case.  As detailed

20 in Section II.B.3.b. below, the Academy also produced discovery regarding the

21 AMPAS II domain names – prior to filing the AMPAS II case – in response to

22 GoDaddy's written discovery and 30(b)(6) deposition notices in the AMPAS I case

23 because (i) that written discovery and those 30(b)(6) notices encompassed the

24 AMPAS II domain names, and (ii) the Academy had believed and argued that the

25

---

26 [4] In its November 4, 2013 Summary Judgment Order, the Court held that 126 of the

27 AMPAS I domain names were "confusingly similar as a matter of law."  Dkt. 508
at pp. 1, 2.

28

AMPAS II domain names should have been included as part of the AMPAS I Case.

### d.   After Requesting An Additional Six Months for Fact Discovery, GoDaddy Waited Until the End of that Period to Serve Duplicative and Cumulative Discovery.

At the April 7, 2014 scheduling conference (which followed the consolidation of AMPAS II with AMPAS I), GoDaddy argued that it required an additional six months for fact discovery because it needed to obtain discovery from non-party Google. *See* Liang Decl., ¶8, Ex. 7 [April 7, 2014 Hearing Transcript] at 13:2-15:21. The Court accepted GoDaddy's argument, and subsequently set a fact discovery cutoff of September 26, 2014. *Id*. at ¶9, Exh. 8 [Joint Scheduling Order, dated April 21, 2014, Dkt. No. 559]. Since then, however, GoDaddy has not sought any discovery from Google. *Id*. at ¶10. GoDaddy also did not serve additional discovery regarding the AMPAS II domain names during April, May, June, and July of 2014. *Id*. at ¶11. In August 2014, GoDaddy finally served its Third Set of Requests for Production (the "Third Set of RFP") and a new 30(b)(6) notice of deposition of the Academy (the "New 30(b)(6) Deposition Notice") – which is the discovery at issue here. *Id*. at ¶11, Exhs. 9-10.

As detailed in Section II.B.4. below, GoDaddy's Third Set of RFP and New 30(b)(6) Deposition Notice are duplicative, cumulative, and unduly burdensome. The Academy served timely responses and objections to the Third Set of RFP on September 2, 2014. *See* Liang Decl., ¶12, Exhs. 11-12. Because the requests were duplicative of prior discovery for which the Academy already responded and produced documents (including documents regarding the AMPAS II domain names), the Academy objected, *inter alia*, on that basis. *Id*.

In an August 25, 2014 email, the Academy's counsel advised GoDaddy's counsel that the Academy would not designate and produce a witness in response

to the New 30(b)(6) Deposition Notice because it was cumulative and duplicative of the 30(b)(6) depositions that GoDaddy had already noticed and taken regarding the AMPAS II domain names.  *See* Liang Decl., ¶12, Exh. 13.    The Academy served GoDaddy with written objections to the New 30(b)(6) Deposition Notice on August 28, 2014.  *Id*. at ¶12, Exh. 12.

On September 11, 2014, GoDaddy's counsel sent the Academy's counsel a brief email, which asked if the Academy's counsel was available to discuss the Academy's objections to the Third Set of RFP and New 30(b)(6) Deposition Notice.  *See* Liang Decl., ¶13, Exh. 14.  During the resulting telephone call on September 16, 2014, the Academy's counsel explained the basis for its objections and explained that GoDaddy had not yet complied with Local Rule 37-1 in form or substance.  *Id*. at ¶13, Exh. 15.  The Academy's counsel further advised that it might supplement its responses to certain requests to indicate instances where the Academy had determined that no responsive documents existed.  *Id.*  Since GoDaddy's Third Set of RFP was duplicative of its prior document requests, the Academy had already completed (or was in the process of completing these searches) in connection with supplementing its productions.  *Id.*   On September 24, 2014, the Academy served its first supplemental responses and objections, along with a small, supplemental document production.  *Id*. at ¶16, Exh. 16.

Prior to serving this Joint Stipulation, GoDaddy's counsel did not send the Academy's counsel a Local Rule 37-1 letter regarding either the Third Set of RFP or the New 30(b)(6) Deposition Notice.  *See* Liang Decl., ¶14.

### 2.  GoDaddy's Motion to Compel Should Be Denied Because GoDaddy Failed to Comply with Local Rule 37-1.

GoDaddy's motion to compel should be denied in its entirety because GoDaddy failed to comply with Local Rule 37.

Before moving to compel discovery, Local Rule 37 requires the moving party to send opposing counsel a detailed letter that "shall identify each issue

and/or discovery request in dispute, shall state briefly with respect to each such issue/request the moving party's position (and provide any legal authority which the moving party believes is dispositive of the dispute as to that issue/request), and specify the terms of the discovery order to be sought." L.R. 37-1. Failure to comply with Local Rule 37 may result in the denial of a motion to compel and the imposition of sanctions. *See* L.R. 37-4. The case management orders in this action state that "The Court requires strict compliance with Local Rule 37." *E.g.*, AMPAS I, Dkt. No. 57 at p. 2 (Trial Order); AMPAS II, Dkt. No. 41 at p. 3 (Case Management Order).

Here, GoDaddy has failed to comply with Local Rule 37 because its counsel ***never*** provided the Academy's counsel with a letter detailing each issue in dispute, GoDaddy's position with respect to each such issue, or the terms of the discovery order to be sought. *See* Liang Decl., ¶14. Instead, GoDaddy's counsel sent the Academy's a curt, one sentence email asking for a telephonic meet and confer regarding the Third Set of RFP and New 30(b)(6) Deposition Notice. *Id*. at ¶13, Exh. 14. This email did ***not*** attach a L.R. 37-1 letter, did ***not*** state GoDaddy's position with respect to each such issue or provide any legal authority, and did ***not*** specify the terms of the discovery order to be sought.

Accordingly, GoDaddy failed to comply with Local Rule 37-1 before filing the present motion. For this reason alone, the Court should deny the motion and award the Academy its attorneys' fees and costs to oppose it.

### 3.   <u>GoDaddy's Motion Should Be Denied Because It Is Premised on Misstatements and Inaccuracies.</u>

GoDaddy's motion to compel is premised on misstatements and inaccuracies that are fatal to its motion, including (a) that all of the AMPAS II domain names were not disclosed before the Academy filed the AMPAS II case; and (b) that GoDaddy did not seek and obtain discovery regarding the AMPAS II domain names in the AMPAS I case.

### a.   The Academy Identified All of the AMPAS II Domain Names Before It Filed the AMPAS II Case.

GoDaddy admits that the Academy identified 61 of the AMPAS II domain names in the AMPAS I Case, but implies that it was not aware of the other 31 domain names at any time prior to the filing of the AMPAS II Case. *See* Section I.B. *supra*; McKown Decl., ¶ 5.  That implication is false.  The Academy advised GoDaddy's counsel about all of the AMPAS II domain names during the AMPAS I Case, before it filed the AMPAS II Case. *See* Liang Decl. ¶16.

Sixty-four (64) of the AMPAS II domain names (including the 61 that GoDaddy admits were identified during the AMPAS I Case) were identified on December 12, 2011 and June 5, 2012. *See* Liang Decl., ¶16.  Accordingly, these 64 AMPAS II domain names were identified well ***before*** both (i) the September 27, 2012 fact discovery cutoff in the AMPAS I Case (Dkt. No. 270), and (ii) the three 30(b)(6) depositions of the Academy, which occurred in late-October 2012 and late-November 2012. *Id.*

The other 31 domain names were identified at various points during the AMPAS I Case, and before the Academy filed the AMPAS II Case on November 15, 2013.  *See* Liang Decl. ¶18.  Twenty-one (21) of the 31 domain names were identified in cease and desist letters and similar written correspondence that the Academy's counsel generally sent directly to GoDaddy's lead counsel in this action between July 9, 2012 and July , 2013 (*see* Liang Decl., ¶18).[5]  The cease and desist letters identified 9 of the domain names by August 2, 2012 (*see* Liang Decl. 18), which was ***before*** the fact discovery cutoff and the 30(b)(6) depositions of the Academy in AMPAS I.   Those domain names were also identified in the

---

[5] All of these letters were sent directly to lead counsel for GoDaddy in this action, except for one. *See* Liang Decl. ¶18(d).  Lead counsel for GoDaddy received that letter as well, and counsel for the parties communicated about it by email. *See* Liang Decl. ¶18(d).

Academy's Second Supplemental Responses to GoDaddy's Second Set of Interrogatories, served on October 8, 2012, which was **before** the three 30(b)(6) depositions of the Academy.  *See* Liang Decl.¶18(a).  The other 12 domain names were identified in a June 20, 2013 filing in the AMPAS I case.  *Id.* at ¶18(c), Exh. 19 [Dkt. Nos. 488-1 and 488-2].

Accordingly, all of the AMPAS II domain names were identified during the AMPAS I case, and the vast majority of them were identified prior to the September 2012 fact discovery cutoff and the October/November 2012 30(b)(6) depositions in the AMPAS I case.

**b.      GoDaddy Sought and Obtained Discovery Regarding the AMPAS II Domain Names in the AMPAS I Case.**

GoDaddy's motion and the sworn declaration of its counsel depend upon GoDaddy's claim (i) that GoDaddy "did not conduct any discovery related to [the AMPAS 2 domain names]" (*see* McKown Decl. ¶ 4); and (ii) that GoDaddy has never sought or obtained discovery on the AMPAS II domain names regarding "any instance of actual confusions by members of the public, the dilution of AMPAS' trademarks, the lost revenues AMPAS alleges were diverted to GoDaddy, and how, when, and who discovered the [AMPAS II domain names]. *See* Section I.C.4. *supra*.  That is false, and is belied both by written discovery and 30(b)(6) deposition notices served by GoDaddy in the AMPAS I case and by the Academy's responses to that discovery.

i.      *GoDaddy's Document Requests in the AMPAS I Case Encompass the AMPAS II Domain Names, and the Academy Produced Such Documents.*

GoDaddy served its First Set of RFP in the AMPAS I case on March 10, 2011.  *See* Liang Decl., ¶19, Exh. 20.  Those broad requests defined the term "Domain Names" as "the alleged Deceptive Domain Names, as that phrase is defined in the First Amended Complaint."  *Id.* at p. 1.  The phrase "Deceptive

Domain Names" in the First Amended Complaint refers broadly to any "infringing parked domains" (Dkt. No. 58 at ¶ 3), and thus includes the AMPAS II domain names.

GoDaddy's Second Set of RFP in the AMPAS I case, served on November 21, 2011, also leaves no doubt that it seeks discovery about the AMPAS II domain names.   There, GoDaddy defined the term "Domain Names" as "the alleged Deceptive Domain Names, as that phrase is defined in the Second Amended Complaint, *including all additional domain names identified by AMPAS at any time during the course of this litigation.*"   *See* Liang Decl., ¶20, Exh. 21, at pp. 1-2 (emphasis added).   The definition of "Deceptive Domain Names" did not change in the Second Amended Complaint.   Dkt. No. 170 at ¶ 3.

Nearly all sixty-eight of those requests sought information about the "Domain Names" (including the AMPAS II domain names) and/or the Academy's claims, facts, or allegations regarding them, including, *inter alia*, actual and likely confusion (*see*, *e.g.*, Liang Decl., ¶20, Exh. 21 (RFP Nos. 20-23, 44, 45)); the financial impact of the domain names, such as dilution, lost profits, harm, and damages (*e.g.*, *id.*, Exh. 21 (RFP Nos. 27-29, 46, 54); the Academy's discovery of the domain names (*e.g.*, *id.*, Exh. 21 (RFP Nos. 9, 10, 33, 40); internal and external discussions about the domain names (*e.g.*, *id.*, Exh. 21 (RFP Nos. 4, 42, 53, 54; *id.*, Exh. 21 (RFP Nos. 60, 61, 62, 66); the fame of the Academy's marks (*e.g.*, *id.*, Exh. 21 (RFP Nos. 26)); and GoDaddy's bad faith.   *E.g.*, *id.*, Exh. 21 (RFP No. 31); *id.*, Exh. 21 (RFP Nos. 58, 59, 62, 63).   At least twenty-one of those requests specifically referred to "Domain Names" or "domain names."   *See* Liang Decl., ¶20, Exh. 21 (RFP Nos. 4, 9, 10, 16, 20-23, 30, 40-45, 53, 54); *id.*, Exh. 21 (RFP Nos. 59-62, 64-66).[6]

---

[6] GoDaddy served other written discovery in the AMPAS I Case that encompasses the foregoing issues and the AMPAS II domain names, including 35 interrogatories and requests for admission.   *See* Liang Decl., ¶21.

The Academy produced non-privileged responsive documents in the AMPAS I case related to these issues and the AMPAS II domain names (subject to its specific and general objections) because they were encompassed by GoDaddy's First and Second Sets of RFP – which also was consistent with the Academy's belief and position at the time that the AMPAS II domain names should be part of the AMPAS I Case.  *See* Liang Decl., ¶22.

Since a relatively small number of non-privileged documents related to these issues and the AMPAS II domain names were created after summary judgment motions were filed in April 2013 in the AMPAS I case (e.g., cease and desist letters that were sent directly to GoDaddy's litigation counsel), the Academy has produced these documents in a small supplemental production.  *See* Liang Decl., ¶22.

        *ii.*      *GoDaddy Already Served 30(b)(6) Deposition Notices Regarding the AMPAS II Domain Names and Then Took Those Depositions.*

GoDaddy served a Notice of 30(b)(6) Deposition of the Academy on June 26, 2012 and an Amended Notice of 30(b)(6) Deposition of the Academy on September 6, 2012 (the "Amended 30(b)(6) Deposition Notice").  *See* Liang Decl., Exh. 23, Exhs. 23-24.   Both notices contain the same definition of "Doman Names" as in its Second Set of Requests for Production, which ***"include[ed] all additional domain names identified by AMPAS at any time during the course of this litigation."***  *Id.* at ¶23, Exh. 23 at p. 2 (¶ 5 of the Definitions) (emphasis added); *id.*, Exh. 24 at p. 2 (¶5 of the Definitions).

The Amended 30(b)(6) Deposition Notice listed nineteen broad topics.  Like GoDaddy's document requests, nearly all of the topics are about the "Domain Names" (including the AMPAS II domain names) and/or claims, facts, or allegations regarding them, including, *inter alia*, actual and likely confusion (*e.g.*, *id.*, Exh. 24 (Category No. 1, 16)); the financial impact of the domain names, such

as dilution, lost profits, harm, and damages (*e.g.*, *id.*, Exh. 24 (Category Nos. 1, 15); the Academy's discovery of the domain names (*e.g.*, *id.*, Exh. 24 (Category Nos. 1, 2, 6)); internal and external discussions about the domain names (*e.g.*, *id.*, Exh. 24 (Category Nos. 1, 2, 6, 8, 9, 18, 19); *id.*, Exh. 24  (Interrogatory No. 30)); the fame of the Academy's marks (*e.g.*, *id.*, Exh. 24 (Category No. 1, 12, 13)); and GoDaddy's bad faith.  *E.g.*, *id.*, Exh. 24 (Category No. 10, 11).

The Academy designated one witness, Scott Miller, on the majority of the depositions topics, and made him available for ***two full days***.  *See* Liang Decl., ¶¶24, 26.  The Academy designated another witness, Janet Weiss, on two topics, and made her available for ***a full day***.  *Id.*  Thus, GoDaddy had an opportunity to depose the Academy's designees for ***three full days*** regarding the vast majority of the AMPAS II domain names, which were covered by and included among the topics noticed for deposition.  *Id.*

GoDaddy conducted the 30(b)(6) depositions of Scott Miller on October 29, 2012 and November 27, 2012, and the 30(b)(6) deposition of Ms. Weiss on November 28, 2012.  *Id.* at ¶24.  Despite the fact that the Academy had made Mr. Miller and Ms. Weiss available for 7 hours of testimony on each day (a total of 21 hours), GoDaddy elected not to use all of that time.  *Id.*  In fact, at the November 27, 2012 deposition, the Academy's counsel stated on the record:

> Before – before we start, Aaron, I want to make a statement for the record.  My understanding is that the 30(b)(6) day one of Mr. Miller started at 10:10 a.m. and ended at 3:27 p.m. even though we were prepared to go longer on the first day.  We're prepared to go the full seven hours today.  But if you intend to cut it off early or bring Mr. Miller back for a third day when we're ready to go the full seven hours, we'll move for a protective order, but please go ahead.

*Id.* at ¶26.  Despite this warning, GoDaddy's counsel elected to begin the November 27, 2012 deposition of Mr. Miller at 9:14 a.m. and conclude it at 3:05

p.m., and to begin the November 28, 2012 deposition of Ms. Weiss at 10:06 a.m. and conclude it at 4:01 p.m.  *Id*. at ¶24.

GoDaddy's counsel chose not to ask specific questions about any particular AMPAS I or AMPAS II domain names during the October 29 and November 27, 2012 deposition.  *Id*. at ¶27-28.  At the November 27, 2012 deposition, GoDaddy's counsel also did not conduct a detailed inquiry about any particular domain names. *Id*.  GoDaddy's counsel only made reference to particular domain names when reviewing certain cease and desist letters.  *Id*.  GoDaddy marked 34 cease and desist letters (dated from January 11, 2006 to July 22, 2009) as exhibits to the deposition.  *Id*.  At the time, however, GoDaddy had in its possession more than 90 cease and desist letters from February 2010 to the end of August 2012, as well as other information about the vast majority of the AMPAS II domain names.  *Id*. Despite the fact the these domain names were covered by the Amended 30(b)(6) Notice and despite the fact that GoDaddy had three full days (i.e., 21 hours) of witness testimony available to it, GoDaddy chose not to ask a single question about any of those letters or particular domain names.  *Id*.

By and large, GoDaddy's counsel asked questions about both the AMPAS I *and* AMPAS II domain names on each of the noticed topics without needing to make reference to any particular domain names and without electing to ask following up questions about any particular domain names.   Accordingly, GoDaddy is not only attempting to obtain duplicative and cumulative discovery through the New 30(b)(6) Deposition Notice and this motion, but also appears to be making pretextual arguments in an effort to unduly burden and harass the Academy.

**4.    <u>GoDaddy's Motion to Compel Should Be Denied Because It Seeks to Compel Cumulative and Duplicative Discovery.</u>**

GoDaddy claims the Academy's objection to the discovery at issue is based on an argument that GoDaddy waived the right to conduct discovery regarding the

AMPAS II domain names.  This assertion also is false.  To the contrary, the Academy's position has at all times been principally based on the fact that the discovery at issue is cumulative, duplicative, and thus unduly burdensome.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (The court must limit the frequency or extent of discovery if it determines that "the discovery sought is unreasonably cumulative or duplicative"); *see also Gusman v. Comcast Corp.,* 298 F.R.D. 592, 595 (S.D. Cal. 2014) (A "court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative"); *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 686 (N.D. Cal. 2006) ("[A] district court may in its discretion limit discovery on a finding that 'the discovery sought is unreasonably cumulative or duplicative…'").

        **a.**     **GoDaddy's Third Set of RFP is Cumulative and Duplicative of its First and Second Sets of RFP.**

The Third Set of RFP is comprised almost entirely of document requests that are ***identical*** to those in the First and Second Sets of RFP, except for adding the term "AMPAS II" in front of "Domain Names."  *Compare* Liang ¶11, Exh. 9, *with* ¶¶19-20, Exhs. 20-21 (in particular, *compare* Request No. 70 *with* Request No. 4; Request No. 72 *with* Request No. 9; Request No. 73 *with* Request No. 10; Request No. 75 *with* Request No. 12; Request No. 76 *with* Request No. 20; Request No. 77 *with* Request No. 21; Request No. 78 *with* Request No. 22; Request No. 79 *with* Request No. 23; Request No. 80 *with* Request No. 27; Request No. 81 *with* Request No. 28; Request No. 82 *with* Request No. 29; Request No. 83 *with* Request No. 30; Request No. 84 *with* Request No. 31; Request No. 85 *with* Request No. 33; Request No. 86 *with* Request No. 34; Request No. 87 *with* Request No. 35; Request No. 88 *with* Request No. 40; Request No. 89 *with* Request No. 42; Request No. 91 *with* Request No. 43; Request No. 92 *with* Request No. 44; Request No. 93 *with* Request No. 45; Request No. 94 *with* Request No. 46; Request No. 95 *with* Request No. 49; Request No. 96 *with*

Request No. 50; Request No. 97 *with* Request No. 51; Request No. 98 *with* Request No. 52; Request No. 99 *with* Request No. 53; Request No. 101 *with* Request No. 66).   This and similar minor edits create a distinction without a difference because, as described above, the broad definition of "Domain Names" in the First and Second Sets of RFP encompasses the AMPAS II domain names. Moreover, the few requests that were not copied and pasted from prior discovery, as a general matter, are encompassed by other requests in the First and Second Sets of RFP (and have been satisfied through the production of documents in this action, subject to the Academy's general and specific objections).[7]

GoDaddy's assertion that the Academy failed to make a reasonable inquiry regarding the Third Set of RFP is patently false.   Because the requests are cumulative and duplicative of (in most instances identical to) the First and Second Sets of RFP, the Academy (a) has already conducted a reasonable inquiry into all three sets of RFP; (b) has also produced documents responsive to those requests (subject to its objections); and (c) has supplemented its production with responsive documents created after the April 2013 summary judgment briefing in the AMPAS I case (also subject to its objections).

**b.    GoDaddy's New 30(b)(6) Deposition Notice is Duplicative of Its Earlier 30(b)(6) Deposition Notice, About Which GoDaddy Has Already Taken Three Depositions.**

The topics listed in the 30(b)(6) deposition notice that GoDaddy served in August 2014 (the "New 30(b)(6) Deposition Notice") are almost identical to those in the Amended 30(b)(6) Deposition Notice that GoDaddy served in September

---

[7] Request No. 90, which seeks "[a]ll documents and things relating to AMPAS' communications with Google," is overbroad and unduly burdensome (among other problems), as it is not limited to documents regarding the AMPAS II domain names.   If it were limited in that fashion, it would be encompassed by other requests and satisfied by the Academy's productions.

2012 and employed to conduct three depositions.  In general, GoDaddy created the New 30(b)(6) Deposition Notice by copying topics verbatim from the notice served in September 2012, except for making minor changes (e.g., inserting the term "AMPAS II" in front of "Domain Names").  *Compare* Category No. 1 in Liang Exh. 10 *with* Category No. 1 in Liang Ex.24; Category No. 2 in Liang Exh. 10 *with* Category No. 6 in Liang Exh. 24; Category No. 3 in Liang Exh. 10 *with* Category No. 7 in Liang Ex. 24; Category No. 4 in Liang Ex. 10 *with* Category Nos. 8, 18, 19 in Liang Ex. 24; Category No. 5 in Liang Exh. 10 *with* Category No. 9 in Liang Exh. 24; Category No. 6 in Liang Exh. 10 *with* Category No. 10 in Liang Ex. 24; Category No. 7 in Liang Ex. 10 *with* Category No. 11 in Liang Ex. 24; Category No. 8 in Liang Exh. 10 *with* Category No. 12 in Liang Ex. 24; Category No. 9 in Liang Ex. 10 *with* Category No. 13 in Liang Ex. 24; Category No. 10 in Liang Exh. 10 *with* Category No. 15 in Liang Ex. 24.  Again, the insertion of "AMPAS II" and similar edits creates only a distinction without a difference because, as described above, the broad definition of "Domain Names" in the September 2012 Amended 30(b)(6) Deposition Notice encompasses the AMPAS II domain names.

The New 30(b)(6) Deposition Notice contains only one topic (i.e., Category No. 11) that was not copied and pasted from the prior notice.  *See* Liang Decl., ¶11, Exh. 10.   That topic, which relates to dilution, is encompassed by the prior notice and was addressed during the 30(b)(6) deposition that GoDaddy took on October 29, 2012.  *See* Liang Decl., ¶29, Exh. 25.  GoDaddy should not be permitted to take needlessly duplicative depositions.  *See Tennison v. Henry*, 203 F.R.D. 435, 444 (N.D. Cal. 2001) (Denying requests for additional depositions because "the discovery would be cumulative"); *U.S. E.E.O.C. v. Pinal Cnty.*, 714 F. Supp. 2d 1073, 1079 (S.D. Cal. 2010) (Finding that the deposition sought by Respondents "is unreasonably cumulative, duplicative, and seeks information that can be obtained from some other source that is less burdensome").

/ / /

Numerous courts have held that a party's attempts to repeat Rule 30b6 depositions is disfavored.  *See, e.g.*, *Graebner v. James River Corp.,* 130 F.R.D. 440, 441 (N.D. Cal. 1989) (Rule 26(c) "gives the court broad discretion to issue a protective order regarding discovery" and acknowledging "repeat depositions are disfavored"); *Carrera v. First Am. Home Buyers Prot. Co*., 13CV1585-BAS JLB, 2014 WL 3695403 at *3 (S.D. Cal. July 23, 2014) (Acknowledging that "a second Rule 30(b)(6) deposition is not allowed without both prior leave of court and a determination that the deposition complies with Rule 26(b)(2)"); *Jennifer A. v. United Healthcare Ins. Co.,* CV 11-1813-DSF PLAX, 2012 WL 748569 at *3 (C.D. Cal. Jan. 31, 2012) (Granting motion for a protective order and ruling that "the Rule 30(b)(6) deposition of defendant noticed by plaintiff is prohibited from proceeding"); *In re Katrina Canal Breaches Consol. Litig.*, CIV.A. 05-4182, 2008 WL 4882392 at *1 (E.D. La. Nov. 4, 2008) (Protective order was properly granted concerning Plaintiff's proposed 30(b)(6) deposition, insofar as deposition topics had previously been addressed in a prior 30(b)(6) deposition, and "the new deposition was cumulative and overly burdensome").

### 5. GoDaddy's Motion to Compel Should Be Denied Because It Seeks Discovery That Would Be Unduly Burdensome, In Light of the Court's Summary Judgment Orders and GoDaddy's Admissions.

In this Joint Stipulation, GoDaddy claims that it requires additional discovery on the AMPAS II domain names regarding the following topics:  (i) "any instance of actual confusion by members of the public," (ii) "the dilution of AMPAS' trademarks," (iii) "the lost revenues AMPAS alleges were diverted to GoDaddy," and (iv) "how, when, and who discovered the [AMPAS II domain names]."  *See* Section I.C.4. *supra*.  In addition to the fact that discovery on these topics is duplicative of prior discovery (as described above), there also is no need for undergoing the burden of additional discovery on this subject because they

1  are either immaterial to the AMPAS II domain names or GoDaddy has admitted it

2  does not require such discovery.

                    **a.**    **Additional Discovery on the AMPAS II Domain**

                            **Names Regarding "Instances of Actual Confusion"**

                            **and "Dilution of AMPAS' Trademarks" Would Be**

                            **Unduly Burdensome, In Light of the Court's**

                            **Summary Judgment Orders.**

The ACPA holds a person liable for cyberpiracy if two elements are satisfied. The first element is that the person "has bad faith intent to profit from that mark." *See* 15 U.S.C. 1125(d)(1)(A)(i). The second element, which is relevant here, is that the person "registers, traffics in, or uses a domain name that – (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark; (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; *__or__* (III) is a trademark, word, or name protected by reason of Section 706 of Title 18 or section 220506 of Title 36." 15 U.S.C. 1125(d)(1)(A)(ii) (emphasis added). Because the second element uses the disjunctive word "or", evidence of dilution is immaterial if the defendant traffics in or uses a domain name that "in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark."

Here, the Academy has already established (i) that the Academy's trademarks are distinctive, and (ii) that all 94 of the AMPAS II domain names are confusingly similar to the Academy's marks. Specifically, the Court ruled on summary judgment that the Academy's trademarks are distinctive as a matter of law (Dkt. 491 at p. 28), and that 88 of the AMPAS II domain names are confusingly similar as a matter of law. Dkt. No. 569 at pp. 2-4 of 5. GoDaddy has

stipulated the remaining 6 AMPAS II domain names are confusingly similar as a matter of law.  *See* Liang Decl. ¶7; *see also* Dkt. No. 563-1 at ¶ 6, Ex. E.

Moreover, the Academy already answered interrogatories on the issue of actual confusion.  GoDaddy's Interrogatory No. 11 asked the Academy to "[d]escribe in detail all instances of actual consumer confusion relating to any of the Domain Names."  The Academy provides supplemental answers to this interrogatory and GoDaddy never sought to compel further answers.  Though given the definition of "Domain Names" in GoDaddy's interrogatory encompasses the AMPAS II domain names, the Academy can supplement its answer to Interrogatory No. 11 to make clear that its same answer applies to the AMPAS II Domain Names.

Accordingly, proof of dilution and/or actual confusion will not be necessary to establish ACPA liability for the AMPAS II domain names.  Any additional discovery regarding those topics would be unduly burdensome.

### b.   Additional Discovery on the AMPAS II Domain Names Regarding Lost Revenues Would Be Unduly Burdensome Because the Academy is Only Seeking Statutory Damages.

Under the ACPA, "the plaintiff may elect . . . to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just."  15 U.S.C. 1117(d).  As GoDaddy admits in Section I.C.3. above, the Academy has elected to recover statutory damages for each of GoDaddy's violations of the ACPA in AMPAS I.  The same holds true in AMPAS II.  Accordingly, any additional discovery regarding the Academy's lost profits would be immaterial and unduly burdensome.

/ / /

/ / /

### c. Additional Discovery Regarding "How, When, And Who Discovered" the AMPAS II Domain Names Would Be Unduly Burdensome Because GoDaddy Admits It Has This Information.

GoDaddy's claim in this Joint Stipulation that it needs discovery regarding "how, when, and who discovered" the AMPAS II domain names is directly contradicted by its counsel's prior statements.  On August 25, 2014, GoDaddy's counsel stated in an email regarding the AMPAS II domain names that GoDaddy "already understand[s] that the domain names were discovered by Presbrey's automated software.  Nor are we interested in deposing AMPAS to inquire into counsel's decision on which domain names were included in the two suits."  *See* Liang Decl., ¶12, Exh. 13.  For this reason alone, any additional discovery on this topic would be immaterial and unduly burdensome.

To the extent that GoDaddy intends to argue that additional discovery on this topic is relevant to its laches defense, that argument too is invalidated by the admission by GoDaddy's counsel above that they already have sufficient information on how/when/who the domain names were discovered.  Moreover, discovery regarding laches is irrelevant and unduly burdensome because, *inter alia*, if the Court finds that GoDaddy acted in bad faith under the ACPA (i.e., the first element), then GoDaddy will not be able to raise a laches defense at all.  *Web-adviso v. Trump*, 927 F. Supp. 2d 32, 49 (E.D.N.Y. 2013) (concluding that a finding of bad faith under the ACPA "prevents [defendant] from benefiting from laches as a matter of law").

### 6. The Court Should Deny GoDaddy's Specious Request for Sanctions, and Should Sanction GoDaddy for Failing to Comply with L.R. 37-1 and Other Discovery Abuses.

GoDaddy's motion includes specious and harassing requests for monetary sanctions under Rule 37, Rule 26(g), Rule 30 and the Court's inherent authority

and for terminating issue sanctions.   The Court should deny these baseless requests, and issue sanctions against GoDaddy for failing to comply with L.R. 37-1 and for other discovery abuses.

First, GoDaddy requests monetary sanctions under Rule 37 based on the Academy's refusal to provide cumulative, duplicative, and unduly burdensome discovery in response to the New 30(b)(6) Deposition Notice and the Third Set of RFP.   As described above, the Academy's position is not only colorable, it is correct.   Moreover, GoDaddy – not the Academy – violated Rule 37 by failing to comply with L.R. 37-1, even after being warned by the Academy's counsel that it had failed to do so.   As described above, Rule 37 and L.R. 37 authorize the Court to sanction GoDaddy's conduct here.

Second, GoDaddy requests monetary sanctions under Rule 26(g) by arguing that the Academy made no inquiry prior to responding to the Third Set of RFP and that its objections to the New 30(b)(6) Deposition Notice lack merit.   As described above, nothing could be further from the truth.   Moreover, GoDaddy – not the Academy – has violated this rule.   For example, GoDaddy knowingly made false and meritless objections in its responses to the Academy's Fourth Set of Interrogatories and Sixth Set of Request for Production.   *See* Liang Decl. ¶31.   In particular, GoDaddy objected on the grounds that Judge Collins had limited the scope of fact discovery (*id.*at ¶31, but it knew that to be false as GoDaddy has claimed here that "No limitations were placed on the scope of discovery of the consolidated cases."   *See* McKown Decl. ¶ 7.

Third, GoDaddy requests monetary sanctions under Rule 30 by claiming that the Academy has "impede[d], delay[ed] or frustrate[d] *the fair* examination of the deponent."   As described above, that is completely false because the New 30(b)(6) Deposition Notice is not "fair."   To the contrary, it is cumulative and duplicative of (and in most cases identical to) the prior 30(b)(6) notice and depositions.   If

anything, the New 30(b)(6) Deposition Notice and this motion are an example of GoDaddy's scorched earth tactics designed to harass the Academy.

Fourth, GoDaddy seeks monetary sanctions under the Court's inherent authority by, again, repeating the same baseless arguments. The Court should reject this request for the reasons stated above.

Finally, GoDaddy requests terminating issue sanctions for the same specious reasons. In addition to being baseless for the reasons stated above, this argument also fails because the Court has already issued summary judgment rulings in the Academy's favor, which demonstrate that its claims regarding the confusingly similar AMPAS II domain names have merit. Issue sanctions are, of course, inappropriate in such cases. Moreover, GoDaddy seeks sanctions about issues that are not even discussed anywhere else in its motion and have nothing to do with this discovery dispute. Accordingly, the request for issue sanctions is nothing more than another one of GoDaddy's improper attempts to harass the Academy.

DATED: September 26, 2014      By  /s/ Enoch Liang

BOIES, SCHILLER & FLEXNER, LLP
Stuart Singer (*pro hac vice*)
David Nelson (*pro hac vice*)
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
*Attorneys for Plaintiff*

LEE TRAN & LIANG APLC
James M. Lee, California Bar No. 192301
Enoch H. Liang California Bar No. 212324
601 South Figueroa Street, Suite 4025
Los Angeles, CA 90017
Telephone: (213) 612-3737
Facsimile: (213) 612-3773
*Additional Attorneys for Plaintiff*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FOOTE, MEYERS, MIELKE FLOWERS LLC
Kathleen Chavez (*pro hac vice*)
Matthew Herman (*pro hac vice*)
30 North LaSalle Street, Suite 2340
Chicago, IL 60602
Telephone: (630) 232-6333
Facsimile: (630) 845-8982
*Additional Attorneys for Plaintiff*

1

## <u>Certificate of Service</u>

2

Pursuant to L.R. 5–3, I hereby certify that on October 2, 2014, I

3

electronically filed the foregoing documents, JOINT STIPULATION re

4

GODADDY'S MOTION TO COMPEL; DECLARATION OF AARON M.

5

McKOWN/EXHIBITS and DECLARATION OF ENOCH LIANG/EXHIBITS,

6

with the Clerk of the Court by using the CM/ECF system and that the foregoing

7

document is being served on all counsel of record identified below via

8

transmission of Notice of Electronic Filing generated by CM/ECF:

9

10

11

12

13

14

15

| RING BENDER LLLP<br>Aaron M. McKown (CA Bar No. 208781)<br>Paula Zecchini (CA Bar No. 238731)<br>2 Park Plaza, Suite 550<br>Irvine, CA 92612<br>Tel: 949.202.5818<br>Fax: 949.679.7939 | BOIES, SCHILLER & FLEXNER, LLP<br>Stuart Singer (*pro hac vice*)<br>David Nelson (*pro hac vice*)<br>401 East Las Olas Blvd., Suite 1200<br>Fort Lauderdale, FL 33301<br>Telephone: (954) 356-0011<br>Facsimile: (954) 356-0022 |
| --- | --- |
| LEE TRAN & LIANG APLC<br>James M. Lee, California Bar No. 192301<br>Enoch H. Liang California Bar No. 212324<br>601 South Figueroa Street, Suite 4025<br>Los Angeles, CA 90017<br>Telephone: (213) 612-3737<br>Facsimile: (213) 612-3773 | FOOTE, MEYERS, MIELKE FLOWERS  LLC<br>Kathleen Chavez (*pro hac vice*)<br>Matthew Herman (*pro hac vice*)<br>30 North LaSalle Street, Suite 2340<br>Chicago, IL 60602<br>Telephone: (630) 232-6333<br>Facsimile: (630) 845-8982 |

16

17

18

19

20

21

22

23

24

/s/ Laura Juarez
LAURA JUAREZ

25

26

27

28