1   Aaron M. McKown, California Bar No. 208781
    Paula L. Zecchini, California Bar No. 238731
2   **RING BENDER  LLLP**
3   2 Park Plaza, Suite 550
    Irvine, California  92614
4   Telephone.: (949) 202-5810
    Facsimile:   (949) 679-7939
5   E-Mail:       amckown@ringbenderlaw.com
                  pzecchini@ringbenderlaw.com
6
7   Attorneys for Defendant
    GODADDY.COM, LLC
8
                    **UNITED STATES DISTRICT COURT**
9
                    **CENTRAL DISTRICT OF CALIFORNIA**
10

11   ACADEMY OF MOTION PICTURE           Case No. CV10-3738 AB (CWx)
     ARTS AND SCIENCES, a California      [consolidated with Case No. CV13-
12   nonprofit corporation,               08458-ABC (CW)
13                 Plaintiff,             Assigned to Hon. André Birotte Jr.
14        v.                             **MEMORANDUM OF POINTS AND
                                         AUTHORITIES IN SUPPORT OF
15                                       DEFENDANT GODADDY.COM,
     GODADDY.COM, INC., a Delaware       LLC'S MOTION FOR PARTIAL
16   corporation; THE GODADDY GROUP      SUMMARY JUDGMENT**
     INC., a Delaware corporation;
17   DOMAINS BY PROXY, INC., a           Date:          February 23, 2015
     Delaware Corporation;               Time:          10:00 a.m.
18   GREENDOMAINMARKET.COM, an           Courtroom:     790
     unknown entity; BDS, an unknown
19   entity; and XPDREAMTEAM LLC, a      Complaint Filed:   May 18, 2010
     California limited liability corporation,   Trial Date:   June 2, 2015
20
21                 Defendants.
22
23
24
25
26
27
28

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

# <u>TABLE OF CONTENTS</u>

I.  **INTRODUCTION** ......................................................................................1

II. **RELEVANT FACTUAL BACKGROUND** .........................................3

   A.  THERE IS NO EVIDENCE OF WIDESPREAD CONSUMER RECOGNITION OF ANY OF THE AMPAS MARKS ....................................................................3

   B.  THE EVIDENCE IS CLEAR THAT AT LEAST FOUR (4) OF THE DOMAIN NAMES AT ISSUE DID NOT PARTICIPATE IN THE PARKED PAGE PROGRAM ...................3

   C.  THERE IS NO EVIDENCE THAT GODADDY IS IN THE POSSESSION OF ANY MONIES WRONGFULLY OBTAINED FROM AMPAS ..........................................4

   D.  THERE IS NO ONGOING OR THREATENED MISCONDUCT ON THE PART OF GODADDY FOR THE COURT TO ENJOIN .........................................................4

   E.  THE EVIDENCE IS CLEAR THAT AMPAS IS LITIGATING THIS ACTION ON BEHALF OF ITS OWN FINANCIAL INTERESTS AND NOT THE GENERAL PUBLIC ..4

III. **LEGAL STANDARD** ................................................................................5

IV. **ARGUMENT** ..............................................................................................6

   A.  AMPAS CANNOT ESTABLISH THAT THE DOMAIN NAMES AT ISSUE ARE "DILUTIVE OF" THE AMPAS MARKS UNDER THE ACPA ...............................6

     1.  *AMPAS Cannot Present Evidence Upon Which To Base A Determination That Any Of Its Marks Are Famous* .............................................................7

     2.  *Given AMPAS' Inability To Prevail On Its "Dilutive Of" Claim, This Court Should Order The Dismissal Of Fourteen (14) Domain Names From This Lawsuit* .....................................................................................................11

   B.  AMPAS' CANNOT ESTABLISH THAT GODADDY TRAFFICKED IN OR USED AT LEAST FOUR (4) OF THE DOMAIN NAMES AT ISSUE ..................................11

   C.  AMPAS' CLAIM FOR VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS SECTION 17200 FAILS AS A MATTER OF LAW ........................12

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

i

1.   *AMPAS Cannot Present Evidence Entitling It to Restitution* ...................... 13

2.   *AMPAS Cannot Present Evidence Entitling It To Injunctive Relief* ............ 14

   a.   The Undisputed Evidence Demonstrates AMPAS' Request for Injunctive Relief is Moot ....................................................................... 14

   b.   AMPAS Lacks Article III Standing to Seek Injunctive Relief under Section 17200 ..................................................................................... 16

D.   AMPAS CANNOT PREVAIL ON ITS CLAIM FOR ATTORNEYS' FEES PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 1021.5 ........................ 17

1.   *The Court May Resolve AMPAS' Entitlement To Attorneys' Fees Under Section 1021.5 On Summary Judgment* ...................................................... 17

2.   *AMPAS Is Not Entitled To Attorney's Fees Pursuant To California Code Of Civil Procedure Section 1021.5* ......................................................... 18

   a.   AMPAS Cannot Demonstrate The Instant Litigation Can or Will Confer A Significant Benefit Upon The Public Or Advanced The Public Interest ........................................................................................................... 19

   b.   AMPAS Cannot Satisfy The Financial Benefit Prong Of The Section 1021.5 Test ......................................................................................... 21

   c.   The Pre-Requisite That AMPAS' Personal Stake Be Insufficient To Encourage The Action Is Lacking ....................................................... 24

V.   **CONCLUSION** ..............................................................................**25**

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

# TABLE OF AUTHORITIES

## CASES

*Accuride Int'l, Inc. v. Accuride Corp.*,

   871 F.2d 1531 (9th Cir. 1989)...........................................................................7

*Advantage Rent–A–Car, Inc. v. Enterprise Rent–A–Car, Co.*,

   238 F.3d 378 (5th Cir. 2001)........................................................................8, 9

*Alch v. Superior Court*,

   122 Cal.App.4th 339 (2004)............................................................................13

*American Auto. Ins. Co. v. Grimes*,

   No. 5:02-CV 066-C, 2004 WL 246989 (N.D. Tex. Feb. 10, 2004).....................18

*American Nat'l Fire Ins. Co. v. Kenealy*,

   72 F.3d 264 (2nd Cir. 1995)............................................................................18

*Anderson v. Liberty Lobby, Inc.*,

   477 U.S. 242 (1986)......................................................................................5, 6

*Avery Dennison Corp. v. Sumpton*,

   189 F.3d 868 (9th Cir. 1999).....................................................................7, 8, 9

*Bank of the West v. Sup. Ct.*,

   2 Cal.4th 1254 (1992)....................................................................................13

*Bd. of Natural Resources v. Brown*,

   992 F.2d 937 (9th Cir. 1993)...........................................................................16

*Beach Colony II Ltd. v. California Coastal Comm'n*, 166 Cal.App.3d 106 (1985) 22, 23, 24

*Beasley v. Wells Fargo Bank, N.A.*,

   235 Cal. App. 3d 1407 (1991).........................................................................20

*BigStar Entertainment, Inc. v. Next Big Star, Inc.*,

   105 F.Supp.2d 185 (S.D.N.Y. 2000)................................................................10

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

*Bosley Medical Inst., Inc. v. Kremer,*

403 F.3d 672 (9th Cir. 2005)..........................................................................6, 11

*Bowman v. City of Berkeley,*

131 Cal. App. 4th 173 (2005).................................................................................19

*Breuer Elec. Mfg. Co. v. Hoover Co.,*

No. 97 C 7443, 1998 WL 427595 (N.D. Ill. Jul 23, 1998) ....................................8

*Caro v. Procter & Gamble Co.,*

18 Cal.App.4th 644 (1993)....................................................................................15

*Celotex Corp. v. Catrett,*

477 U.S. 317 (1986) ................................................................................................5

*Cisneros v. U.D. Registry, Inc.,*

 39 Cal.App.4th 548 (1995) ...................................................................................15

*City of Los Angeles v. Lyons,*

461 U.S. 95 (1983) ................................................................................................16

*Clayworth v. Pfizer, Inc.,*

49 Cal.4th 758 (2010)............................................................................................13

*Coach Servs., Inc. v. Triumph Learning LLC,*

668 F.3d 1356 (Fed. Cir. 2012)...............................................................................7

*Coach, Inc. v. Sac a Main,*

2012 WL 5464347 (E.D. Cal. Nov. 7, 2012) .........................................................7

*Conservatorship of Whitely,*

50 Cal.4th 1206 (2010)..........................................................................................23

*Families Unafraid to Uphold Rural El Dorado County v. Board of Supervisors,*

79 Cal.App.4th 505 (2000)...............................................................................21, 24

*Feitelberg v. Credit Suisse First Boston LLC,*

134 Cal.App.4th 997 (2005)..................................................................................15

*Galante Vineyards v. Monterey Peninsula Water Management Dist.,*

60 Cal.App.4th 1109 (1997)..................................................................................21

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

iv

*Gasaway v. Northwestern Mut. Life Ins. Co.,*
26 F.3d 957 (9th Cir. 1994)................................................................5

*Gold v. Los Angeles Democratic League,*
49 Cal.App.3d 365 (1975)..............................................................14

*Graham v. DaimlerChrysler,*
34 Cal.4th 553 (2005)....................................................................19

*Hangarter v. Provident Life & Accident Ins. Co.,*
373 F.3d 998 (9th Cir. 2004)..........................................................16

*Hodgers-Durgin v. De La Vina,*
199 F.3d 1037 (9th Cir. 1999)........................................................16

*Korea Supply Co. v. Lockheed Martin Corp.,*
29 Cal. 4th 1134 (2003)...........................................................12, 13

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.,*
633 F.3d 1158 (9th Cir. 2011)..........................................................8

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992).......................................................................16

*M2 Software, Inc. v. Viacom, Inc.,*
119 F.Supp.2d 1061 (C.D. Cal. 2000)..............................................8

*Madrid v. Perot Systems Corp.,*
130 Cal.App.4th 440 (2005)...........................................................14

*Manzon v. Stant Corp.,*
202 F. Supp. 2d 851 (S.D. Id. 2002).............................................18

*Nelson v. King County,*
895 F.2d 1248 (9th Cir. 1990)........................................................16

*Nissan Motor Co. v. Nissan Computer Corp.,*
378 F.3d 1002 (9th Cir. 2004)..........................................................7

*Palo Alto-Menlo Park Yellow Cab Co., Inc. v. Santa Clara County Transit Dist.,*
65 Cal.App.3d 121 (1976)..............................................................14

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

1  *PostX Corp. v. docSpace Co., Inc.,*
2     80 F.Supp.2d 1056 (N.D. Cal. 1999) ....................................................... 8
3  *Press v. Lucky Stores, Inc.,*
4     34 Cal.3d 311 (1983)............................................................................21
5  *Resolution Trust Corp. v. Tassos,*
6     764 F. Supp. 442 (S.D. Tex. 1990) ..................................................... 18
7  *Rosetta Stone v. Google, Inc.,*
8     676 F.3d 144 (4th Cir. 2012)................................................................ 8
9  *San Diego County Gun Rights Comm. v. Reno,*
10    98 F.3d 1121 (9th Cir. 1996)............................................................. 16
11 *Satrap v. PG&E,*
12    42 Cal.App.4th 72 (1996)......................................................21, 22, 24
13 *Scott v. Pasadena Unified Sch. Dist.,*
14    306 F.3d 646 (9th Cir. 2002)............................................................. 16
15 *Self-Insurance Institute of America, Inc. v. Software and Information Industry Ass.,*
16    208 F. Supp. 2d 1058 (CD. Cal. 2000).................................................. 8
17 *Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*
18    202 F.3d 489 (2d Cir. 2000), cert. denied, 530 U.S. 1262 (2000) ........................ 12
19 *Star Markets, Ltd. v. Texaco Refining & Marketing, Inc.,*
20    950 F. Supp. 1030 (D. Haw. 1996) .................................................8, 10
21 *T.W. Elec. Serv. v. Pacific Elec. Contractors,*
22    809 F.2d 626 (9th Cir. 1987)................................................................ 5
23 *TCPIP Holding Co., Inc. v. Haar Communications, Inc.,*
24    244 F.3d 88 (2d Cir. 2001)......................................................8, 9, 10
25 *Thane Int'l, Inc. v. Trek Bicycle Corp.,*
26    305 F.3d 894 (9th Cir. 2002)................................................................ 8
27 *Top Banana LLC v. Dom's Wholesale & Retail Center, Inc.,*
28    No. 04-CV-2666, 2005 WL 1149774 (S.D.N.Y. May 16, 2005) ........................ 18

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT GODADDY.COM'S MOTION FOR PARTIAL SUMMARY JUDGMENT

*United States v. Viltrakis,*

   108 F.3d 1159 (9th Cir. 1997) ................................................................. 16

*Woodland Hills Residents Association, Inc. v. City Council of Los Angeles,*

   23 Cal.3d 917 (1979) ............................................................................. 21

S̲T̲A̲T̲U̲T̲E̲S̲

11 U.S.C. § 1125(c) .................................................................................. 10

15 U.S.C. § 1125(c)(2) ................................................................................ 7

Cal. Bus. & Prof. C. § 17203 ................................................................... 13

Cal. Code Civ. Proc. § 1021.5 ........................................................... 17, 24

R̲U̲L̲E̲S̲

Fed. R. Civ. P. 56(c) .................................................................................. 5

Fed. R. Civ. P. 56(e) .................................................................................. 5

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT GODADDY.COM'S MOTION FOR PARTIAL SUMMARY JUDGMENT

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The Academy of Motion Picture Arts and Sciences ("AMPAS") filed the instant lawsuit against Defendant GoDaddy.com, LLC ("GoDaddy") under the Anti-cybersquatting Consumer Protection Act ("ACPA"), codified at 15 U.S.C. § 1125(d), based on the placement of advertisements by one of GoDaddy's advertising partners on parked pages resolving from the domain names at issue in this action. By way of the this motion, GoDaddy seeks partial summary judgment on four discrete matters: (1) AMPAS' claim that each of the domain names at issue is "dilutive of" one or more of the AMPAS marks under the ACPA; (2) AMPAS' claim that GoDaddy used and/or trafficked in domain names that were not in GoDaddy's Parked Page Program; (3) AMPAS' claim for violation of California Business and Professions Code section 17200; and (4) AMPAS' claim for attorneys' fees pursuant to California's Private Attorney General Act, codified at Code of Civil Procedure section 1021.5.  Based on the undisputed evidence, each of these claims is capable of being adjudicated as a matter of law.

As an initial matter, under the ACPA, liability for registering, trafficking or using a domain name that is "dilutive of" a trademark applies only to "famous" trademarks, i.e., trademarks that are "prominent and renowned," such that they "engender[] immediate recognition in the general public of a particular product." Despite nearly five (5) years of litigation, AMPAS failed to adduce evidence sufficient to support a determination that any of the AMPAS Marks are capable of being deemed famous as matter of law.  Instead, AMPAS seeks to base its case for fame on a handful of documents detailing limited advertising expenditures and "common sense."  The evidence falls far short.  In light of the lack of any evidence to support a finding that even one of the AMPAS Marks is famous, AMPAS cannot maintain a claim under the ACPA's "dilutive of" prong as a matter of law.  Absent a

fame determination, fourteen (14) of the domain names identified in this lawsuit must also be dismissed.

On a related point, the Court previously deferred ruling on whether any of the domain names identified in this case participated in GoDaddy's Parked Page Programs so as to trigger the "use" or "trafficking" prong of the ACPA. While disputed facts exists as to the bulk of the domain names at issue, there is no evidence that any of the following domain names ever participated in GoDaddy's Parked Page Programs: OSCARMOVIES.COM, OSCAR-2011.COM, INTERNETACADEMYAWARDS.COM, or 2OSCARS.COM. AMPAS never produced a screenshot of a GoDaddy parked page for any of these domain names. The lack of evidence is in line with GoDaddy's own records, which failed to register a single impression on any of these domain names. As such, there is no evidence that GoDaddy "used" or "trafficked" in these domain names and summary judgment may be granted as to each.

AMPAS also asserts a claim for violation of California Business and Professions Code section 17200 against GoDaddy arising from GoDaddy's advertising partner's alleged placement of advertisements on parked pages resolving from the domain names at issue. AMPAS seeks relief in the form of the only two remedies available under Section 17200: restitution and injunctive relief. AMPAS, however, is unable to meet its burden of proof to show an entitlement to either remedy in light of the undisputed fact that: (1) no funds were paid to GoDaddy by AMPAS and (2) GoDaddy voluntarily implemented a filter preventing the exact conduct of which AMPAS complains. As such, no controversy exists as to this claim and thus, it should be adjudicated in GoDaddy's favor.

GoDaddy also seeks adjudication of AMPAS' request for attorneys' fees pursuant to California's Code of Civil Procedure section 1021.5, which allows for the recovery of attorneys' fees under narrow circumstances not present here. Contrary to any argument made by AMPAS, the evidence plainly establishes that

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

AMPAS is not prosecuting this lawsuit to enforce an important public right or confer a significant benefit upon the public.  Rather, the entire purpose of this lawsuit is to adjudicate AMPAS' personal claims against GoDaddy. Based on the undisputed evidence, this claim may be adjudicated in GoDaddy's favor.

In light of the undisputed evidence presented herein, and as a matter of law, GoDaddy is entitled to partial summary judgment on the discrete issues presented by this motion.

## II.   RELEVANT FACTUAL BACKGROUND

### A.   There Is No Evidence Of Widespread Consumer Recognition Of Any Of The AMPAS Marks

Five AMPAS Marks are at issue in this litigation: OSCAR®, OSCARS®, OSCAR NIGHT®, ACADEMY AWARD®, and ACADEMY AWARDS®.  *See* SAC, ¶2.  Notably, AMPAS does not have the exclusive right to use the "OSCAR" trademark—at least eighteen (18) third-party trademark owners also have a valid, subsisting, and incontestable right in their own registered trademarks for "OSCAR". *See* Declaration of A. McKown, ¶7 and Exh. D.

In support of its claim that one or more of the AMPAS Marks is famous, AMPAS produced nominal evidence of its advertising expenditures from 2007 to 2011—expenditures that averaged $2 million a year from 2007 to 2010, and was projected to totaled just over $4 million in 2011.  *See* McKown Decl., ¶¶2-5 and Exhs. A-C.  In the context of this litigation, AMPAS did not conduct a consumer survey addressing the actual recognition of any of the AMPAS Marks by the general consuming public of the United States. *See id*. at ¶6.  Nor did AMPAS designate a consumer survey expert to provide testimony or present findings in this action.  *Id.*

### B.   The Evidence Is Clear That At Least Four (4) Of The Domain Names At Issue Did Not Participate In The Parked Page Program

AMPAS did not produce any screenshots of a GoDaddy parked page for the following four specific domain names:  INTERNETACADEMYAWARDS.COM;

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

OSCARMOVIES.COM; OSCAR-2011.COM, or 2OSCARS.COM.  *See* McKown Decl. at ¶9-12.  GoDaddy's parked page records confirm that no impressions were made on any of these four domain names.  *See* Declaration of Paul Nicks ("Nicks Decl.") at ¶6.

### C.   There Is No Evidence That GoDaddy Is In The Possession Of Any Monies Wrongfully Obtained From AMPAS

AMPAS failed to produce any evidence during the course of discovery to support its contention that GoDaddy "wrongfully obtained" any "monies" from AMPAS.  To the contrary, despite nearly five (5) years of discovery, AMPAS has been unable to present any evidence that GoDaddy took anything from AMPAS that AMPAS had a vested interest in, or that AMPAS lost something GoDaddy acquired. *See* McKown Decl., ¶13.

### D.   There Is No Ongoing Or Threatened Misconduct On The Part Of GoDaddy For The Court To Enjoin

In July 2013, GoDaddy voluntarily implemented a keyword filter that prevents the placement of any advertisements on current or prospective domain names registered with GoDaddy where the domain name string contains one of the AMPAS Marks; instead, the domain name will resolve to a blank landing page.  *See* Nicks Decl., ¶¶3, 4.  GoDaddy has no future plans to modify or abandon the AMPAS-specific keyword filter. *See id* at ¶5.

### E.   The Evidence Is Clear That AMPAS Is Litigating This Action On Behalf Of Its Own Financial Interests And Not The General Public

AMPAS seeks no remedy on the public's behalf.  *See, e.g.*, SAC at ¶¶4, 25, 65, 68, 71, 75, and Prayer for Relief.  Nor is there any evidence to demonstrate that a single person, let alone the public at large, has suffered any such confusion as a result of any conduct allegedly engaged in by GoDaddy.  *See* McKown Decl., ¶¶14-16 ; Exhs. E-F.

///

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

Moreover, the remedy AMPAS seeks on its own behalf is significant: AMPAS seeks maximum statutory damages of $100,000 per domain name, or approximately $31 million.  *See* SAC (CV10-3738-AB) at ¶¶ 35, 40, 65; FAC (CV13-08458-ABC) at ¶¶ 30, 31, 55.  Indeed, regardless of its best case scenarios, AMPAS has consistently valued its claim between $6 million and $20 million.  For example, at the outset of this litigation, AMPAS offered to dismiss its lawsuit in exchange for a payment of $20 million.  *See* McKown Decl., ¶17.  On August 27, 2012, during a private meeting between the parties, AMPAS offered to settle this action for a payment of $12 million.  *See id.* at ¶18.  On March 18, 2013, AMPAS offered to settle this action during mediation for a payment of $10.7 million.  *See id.* at ¶19.  On October 8, 2013, counsel for AMPAS sent correspondence to counsel for GoDaddy in which AMPAS offered to settle this action for a payment of $6 million. *See id.* at ¶20, Ex. G.

## III.   LEGAL STANDARD

Summary judgment shall be granted when "there is no genuine issue as to any material fact" and the "moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party has the initial burden of proving the absence of a genuine issue of material fact.  *Id.* at 323. The burden then shifts to the non-moving party to "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324.

The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings . . . [T]he adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Gasaway v. Northwestern Mut. Life Ins. Co*., 26 F.3d 957, 960 (9th Cir. 1994). These disputed facts must be "material," i.e., facts that might affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986); *T.W. Elec. Serv. v. Pacific Elec. Contractors*, 809 F.2d 626, 630 (9th Cir. 1987)(disputes over irrelevant or unnecessary facts do not preclude summary

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

1  judgment).  The nonmoving party must also establish that the disputed material facts

2  are "genuine."  *Anderson*, 477 U.S. at 242, 248 ("[The] mere existence of a scintilla

3  of evidence in support of the plaintiff's position will be insufficient; there must be

4  evidence on which a reasonable jury could reasonably find for plaintiff.").

5  **IV.   ARGUMENT**

6       **A.    AMPAS Cannot Establish That The Domain Names At Issue Are**

7            **"Dilutive Of" The AMPAS Marks Under The ACPA**

8       In order to prevail on a claim for cybersquatting, a plaintiff "must establish

9  the following: "(1) that it has a valid trademark entitled to protection; (2) that its

10  mark is distinctive or famous; (3) that the defendant's domain name is identical or

11  confusingly similar to, **or in the case of famous marks, dilutive of, the owner's**

12  **mark**; and (4) that the defendant used, registered, or trafficked in the domain name;

13  (5) with a bad faith intent to profit."  *Bosley Medical Inst., Inc. v. Kremer*, 403 F.3d

14  672, 680 (9th Cir. 2005)(emphasis added).   As relevant here, GoDaddy seeks

15  adjudication on the limited issue of whether any of the domain names at issue may

16  be deemed "dilutive of" any of the AMPAS Marks.

17       As set forth more fully below, although AMPAS may only maintain a claim

18  under the "dilutive of" prong of the ACPA if it can demonstrate that one or more of

19  the AMPAS Marks is "famous," there is no evidence in the record that would allow

20  AMPAS to carry its burden of proof on this subject.  This outcome is largely of

21  AMPAS' own making: AMPAS never conducted a fame survey and generally

22  objected to producing evidence of the kind that might be used to support a

23  determination of fame in the absence of such a survey. *See* McKown Decl., ¶6.  In

24  light of the lack of any evidence to support a fame ruling, summary judgment must

25  be granted in GoDaddy's favor on AMPAS' claim that the domain names at issue

26  are "dilutive of" the AMPAS Marks.

27  ///

28  ///

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

**1.    AMPAS Cannot Present Evidence Upon Which To Base A Determination That Any Of Its Marks Are Famous**

Despite bearing the burden of proof, AMPAS has disclosed no evidence to establish that any of the AMPAS Marks are "famous."  Under federal law, in order for a mark to be "famous," it must be "widely recognized by the general consuming public of the United States" as a designation indicating a single source of goods or services.  15 U.S.C. § 1125(c)(2).  "Famousness" is notoriously difficult to prove because the anti-dilution statutes are designed to protect only strong, well-recognized names.  *See Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012) ("It is well-established that dilution fame is difficult to prove."); *see also Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1539 (9th Cir. 1989) ("It is clear that anti-dilution statutes such as [California's] are designed to protect only strong, well-recognized marks.").  Thus, protection from trademark dilution is reserved for only a very narrow class of marks.

Under the Lanham Act, "[b]ecause protection from dilution comes close to being a 'right in gross,' . . . the FTDA extends dilution protection only to those whose mark is a 'household name.'"  *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1011 (9th Cir. 2004).  "To determine whether a mark is recognized by the public, courts consider factors such as (1) the duration, extent, and geographic reach of advertising and publicity of the mark; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (3) the extent of actual recognition of the mark; and (4) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register."  *Id.*; *Coach, Inc. v. Sac a Main*, 2012 WL 5464347, at *5 (E.D. Cal. Nov. 7, 2012) (citations omitted).

To be famous, "a mark must be truly prominent and renowned."  *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999) (citations omitted); *see also Self-Insurance Institute of America, Inc. v. Software and Information*

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

1  *Industry Ass.*, 208 F. Supp. 2d 1058, 1077 (CD. Cal. 2000) ("Unless a mark rises to

2  the level of 'KODAK' or 'COKE,' it is not considered famous and thus not afforded

3  protection from dilution.").  By contrast, marks lacking fame are not as well known,

4  such as "Trek" bicycles, "Avery" and "Dennison" office supplies, "M2" music and

5  video software, "PostX" e-mail security services, "Star Markets" grocery stores, or

6  "Tornado" vacuum cleaners.[1]

7       Establishing that a mark is "famous . . . is not an easy standard to achieve."

8  *Rosetta Stone v. Google, Inc.*, 676 F.3d 144, 171 (4th Cir. 2012).  Yet AMPAS

9  seeks a determination in its favor on the issue of fame based solely on nominal

10  evidence of its advertising expenditures from 2007 to 2011—expenditures that

11  averaged $2 million a year from 2007 to 2010, and totaled just over $4 million in

12  2011.  *See* McKown Decl., ¶¶2-5 and Exhs. A-C.  This meager evidence, however,

13  has been rejected time and again by federal courts throughout the country as simply

14  insufficient as a matter of law to establish fame.  *See, e.g.*, *TCPIP Holding Co., Inc.*

15  *v. Haar Communications, Inc.,* 244 F.3d 88, 99 (2d Cir. 2001) (holding that

16  evidence of advertising expenditures insufficient to demonstrate fame); *Advantage*

17  *Rent–A–Car, Inc. v. Enterprise Rent–A–Car, Co*., 238 F.3d 378 (5th Cir. 2001)

18  (same).

19       The case of *TCPIP Holding Co.*, *Inc. v. Haar Communications*, *Inc.*, is

20  instructive.  In *TCPIP*, the district court's preliminary injunction was vacated in part

21  by the Second Circuit because the plaintiff's evidentiary submissions failed to

22  demonstrate the degree of fame required by statute.   *TCPIP*, 244 F.3d at 99.

23  ---

[1]    *See Thane Int'l, Inc. v. Trek Bicycle Corp*., 305 F.3d 894 (9th Cir. 2002), superseded by statute on other grounds as stated in *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 633 F.3d 1158, 1165 (9th Cir. 2011); *Avery Dennison Corp.*, 189 F.3d 868; *M2 Software, Inc. v. Viacom, Inc.*, 119 F.Supp.2d 1061 (C.D. Cal. 2000), *rev'd on other grounds*, 30 Fed. Appx. 710 (9th Cir. 2002) (unpublished); *PostX Corp. v. docSpace Co., Inc.*, 80 F.Supp.2d 1056 (N.D. Cal. 1999); *Star Markets*, 950 F. Supp. 1030; *Breuer Elec. Mfg. Co. v. Hoover Co.*, No. 97 C 7443, 1998 WL 427595 (N.D. Ill. Jul 23, 1998) (Tornado).

Although the plaintiff provided affidavit testimony that its business had grown from $100 million in sales from 87 stores in 1994 to $280 million from 228 stores operating in 27 states in 1998, and that it had expended tens of millions of dollars in advertising its mark over the previous decade, the Second Circuit's ruling focused on the absence of consumer surveys, press accounts, or "other evidence of fame," the absence of any statistics pertaining to any year before 1994, and the unsubstantiated assertions that plaintiff had used the mark for thirty years.  *Id.*

Similarly, in *Advantage Rent–A–Car, Inc. v. Enterprise Rent–A–Car, Co*., the Fifth Circuit affirmed a district court's determination that the defendant's slogan "We'll Pick You Up" was not sufficiently famous even where defendant spent more than $130 million on advertising containing the slogan, and had used the slogan in all of the media forms in which it advertised, including commercials shown on prime time national television, major broadcast networks, and cable stations. *Advantage*, 238 F.3d at 382.

The evidence presented by AMPAS is far less compelling than that presented in *TCPIP Holding Co.* and *Advantage Rent–A–Car, Inc.*  Indeed, AMPAS presents a markedly different accounting scenario, identifying advertising expenditures covering only a five year period, the sum of which totaled hundreds of millions of dollars *less than* the expenditures at issue in *TCPIP Holding Co.* and *Advantage Rent–A–Car, Inc.*  *See* McKown Decl., ¶¶2-5 and Exhs. A-C.

More problematic for AMPAS, however, is the failure to conduct, in the context of this litigation, a consumer survey addressing the actual recognition of the AMPAS Marks by the general consuming public of the United States—evidence also determined by the Second Circuit to be missing in *TCPIP*.  *See* McKown Decl. at ¶6.  Absent any such evidence, AMPAS is wholly unable to demonstrate the requisite brand association between the trademark at issue and the general consuming public.  *See Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 878-79 (9th Cir. 1999) (reversing the district court's award of summary judgment due to the

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

plaintiff's failure to proffer evidence of "whether consumers in general have any brand association with 'Avery' and 'Avery Dennison'."); *TCPIP Holding Co. v. Haar Comm'ns, Inc*., 244 F.3d 88, 99- 100 (2d Cir. 2001) (dismissing a preliminary injunction motion based on dilution due to plaintiff's failure to "submit consumer surveys, press accounts, or other evidence of fame"); *BigStar Entertainment, Inc. v. Next Big Star, Inc*., 105 F.Supp.2d 185, 218 (S.D.N.Y. 2000) (noting the "absence in this record of any consumer surveys documenting the extent of actual public identification of plaintiff's marks" when finding marks not famous).   AMPAS' failure to perform a consumer survey leaves it without any proof of actual market recognition—and no way to establish that its products are "widely recognized" in even a niche market, let alone by "the general consuming public of the United States." *Id*.; 11 U.S.C. § 1125(c).

Although AMPAS will likely argue that the evidence of its advertising expenditures is sufficient, the harsh injustice of finding fame on the limited evidence available becomes clear when compared against the preclusive effect of a fame ruling.  It is well-recognized that a finding of fame affords the trademark owner with "extensive relief—preventing all others from using the mark, regardless of whether the marks are in related fields or are those of competitors." *Star Markets, Ltd. v. Texaco Refining & Marketing, Inc.*, 950 F. Supp. 1030, 1033 (D. Haw. 1996).  To base a fame determination on the scant evidence adduced here would deprive at least eighteen (18) third-party trademark owners of their valid, subsisting, and incontestable rights in their own registered trademarks for "OSCAR." *See* McKown Decl. at ¶7, Exh. D.

In light of AMPAS' inability to present evidence sufficient to demonstrate the fame of its marks, the Court may properly adjudicate the issue of whether the domain names at issue in this case are "dilutive of" the AMPAS Marks in GoDaddy's favor.

///

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

**2.      Given AMPAS' Inability To Prevail On Its "Dilutive Of" Claim, This Court Should Order The Dismissal Of Fourteen (14) Domain Names From This Lawsuit**

To the extent the Court grants GoDaddy's motion for summary judgment on the "dilutive of" issue, the Court may also grant summary judgment as to the following fourteen (14) domain names, all of which are domain names this Court previously determined were not confusingly similar to the AMPAS Marks: IXOSCAR.COM, OASINOSCAR.COM, SAYSOSCAR.COM, OSCAR-MIKE.COM, OSCARYLALO.COM, IXOSCAR.COM, OSCARDOM.COM, OSCARTEL.COM, OSCARTRAVELWEB.COM, OSCARWHIMPER.COM, OSCARWHIMPER.NET, ROUNDINGWITHOSCAR.COM, ROUNDING-WITH-OSCAR.COM, and THEWORLDAWARDACADEMY.COM. *See* Order dated November 4, 2013 [Dkt. No. 508].  It is undisputed that none of the fourteen (14) domain names is identical to one or more of the AMPAS Marks.  *See* McKown Decl., ¶8.

As set forth above, one of the requisite elements of a claim for cybersquatting is that the domain name at issue must be "identical or confusingly similar to, or in the case of famous marks, dilutive of, the owner's mark." *Bosley Medical Inst., Inc. v. Kremer*, 403 F.3d 672, 680 (9th Cir. 2005).  Because the Court previously determined that fourteen (14) of the domain names at issue in this action were neither identical nor confusingly similar to any of the AMPAS Marks, a ruling on the "dilutive of" issue in GoDaddy's favor bars any claim for cybersquatting as to those names as a matter of law.  *Id.*  As such the Court should grant summary adjudication as to each of the fourteen (14) domain names identified above.

**B.      AMPAS' Cannot Establish That GoDaddy Trafficked In Or Used At Least Four (4) Of The Domain Names At Issue**

To prevail on its ACPA claim, AMPAS must prove, amongst other things, that GoDaddy registered, trafficked in, or used each of the accused domain names.

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

1   *See Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.* 202 F.3d 489, 497-99 (2d Cir.

2   2000), cert. denied, 530 U.S. 1262 (2000).  There is no dispute that GoDaddy did

3   not register any of the domain names at issue.  *See* Order dated June 21, 2013 [Dkt.

4   491] at 13:1-3.  As the Court previously recognized, AMPAS' "claim, whether it is

5   for use or trafficking, turns on whether a particular accused domain name is in the

6   Parked Pages Program." *Id.* at 14:23-25.

7        In support of its claims, AMPAS relies on screenshots of certain domain

8   names related to a GoDaddy parked page.  AMPAS, however, did not produce

9   during discovery any screenshots of a GoDaddy parked page for the following four

10  (4) domain names:   INTERNETACADEMYAWARDS.COM; 2OSCARS.COM

11  OSCARMOVIES.COM; and OSCAR-2011.COM.  *See* McKown Decl. at ¶¶9-12.

12  Moreover, GoDaddy's parked page records confirm that no impressions were made

13  on any of these four domain names.  *See* Nicks Decl. at ¶6.  There is no evidence

14  that any of these four (4) domain names participated in GoDaddy's Parked Page

15  Programs and thus, there can be no evidence that GoDaddy used or trafficked in

16  these four domain names.  As such, GoDaddy is entitled to summary adjudication of

17  these four (4) domain names with respect to AMPAS' claims as a matter of law.

18    **C.    AMPAS' Claim For Violation Of California Business And**

19         **Professions Section 17200 Fails As A Matter Of Law**

20        AMPAS asserts a claim for violation of California Business and Professions

21  Code section 17200 ("Section 17200") based on the alleged placement of

22  advertisements on domain names containing one or more of the AMPAS Marks

23  somewhere within a domain name string.  *See* SAC at ¶¶74, 80.  "Business and

24  Professions Code Section 17200 et seq. prohibits unfair competition, including

25  unlawful, unfair, and fraudulent business acts." *Korea Supply Co. v. Lockheed*

26  *Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003).  "While the scope of the conduct

27  covered by the UCL is broad, its remedies are limited." *Id.* at 1144.  Section 17200

28  allows for the recovery of restitution and injunctive relief only.  *See* Cal. Bus. &

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

Prof. C. § 17203; *Bank of the West v. Sup. Ct*., 2 Cal.4th 1254, 1266 (1992); *Clayworth v. Pfizer, Inc*., 49 Cal.4th 758, 790 (2010).  Because AMPAS is unable to meet its burden of proof to demonstrate an entitlement to either remedy, its Section 17200 claim must be dismissed as a matter of law.

### 1.    AMPAS Cannot Present Evidence Entitling It to Restitution

Restitution is the only authorized monetary damage under Section 17200; neither damages nor disgorgement of profits are available remedies.  *Korea Supply Co.*, 29 Cal.4th at 1148.  Restitution thus must be distinguished from the broader remedy of disgorgement.  *Id*. at 1145.  Disgorgement compels a defendant "to surrender [] all profits earned as a result of an unfair business practice regardless of whether those profits represent money taken directly from persons who were victims of the unfair practice."  *Id*.  Restitution, in contrast, compels a defendant to surrender "profits unfairly obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest." *Id*. at 1148.  Consequently, restitution is limited to the return of money or property that was once in the possession of the plaintiff.  *Id.*

AMPAS claims entitlement to the "restitution of all monies [GoDaddy] has wrongfully obtained from AMPAS."  AMPAS, however, adduced no evidence during discovery to demonstrate that it paid any money to GoDaddy which could be subject to restitution.  *See Korea Supply Co.*, 29 Cal.4th 1134, 1148; *see also Alch v. Superior Court* (2004) 122 Cal.App.4th 339, 404 (restitution is available where "a defendant has wrongfully acquired funds or property in which a plaintiff has an ownership or vested interest.").  As an initial matter, not a single factual allegation contained in the Second Amended Complaint supports a finding that GoDaddy took anything from AMPAS in which AMPAS had a vested interest, or that AMPAS lost something GoDaddy acquired.  Indeed, AMPAS alleges only that GoDaddy was "generating profits on clicks on advertisements."  SAC, ¶59.

///

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

Consistent with these allegations, AMPAS failed to produce any evidence during the course of discovery to support its contention that GoDaddy "wrongfully obtained" any "monies" from AMPAS.  *See* McKown Decl., ¶13. As such, the Court may summarily adjudicate this issue in GoDaddy's favor.

### 2. AMPAS Cannot Present Evidence Entitling It To Injunctive Relief

AMPAS seeks injunctive relief to halt past conduct while presenting no evidence that there is a threat of continuing misconduct.  On this basis, AMPAS' claim is not only moot, but fails for lack of Article III standing.

a.   The Undisputed Evidence Demonstrates AMPAS' Request for Injunctive Relief is Moot

California law is clear that "[i]njunctive relief has no application to wrongs which have been completed [citation], absent a showing that past violations will probably recur." *Madrid v. Perot Systems Corp.*, 130 Cal.App.4th 440, 465 (2005). Indeed, injunctive relief is available to prevent threatened injury and is not a remedy designed to right completed wrongs:

> I[njunctive relief] should neither serve as punishment for past acts, nor be exercised in the absence of any evidence establishing the reasonable probability the acts will be repeated in the future.  Indeed, a change in circumstances at the time of the hearing, rendering injunctive relief moot or unnecessary, justifies denial of the request.  Unless there is a showing that the challenged action is being continued or repeated, an injunction should be denied.

*Id.*, at 464-65; *see also Palo Alto-Menlo Park Yellow Cab Co., Inc. v. Santa Clara County Transit Dist.*, 65 Cal.App.3d 121, 132 (1976) ("Injunctive power is not used as punishment for past acts and is ordered against them only if there is evidence they will probably recur."); *Gold v. Los Angeles Democratic League*, 49 Cal.App.3d 365, 372 (1975) ("But an injunction lies only to prevent threatened injury and has no application to wrongs which have been completed.").

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

In recognition of the above principles, courts have repeatedly held requests for injunctive relief moot where, as here, the alleged wrongful practice has ceased. *See, e.g., Caro v. Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 660 (affirming denial of class certification of a UCL case, noting the defendant had altered its conduct pursuant to federal administrative intervention, and therefore the plaintiff's "prayer for injunction was effectively moot"); *Cisneros v. U.D. Registry, Inc.* (1995) 39 Cal.App.4th 548, 574 (affirming denial of injunctive relief, explaining that "[t]he injunctive remedy should not be exercised in the absence of any evidence that the acts are likely to be repeated in the future"); *Feitelberg v. Credit Suisse First Boston LLC*, (2005) 134 Cal.App.4th 997, 1012 (affirming denial of injunctive relief because the record showed that the alleged wrongful practices had ended).

As set forth above, AMPAS seeks to enjoin the placement of advertisements on domain names incorporating one or more of the AMPAS Marks in its domain name string. *See* SAC at ¶¶74, 80. The undisputed evidence is clear, however, that in July 2013, GoDaddy voluntarily implemented a keyword filter that prevents the exact conduct AMPAS seeks to enjoin. *See* Nicks Decl., ¶¶3, 4. Specifically, the keyword filter prevents the placement of any advertisements on current or prospective domain names registered with GoDaddy where the domain name string contains one of the AMPAS Marks; instead, the domain name will resolve to a generic, non-monetized landing page. *See id.* In light of the action taken by GoDaddy to prevent any advertisements from being placed on domain names incorporating one or more of the AMPAS Marks, there is no actual or threatened conduct that would warrant the issuance of a permanent injunction and hence, there is no conduct left to enjoin.

It is undisputed that the conduct sought to be enjoined by AMPAS has ceased. Consequently, AMPAS' request for injunctive relief is moot and cannot form the basis of a Section 17200 action. As such, GoDaddy is entitled to summary judgment on AMPAS' claim for violation of Section 17200.

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

b.    AMPAS Lacks Article III Standing to Seek Injunctive Relief under Section 17200

AMPAS' request for injunctive relief fails for another reason:  lack of standing.  The requirement of Article III standing ensures the separation of powers "by preventing courts from issuing advisory opinions not founded upon the facts of a controversy between truly adverse parties." *Scott v. Pasadena Unified Sch. Dist.,* 306 F.3d 646, 654 (9th Cir. 2002) (citations omitted).    Standing is a jurisdictional prerequisite that may be raised at any time. *See United States v. Viltrakis,* 108 F.3d 1159, 1160 (9th Cir. 1997) (citing *Bd. of Natural Resources v. Brown,* 992 F.2d 937 (9th Cir. 1993)).

AMPAS bears the burden of establishing Article III standing to pursue prospective injunctive relief. *See Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 (1992); *San Diego County Gun Rights Comm. v. Reno,* 98 F.3d 1121, 1126 (9th Cir. 1996); *Nelson v. King County,* 895 F.2d 1248, 1251 (9th Cir. 1990).  To carry this burden, AMPAS must offer evidence that:  (1) establishes a credible threat of future injury which is actual or imminent (not conjectural or hypothetical); and (2) demonstrates, by more than past exposure to allegedly illegal conduct, a real and immediate threat that he will again suffer the alleged harm.   *See Hangarter v. Provident Life & Accident Ins. Co.,* 373 F.3d 998, 1021-22 (9th Cir. 2004) ("Article III standing requires an injury that is actual or imminent, not conjectural or hypothetical.  In the context of injunctive relief, the plaintiff must demonstrate a real or immediate threat of an irreparable injury.") (quotation omitted); *Lujan,* 504 U.S. at 560-61; *City of Los Angeles v. Lyons,* 461 U.S. 95, 101-04 (1983); *Hodgers-Durgin v. De La Vina,* 199 F.3d 1037, 1042-44 (9th Cir. 1999) (en banc); *Nelson,* 895 F.2d at 1250-51.

AMPAS, however, cannot carry this burden.  First, it is undisputed that over one (1) and a half years ago, GoDaddy implemented a keyword filter that prevents the placement of any advertisements on current or prospective domain names

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

registered with GoDaddy where the domain name string contains one of the AMPAS Marks. *See* Nicks Decl., ¶¶3, 4. Second, it is also undisputed that GoDaddy has no future plans to modify or abandon the AMPAS-specific keyword filter. *See id* at ¶5. Accordingly, AMPAS cannot produce any evidence that it faces a real and immediate threat of being injured by the placement of advertisements by GoDaddy or its advertising partners on parked pages resolving from either the domain names at issue or domain names that may be registered in the future. This failure is sufficient to dispose of AMPAS' request for injunctive relief.

Neither restitution nor injunctive relief is an available remedy for AMPAS' Section 17200 claim, and hence, summary disposition of that claim is appropriate.

### D. AMPAS Cannot Prevail On Its Claim For Attorneys' Fees Pursuant to California Code of Civil Procedure Section 1021.5

In connection with its claim for violation of Business and Professions Code Section 17200, AMPAS seeks an award of attorneys' fees under California Code of Civil Procedure 1021.5 ("Section 1021.5"), which provides in pertinent part that "[u]pon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest." Code of Civil Procedure § 1021.5. In light of controlling case law and the undisputed evidence, AMPAS cannot establish an entitlement to an award of attorneys' fees under Section 1021.5. As such, GoDaddy requests summary adjudication of this issue in order to streamline this case for trial.

#### 1. The Court May Resolve AMPAS' Entitlement To Attorneys' Fees Under Section 1021.5 On Summary Judgment

As an initial matter, it is anticipated that AMPAS may take the position that GoDaddy's request for adjudication of the attorneys' fee request under Section 1021.5 may is either premature or ill-fitted to determination by way of summary judgment. Federal law makes clear, however, that the Court may resolve an

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

attorney's fee request on a motion for summary judgment or partial summary judgment. *See American Nat'l Fire Ins. Co. v. Kenealy*, 72 F.3d 264, 270-71 & n. 4 (2nd Cir. 1995) (summary judgment is an appropriate procedural vehicle for determining whether attorneys' fees are appropriate); *Resolution Trust Corp. v. Tassos*, 764 F. Supp. 442, 443 (S.D. Tex. 1990) ("A federal district court may fix attorneys' fees on the basis of the affidavits and may even do so on its own experience without any testimony.") (citation omitted); *Top Banana LLC v. Dom's Wholesale & Retail Center, Inc.*, No. 04-CV-2666, 2005 WL 1149774, **2-3 (S.D.N.Y. May 16, 2005); *American Auto. Ins. Co. v. Grimes*, No. 5:02-CV 066-C, 2004 WL 246989, **2 & 17 (N.D. Tex. Feb. 10, 2004); *Manzon v. Stant Corp.*, 202 F. Supp. 2d 851, 855 & 863 (S.D. Id. 2002).

While AMPAS will likely argue that the true level of public benefit from AMPAS' filing of the Complaint, as well as AMPAS' ultimate financial interest in the litigation are both "questions of fact," the undisputed evidence, including AMPAS' own allegations, leaves no doubt that AMPAS commenced this litigation to advance its own interests first and foremost. AMPAS did not file this action as a "private attorney general" in dogged pursuit of the public interest, and any benefit that the public might receive is either non-existent or, at best, merely an afterthought. Accordingly, AMPAS cannot satisfy the requirements of Section 1021.5 and therefore cannot obtain an award of attorneys' fees in connection with its unfair competition claim.

## 2.     AMPAS Is Not Entitled To Attorney's Fees Pursuant To California Code Of Civil Procedure Section 1021.5

California Code of Civil Procedure Section 1021.5 ("Section 1021.5") allows a prevailing party to obtain fees in narrow circumstances. The statute codifies California's common law "private attorney general" doctrine by providing, in part, that:

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

> [u]pon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if:
>
> (a) significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessary and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

Fees are only recoverable under Section 1021.5 "when the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff out of proportion to his individual stake in the matter.  If the enforcement of the public interest is merely coincidental to the attainment of . . . personal goals or is self-serving, then this requirement is not met." *Bowman v. City of Berkeley*, 131 Cal. App. 4th 173, 181 (2005).  A party can be denied fees where the primary purpose in bringing suit was to pursue and protect its own property rights rather than to further a significant public interest. *Id.*

Even assuming *arguendo* that AMPAS is deemed a successful party at the conclusion of this action, AMPAS will be unable to satisfy any of the conditions required by Section 1021.5 for an award of fees under this statute.  As such, the Court may adjudicate the issue now.

        a.    <u>AMPAS Cannot Demonstrate The Instant Litigation Can or Will Confer A Significant Benefit Upon The Public Or Advanced The Public Interest</u>

To obtain attorneys' fees under Section 1021.5, there must exist "both a finding of a significant benefit conferred on a substantial number of people and a determination that the 'subject matter of the action implicated a public interest.'" *Graham v. DaimlerChrysler,* 34 Cal.4th 553, 578 (2005) (quotation omitted).  None of these finding may be made in this case.

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

19

1    AMPAS cannot plausibly argue that this lawsuit is a "private attorney
2    general" action brought *primarily* on behalf of the public interest as required by
3    Section 1021.5. *See Beasley v. Wells Fargo Bank, N.A.*, 235 Cal. App. 3d 1407,
4    1417 (1991) (noting the "general requirement that the benefit provided by the
5    litigation inures primarily to the public."). Even the most charitable reading of the
6    various pleadings filed to date indicates that the instant action was brought to serve
7    AMPAS' own interests, rather than those of the public at large. Indeed, while every
8    iteration of the complaint filed by AMPAS requests the full spectrum of remedies
9    for itself (*e.g.*, compensatory damages, disgorgement of profits, punitive
10   damages, attorneys' fees, and injunctive relief), not once over the past five years has
11   AMPAS requested any such remedies on behalf of the public. *See, e.g.*, SAC at ¶¶4,
12   25, 65, 68, 71, and 75; FAC at ¶¶4, 32, 56, 57, 60, 64, and 69.

13   Further, while AMPAS has made occasional reference to confusion allegedly
14   suffered by the public in response to the alleged conduct of GoDaddy, the evidence
15   to date fails to demonstrate that a single person, let alone the public at large, has
16   suffered any such confusion as a result of any conduct allegedly engaged in by
17   GoDaddy. *See* McKown Decl., ¶¶14-16; Exhs. E and F. More importantly,
18   however, AMPAS seeks no remedy on the public's behalf. *See, e.g.*, SAC at ¶¶4,
19   25, 65, 68, 71, 75, and Prayer for Relief. While AMPAS has asserted its own right
20   to restitution in various iterations of its complaint as well as correspondence,
21   AMPAS does not plead—and has never claimed—such relief on behalf of any
22   member of the general public.

23   Indeed, even assuming that the public suffered some confusion arising from
24   the domain names at issue—a proposition that is unsupported by any evidence and
25   one that GoDaddy vigorously disputes—the only conceivable relief that consumers
26   might receive from AMPAS' Complaint would be some ancillary benefit from the
27   injunction sought by AMPAS on its own behalf and limited to its own trademarks.
28   It is well-established, however, that such an incidental public benefit cannot form

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

the basis for recovery under Section 1021.5. As best stated in *Satrap v. PG&E*, 42
Cal.App.4th 72, 77 (1996), Section 1021.5 was never intended to reward litigants
"motivated by their own pecuniary interests who only coincidentally protect the
public interest."

Even assuming, *arguendo*, AMPAS ultimately prevails on its claims, or may
otherwise be accorded prevailing party status under some tortured interpretation of
the facts of this case, it is clear AMPAS' prosecution of this contract action was not
motivated by some benefit to protect society at large, but to protect its own personal
economic interests and intellectual property rights. Even if, in so doing, AMPAS
coincidentally confers a public benefit—which there is no evidence to support—it is
insufficient under Section 1021.5. The section is meant to reward litigants who
pursue public interest litigation, not reward litigants motivated by their own interests
who coincidentally serve the public. *See Galante Vineyards v. Monterey Peninsula
Water Management Dist.,* 60 Cal.App.4th 1109, 1127 (1997).

> b.   AMPAS Cannot Satisfy The Financial Benefit Prong Of
> The Section 1021.5 Test

In order to be eligible for attorney's fees under Section 1021.5, the cost of the
litigation must place a burden on the litigant that is out of proportion to the litigant's
personal interest in the lawsuit. *See Woodland Hills Residents Association, Inc. v.
City Council of Los Angeles*, 23 Cal.3d 917, 941-42 (1979). The California
Supreme Court addressed the financial burden requirement in *Woodland Hills*. The
court stated the requirement is met when the cost of the claimant's legal victory
transcends its personal interest. *Id*. at 941. Thus, a cost-benefit analysis is employed
to compare "the financial burdens and incentives involved in bringing the lawsuit."
*Press v. Lucky Stores, Inc*., 34 Cal.3d 311, 321 (1983). In other words, the financial
burden requirement is met when "the cost of litigation is out of proportion to the
litigant's stake in the litigation." *Families Unafraid to Uphold Rural El Dorado
County v. Board of Supervisors*, 79 Cal.App.4th 505, 515 (2000).

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

The burden for establishing that litigation costs exceed personal interest is on the litigant whose attorney is seeking fees. *Beach Colony II Ltd. v. California Coastal Comm'n*, 166 Cal.App.3d 106, 113 (1985). At issue in *Beach Colony* was whether attorneys' fees should be awarded to a litigant who obtained a judicial decision that "recognized the legislative need to protect the natural resources in the coastal zone by balancing coastal developmental concerns with maximizing public access consistent with sound resources conservation, while at the same time constitutionally protecting the rights of affected private property owners." *Id*. at 111-12. The Court held that this decision satisfied the public interest prong of Section 1021.5, but did not satisfy the financial benefit prong because the decision arose from a lawsuit about the plaintiff's ability to construct condominium units, which gave the plaintiff a significant financial incentive to pursue the litigation. *Id*. at 113-14.

In order to ascertain whether a litigant has satisfied the financial burden test, courts must look to the estimated value of the case to the claimant at the time vital litigation decisions were being made. *Satrap*, 42 Cal.App.4th at 79. The most obvious indicator of AMPAS' personal financial interest in bringing suit is its own filings: AMPAS seeks maximum statutory damages of $100,000 per domain name, or approximately $31 million. *See* SAC (CV10-3738-AB) at ¶¶ 35, 40, 65; FAC (CV13-08458-ABC) at ¶¶ 30, 31, 55. AMPAS can hardly claim that the cost of litigating this lawsuit was in any way out of proportion to a possible windfall recovery of $31 million.

Another way to ascertain whether AMPAS is able to satisfy the financial burden test is to look at the settlement demands over the course of the litigation. *Satrap*, at 79-80. Here, those demands are revealing. At the outset of this litigation, AMPAS offered to dismiss its lawsuit in exchange for a payment of $20 million. *See* McKown Decl., ¶17. On August 27, 2012, during a private meeting between the parties, AMPAS offered to settle this action for a payment of $12 million. *See id.* at

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

22

¶18.  On March 19, 2013, AMPAS offered to settle this action during mediation for a payment of $10.7 million.  *See id.* at ¶19.  On October 8, 2013, counsel for AMPAS sent correspondence to counsel for GoDaddy in which AMPAS offered to settle this action for a payment of $6 million. *See id.* at ¶20, Ex. G.

In *Conservatorship of Whitely*, 50 Cal.4th 1206, 1215-16 (2010), the court established a cost-benefit analysis for evaluating whether the financial benefit prong of Section 1021.5 was satisfied.  On the benefit side is the monetary value of the benefits obtained, multiplied by the probability of success.  *Id.*  On the cost side is the actual cost of the litigation. *Id.*  Using this test, even assuming that AMPAS' attorneys' fees in litigating this action reach into the millions, and that such fees were reasonable (which GoDaddy would likely dispute given that AMPAS has four (4) law firms and at least 7 attorneys representing it), AMPAS' financial stake would still have been sufficient for it to bring the lawsuit.  By AMPAS' own admission, when it was making critical litigation decisions and within just weeks of the previously scheduled trial, AMPAS valued this lawsuit between $10 and $20 million.  Even AMPAS' most recent settlement offer of $6 million demonstrates that while it had devalued the lawsuit, the value of the lawsuit was far from insignificant.

Given the lack of any evidence of actual damage to AMPAS, even an anticipated recovery in the range identified in their settlement demands—a pure windfall of millions of dollars—would easily exceed the cost of the litigation.  The undisputed evidence establishes AMPAS' financial stake in this lawsuit far outweighs the burden to AMPAS of litigating this action.  This alone is a sufficient basis for denying fees. *Id.*

Under the circumstances, AMPAS cannot claim the financial stake in litigating this action was not a sufficient motive for its dogged pursuit of GoDaddy. *Beach Colony*, 166 Cal. App. 3d at 113.  AMPAS simply cannot demonstrate that it is appropriate to award attorney's fees to promote the "necessary and financial burden of private enforcement," or that fees "should not in the interest of justice be

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

1   paid out of the recovery." Cal. Code Civ. Proc. § 1021.5. There is no reason

2   AMPAS cannot pay its attorneys from any windfall received by way of their

3   cybersquatting claim. Thus, AMPAS cannot meet the requirements of Section

4   1021.5 as a matter of law.

5              c.    The Pre-Requisite That AMPAS' Personal Stake Be

6                    Insufficient To Encourage The Action Is Lacking

7        As noted above, one of the critical concepts behind rewarding private litigants

8   for enforcing public rights is that their pecuniary interest in actually litigating the

9   claim on their own behalf is so small that, but for the fees rewarded

10  under Section 1021.5, they would lack the incentive to litigate. *Families Unafraid*

11  *to Uphold Rural El Dorado County v. Board of Supervisors*, 79 Cal.App.4th 505,

12  511 (2000). Section 1021.5 provides the necessary encouragement by making this

13  ideal a prerequisite. *Id.*

14       AMPAS cannot credibly claim it has met this prerequisite, nor can it produce

15  evidence in support of such a conclusion. The undisputed evidence demonstrates

16  that AMPAS was motivated to file this suit by its own interest, and that the financial

17  burden of bringing this suit was not disproportionate to its interest in the matter. *See*

18  SAC (CV10-3738-AB) at ¶¶ 35, 40, 65; FAC (CV13-08458-ABC) at ¶¶ 30, 31, 55;

19  McKown Decl., ¶¶17-20 and Exh. G. Accordingly, GoDaddy respectfully requests

20  that the Court order that AMPAS is not entitled to attorneys' fees under Section

21  1021.5. *See Beach Colony*, 166 Cal.App.3d at 115 ("Section 1021.5's policy of

22  encouraging public interest lawsuits is not promoted by awarding fees to persons

23  having strong personal economic interests in litigating matters."); *Satrap*, 42 Cal.

24  App. 4th at 78 (1996) (collecting cases where plaintiff had sufficient personal

25  interest      in      outcome      of      litigation      to      disallow      recovery

26  of attorneys' fees under Section 1021.5).

27  ///

28  ///

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

## V.    <u>CONCLUSION</u>

Based on the foregoing, GoDaddy respectfully requests that the Court grant its motion for partial summary judgment in the entirety.

Dated:  January 9, 2015                    **RING BENDER LLLP**
Aaron M. McKown
Paula L. Zecchini


By:  */s/ Paula L. Zecchini*
Paula L. Zecchini
Attorneys for Defendant
GODADDY.COM, LLC

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614