Aaron M. McKown, California Bar No. 208781
Paula L. Zecchini, California Bar No. 238731
**RING BENDER  LLLP**
2 Park Plaza, Suite 550
Irvine, California  92614
Telephone.: (949) 202-5810
Facsimile:   (949) 679-7939
E-Mail:       amckown@ringbenderlaw.com
                     pzecchini@ringbenderlaw.com

Attorneys for Defendant
GODADDY.COM, LLC
(f/k/a GODADDY.COM, INC.)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| ACADEMY OF MOTION PICTURE ARTS AND SCIENCES, a California nonprofit corporation,<br><br>              Plaintiff,<br><br>       v.<br><br>GODADDY.COM, INC., a Delaware corporation; THE GODADDY GROUP INC., a Delaware corporation; DOMAINS BY PROXY, INC., a Delaware Corporation; GREENDOMAINMARKET.COM, an unknown entity; BDS, an unknown entity; and XPDREAMTEAM LLC, a California limited liability corporation,<br><br>              Defendants. | Case No. CV10-3738 AB (CWx)<br>[consolidated with Case No. CV13-08458-ABC (CW)<br><br>Assigned to Hon. André Birotte Jr.<br><br>**DEFENDANT GODADDY.COM, LLC'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Filed concurrently with Defendant GoDaddy.com's Reply to Uncontroverted Material Facts; Supplemental Declaration of A. McKown; Objections to Plaintiff's Request for Judicial Notice; and Objections to Declaration of Matthew Herman.]<br><br>Date:        February 23, 2015<br>Time:       10:00 a.m.<br>Courtroom:   4<br><br>Complaint Filed:  May 18, 2010<br>Trial Date:      August 4, 2015 |

**RING BENDER LLLP**<br>2 Park Plaza, Suite 550<br>Irvine, California 92614

# TABLE OF CONTENTS

I.   INTRODUCTION ....................................................................................1

II.  ARGUMENT ...........................................................................................2

   A.  AMPAS FAILED TO PRODUCE SUFFICIENT EVIDENCE TO SUPPORT A FAME
      DETERMINATION FOR EACH OF ITS FIVE TRADEMARKS ...................................2

     1.  *The Court's Determination on AMPAS' Previous Motion Does Not Bar the*
        *Requested Adjudication* ...............................................................3

     2.  *AMPAS' Failure To Present Evidence of Fame As To Each of AMPAS' Five*
        *Marks Precludes Finding of Fame* ...............................................4

     3.  *The Evidence Presented by AMPAS Fails To Support a Fame*
        *Determination Under the Requisite Statutory Factors*.................................5

       a.  AMPAS Presents Only Limited Evidence Within the Relevant Time
          Period for Determining Fame ....................................................5

       b.  AMPAS Presents No Evidence of Actual Recognition by Consumers of
          Any of the AMPAS Marks ......................................................6

     4.  *Fame for Dilution Purposes is Particularly Difficult to Establish When A*
        *Mark Has a Dictionary Definition*.................................8

     5.  *Extensive Third Party Use of The AMPAS Marks Bars the Fame*
        *Determination Sought by AMPAS*.................................9

   B.  AMPAS DID NOT PRESENT EVIDENCE TO CREATE A TRIABLE ISSUE OF FACT
      AS TO WHETHER GODADDY TRAFFICKED IN OR USED FOUR (4) OF THE
      DOMAIN NAMES AT ISSUE.................................11

   C.  AS ESTABLISHED BY THE NINTH CIRCUIT, AMPAS CANNOT MAINTAIN ITS
      SECTION 17200 CLAIM WITHOUT PRESENTING EVIDENCE THAT THE
      DISCONTINUED CONDUCT AT ISSUE IS LIKELY TO RECUR .............................12

   D.  AMPAS' OWN ALLEGATIONS AND ADMISSIONS BAR AN AWARD OF
      ATTORNEY'S FEES UNDER SECTION 1021.5 AS A MATTER OF LAW ...............18

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

i

1.  *Courts Regularly Dispose of Claims for Attorneys Fees' Under Section 1021.5 Prior to A Determination on the Merits* ........................................... 19

2.  *AMPAS Failed to Present Evidence Demonstrating that It Was Motivated by Anything Other Than its Own Pecuniary and Business Interests In Filing Suit* ............................................................................................................ 19

3.  *AMPAS Failed to Demonstrate How Its Requested Relief Would Produce A Significant Public Benefit* ........................................................................... 21

**III. CONCLUSION** .................................................................................................**24**

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

## CASES

*Advanced Micro Devices, Inc. v. National Semiconductor Corporation*,
38 F. Supp. 2d 802 (N.D. Cal. 1999) ..................................................................20

*Already, LLC v. Nike, Inc.*,
133 S. Ct. 721, 184 L. Ed. 2d 553 (2013) .........................................................14

*Avery Dennison Corp. v. Sumpton*,
189 F.3d 868, 874 (9th Cir. 1999)............................................................passim

*California Service Station Assn. v. Union Oil Co.*,
232 Cal. App. 3d 44 (1991).........................................................................16, 18

*Carnival Corp. v. Seaescape Casino Cruises, Inc.*,
74 F.Supp.2d 1261 (1999)..............................................................................10

*Celotex v. Catrett*,
477 U.S. 317 (1986) .......................................................................................11

*Cisneros v. U.D. Registry, Inc.*,
39 Cal. App. 4th 548 (1995)..........................................................................16

*City of Lindsay v. Sociedad Quimica y Minera de Chile S.A.*,
No. CV-F-11-0046 LJO SMS, 2011 WL 2516159 (E.D. Cal. June 21, 2011)......19

*Colgan v. Leatherman Tool Group, Inc.*,
135 Cal. App. 4th 663 (2006)........................................................................16

*Co-Rect Products, Inc. v. Marvy! Advertising Photography, Inc.*,
780 F.2d 1324 (9th Cir. 1985).........................................................................7

*Dawn v. Sterling Drug, Inc.*,
319 F. Supp. 358 (C.D. Cal. 1970)..................................................................9

*Eastman v. Allstate Ins. Co.*,
No. 14CV0703-WQH-NLS, 2014 WL 5355036 (S.D. Cal. Oct. 20, 2014)..........16

*Families Unafraid to Uphold Rural El Dorado County v. Board of Supervisors*,
79 Cal. App. 4th 505 (2000)..........................................................................23

**RING BENDER LLLP**
2 Park Plaza, Suite 550
Irvine, California 92614

iii

*Feitelberg v. Credit Suisse First Boston, LLC,*
   134 Cal. App. 4th 997 (2005).................................................................16

*Gimix, Inc. v. JS &A Group, Inc.,*
   699 F.2d 901 (7th Cir. 1983)...................................................................7

*Hammond v. Agran,*
   99 Cal. App. 4th 115 (2002)...................................................................23

*Hyatt Corp. v. Hyatt Legal Services,*
   736 F.2d 1153 (7th Cir. 1984).................................................................5

*ITC Ltd. v. Punchgini, Inc.,*
   482 F.3d 135 (2d Cir. 2007)...................................................................5

*Jacobsen v. Katzer,*
   535 F.3d 1373 (Fed. Cir. 2008)..............................................................14

*Jacobsen v. Katzer,*
   No. C 06-01905 JSW, 2007 WL 2358628 (N.D. Cal. Aug. 17, 2007).................14

*Kaufman and Broad-South Bay v. Unisys Corp.,*
   822 F. Supp. 1468 (1993).......................................................................23

*Mathews v. Gov't Emp. Ins. Co.,*
   23 F. Supp. 2d 1160 (S.D. Cal. 1998)......................................................13

*P.F. Cosmetique, S.A. v. Minnetonka Inc.,*
   605 F. Supp. 662 (S.D.N.Y. 1985)........................................................7, 8

*People ex rel. Herrera v. Stender,*
   212 Cal. App. 4th 614 (2012).............................................................15, 16

*Perfumebay.com Inc. v. eBay, Inc.,*
   506 F.3d 1165 (9th Cir. 2007).................................................................9

*Planned Parenthood v. City of Santa Maria,*
   16 Cal. App. 4th 685 (1993)...............................................................21, 23

*Rainforest Cafe, Inc. v. Amazon, Inc.,*
   86 F. Supp. 2d 886 (D. Minn. 1999)........................................................14

**RING BENDER LLLP**
2 Park Plaza, Suite 550
Irvine, California 92614

iv

*Rivera v. Bio Engineered Supplements & Nutrition, Inc.*,

   No. SACV07-1306JVS (RNBX), 2008 WL 4906433 (C.D. Cal. Nov. 13, 2008) 15

*RiverWatch v. County of San Diego Dept. of Env'mtl Health*,

   175 Cal. App. 4th 768 (2009) .................................................................. 18

*Rosicrucian Fellow v. Rosicrucian Etc. Ch.*,

   39 Cal.2d 121 (1952) ............................................................................. 16

*Satrap v. Pac. Gas & Elec. Co.*,

   42 Cal. App. 4th 72 (1996) ................................................................... 20

*Shepard v. United Healthcare Ins. Co.*,

   No. 2:09-CV-00843-MCE-DA, 2011 WL 720063 (E.D. Cal. Feb. 22, 2011) ...... 16

*Star Markets, Ltd. v. Texaco*,

   950 F. Supp 1030 (D. Hi. 1996) ............................................................ 10

*Steak Umm Co., LLC v. Steak Em Up, Inc.*,

   2011 WL 3679155 (E.D. Pa. 2011) ........................................................ 6

*Sun Microsystems, Inc. v. Microsoft Corp.*,

   188 F.3d 1115 (9th Cir. 1999) ................................................ 13, 14, 16, 17

*TCPIP Holding Co., Inc. v. Haar Commc'ns, Inc.*,

   244 F.3d 88 (2d Cir. 2001) .................................................................. 7, 8

*The Toro Co. v. ToroHead, Inc.*,

   61 U.S.P.Q.2d 1164 (TTAB 2001) ......................................................... 9

*United Farm Workers v. Dutra*,

   83 Cal. App. 4th 1146 (2000) ............................................................... 15

*Visa Intern. Services Ass'n v. JSL Corp.*,

   610 F.3d 1088 (9th Cir. 2010) ............................................................... 9

*Wallis v. Farmers Group, Inc.*,

   200 Cal. App. 3d 718 (1990) ................................................................ 20

*Whittaker v. Countrywide Fin. Corp.*,

   2010 U.S. Dist. LEXIS 122319 (C.D. Cal. Nov. 1, 2010) ........................... 19, 20

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

STATUTES

15 U.S.C. § 1125(c)(1) ...................................................................................3

15 U.S.C. § 1125(c)(2)(A) ..............................................................................4

15 U.S.C. § 1125(d)(1)(A) ............................................................................22

Cal. Bus. & Prof. Code § 17203 ...................................................................13

RULES

Fed. R. Civ. Proc. 408...................................................................................20

TREATISES

Stern, Bus. & Prof. C. § 17200 Practice (The Rutter Group 2005) ¶ 8:34, pp. 8.1 to

8-9.................................................................................................................16

**RING BENDER LLLP**
2 Park Plaza, Suite 550
Irvine, California 92614

REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT

## I.      INTRODUCTION

Plaintiff Academy of Motion Picture Arts of Sciences' ("AMPAS") Opposition to Defendant GoDaddy.com, LLC's ("GoDaddy") Motion for Partial Summary Judgment (the "Motion"), does not present a legally tenable basis for avoiding adjudication of AMPAS' claims for dilution under the ACPA, injunctive relief under Section 17200 of California's Business and Professions Code ("Section 17200"), lack of use regarding four specific domain names, or attorney's fees under Section 1021.5 of the California Code of Civil Procedure ("Section 1021.5").

In order to avoid a determination that it failed as a matter of law to proffer evidence sufficient to support a fame determination for each of the five trademarks at issue (the "AMPAS Marks"), AMPAS claims that GoDaddy's motion for partial summary judgment presents a triable issue of fact. It does not. As an initial matter, AMPAS conflates each of the five trademarks at issue into one and relies on evidence of media reports and advertising expenditures that do nothing to show the widespread consumer recognition of any of the AMPAS Marks, let alone each trademark, individually. More problematic is AMPAS' attempt to distract this Court from the actual trademarks at issue by pointing the Court to the alleged recognition and notoriety achieved by a trademark not at issue in this action—the Oscar statuette. AMPAS presents no evidence to support a determination that even one of the *word marks* at issue has achieved the level of fame required to sustain a claim of dilution under the ACPA as of August 2007, the date of GoDaddy's alleged first use. The mere labeling of its collective portfolio of trademarks as "famous" is a textbook example of the type of bald conclusions this Court should reject.

Likewise, AMPAS presents no credible arguments to prevent adjudication of its Section 17200 claim. AMPAS admits that the filter implemented by GoDaddy over a year and a half ago prevents the exact conduct sought to be enjoined: the placement of advertisements on domain names in GoDaddy's Parked Page Programs that contain one or more of the AMPAS Marks in the domain name string. Despite

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

this fact, AMPAS argues that it should avoid adjudication of the Section 17200 claim by applying the doctrine of voluntary cessation.  In so arguing, AMPAS misrepresents a series of inapposite cases while blatantly ignoring the plain statutory language of Section 17200 and governing California and Ninth Circuit case law. Indeed, AMPAS advances a position that stands in direct contradiction to Ninth Circuit authority recognizing that a request for injunctive relief under Section 17200 will not stand in the absence of credible evidence *presented by the plaintiff* that a discontinued practice is likely to recur.

Finally, contrary to its assertions, AMPAS is not entitled to attorney's fees under California Code of Civil Procedure section 1021.5 as a matter of law.  This is because AMPAS' own pleadings demonstrate that AMPAS does not seek a recovery that would bestow a benefit on the public.  Despite AMPAS' repeated protestations to the contrary, AMPAS seeks monetary damages and injunctive relief that only benefit itself.  Moreover, AMPAS' desire to protect its own intellectual property rights, as well as its expectation of a windfall recovery of millions of dollars in statutory damages, provided more than a sufficient incentive to prosecute its claims. AMPAS not only failed to present a single piece of evidence to support a contrary conclusion, but its own pleading admits that the relief it seeks is entirely related to itself.

AMPAS failed to present evidence establishing a genuine issue of fact for trial.  As such, GoDaddy respectfully requests the Court enter summary judgment in GoDaddy's favor on each of the issues presented.

## II.   ARGUMENT

### A.   <u>AMPAS Failed To Produce Sufficient Evidence To Support A Fame Determination For Each of Its Five Trademarks</u>

In order to maintain a claim under the dilution prong of the Anti-Cybersquatting Consumer Protection Act ("ACPA"), AMPAS bears the burden of proving that each of the AMPAS Marks is famous, i.e., "truly prominent and

renowned." *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 874 (9th Cir. 1999). Moreover, AMPAS is required to provide evidence that each of the AMPAS Marks achieved this fame prior to GoDaddy's first alleged use, which AMPAS claims occurred at least by August 2007. *See* Dkt. No. 170 (SAC) at ¶ 44; *see also* 15 U.S.C. § 1125(c)(1) (dilution lies only if allegedly diluting use begins after the "mark has become famous"). Because AMPAS failed to present evidence sufficient to demonstrate that any of the AMPAS Marks were famous prior to August 2007, GoDaddy's request for summary adjudication must be granted.

### 1. The Court's Determination on AMPAS' Previous Motion Does Not Bar the Requested Adjudication

AMPAS argues that the Court should refuse to consider GoDaddy's Motion on AMPAS' "dilutive of" claim under the ACPA because in adjudicating AMPAS' prior motion for summary judgment, the Court previously concluded that "the question of whether [AMPAS'] marks are famous is a disputed fact that needs to be tried." Opp. at 3:5-7. As AMPAS recognizes, the Court's determination was based on argument and evidence before the Court over two years ago. *See id*. at 3:1-3. More importantly, the determination was made in conjunction with AMPAS' request to find each of the trademarks at issue "famous" as a matter of law—a determination that would have repercussions far beyond the scope of these proceedings. *See id.*

Despite AMPAS' statements to the contrary, GoDaddy does not ask this Court for the converse determination: that AMPAS' marks are not famous as matter of law. Rather, GoDaddy simply asks this Court to determine whether, based on the evidence presented by AMPAS, it has met its burden of establishing fame for each of the five trademarks at issue for the purpose of its dilution claim under the ACPA *in this case*. In contrast to the motion made by AMPAS two years ago, GoDaddy's request does not present a single triable issue of fact. As such, the Court should examine GoDaddy's motion on its merits.

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

3

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

**2.      AMPAS' Failure To Present Evidence of Fame As To Each of AMPAS' Five Marks Precludes Finding of Fame**

As a preliminary matter, the evidence presented by AMPAS in support of its fame is of no consequence because AMPAS treats each of the five independent marks at issue in this case as if they are one mega-mark. *See, e.g.*, Opp. at 4:3-6:14; CSUF ¶¶ 27, 28, 30, 31, 32, 33, 34, and 38.  The fame inquiry, however, is not performed on a collection of marks; it is performed on a specific mark.  *See* 15 U.S.C. § 1125(c)(2)(A).

A cursory review of AMPAS' purported evidence of fame demonstrates that it is presented in the collective.  For example, AMPAS presents documents setting forth advertising expenditures alleged to benefit the AMPAS Marks collectively; the media coverage of its annual award show that does nothing to speak to the fame of any of the AMPAS Marks, individually.  *See* Opp. at 5:5-13 and CSUF ¶¶ 3, 31, 32.  This evidence is not specific enough to establish that each of the AMPAS Marks is famous because neither this Court nor a jury could glean from it information about any one of the individual marks at issue in this action.[1]

The only individualized evidence of fame that AMPAS proffers is the federal registrations that it has in each of the marks.[2]  *See* Dkt. No. 170 (AMPAS I SAC ) at ¶ 8, Ex. 1-4.  However, this evidence—not submitted or authenticated by AMPAS in opposing summary judgment—demonstrates only that AMPAS has registered trademarks, not that it has famous marks or that each of the registered trademarks is

---

[1] The only trademark singled out by AMPAS is a mark not at issue here:  the Oscar statuette.  *See* Opp. at 6:17-27 and 7:1-3, CSUF ¶¶ 1, 38, and 39.  AMPAS' reliance on dicta from a district court opinion related to the statuette or the use of the statuette in a USPTO instructional video is wholly misplaced.  Any recognition or prominence assigned to the statuette is inapplicable to the independent determination necessary in relation to each of the five word marks at issue.  *See* 15 U.S.C. § 1125(c)(2)(A).

[2] To be fair, AMPAS also offers evidence of dictionary entries for three of the marks at issue.  *See* Opp. at 6:2-13 and ¶¶ 34-36.  As discussed, *infra*, however, this evidence is neither demonstrative nor dispositive of the issue of fame.  *See* Section II., A., 4.

famous as a matter of law.

### 3. The Evidence Presented by AMPAS Fails To Support a Fame Determination Under the Requisite Statutory Factors

As noted in the moving papers, 15 U.S.C. section 1125(c)(2)(A) suggests four factors for evaluating fame for dilution purposes:  (1) the extent and duration of advertising; (2) the amount of sales; (3) the actual recognition of the mark; and (4) whether the mark is registered.  While the four factors are "non-exclusive," the only evidence proffered by AMPAS is that it has registered each of the AMPAS Marks. *ITC Ltd. v. Punchgini, Inc*., 482 F.3d 135, 168 (2d Cir. 2007).

#### a. AMPAS Presents Only Limited Evidence Within the Relevant Time Period for Determining Fame

Although AMPAS presents evidence that its annual awards show has been marketed nationwide between 2009 and 2014, the relevant period for determining fame is when AMPAS alleges that GoDaddy first began "using" the AMPAS Marks:  August 2007.  *See* Dkt. No. 1 (AMPAS I Comp.) ¶ 43.  AMPAS, however, failed to provide evidence of the type of multi-year, nationwide marketing campaigns that could be used to establish the fame of each of the marks at issue as of August 2007, instead choosing to present evidence of its advertising expenditures in the months and years afterward.   *Cf. Hyatt Corp. v. Hyatt Legal Services*, 736 F.2d 1153 (7th Cir. 1984).

The only evidence that AMPAS proffers does not support a claim that any of the AMPAS Marks were famous prior to August 2007.  For example, AMPAS submits evidence of (1) advertising expenditures *beginning in* 2007, (2) articles touting its annual awards show that were published between 2009 and 2014, and (3) a number of court decisions that merely reference AMPAS or its award shows, all of which were issued between 2010 and 2011.  *See* Opp. at 4:18-6:1; CSUF ¶¶ 3, 31, and 33.

In light of the mandatory pre-August 2007 timeframe, the only arguably

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

1 relevant evidence presented by AMPAS is a single license agreement entered into in

2 2006 and the aggregate advertising expenditure information related to 2007.[3]  *See*

3 CSUF ¶¶ 3 and 33.  All other evidence postdating GoDaddy's alleged initial use of

4 AMPAS' Marks in August of 2007 is irrelevant to a fame determination.  *See*, *e.g.*,

5 *Avery Dennison*, 189 F.3d at 877.  The nominal information provided by AMPAS

6 from within the relevant time period is wholly insufficient to support a fame

7 determination as to any of the AMPAS Marks as a matter of law.  *Id.*

8          b.          AMPAS Presents No Evidence of Actual Recognition by

9                      Consumers of Any of the AMPAS Marks

10          Even if the Court were willing to consider all of AMPAS' evidence, AMPAS

11 failed to present evidence to support the one fact that it needed to make:  that each

12 of the five marks at issue—and not merely the irrelevant statuette—are widely

13 recognized by consumers.  Indeed, actual recognition of *each* of the five marks by

14 consumers is the most important factor in the dilution analysis.  *See Steak Umm Co.,*

15 *LLC v. Steak Em Up, Inc.*, 2011 WL 3679155, *8 (E.D. Pa. 2011) ("The nature of

16 each factor suggests the weight it should be given.  Factor three, the extent of actual

17 recognition, is perhaps the most significant factor, as it directly shows how widely

18 recognized the mark is.  Factors one and two provide circumstantial evidence

19 because they require the court to infer that advertising and sales have an impact on

20 the "general consuming public" and make the brand famous.  Accordingly, these

21 factors are not necessarily as strong as factor three.").

22          AMPAS' resort to "renowned dictionaries and encyclopedias" and testimony

23 from GoDaddy's employees that they are "familiar with the Academy Awards and

24 the Oscars" is woefully inadequate to demonstrate fame.  Opp. at 6:2-13, 6:27-28.

25 ───────────────

26 [3] AMPAS has only itself to blame for the lack of evidence to support a fame finding in this case.  AMPAS repeatedly objected to the production of any evidence related

27 to its historical advertising expenditures, its licensing agreements, and all other indicia of its historical use of each of the marks, producing only this sparse evidence

28 and only after being ordered to do so by the Court.  *See* Dkt. Nos. 184 and 219.

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

AMPAS has no evidence of any actual recognition by consumers, including the consumer surveys that form the core of any legitimate trademark case. Instead, AMPAS attempts to dismiss the utter lack of consumer recognition as simply a "quibble." *But see Co-Rect Products, Inc. v. Marvy! Advertising Photography, Inc.*, 780 F.2d 1324, 1333 (9th Cir. 1985) ("Consumer surveys are recognized by several circuits as the most direct and persuasive evidence of secondary meaning."); *Gimix, Inc. v. JS &A Group, Inc.*, 699 F.2d 901, 907 (7th Cir. 1983) (consumer surveys and testimonies are the only direct evidence establishing secondary meaning). AMPAS, however, cannot establish the fame of each of the five trademarks at issue among consumers at the national level without this evidence.

Instead, AMPAS appears to believe that large quantities of advertising confer trademark fame without the need for consumer surveys or other direct evidence of consumer perceptions. *See* Opp. at 7:4-14. This belief is incorrect as a matter of law. As case law makes clear, a trademark holder cannot just throw numbers or conclusory statements at a court to create the suggestion of fame—the numbers must be meaningful. *See TCPIP Holding Co., Inc. v. Haar Commc'ns, Inc.*, 244 F.3d 88, 99 (2d Cir. 2001). This is precisely why a fame survey is so valuable. As the court in *P.F. Cosmetique, S.A. v. Minnetonka Inc.*, 605 F. Supp. 662 (S.D.N.Y. 1985) explained:

> Plaintiffs have not proven secondary meaning sufficiently to warrant equitable relief. They have cited the advertising expenses and sales for the Klorane line in support of their contention that the Klorane trade dress has secondary meaning. They have also cited authorities to prove that evidence of sales and advertising suffices to establish secondary meaning. Yet in each of those cases . . . there was proof beyond mere sales and advertising figures. That proof consisted of a consumer survey, extensive media coverage, evidence of long-standing market position, and/or perceptions within the industry. Here, I have been presented with no proof beyond a cumulative total of $5 million spent by Clairol on advertising since it introduced Klorane and a wholesale sales figure for the most recent year of $6 million for the entire Klorane line. Something more is required. Advertising and sales figures tell me little about the degree to which the public associates its trade dress with a certain source. Of course, plaintiffs inform me that they consider the Klorane packaging a large factor in Klorane's success, but that is not informative of the public's perceptions.

7

*Id.* at 672-73.

The case of *TCPIP Holding Co.* (specifically relied upon by AMPAS) is even more instructive. In *TCPIP*, the Second Circuit rejected evidence similar but more robust than that presented by AMPAS as far too "sketchy" to permit a finding of fame:

> According to TCPIP's affidavit, in 1999 it operated 228 retail stores in 27 states under the mark "The Children's Place," and achieved sales in 1998 of $280 million. . . . Over the past decade, the affidavit asserts, TCPIP spent "tens of millions of dollars" advertising its mark, but does not tell how many millions, when expended, or how effectively. Nor did TCPIP submit consumer surveys, press accounts, or other evidence of fame. . . . While it asserts that the plaintiff (and its predecessors) have used the mark continuously and exclusively for thirty years, [the affidavit] gives no further information . . . that would enable a court to determine the extent or dimension of public recognition of the mark and whether it has fame sufficient to meet the requirement of the Act.

*Id.* at 99. Like TCPIP, AMPAS' limited evidence fails to explain the extent of public recognition of each of its five marks so as to create a triable issue of fact on whether each of those marks are famous for the purpose of this case.

Similarly, if the plaintiff in *Avery Dennison* could not meet its burden of proving fame despite use of the AVERY mark for over 60 years and use of the DENNISON mark since the 1800s, evidence of $5 million per year in advertising, and annual sales of $3 billion, AMPAS has fallen far short of proving fame with only scant evidence of $2,000,000 per year advertising expenditures and minimal annual trademark licensing revenue for a two year period. *See Avery Dennison*, 189 F.3d at 874. Because AMPAS' advertising expenditures and limited licensing revenues do not help the Court to determine how widely recognized any one of the AMPAS Marks was as of August 2007, summary judgment should be granted on AMPAS' claim under the "dilutive of" prong under the ACPA.

### 4.   Fame for Dilution Purposes is Particularly Difficult to Establish When A Mark Has a Dictionary Definition

Although AMPAS argues that dictionary entries for three of the trademarks at issue ought to suffice to establish fame for purposes of dilution, AMPAS' ignores

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

8

the rulings of this district court and the Ninth Circuit stating exactly the opposite: "The purpose of statutory protection from trademark dilution is to prevent truly coined marks from becoming a part of the ordinary language." *Dawn v. Sterling Drug, Inc*., 319 F. Supp. 358, 363 (C.D. Cal. 1970) (emphasis added).   While GoDaddy recognizes that common words can achieve sufficient fame to receive dilution protection, the Ninth Circuit has placed a higher bar for establishing the fame of those marks in finding that a trademark holder for a common word such as "visa" doesn't own the word and may not "deplete the stock of useful words" by asserting otherwise. *Visa Intern. Services Ass'n v. JSL Corp*., 610 F.3d 1088, 1091 (9th Cir. 2010) (holding that conferring anti-dilution rights to common English words would be untenable, as whole swaths of the dictionary could be taken out of circulation).

As such, in seeking a fame determination on common every day words, a trademark holder must "demonstrate that the English language has changed [and] the mark's owner must demonstrate that the common or proper noun uses of the term and third-party uses of the mark are now eclipsed by the owner's use of the mark [and] has become the principal meaning of the word." *The Toro Co. v. ToroHead, Inc.*, 61 U.S.P.Q.2d 1164, 1181 (TTAB 2001).   AMPAS cannot—and indeed, did not—present evidence to demonstrate any of the AMPAS' Marks have reached this level of recognition.   This is especially true in the context of the words "oscar" and "oscars," which have multiple, common non-AMPAS related meanings (e.g. a person's name, a fish, a code word representing the letter O).

### 5.   Extensive Third Party Use of The AMPAS Marks Bars the Fame Determination Sought by AMPAS

AMPAS does not discuss or dispute the fact that the overarching goal of a fame determination is to protect "marks with such powerful consumer associations that even non-competing uses can impinge their value." *Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1180 (9th Cir. 2007) (emphasis added).   Yet, in seeking

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

9

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

1   to avoid the impact of multiple live Federal Registrations for marks including the

2   term Oscar or Academy Award, AMPAS ignores Ninth Circuit precedent finding

3   that use of a mark must be "substantially exclusive" in order to secure a fame

4   determination. *Avery Dennison,* 189 F.3d at 876.

5       AMPAS' argument is based largely upon objections to evidence establishing

6   not merely third-party use of the terms utilized in the AMPAS Marks, but of *federal*

7   *registrations* of those terms by multiple third parties.   AMPAS makes the

8   astounding claim that "the rights of non-parties who may have registered trademarks

9   . . . is irrelevant to the present litigation."   Academy's Response to GoDaddy's

10  Uncontroverted Fact, ¶ 2.   Contrary to AMPAS' surprising contention, this Court

11  may, of course, rely on third party trademark registrations to question the strength of

12  a mark in conducting a fame analysis. *Avery Dennison,* 189 F.3d at 874, 878 (use

13  by third parties in other markets is relevant because "when a mark is in widespread

14  use, it may not be famous for the goods or service of one business"); *see also Star*

15  *Markets, Ltd. v. Texaco*, 950 F. Supp 1030, 1035 (D. Hi. 1996) (considering use of

16  the same or similar marks by third parties in any industry); *Carnival Corp. v.*

17  *Seaescape Casino Cruises, Inc.,* 74 F.Supp.2d 1261, 1270 (1999) (third party use

18  relevant because "[widespread use of a mark or elements of a trademark makes it

19  unlikely that the mark can be considered famous").

20      As relevant here, the plaintiff in *Avery Dennison* claimed that "Avery" and

21  "Dennison" were famous marks entitled to dilution protection.   *See Avery*

22  *Dennison,* 189 F.3d at 874.   After noting that "[t]o be capable of being diluted, a

23  mark must have a degree of distinctiveness and 'strength' beyond that needed to

24  serve as a trademark," the Court proceeded to analyze whether "Avery" and

25  "Dennison" had reached the level of legal fame.  *Id.* at 876-877.  The Court found

26  that "*both 'Avery' and 'Dennison' are commonly used as trademarks,* both on and

27  off of the Internet, by parties other than [plaintiff]" and added:

28      The record includes *copies of five trademark registrations* for "Avery"

and "Averys," a *computer printout of a list of several businesses with "Avery" in their names who market products on the Internet, and a list of business names including "Avery," which, according to a declaration submitted by NSI, is a representative sample of over 800 such businesses.* The record also contains a computer printout of a list of several businesses with "Dennison" in their names which market products on the Internet and a list of business names including "Dennison," a representative sample of over 200 such businesses. Such widespread use of "Avery" and "Dennison" makes it unlikely that either can be considered a famous mark eligible for the **dilution** cause of action.

*Id.* at 878 (emphasis added).  The result should be no different here.  *See* GoDaddy's Uncontroverted Fact, ¶ 2.

In light of AMPAS' failure to present sufficient evidence to support its claim that any of the marks at issue are famous, AMPAS cannot avoid adjudication of its "dilutive of" claim under the ACPA.  *Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

**B.   AMPAS Did Not Present Evidence To Create A Triable Issue of Fact As To Whether GoDaddy Trafficked In Or Used Four (4) Of The Domain Names At Issue**

AMPAS does not oppose GoDaddy's motion with respect two of the four domain names:  INTERNETACADEMYAWARDS.COM and OSCAR-2011.COM. *See* Opp. at 7:15-8:17; GoDaddy's Uncontroverted Facts, ¶¶ 8, 9, 10.  As such, both should be dismissed.

With respect to the other two domain names, 2OSCARS.COM and OSCARMOVIES.COM, AMPAS failed to submit evidence demonstrating that GoDaddy used or trafficked in either.  AMPAS maintains that it produced a screenshot of a GoDaddy parked page for 2OSCARS.COM during discovery.  Opp. at 8: 4-7; CSUF ¶¶ 40-41.  AMPAS' position is based solely on an unauthenticated screenshot that provides no indication of which domain name it purportedly relates and is devoid of any of the requisite sworn evidentiary support from the individual that allegedly took the screenshot (e.g., the domain name entered, date and time visited, etc.).  *See* CSUF 40-41 and Declaration of Matt Herman, ¶¶ 3-4, Ex. B, C. In stark contrast to other screenshots produced by AMPAS in this matter—and

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

11

indeed, the screenshot that AMPAS submits in relation to the domain name OSCARSMOVIES.COM—the screenshot that AMPAS purports is of a webpage resolving from the domain name 2OSCARS.COM at some unspecified point in time is missing any reference to the domain name. *Cf.* CSUF ¶ 41, Herman Decl. at Exs. B, C with ¶ 43, Herman Decl. at Ex. E.   AMPAS' unauthenticated and unidentifiable screenshot is insufficient to establish a triable issue of fact as to whether GoDaddy trafficked in or used the domain name 2OSCARS.COM and the Court should adjudicate AMPAS' claim as to this domain name in GoDaddy's favor.

As for the other domain name, OSCARMOVIES.COM, AMPAS claims that OSCARMOVIES.COM was actually not the domain name it meant to put at issue in this lawsuit. *See* Opp. at 8:8-17.  In other words, AMPAS admits that it has any proof that GoDaddy trafficked in or used this domain name.  While AMPAS may have desired to identify a different domain name in this case, it failed to do so within the timeline ordered by this Court.   As the Court previously recognized, AMPAS' failure to identify a different domain name within the timeline set by the Court renders that domain name not at issue. *See* Dkt. No. 491 at 9:13-15.[4]  To the contrary, it is clearly undisputed that there is no triable issue of fact as to the domain name AMPAS identified in this case:  OSCARMOVIES.COM.

## C.   As Established By the Ninth Circuit, AMPAS Cannot Maintain Its Section 17200 Claim Without Presenting Evidence That The Discontinued Conduct At Issue Is Likely To Recur

AMPAS does not dispute the fact that an injunction is the only form of relief it may obtain pursuant to its Section 17200 claim. *See* Opp. at 2:28 n. 1.  It also

---

[4]  To the extent AMPAS seeks to substitute OSCARSMOVIES.COM for OSCARMOVIES.COM, the Court should decline its request.  The Court-ordered time to add additional alleged infringing domains to this lawsuit closed in 2012 and fact discovery ended six months ago.  As the Court previously recognized, AMPAS' failure to seek timely relief from the Court-ordered deadline precludes inclusion of this domain name in this action. *See* Dkt. 491 at 9:3-15.

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

does not dispute the fact that over a year and a half ago, GoDaddy implemented a filter preventing the placement of advertisements on domain names that contain any of AMPAS Marks in the domain name string and that the filter has been effective in preventing the conduct that AMPAS seeks to enjoin by way of its Section 17200 claim. *See* Opp. at 11:10-13 and 13:3-5. AMPAS nonetheless attempts to salvage its Section 17200 claim by misconstruing the applicable statutory language, ignoring well-established California law, and blatantly misrepresenting the holding and applicability of several Federal court decisions.

California Business and Professions Code Section 17203 ("Section 17203") permits a court to enjoin the conduct of anyone who "engages, has engaged, or proposes to engage in unfair competition" under Section 17200. Cal. Bus. & Prof. Code § 17203. While the language of Section 17203 authorizes redress of past acts, courts have long held that injunctive relief to prohibit past conduct is available only where there is a likelihood that the conduct will recur. *See Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1123 (9th Cir. 1999) (vacating preliminary injunction where defendant had discontinued the challenged practice and there was no showing that it would probably recur); *Mathews v. Gov't Emp. Ins. Co.*, 23 F. Supp. 2d 1160, 1165 (S.D. Cal. 1998) (dismissing Section 17200 claim for injunctive relief where defendant terminated its challenged practices years earlier and there was no evidence that future violations were likely to recur).

In an effort to avoid the dismissal of its 17200 claim, AMPAS attempts to characterize GoDaddy's implementation of a filter as "voluntary cessation" of illegal activity that, under Federal trademark law, is insufficient to avoid entry of a permanent injunction. *See* Opp. at 8:10-11:1. In doing so, AMPAS claims that the doctrine of voluntary cessation prevents adjudication of its 17200 claim. It does not. Rather, the voluntary cessation doctrine is a construct of Federal trademark law that prevents the dismissal of trademark infringement actions *in their entirety* based solely on the fact that the alleged infringement has ceased. *Already, LLC v. Nike,*

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

*Inc.*, 133 S. Ct. 721, 724, 184 L. Ed. 2d 553 (2013).  Not a single court has extended the application of the voluntary cessation doctrine to Section 17200 claims such as that presented here.  In fact, the Ninth Circuit has expressly rejected such arguments.  *See Sun Microsystems*, 188 F.3d at 1123.

Ignoring the clear authority on this issue, AMPAS falsely represents to this Court that "[c]ourts have applied these established rules to hold that alleged violations of the [Section 17200] are not mooted by . . . claims for voluntary cessation."  Opp. at 10:10-11:1.  Not a single not a single case cited by AMPAS supports this statement. For example, AMPAS cites *Jacobsen v. Katzer*, 535 F.3d 1373, 1377 n. 1 (Fed. Cir. 2008), claiming the Federal Circuit's "agree[ment] with the California district court's holding that a motion for preliminary injunction was not mooted by the voluntary cessation of [an] alleged [Section 17200] violation." Opp. at 10.  The *Jacobsen* decision, however, makes no mention of Section 17200— nor would it make sense if it had given that the district court dismissed the Section 17200 claim and the dismissal was not challenged on appeal.  *Id.*; *Jacobsen v. Katzer*, No. C 06-01905 JSW, 2007 WL 2358628, at *2 (N.D. Cal. Aug. 17, 2007) vacated in part, 535 F.3d 1373 (Fed. Cir. 2008).

Likewise, the decision in *Rainforest Cafe, Inc. v. Amazon, Inc.*, 86 F. Supp. 2d 886, 905 (D. Minn. 1999), which AMPAS specifically refers to as "holding that [Section 17200] . . . claim[] for injunctive relief w[as] not mooted by voluntary cessation" includes no such determination.  Opp. at 10:18-20.  Rather, as expected given the limited application of the voluntary cessation doctrine, the *Rainforest Café* court rejected only "the argument that cessation of use renders [defendant's] counterclaim of trademark infringement and dilution of trademark moot."  *Id.* at 905.  No mention of voluntary cessation was made in the court's discussion of the plaintiff's Section 17200 claim.

AMPAS' reliance on *United Farm Workers v. Dutra*, 83 Cal. App. 4th 1146 (2000) is similarly misplaced.  In *United Farm Workers*, the Court found that the

appeal of the injunctive order was not rendered moot merely because a committee controlled by the defendant was dissolved, since the defendant had previously shown a propensity to dissolve one illegal committee and simply rename and continue the illegal conduct, i.e., funding anti-union groups.  *See United Farm Workers v. Dutra*, 83 Cal. App. 4th 1146, 1164 (2000).  In other words, there was sufficient evidence in the record demonstrating a likelihood that the alleged unlawful activity would recur.  Contrary to AMPAS' representation to this Court, the application of the doctrine of voluntary cessation to the Section 17200 claim was not raised in the trial court, nor on appeal.  *See id.*

The only case cited by AMPAS that arguably supports its position is *Rivera v. Bio Engineered Supplements & Nutrition, Inc.*, No. SACV07-1306JVS (RNBX), 2008 WL 4906433, at *5 (C.D. Cal. Nov. 13, 2008), which presents a fact pattern markedly different than that presented here.  In *Rivera*, the defendant argued that the request for injunctive relief under Section 17200 was moot because it had reformulated the products at issue and changed the packaging labels.  *See id.* at *5. In rejecting the defendant's argument, the court in *Rivera* specifically noted that the improperly labelled products were still being marketed and sold by retailers and, as such, the fraudulent activity at issue remained ongoing.  *See id.*

AMPAS' inability to find a case to support its position is not surprising given clear California and federal authority to the contrary.  As succinctly stated by the California Court of Appeals in *People ex rel. Herrera v. Stender*, 212 Cal. App. 4th 614, 630-31 (2012):

> [Under Section 17200] injunctive relief is appropriate only when there is a threat of continuing misconduct.  [T]he general rule is that an injunction may not issue unless the alleged misconduct is ongoing or likely to recur. . . .  Injunctive relief has no application to wrongs which have been completed [citation], absent a showing that past violations will probably recur.  Thus, while a trial court has broad authority to enjoin conduct that violates section 17200, in order to grant injunctive relief under section 17204 . . . there must be a threat that the wrongful conduct will continue. "Injunctive relief will be denied if, at the time of the order of judgment, there is no reasonable probability that the past acts complained of will recur, **i.e., where the**

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

15

**defendant voluntarily discontinues the wrongful conduct."**

*Id.* at 630 (citing *California Service Station Assn. v. Union Oil Co.*, 232 Cal. App. 3d 44, 57 (1991) (emphasis added)); *accord Colgan v. Leatherman Tool Group, Inc.* 135 Cal. App. 4th 663, 702 (2006); *Cisneros v. U.D. Registry, Inc.*, 39 Cal. App. 4th 548, 574 (1995).

Indeed, California courts have been clear that the "injunctive remedy [under Section 17200] should not be exercised **in the absence of any evidence that the acts are likely to be repeated in the future**." *Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal. App. 4th 997, 1012 (2005) (emphasis added); *see also Rosicrucian Fellow v. Rosicrucian Etc. Ch.*, 39 Cal.2d 121, 144 (1952) (holding that "an injunction is ordered against past acts only if there is evidence that they will probably recur"); Stern, Bus. & Prof. C. § 17200 Practice (The Rutter Group 2005) ¶ 8:34, pp. 8.1 to 8-9 (plaintiff must show there is a threat that allegedly wrongful act will continue).

Despite AMPAS' swift dismissal of the California case law cited in GoDaddy's moving papers, federal courts in the Ninth Circuit have followed California law in this regard, placing the burden on the plaintiff seeking an injunction under Section 17200 to demonstrate that the discontinued conduct is likely to recur. *Sun Microsystems*, 188 F.3d at 1123; *Eastman v. Allstate Ins. Co.*, No. 14CV0703-WQH-NLS, 2014 WL 5355036, at *4 (S.D. Cal. Oct. 20, 2014); *Shepard v. United Healthcare Ins. Co.*, No. 2:09-CV-00843-MCE-DA, 2011 WL 720063, at *7 (E.D. Cal. Feb. 22, 2011). Indeed, the Ninth Circuit's decision in *Sun Microsystems* is not only instructive, it is directly on point.

As with AMPAS, the plaintiff in *Sun Microsystems* attempted to rely on the voluntary cessation doctrine to save its Section 17200 claim in the absence of any evidence that the discontinued practices engaged in by Microsoft were likely to recur. The Ninth Circuit rejected the plaintiff's attempt to shift the burden to the defendant with clear language:

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

16

Microsoft's stronger assertion is that the district court abused its discretion in enjoining Microsoft's exclusivity provisions for the virtual machine and the native code interface even though Microsoft claimed that it had discontinued these practices and Sun had made no showing that they were likely to recur. The district court apparently placed the burden on Microsoft to prove that its conduct would not recur, relying upon *Polo Fashions, Inc. v. Dick Bruhn, Inc.,* 793 F.2d 1132 (9th Cir. 1986), in which this court held that where a defendant in a trademark case has ceased the unlawful conduct, an injunction should issue unless "the reform of the defendant [is] irrefutably demonstrated and total." *Id.* at 1135 (internal quotation marks omitted). Sun's unfair competition claim, however, is not brought under federal trademark law, but under California law, which provides that **a plaintiff cannot receive an injunction for past conduct unless he shows that the conduct will probably recur.**

*Id.* (emphasis added).

The result here should be no different than that reached by the Ninth Circuit in *Sun Microsystem* and every other California case in which the plaintiff seeking an injunction under Section 17200 failed to present evidence demonstrating that a discontinued practice was likely to recur. AMPAS has presented no evidence to indicate that GoDaddy is likely to resume placing advertisements on domain names containing any of the AMPAS Marks in the domain name string. To the contrary, discovery produced by GoDaddy, coupled with declarations submitted in support of GoDaddy's summary judgment motion, make clear that GoDaddy has not engaged in this activity in over a year and a half and has no intent to resume such practice. *See* GoDaddy's Uncontroverted Fact, ¶¶ 15, 16. Nor does AMPAS dispute the fact that no advertisements have been displayed on domain names incorporating one or more of the AMPAS Marks, no matter how obscure or tangential the alleged connection between the domain name and AMPAS' Marks may be (e.g., coscaraudiosales.com and uncleleoscars.com). *See generally*, Opp. If there were evidence to the contrary, AMPAS certainly would have placed it in the record.

On the undisputed facts before the Court, there is no basis to conclude that GoDaddy is likely to resume the conduct it ceased years ago. AMPAS has failed to produce evidence demonstrating any probability, let alone a "reasonable probability[,] that the past acts complained of will recur." *Sun Microsystem*, 188

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

F.3d at 1123; *California Service Station*, 232 Cal. App. 3d at 57. As such, AMPAS is not entitled to the injunctive relief it seeks[5] as a matter of law and this Court should grant GoDaddy's Motion dismissing AMPAS' 17200 claim.

### D. AMPAS' Own Allegations And Admissions Bar An Award Of Attorney's Fees Under Section 1021.5 As A Matter of Law

In response to GoDaddy's motion for partial summary judgment on the issue of AMPAS' entitlement to attorney's fees under Section 1021.5, AMPAS ignores the allegations in its own pleading, and relies on arguments that are unsupported by proper summary judgment evidence. Neither approach is effective.

As an initial matter, because AMPAS' claim for attorney fees is dependent on the existence of its Section 17200 claim, to the extent the Court grants GoDaddy's motion for partial summary judgment on AMPAS' Section 17200 claim, it must also dismiss AMPAS' claim for attorney's fees under Section 1021.5.

To the extent AMPAS' Section 17200 claim survives, in order to obtain fees under Section 1021.5, AMPAS was required to present evidence demonstrating that this litigation (1) served to vindicate an important public right, (2) conferred a significant benefit on the general public, and (3) was necessary and imposed a financial burden on AMPAS that was out of proportion to its individual stake in the litigation. *RiverWatch v. County of San Diego Dept. of Env'mtl Health*, 175 Cal. App. 4th 768, 775 (2009). Because the criteria are in the conjunctive, all must be satisfied to justify a fee award. *Id.* at 775. AMPAS failed to present evidence to meet each of these requirements.

---

[5] To the extent AMPAS claims that GoDaddy's motion should be denied because GoDaddy has only taken action to address AMPAS-specific domain names, the broad injunction now urged by AMPAS has never been requested by AMPAS in this litigation, nor does AMPAS have standing to make such a request. The fact remains that GoDaddy has halted the exact conduct of which AMPAS complained. *See* Dkt. No. 1 (AMPAS I Comp.) at Prayer for Relief at b. and e.; Dkt No. 58 (FAC) at Prayer for Relief at b. and e.; Dkt. No. 170 (SAC) at Prayer for Relief at b. and e; Dkt No. 1 (AMPAS II Comp.) at Prayer for Relief at b. and e.; Dkt No. 20 (FAC) at Prayer for Relief at b. and e.

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

1. **Courts Regularly Dispose of Claims for Attorneys Fees' Under Section 1021.5 Prior to A Determination on the Merits**

AMPAS' argument that pre-judgment adjudication of Section 1021.5 claims is "disfavored" and that GoDaddy's Motion is "premature" is misplaced.  Opp. at 14:17-15:19.  Courts dispose of demands for attorneys' fees under Section 1021.5 early in litigation or on summary judgment where it is clear from the evidence that—regardless of any benefit that may eventually inure to the public—the plaintiff was motivated by its own pecuniary interests to bring suit.  *See Whittaker v. Countrywide Fin. Corp.*, 2010 U.S. Dist. LEXIS 122319 (C.D. Cal. Nov. 1, 2010) (striking prayer for attorneys' fees pursuant to section 1021.5 where the plaintiffs were motivated by their own pecuniary interests and not by a desire to pursue a public benefit); *City of Lindsay v. Sociedad Quimica y Minera de Chile S.A.*, No. CV-F-11-0046 LJO SMS, 2011 WL 2516159, at *5 (E.D. Cal. June 21, 2011) (striking prayer at the outset of litigation because "the primary purpose in bringing the countersuit was to pursue and protect [the defendant's] own property rights rather than to further a significant public interest").

Indeed, in *Whitaker v. Countrywide Fin. Corp.*, this district court found a nearly identical argument unpersuasive.  Plaintiff argued that "determining its potential right to attorneys' fees is premature at this very early stage of the litigation because there is not even a prevailing party, this Court does not have enough information to assess whether Plaintiffs have vindicated important public rights or interests by virtue of this litigation."  *Id.* at *4.  The *Whitaker* court rejected this argument, striking plaintiff's request for attorneys' fees under Section 1021.5 based on its inability to meet the statutory requirements for such an award.

2. **AMPAS Failed to Present Evidence Demonstrating that It Was Motivated by Anything Other Than its Own Pecuniary and Business Interests In Filing Suit**

Just as in *Whitaker*, the undisputed evidence and AMPAS' own judicial

19

admissions contradict any conclusory claim that its pecuniary interest in the matter is so small that it would not warrant suit.  *Id*., at *7-8.  Section 1021.5 "is not a method for rewarding litigants motivated by their own pecuniary interest who only coincidentally protect the public interest."  *Id*. (citing *Wallis v. Farmers Group, Inc*., 200 Cal. App. 3d 718, 741 (1990)).  Therefore, an award of attorneys' fees under Section 1021.5 is improper where the primary effect of a lawsuit is to advance or vindicate the plaintiff's personal economic interests, even if some incidental public interest may be served by a lawsuit.  *Advanced Micro Devices, Inc. v. National Semiconductor Corporation*, 38 F. Supp. 2d 802, 815 (N.D. Cal. 1999).

In *Advanced Micro Devices*, plaintiff was ordered by the Environmental Protection Agency to clean up contamination at one of its sites (though it was not responsible for the contamination).  *Id*. at 806-07.  The plaintiff then brought a contribution action and sought to recoup cleanup costs and/or its attorneys' fees under Section 1021.5 from the defendants on the grounds that the clean up conferred a benefit to the public.  *Id*. at 815.  The court held that the plaintiff was not entitled to attorneys' fees because it had a "strong personal, financial incentive to bring suit" and that any public benefit was merely incidental to the plaintiff's interest.  *Id*.

As demonstrated by AMPAS' own pleadings, as well as evidence of the "monetary value of the benefits . . . reasonably expected to be obtained" by AMPAS at the time it was making "vital litigation decisions", AMPAS' interest in this litigation is driven primarily (if not, solely) by its own personal economic interests.[6]

---

[6] To the extent AMPAS claims the disclosure of its settlement offers violates Rule 408 of the Federal Rules of Civil Procedure, it is mistaken.  As made clear in the moving papers, GoDaddy did not present the settlement figures "to prove or disprove the validity or amount of a disputed claim."  Fed. R. Civ. Proc. 408.  Rather, GoDaddy offered the figures as evidence of "the benefits . . . reasonably expected to be obtained" by AMPAS in keeping with the analysis required under California law.  Opp. at 18:27-28.  Such a use not only falls well outside the scope of Rule 408, it is directly in line with California law allowing for the citation to settlement figures in order to demonstrate that, "at the time important litigation decisions were being made, [AMPAS'] expected recovery was always more than enough to warrant incurring the costs of litigation."  *Satrap v. Pac. Gas & Elec. Co.*, 42 Cal. App. 4th 72, 79 (1996).  AMPAS' attempt to distinguish that law by way of a dismissive footnote is unavailing.

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

*See* GoDaddy's Uncontroverted Facts, ¶¶ 17-23.  It is undisputed that AMPAS had a strong financial incentive to bring this suit, as well as a strong business incentive in protecting the alleged third-party use of its trademarks on the internet.  *See id.*

Despite having the opportunity to oppose GoDaddy's request on the merits, "[n]o evidence was presented that the litigation transcended [AMPAS'] financial interests and imposed a financial burden disproportionate to its individual stake in the matter," and interests of the "general public were incidental to [AMPAS'] primary objective of obtaining grant money."  *Planned Parenthood v. City of Santa Maria*, 16 Cal. App. 4th 685, 691 (1993) (affirming denial of attorney fees under Section 1021.5 where no such evidence was presented).

AMPAS is simply unable to avoid the fact that its primary objective in filing this lawsuit and litigating it for nearly five years was to enforce its own intellectual property rights and to secure a windfall of statutory damages under the ACPA. Allowing the claim for attorneys' fees to remain open pending a final determination on the merits will do nothing to change this fact.

### 3.    AMPAS Failed to Demonstrate How Its Requested Relief Would Produce A Significant Public Benefit

AMPAS was similarly unable to present evidence that would demonstrate its ability to secure a result in this action that would produce a significant public benefit, even assuming *arguendo* it received all of the relief sought.   Indeed, AMPAS' own allegations and judicial admissions foreclose such a result.  Although AMPAS makes grand, sweeping statements that at the end of this case it will have effected broad relief to the public by securing a far-reaching injunction, AMPAS ignores the fact that given the nature of the claims asserted in this action, it cannot "enjoin GoDaddy's [alleged] unlawful, unfair and deceptive cybersquatting on behalf of trademark holders and the general public."  Opp. at 16:12-14.

Case law is clear that cybersquatting under the ACPA is a domain name specific claim and AMPAS can only be granted relief under its cybersquatting claim

RING BENDER LLLP
2 Park Plaza, Suite 550
Irvine, California 92614

21

for those domain names that are specifically named and at issue in this lawsuit.  *See* 15 U.S.C. 1125(d)(1)(A).  Because AMPAS' claim for violation of Section 17200 is based solely on its cybersquatting claim, it is axiomatic that the same limitations extend to its request for injunctive relief; i.e., AMPAS can only secure injunctive relief as to the specific domain names at issue.  As such, AMPAS is incapable of securing the "significant public benefit" it claims to be seeking as a matter of law.  By the very nature of AMPAS' claims, the only injunctive relief that can be effected relates to the domain names at issue in the action; AMPAS cites no case law to the contrary.  AMPAS can hardly claim that such an injunction would provide the public with a benefit from the enforcement of its own statutory right, let alone a public benefit significant enough to entitle it to attorneys' fees under Section 1021.5.

Nor would the injunction specifically sought by AMPAS in its pleadings—which is far more limited than its argument would suggest—provide a public benefit sufficient to secure an award of attorneys' fees if entered as requested.  A review of AMPAS' causes of action for violation of Section 17200 and their related prayers for relief demonstrate that the relief sought is specific to AMPAS.  *See* Dkt No. 1 (AMPAS I Comp.) at Prayer for Relief at b. and e.; Dkt. No. 58 (FAC) at Prayer for Relief at b. and e.; Dkt. No. 170 (SAC) at Prayer for Relief at b. and e; Dkt. No. 1(AMPAS II Comp.) at Prayer for Relief at b. and e.; Dkt. 20 (FAC) at Prayer for Relief at b. and e.

Indeed, it is notable that AMPAS' requests for injunctive relief never mention the implementation of a filter nor do they, more importantly, reference the trademark rights of anyone other than AMPAS.  *See id.*  A review of each of the pleadings explains why:  AMPAS has repeatedly sought to hold GoDaddy liable for its conduct only in relation to AMPAS' own trademarks.  To the extent there is any reference to the public contained in AMPAS' pleadings, it is only in AMPAS' cursory recitation of the statutory buzz words required to assert a claim for violation of Section 17200.  *See* Dkt. No. 1 (AMPAS I Comp.) at ¶¶ 70, 71; Dkt. No. 58

22

(FAC) at ¶¶ 72, 73; Dkt. No. 170 (SAC) at ¶¶ 72, 73; Dkt No. 1 (AMPAS II Comp.) at ¶¶ 59, 60; Dkt. No. 20 (FAC) at ¶¶ 61, 62.  These "allegations" are insufficient to demonstrate the likelihood of any significant impact that may accrue to the public in the event AMPAS is able to secure the relief it seeks.

AMPAS has pled no facts that suggest GoDaddy has harmed or misled the general public or that anyone (other than AMPAS) has anything to gain by this lawsuit.  *See Planned Parenthood*, 16 Cal. App. 4th at 691; *Kaufman and Broad-South Bay v. Unisys Corp.*, 822 F. Supp. 1468, 1478 (1993) (rejecting claim for section 1021.5 attorneys' fees because suit motivated by personal interest, despite the chance that some incidental public benefit could result).  Nor does AMPAS present this Court with any such evidence; indeed, as demonstrated in GoDaddy's Motion, there is no such evidence.

Regardless, even assuming *arguendo* AMPAS was entitled to secure the sweeping injunction on behalf of the public at large that it now claims it has always sought, the fact remains that the California legislature did not intend to authorize an award of attorney's fees under Section 1021.5 in every lawsuit enforcing a constitutional or statutory right.  Indeed, courts have generally only applied Section 1021.5 in cases seeking to vindicate rights guaranteed by the California Constitution or to enforce statutes with broad public benefits, such as land-use and elections. *See, e.g.*, *Families Unafraid to Uphold Rural El Dorado County v. Board of Supervisors*, 79 Cal. App. 4th 505 (2000) (action to enjoin development project in rural area), *Hammond v. Agran*, 99 Cal. App. 4th 115 (2002) (action resulted in important clarification of proper subjects for candidate statements contained in voter pamphlets).  One would search in vain for a California court's invocation of Section 1021.5 to justify an award of attorney's fees in an action similar to the present one. To be sure, AMPAS did not present the Court with such a case.

The only reason this case has not settled is that AMPAS insists it will recover millions of dollars in statutory damages and attorney's fees for a claim that is worth

23

1   little more than $100.  Early determination by the Court on the issue of attorneys'

2   fees will expedite the disposition of this case.  As set forth above, AMPAS is not

3   entitled to attorneys' fees under Section 1021.5 as a matter of law.  The Court can,

4   and should, dismiss AMPAS' claim for under fees under Section 1021.5 now.

5   **III.    CONCLUSION**

6          Based on the foregoing, as well as the arguments and evidence presented in

7   the moving papers, GoDaddy respectfully requests the Court grant is motion for

8   partial summary judgment on all grounds sought.

10  Dated:  February 9, 2015                    **RING BENDER LLLP**
                                                Aaron M. McKown
11                                              Paula L. Zecchini

14                                              By:   */s/ Aaron McKown*
                                                      Aaron M. McKown
15                                              Attorneys for Defendant
                                                GODADDY.COM, LLC (f/k/a
16                                              GODADDY.COM, INC.)

**RING BENDER LLLP**
2 Park Plaza, Suite 550
Irvine, California 92614