1 | BOIES, SCHILLER & FLEXNER LLP
2 | Stuart Singer (pro hac vice)
    ssinger@bsfllp.com
3 | 401 East Las Olas Blvd., Suite 1200
    Fort Lauderdale, FL 33301
4 | Tel: 954-356-0011
5 | Fax: 954-356-0022

6 | David L. Zifkin (SBN 232845)
7 | dzifkin@bsfllp.com
    401 Wilshire Blvd., Suite 850
8 | Santa Monica, CA 90401
    Tel: 310-752-2400
9 | Fax: 310-752-2490

10 | [Additional Counsel Listed on Signature Page]

11 | Attorneys for Plaintiff Academy of Motion Picture Arts and Sciences

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ACADEMY OF MOTION PICTURE ARTS AND SCIENCES, a California nonprofit corporation,<br><br>Plaintiff,<br>v.<br><br>GODADDY.COM, INC., et al.,<br><br>Defendant. | Case No.: 2:10-cv-03738 AB (CWx)<br>[Consolidated with Case No. 2:13-cv-08458-AB (CWx)]<br><br>**PLAINTIFF ACADEMY OF MOTION PICTURE ARTS AND SCIENCES' STATEMENT OF THE CASE**<br><br>Pretrial Conference: July 13, 2015<br>Time: 11:00 a.m.<br>Courtroom: 4<br><br>Complaint Filed: May 18, 2010<br>Trial Date: August 4, 2015 |

PLAINTIFF'S STATEMENT OF THE CASE

Pursuant to the Court's Order Regarding Court Trial, Plaintiff Academy of Motion Picture Arts and Sciences ("AMPAS") respectfully submits its Statement of the Case.

## I. AMPAS Already Established Most Of The Elements Of Its ACPA Claim On Summary Judgment.

AMPAS has brought this action because GoDaddy has repeatedly violated the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), by seeking to profit from registering, using, and trafficking in domain names that are confusingly similar to AMPAS's famous and highly distinctive trademarks. AMPAS is seeking an award of statutory damages for each domain name at issue, permanent injunctive relief, and an award of attorney fees under the ACPA.

To prevail on its ACPA claim, AMPAS must establish by a preponderance of the evidence that (1) AMPAS's marks are distinctive or famous; (2) the accused domain names are identical or confusingly similar to AMPAS's marks; (3) GoDaddy registered, trafficked in, or used the accused domain name; and (4) GoDaddy acted with bad faith intent to profit under the ACPA. 15 U.S.C. § 1125(d); *see also* Dkt. No. 655, p. 5.

As a result of the Court's summary judgment orders and the parties' stipulations, the following elements of AMPAS's ACPA claim have already been established as a matter of law:

(1) AMPAS's marks are distinctive under the ACPA. Dkt. No. 491, pp. 10-11, 28.

(2) GoDaddy is not entitled to 15 U.S.C. § 1114(2)(D)(iii)'s safe harbor because, "with regard to its operation of the Parked Pages Program, GoDaddy does not function solely as a registrar." *Id.*, pp. 11-12, 28.

(3) GoDaddy is an "authorized licensee" of the domain names in its Parked Pages Program for purposes of the ACPA. *Id.*, pp. 13-14, 28.

1      (4) GoDaddy "uses" and "trafficks in" the domain names in its Parked
2          Pages Program for purposes of the ACPA. *Id.*, pp. 14-16, 28.
3          GoDaddy's placement of domain names in the Parked Pages alone is
4          sufficient to establish the "use" or "trafficks in" element, "even absent
5          actual monetization." *Id.*, p. 16.
6      (5) "Each of the 293 domain names at issue … were in one of GoDaddy's
7          Free Parking or Cash Parking Programs during the relevant time frame
8          in this action." Dkt. No. 674, ¶ 5.
9      (6) Of the 293 domain name at issue, 236 of them are confusingly similar
10         as a matter of law. Dkt. Nos. 507, 508, 563-1, 568, 569.

Accordingly, the only elements of liability that remain are: (a) for 56 of the domain names at issue, whether they are confusingly similar to AMPAS's marks under the ACPA; and (b) whether GoDaddy acted with bad faith intent to profit.

**II.    The 56 Domain Names Are Confusingly Similar To AMPAS's Marks.**

As indicated above and detailed in AMPAS's Memorandum of Contentions of Law and Fact, it has already been determined or stipulated that 236 of the domain names at issue are confusingly similar to AMPAS's marks. The remaining 56 domain names at issue are also confusingly similar because (i) they contain AMPAS's marks; and (ii) they resolve to webpages that contain contextual advertisements related to AMPAS's marks, including the annual Academy Awards or Oscars ceremony and the entertainment industry. A list of the 56 domain names is attached hereto as Exhibit A.

**III.   GoDaddy Acted With Bad Faith Intent To Profit.**

The undisputed evidence demonstrates that GoDaddy acted with bad faith intent to profit under the ACPA and the established case law interpreting it. As detailed in AMPAS's Memorandum of Contentions of Law and Fact, courts uniformly find bad faith intent to profit where, as here, the defendant has sought to profit from parked pages through advertisements. Dkt. No. 688 at 19-20 of 31; *see*

1  *also*, *e.g.*, *Two Plus Two Publishing, LLC v. Boyd*, 2012 WL 724678, at *4 (D. Nev.), *affirmed* 572 Fed.Appx. 466 (9th Cir. 2014); *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1202-03 (9th Cir. 2009).

As also detailed in the Memorandum of Contentions of Law and Fact, each of the statutory factors favors finding bad faith intent to profit in this case because: (1) GoDaddy does not have any trademark or intellectual property rights in AMPAS's marks; (2) the domain names at issue do not consist of any name commonly used to identify GoDaddy; (3) AMPAS has used its marks since 1928 and GoDaddy has not made any bona fide use of the domain names; (4) GoDaddy's use of AMPAS's marks was purely commercial; (5) GoDaddy intended to divert consumers from AMPAS's online location to the parked pages accessible under the domain names at issue, as reflected in GoDaddy's own documents and promotional materials; (6) GoDaddy's monetization of parked pages can increase the domain names' secondary sales price and GoDaddy gets a percentage of such sales; (7) AMPAS, through its wholly owned and controlled subsidiary, provides anonymity to domain name registrants and conceals their contact information; (8) GoDaddy has knowingly placed domain names containing third party trademarks in its Parked Pages Progam and continued to do so even after receiving over a thousand complaints from trademark owners; (9) AMPAS's marks are highly distinctive and famous. Dkt. No. 688 at 21-25 of 31.

**IV.  GoDaddy's Sole Affirmative Defense Is Unavailing.**

GoDaddy intends to assert the safe harbor defense for ACPA defendants who believed and had reasonable grounds to believe that the use of the domain names was a fair use or otherwise lawful. As detailed in the Memorandum of Contentions of Law and Fact, the Ninth Circuit has cautioned that "courts should 'make use of this 'reasonable belief' defense very sparingly and only in the most unusual of circumstances. *Lahoti*, 586 F.3d at 1202. This case plainly is not one of those most unusual of circumstances. Just as in *Lahoti* and other cases, AMPAS placed

1  GoDaddy on notice that it believed GoDaddy's conduct violated the ACPA.
2  Because GoDaddy chose to gamble that the district court would agree with its
3  interpretation of trademark law, the safe harbor defense is unavailable to it. *Id.*
4  Even after AMPAS filed this action and even after the Court denied GoDaddy's
5  motions to dismiss, GoDaddy continued to violate the ACPA.

**V.     In This Exceptional Case, The Court Should Award The Maximum Amount Of Statutory Damages, Attorney Fees, And Injunctive Relief.**

8   This case is truly exceptional. GoDaddy has engaged in cybersquatting on a
9   massive and unprecedented scale. This action alone concerns 293 domain names,
10  and it also includes evidence that GoDaddy's cybersquatting activity included
11  thousands of other domain names containing third party trademarks. GoDaddy will
12  not be deterred from cybersquatting unless AMPAS is awarded the maximum
13  amount of statutory damages per domain name, its attorney fees, and injunctive
14  relief. If the Court were to take this approach, the total amount of statutory damages
15  would be $29.3 million. That is still a relatively small amount for a company that
16  earns over $1 billion in revenue annually and that has earned over $100 million
17  dollars from its illicit Parked Pages Program.

18  Finally, GoDaddy's implementation of an "AMPAS-specific" trademark filter
19  in July 2013—over three years after the commencement of this action—does not
20  ensure that GoDaddy will not return to its prior practice of cybersquatting after this
21  case concludes. Under established law, the Court should issue a permanent
22  injunction in such cases, *Already, LLC v. Nike, Inc.*, --- U.S. ---, 133 S.Ct. 721, 727-
23  28 (2013), because GoDaddy's practice of cybsersquatting has and will cause
24  irreparable harm to AMPAS.

**VI.    Settlement Appears Unlikely.**

26  During the course of this hard fought litigation that has been pending since
27  May 2011, the parties have participated in mediation on two occasions. At this time,
28  it does not appear that the parties will be able to settle this action prior to trial.

4

| | |
|---|---|
| 1 | Respectfully submitted, |
| 2 | |
| 3 | Dated: June 29, 2015   BOIES, SCHILLER & FLEXNER LLP |
| 4 | FOOTE, MIELKE, CHAVEZ, & O'NEIL LLC |
| 5 | LEE, TRAN & LIANG APLC |
| 6 | |
| 7 | KUPFERSTEIN MANUEL & QUINTO LLP |

By: /s/ David Zifkin
        David Zifkin (SBN 232845)

**BOIES, SCHILLER & FLEXNER LLP**
Stuart Singer (pro hac vice)
ssinger@bsfllp.com
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Tel: 954-356-0011
Fax: 954-356-0022

David L. Zifkin (SBN 232845)
dzifkin@bsfllp.com
401 Wilshire Blvd., Suite 850
Santa Monica, CA 90401
Tel: 310-752-2400
Fax: 310-752-2490

**FOOTE, MIELKE, CHAVEZ, & O'NEIL LLC**
Robert M. Foote (pro hac vice)
rmf@fmcolaw.com
Matthew Herman (pro hac vice)
mjh@fmcolaw.com
10 West State Street, Suite 200
Geneva, Illinois 60134
Tel:  630-232-7450
Fax:  630-232-7452

**LEE, TRAN & LIANG APLC**
James M. Lee (SBN 192301)
jml@ltlcounsel.com

5
PLAINTIFF'S STATEMENT OF THE CASE

| | |
|---|---|
| 1 | Enoch H. Liang (SBN 212324) |
| 2 | ehl@ltlcounsel.com |
| | 601 South Figueroa Street, Suite 3900 |
| 3 | Los Angeles, CA 90017 |
| 4 | Tel: 213-612-8900 |
| | Fax: 213-612-3773 |

**KUPFERSTEIN MANUEL & QUINTO LLP**
David W. Quinto, Esq. (SBN 106232)
dq@kmqIitigation.com
11845 W. Olympic Boulevard, Suite 1000
Los Angeles, CA 90064
Tel: 424-248-6650
Fax: 424-248-6652

*Attorneys for Plaintiff Academy of Motion Picture Arts and Sciences*

PLAINTIFF'S STATEMENT OF THE CASE

# **EXHIBIT A**

1. GOTOSCAR.COM
2. GREENOSCAR.COM
3. HOMEOSCARS.COM
4. LISTOSCAR.COM
5. LOCATIONSOSCAR.COM
6. MAKINGTHEROUNDSWITHOSCAR.NET
7. OSCAR4RE.COM
8. OSCARBRIGHT.COM
9. OSCARBRITE.COM
10. OSCARCAM.COM
11. OSCARCHALLENGE.COM
12. OSCARCHALLENGE.NET
13. OSCARCLAIM.COM
14. OSCARCLAIM.NET
15. OSCARCLAIMS.NET
16. OSCARCOMMUNITY.COM
17. OSCARDOESITAGAIN.COM
18. OSCARELIGIBLE.COM
19. OSCARELIGIBLE.NET
20. OSCARHOPE.COM
21. OSCARHOSPITALITY.COM
22. OSCARI.COM
23. OSCARI.NET
24. OSCAR-INT.COM
25. OSCARKIDS.COM
26. OSCARLOCATIONS.COM
27. OSCARRESPONSE.COM
28. OSCARRESULTS.COM
29. OSCARRUN.COM
30. OSCARS3D.COM
31. OSCARSHOTELS.COM
32. OSCARSHOTELS.NET
33. OSCARSINAMINUTE.COM
34. OSCARSLLC.COM

PLAINTIFF'S STATEMENT OF THE CASE

35. OSCARSMILE.COM
36. OSCARSOASIS.COM
37. OSCARSOPENHOUSE.COM
38. OSCARSORNOT.COM
39. OSCARSROOM.COM
40. OSCARTWIST.COM
41. OSCARUNIVERSE.COM
42. OSCARWAY.COM
43. OSCARWORTHYMANSION.COM
44. TEXTILEOSCARS.COM
45. TEXTILEOSCARS.NET
46. THEMORMONOSCARS.COM
47. THEOSCARBODY.COM
48. THEOSCARCOPS.NET
49. THEOSCARTEAM.COM
50. THEOSCARTOUR.COM
51. THINKOSCAR.COM
52. THINKOSCAR.NET
53. THINKQUICKOSCAR.COM
54. TRAVELOSCAR.COM
55. TRAVELOSCARS.COM
56. TRAVELOSCARS.NET