**BOIES, SCHILLER & FLEXNER, LLP**
Stuart Singer (*pro hac vice*)
ssinger@bsfllp.com
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Fax: (954) 356-0022
[Additional Counsel Listed On Signature Page]
*Attorneys for Plaintiff Academy of Motion*
*Picture Arts and Sciences*

**WILMER CUTLER PICKERING HALE AND DORR LLP**
Robert Galvin, California Bar No. 171508
robert.galvin@wilmerhale.com
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6017
[Additional Counsel Listed on Signature Page]
*Attorneys for Defendant GoDaddy.com, LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACADEMY OF MOTION PICTURE ARTS AND SCIENCES, a California nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>GODADDY.COM, INC., et al.,<br><br>Defendant. | Case No.:  2:10-cv-03738 AB (CWx) [Consolidated with Case No.2:13- cv-08458-AB (CWx)]<br><br>**REVISED APPENDICES A & B TO [PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**<br><br>Final Pretrial Conference: July 16, 2015<br>Trial Date:  August 4, 2015<br>Judge Birotte |

1
2
3
4
5
6
7
8
9
10

## **APPENDIX A**

11
Stipulated Facts that the Parties Have Agreed to be

12
Admitted for All Purposes

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**Stipulated Facts Relating to the Parties**

2      1.      The Academy of Motion Picture Arts and Sciences ("AMPAS") is a
3 non-profit founded for the purpose of advancing the motion pictures arts and
4 sciences by promoting cultural, educational and technological achievements.

5      2.      Founded in 1927, the Academy is a non-profit organization dedicated
6 to advancing the motion picture arts and sciences.

7      3.      Among its activities, the Academy organizes an annual awards
8 ceremony for the film industry, which is generally known as the "Academy
9 Awards," or the "Oscars."

10      4.      The 81st Academy Awards was held on February 22, 2009.

11      5.      The 82nd Academy Awards was held on March 7, 2010.

12      6.      The 83rd Academy Awards was held on February 27, 2011.

13      7.      The 84th Academy Awards was held on February 26, 2012.

14      8.      The 85th Academy Awards was held on February 24, 2013.

15      9.      Oscars.com is a domain name owned by or affiliated with AMPAS.

16      10.      GoDaddy.com, Inc. was incorporated under the laws of Arizona on
17 January 13, 1997.  On December 5, 2011, GoDaddy.com, Inc. changed its corporate
18 form to become a limited liability company under the laws of Delaware.  Consistent
19 with its change in corporate form, GoDaddy.com, Inc. changed its name to
20 GoDaddy.com, LLC.

21      11.      GoDaddy.com, LLC ("GoDaddy") is a domain name registrar that has
22 registered more than 150 million domain names since its inception.

23      12.      GoDaddy became an ICANN-accredited registrar in 2000.

24      13.      GoDaddy is the largest domain name registrar in the world.

25      14.      GoDaddy currently has approximately 59 million domain names under
26 management, more than 18 million of which participate in one of GoDaddy's
27 parked page programs.

28      15.      GoDaddy is familiar with the ACPA.

1

16.      AMPAS and GoDaddy are not competitors.

**Stipulated Facts Relating to the Asserted Marks**

17.      AMPAS owns the following registered trademarks:  OSCAR NIGHT, ACADEMY AWARD, OSCAR, OSCARS, and ACADEMY AWARDS (the "AMPAS Marks").

18.      The Academy owns the ACADEMY AWARD® and ACADEMY AWARDS® marks, which it has registered with the United States Patent and Trademark Office ("USPTO") pursuant to Certificate of Registration No. 2,245,965 for its ACADEMY AWARD mark and Certificate of Registration Nos. 1,103,859, 1,880,473 and 1,956,313 for its ACADEMY AWARDS mark.

19.      The Academy owns the OSCAR®, OSCARS® and OSCAR NIGHT® marks, which it has registered with the United States Patent and Trademark Office pursuant to Certificates of Registration Nos. 1,096,990, 1,118,751, 1,996,585 and 2,021,582, for its OSCAR mark, Certificate of Registration No. 1,528,890 for its OSCARS mark, and Certificate of Registration No. 2,029,445 for its OSCAR NIGHT mark.

20.      GoDaddy has no intellectual property rights in the following trademarks:  ACADEMY AWARD®, ACADEMY AWARDS®, OSCAR®, OSCARS®, or OSCAR NIGHT®.

21.      Every GoDaddy employee asked in a deposition in this case admitted that they were familiar with the Academy Awards and/or the Oscars.

22.      Both "Oscar" and the "Academy Awards" have their own entries in the Oxford English Dictionary, referring specifically to the Academy's annual awards ceremony.

23.      The Encyclopedia Britannica includes an entry for the Academy Awards, noting that winning an award frequently "bestow[s] international recognition and prestige," "can significantly increase the box office earnings of a winning film," and frequently results in "higher salaries and increased media

2

1   attention" for winning actors and directors.

2       24.     AMPAS has no knowledge of any instance of actual confusion related

3   to its marks resulting from the domain names at issue.

4               **Stipulated Facts Relating to the Accused Domain Names**

5       25.     There are 293 domain names at issue, each of which is identified on

6   the attached Appendix A.

7       26.     Fifty-three (53) of the domain names previously at issue in this

8   consolidated action have been dismissed.

9       27.     GoDaddy lodged each of the domain names at issue with the Court by

10  way of a Registrar's Certificate.

11      28.     Go Daddy is not, nor was it at any time, the domain name registrant

12  for any of the 293 domain names at issue nor did GoDaddy select any of the 293

13  domain names for registration.

14      29.     GoDaddy disclosed the identities of each of the registrants of the

15  domain names at issue either in response to a letter from AMPAS' counsel or as

16  part of this litigation.

17      30.     AMPAS has not identified any lost profits as a result of the domain

18  names at issue.

19      31.     For purposes of this action, AMPAS has withdrawn its claim that any

20  of the 293 domain names were dilutive of its trademarks under the ACPA.

21      32.     None of the accused domain names in this litigation contain or

22  incorporate any of GoDaddy's corporate names.

23      33.     None of the accused domain names in this litigation contain or

24  incorporate any of GoDaddy's legal names.

25      34.     None of the accused domain names in this litigation contain or

26  incorporate any corporate or legal names of any GoDaddy subsidiaries.

27      35.     None of the accused domain names in this litigation contain or

28  incorporate any of GoDaddy's trademarks.

36.     All 230 GoDaddy Parked Pages screenshots attached to the Declaration of Joe Presbrey in Support of the Academy's MSJ (Dkt. Nos. 663-7 through 663-16) are relevant, authentic and admissible under the Federal Rules of Evidence.

37.     Each of the 230 GoDaddy Parked Pages screenshots attached to the Declaration of Joe Presbrey in Support of the Academy's MSJ (Dkt. Nos. 663-7 through 663-16) were captured on the date indicated therein.

38.     All 49 GoDaddy Parked Pages screenshots attached to the Declaration of David Quinto in Support of the Academy's MSJ (Dkt. Nos. 663-3 through 663-6) are relevant, authentic and admissible under the Federal Rules of Evidence.

39.     All 6 GoDaddy Parked Pages screenshots attached to the Declaration of Matthew Herman in Support of the Academy's MSJ (Dkt. No. 663-17) are relevant, authentic and admissible under the Federal Rules of Evidence.

40.     Each of the 6 GoDaddy Parked Pages screenshots attached to the Declaration of Matthew Herman in Support of the Academy's MSJ (Dkt. No. 663-17) were captured on the date indicated therein.

41.     All 24 GoDaddy Parked Pages screenshots attached to the Declaration of Enoch Liang in Support of the Academy's MSJ (Dkt. No. 663-18) are relevant, authentic and admissible under the Federal Rules of Evidence.

42.     Each of the 34 GoDaddy Parked Pages screenshots attached to the Declaration of Enoch Liang in Support of the Academy's MSJ (Dkt. No. 663-18) were captured on the date indicated therein.

43.     Screenshots produced by AMPAS or its agents for the following twenty-four (24) domain names do not contain any GoDaddy banner advertisements:

- ACADEMYAWARDS.NET
- ACADEMYAWARDS2011WINNERS.COM
- ACADEMYAWARDS2012WINNERS.COM

4

1

- ALLOSCAR.COM

2

- JONSTEWARTOSCARS.COM

3

- LISTOFACADEMYAWARDWINNERS.COM

4

- MYOSCARORNOT.COM

5

- OSCARBRIGHT.COM

6

- OSCARBRITE.COM

7

- OSCARCHALLENGE.COM

8

- OSCARCHALLENGE.NET

9

- OSCARFAQS.COM

10

- OSCARGIFTINGSUITE.COM

11

- OSCARGURU.COM

12

- OSCARORNOT.COM

13

- OSCARRESULTS.COM

14

- OSCARRESULTS.NET

15

- OSCARSMILE.COM

16

- OSCARSORNOT.COM

17

- OSCARSWIN.COM

18

- OSCARUNIVERSE.COM

19

- THEOSCARGURU.COM

20

- THEOSCARORNOT.COM

21

- THEOSCARSORNOT.COM

22        44.    Screenshots produced by AMPAS or its agents for the following three

23    (3) domain names do not contain any Google-provided, third-party pay-per-click

24    advertising links:

25

- OSCARMOMINEES.COM

26

- BESTPICTUREOSCARNOMINATIONS.COM

27

- BETACADEMYAWARDS.COM

28        45.    AMPAS employed a litigation consultant to create an automated

5

software program by which it would visit a domain name, capture a screenshot, and send the screenshot to a server to be saved under a file name containing the domain name itself.

46.    The software program was designed to take a screenshot of every visit to a domain name and sometimes visited a single domain name on multiple occasions.

**Stipulated Facts Relating to GoDaddy's Domain Name Registration Process**

47.    At the time of registration, GoDaddy requires every domain name registrant, by way of Paragraph 10 its Universal Terms of Service, to represent and warrant that they "have no knowledge of [their] domain name infringing upon or conflicting with the legal rights of a third party or a third party's trademark or trade name."

48.    At the time of registration, GoDaddy requires every domain name registrant, by way of Paragraph 10 its Domain Name Registration Agreement, to represent and warrant that they "have no knowledge of [their] domain name infringing upon or conflicting with the legal rights of a third party or a third party's trademark or trade name."

49.    At the time of registration, GoDaddy requires every domain name registrant whose domain name will be participating in either its Free Parking or Cash Parking programs, to represent and warrant, by way of Paragraph 3 of GoDaddy's Parked Page Service Agreement, that the registrant "has no knowledge of their domain name infringing upon or conflicting with the legal rights of a third party or a third party's trademark or trade name."

50.    GoDaddy blocks domain names from being registered that contain the following terms: GODADDY, BLUERAZOR, WILDWESTDOMAINS, DOMAINSBYPROXY, and STARFIELD TECH.

51.    A domain name registrant can identify the domain name server where the domain name will be routed so that content resolving from the domain name

1     can be located and viewed online.

2         52.     Designation of a DNS allows a domain name to be located and viewed

3     online.

4         53.     When someone registers a domain but does not wish to associate that

5     domain name with an IP address, GoDaddy gives that person two options. First, the

6     registrant may configure the name server to omit any associated IP address.  If a

7     registrant chooses this option and someone types the domain name into their

8     Internet browser, the browser will display an error message reflecting that no such

9     website exists.  Second (and important for the instant action), a registrant may

10    choose to "park" its domain name with GoDaddy.  When a registrant "parks" a

11    domain with GoDaddy, they associate that domain name with one of GoDaddy's

12    "parked page servers" in the DNS.  Once a registrant "parks" its domain with

13    GoDaddy, users who type the domain name into their internet browser will no

14    longer receive an error message, but will be directed to a dynamically-created

15    website on one of GoDaddy's servers.

16        54.     Among the registrant's routing options is to route to a "record not

17    found" error message, to a new or existing website, or to GoDaddy's parked page

18    servers. A registrant can also decline to designate a name server, in which case

19    GoDaddy will designate by default its parked page server.

20        55.     In the event a registrant did not select a DNS at the time of

21    registration, the DNS for GoDaddy's parked page servers would have been

22    designated by default through GoDaddy's automated processes.

23    **Stipulated Facts Relating to GoDaddy's Free Parking and Cash Parking**

24                                      **Programs**

25        56.     In addition to registering domain names, GoDaddy permits customers

26    to "park" a domain with GoDaddy using GoDaddy's Free Parking or Cash Parking

27    programs.

28        57.     Unlike traditional websites, such as godaddy.com, GoDaddy's parked

pages are "dynamic" – meaning a parked page does not exist unless and until an Internet user types a domain name into a web browser and presses enter.

58.    A parked page exists only for the duration that an Internet user keeps the page open on the computer.

59.    Once the Internet user closes the parked page, that particular parked page ceases to exist.  The next time the domain name is entered into a browser, a new parked page is generated.

60.    GoDaddy maintains different templates for its monetized and non-monetized parked pages.

61.    Non-monetized parked pages do not contain advertisements, but may contain statements such as "Sorry, this site is not currently available!" or "Coming Soon."  Some non-monetized parked pages may not have any content at all (i.e., blank pages).

62.    Monetized parked pages may contain GoDaddy banner advertisements, Google-provided, third-party pay-per-click advertisements, or some combination of both.

63.    The fact that a domain name may resolve to a monetized parked page on one occasion does not mean that it will always do so.

64.    GoDaddy only earns revenue from a parked page if (1) an Internet user clicks on a GoDaddy banner and then purchases a product/service; or (2) an Internet user clicks on one of the Google-provided, third-party pay-per-click advertisements.

65.    GoDaddy maintains two parked page programs—one called "free parking" and one known as "CashParking."

66.    Between 2011 and 2014, there were approximately 17 million domain names in GoDaddy's Free Parking program per year and approximately 1.2 million domain names in GoDaddy's Cash Parking program per year.

67.    Prior to October 16, 2013, certain monetized templates in the Free Parking Program may have also triggered the display of pop-under advertisements.

8

68.     Prior to October 16, 2013, GoDaddy could also earn revenue from pop-under advertisements triggered by the display of certain monetized templates in the Free Parking Program.

69.     Prior to January 28, 2015, certain monetized templates in the Cash Parking Program may have also triggered the display of pop-under advertisements.

70.     Prior to January 28, 2015, GoDaddy could also earn revenue from pop-under advertisements triggered by the display of certain monetized templates in the Cash Parking Program.

71.     GoDaddy does not pay domain name registrants any of the revenue it receives from the advertising placed on webpages resolved from domain names in the Free Parking Program.

72.     With Cash Parking, a domain registrant pays GoDaddy a fee in exchange for sharing in a portion of the revenue generated from pay-per-click advertisements appearing on the parked page.

73.     GoDaddy does not place its own banner advertisements on websites resolving from domain names that utilize its CashParking service.

74.     According to GoDaddy's expert James Pampinella, between 2005 and May 2014, GoDaddy generated approximately $54.5 million in revenue for GoDaddy products and services purchased after customers clicked on GoDaddy banner ads on Parked Pages.  (See Schedule 1.A.)

75.     GoDaddy's "Domain Name Registration Agreement" ("DNRA") is one of the agreements that govern GoDaddy's relationship with its registrants.

76.     The January 2009 version of the DNRA states, in a section entitled "Parked Page Service," as follows: "You [the registrant] agree that Go Daddy may point the domain name or DNS [domain name server] to one of Go Daddy's or Go Daddy's affiliates web pages, and that they may place advertising on Your web page and Go Daddy specifically reserves this right. Go Daddy also reserves the right to collect and retain all revenue obtained from such advertising."

9

77.     The January 2009 version of the DNRA also states: "You [the registrant] agree that Go Daddy may place advertising on Your Parked Page and Go Daddy specifically reserves this right. Go Daddy also reserve [sic] the right to collect and retain all revenue obtained from such advertising."

78.     GoDaddy's Free Parking and Cash Parking programs participate in Google's AdSense for Domains program.

79.     At all times relevant, Google advertisements were provided by Google's AdSense for Domains service.

80.     Google's AdSense for Domains has a trademark policy such that "[i]f Google becomes aware of a domain name that contains a trademark (or typo), that domain will be removed from the AdSense for Domains network."  See GOOG001-GOOG003.

81.     In GoDaddy's Cash Parking Program, registrants pay GoDaddy a fee to allow GoDaddy, through its advertising partner Google, Inc., to place ads on the webpage that resolves from a domain name, and the revenue generated from that advertising is split among the registrant, GoDaddy, and Google.

82.     Pursuant to its contract with Google, dated April 3, 2009, at Paragraph 3.1(a), GoDaddy cannot "edit, modify, truncate, filter or change the order of the information contained in any Search Results and/or Advertising Results" returned by Google.

83.     Pursuant to its contract with Google, dated April 3, 2009, at Paragraph 3.1(f), GoDaddy cannot "minimize, remove or otherwise inhibit the full and complete display of any Results Page."

84.     Pursuant to its contract with Google, dated April 3, 2009, at Paragraph 5.5, Google prohibits GoDaddy from "tracking data contained in any advertising results, including text or URLs."

85.     Each of the parked pages on which the Google-provided, third-party pay-per-click advertisements appeared specifically identified those advertisements

10

1    as "Sponsored Listings" or "Ads."

2         86.    Each of the parked pages on which the Google-provided, third-party

3    pay-per-click advertisements appeared clearly stated that the website being visited

4    was actually a page parked by GoDaddy.com.

5                    **Stipulated Facts Relating to Trademark Issues**

6         87.    Pursuant to GoDaddy's September 2, 2004 "Trademark and/or

7    Copyright Infringement Policy," a "Complaining Party" can "submit a trademark

8    claim for violation of a mark on which the Complaining Party holds a valid

9    registered trademark or service mark," by submitting the following:

10        "i. To be considered effective, a notification of a claimed trademark

11        violation must be provided via email to Go Daddy and must include the

12        following information:

13        ii. Sufficient evidence that the party posting the trademark that is

14        claimed to be infringing is a GoDaddy customer.

15        iii. The trademark, service mark, trade dress, name, or other indicia of

16        origin ("mark") that is claimed to be infringed.

17        iv. The name, post office address and telephone number of the owner

18        of the mark identified above.

19        v. The goods and/or services covered by or offered under the mark

20        identified in B above.

21        vi. The date of first use of the mark identified above.

22        vii. The date of first use in interstate commerce of the mark identified

23        above.

24        viii. The mark the Complaining Party believes is an infringement of its

25        mark.

26        ix. The goods and/ or services covered by or offered under the mark

27        claimed to be infringing.

28        x. The precise location of the mark that is claimed to be infringing,

11

including electronic mail address, etc. A good faith certification, signed under penalty of perjury, stating:

                    a. The mark [identify mark] infringes the rights of another party,

                    b. The name of such said party,

                    c. The mark [identify mark] being infringed, and

                    d. That use of the mark [identify mark] claimed to be infringing at issue is not defensible."

88.    Upon notice of infringement by a trademark owner, GoDaddy will manually override its automated systems to ensure that a domain name in the parked page program always resolves to a non-monetized page.

89.    In October 2007, Richard Merdinger applied for a patent titled "SYSTEMS AND METHODS FOR FILTERING ONLINE ADVERTISEMENTS CONTAINING THIRD-PARTY TRADEMARKS."

90.    In October 2007, Richard Merdinger was a GoDaddy employee.

91.    GoDaddy has created and downloaded a list and/or database of trademarks.

92.    In the past, GoDaddy used a trademark database used to filter keywords within its Cash Parking Program (GD 14356 – GD 14392). From 2005 until October 2007, GoDaddy's employees manually reviewed keywords that were flagged by the trademark database to determine if the keyword used a third party trademark within the database.  In October 2007, GoDaddy automated the review process.

93.    This trademark database at GD14356 – GD14392 includes the trademark "academy award" at GD14356.

94.    On October 26, 2007, GoDaddy released Cash Parking's Monetization Control Center 3.4 with a new feature:  "Trademark Validation for Keywords:  No more waiting on a domain analyst to manually check for trademark violations" and "Optimistic Keyword Approval:  If the keywords pass trademark validation, then

12

1  they take affect [sic] immediately."

Appendix A: Stipulated Facts to be Admitted for All Purposes

1
2
3
4
5
6
7
8
9
10

## **APPENDIX B**

11
Stipulated Facts to which the Parties Agree to be

12
Admitted Subject to Evidentiary Objection

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Stipulated Facts Relating to the Parties**

95.     Oscars.com auto-forwards to Oscars.go.com, a revenue generating website that is co-produced by AMPAS and ABC.

96.     AMPAS utilized Google's AdWords program to drive traffic to Oscars.go.com in 2009, 2010 and 2011.

97.     AMPAS also utilized Google's AdWords Program to drive traffic to its YouTube page in 2008, 2009, and 2010.

**Stipulated Facts Relating to the Asserted Marks**

98.     The term 'Oscar' can be a male's given or first name.

99.     The term "oscar" is used to refer to a type of fish.

100.    The term "oscar" is used to refer to a type of steak preparation.

101.    The term "oscar" is used to refer to the letter O in the NATO phonetic alphabet.

102.    The term "oscar" is used to refer to the NATO designation for a class of nuclear-powered Soviet and Russian attack submarines.

103.    The term "oscar" is used to refer to a human gene.

104.    The term "oscar" is used to refer to an acronym for the federal court system's program known as Online System for Clerkship Application and Review (OSCAR).

105.    The term "oscar" is used to refer to an acronym for a Linux-based software installation called Open Source Cluster Application Resources (OSCAR).

106.    The term "oscar" is used to refer to an acronym for the OSHA System for Compliance Assistance and Referral (OSCAR), a program designed by OSHA in conjunction with the Environmental Protection Agency to promote easy public access to OSHA standards and interpretations.

107.    The term "oscar" is used to refer to an acronym for Optimised Supply Chain Active Resource (OSCAR), which is suite of supply chain IT software packages designed by Santova to assist its clients in supply chain management.

1

Appendix B: Stipulated Facts to be Admitted Subject to Evidentiary Objection

108.   The term "oscar" is used to refer to an acronym for Open System for CommunicAtion in Realtime (OSCAR), an instant messaging and presence information protocol used by AOL.

109.   The term "oscar" is used to refer to an acronym for Orbital Satellite Carrying Amateur Radio (OSCAR), a phrase used since 1961 to describe amateur radio satellites.

110.   The term "oscar" is used to refer to an acronym for a type of Australian train known as Outer Suburban CARs (OSCARs).

111.   The term "oscar" is used to refer to a project aimed at developing a car according to Open Source principles (OScar).

### Stipulated Facts Relating to the Accused Domain Names

112.   The screenshots for the following four (4) domain names contain advertisements directing an Internet user to AMPAS' own revenue-generating website, oscars.go.com:

- THEOSCARS.CO (taken February 24, 2011 by E. Liang).
- THEWORLDAWARDACADEMY.COM (taken February 24, 2011 by E. Liang).  In Dkt. 508 dated November 4, 2013, Judge Collins found THEWORLDAWARDACADEMY.COM to be not confusingly similar as a matter of law to the Academy's trademarks.
- THEWORLDAWARDACADEMY.ORG (taken February 24, 2011 by E. Liang).  In May 2015, the Academy voluntarily dismissed THEWORLDAWARDACADEMY.ORG from this case.
- ACADEMYAWARDWINNINGFILMS.COM (taken February 24, 2011 by E. Liang).

113.   Screenshots taken by Matthew Herman were generally taken on a computer that was physically located in either Geneva or St. Charles, Illinois.

114.   Screenshots taken by or at the direction of Enoch Liang were generally taken on a computer that was physically located in either Los Angeles or San

2

Francisco, California.

115.   Screenshots taken by or at the direction of David Quinto were generally taken on a computer that was physically located in Los Angeles, California.

## Stipulated Facts Relating to GoDaddy's Free Parking and Cash Parking Programs

116.   In this litigation, GoDaddy produced correspondence it received from third parties between Jan. 2007 to Oct. 2011 regarding its Free Parking and Cash Parking programs (Bates Range GD51099-GD70775).

## Stipulated Facts Relating to Standard Tactics

117.   Standard Tactics LLC, a subsidiary of GoDaddy Group, Inc., acquired the following domain names:  THEACADEMYAWARDSLIVE.COM, 2006ACADEMYAWARDS.COM, and ACADEMYAWARDSSHOW.COM.

118.   The domain name THEACADEMYAWARDSLIVE.COM did not generate any revenue for Standard Tactics LLC from pay-per-click revenue.

119.   Between April 24 and June 14, 2006, the domain name 2006ACADEMYAWARDS.COM generated revenue of $0.725 for Standard Tactics LLC from pay-per-click revenue.

120.   Between May 16, 2008 and January 11, 2009, the domain name ACADEMYAWARDSSHOW.COM generated revenue of $0.6232 for Standard Tactics LLC from pay-per-click revenue.

Appendix B: Stipulated Facts to be Admitted Subject to Evidentiary Objection